**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

No. 07-739

FILED

JAN 1 5 2008

IN THIS OFFICE
Clerk, U.S. District Court
Greensboro, N.C.
By .............

DAVID F. EVANS; COLLIN FINNERTY; and
READE SELIGMANN,

Plaintiffs,

v.

THE CITY OF DURHAM, NORTH CAROLINA;
MICHAEL B. NIFONG; MARK GOTTLIEB;
BENJAMIN HIMAN; DAVID ADDISON; LINWOOD
WILSON; STEVEN CHALMERS; BEVERLY
COUNCIL; RONALD HODGE; JEFF LAMB;
PATRICK BAKER; MICHAEL RIPBERGER; LEE
RUSS; DNA SECURITY, INC.; RICHARD CLARK;
and BRIAN MEEHAN,

Defendants.

MOTION TO DISMISS
and
**DEFENDANT
LINWOOD WILSON'S
MEMORANDUM OF
LAW IN SUPPORT OF
MOTION TO DISMISS**

## I.   INTRODUCTION

The instant lawsuit has been brought by David Evans, Collin Finnerty and Reade

Seligmann (hereinafter "Plaintiffs") against a number of Defendants including the City of

Durham, several members of the Durham Police Department in their individual capacities, DNA

Security Incorporated, former Durham District Attorney Michael Nifong (hereinafter "Nifong"),

and Nifong's investigator, Linwood Wilson (hereinafter "Wilson").  The lawsuit arises from the

roles allegedly played by each of the Defendants in the "Duke Lacrosse Case."

1

Dockets.Justia.com

## II.   RELEVANT FACTS

As stated in the Plaintiffs' complaint, the underlying case involves the investigation and prosecution of the Plaintiffs on charges of first-degree rape, first-degree sex offense, and kidnapping stemming from an incident which allegedly occurred at an off-campus party for members of the Duke University men's lacrosse team in March, 2006. (Amended Compl. ¶ 2). At all relevant times, Defendant Wilson was employed as an investigator with the District Attorney's Office in Durham. (Amended Compl. ¶ 16). The following facts encompass the entire role played by Defendant Wilson, as it is alleged in Plaintiffs' complaint, in the investigation and prosecution of the case.

Soon after the events that took place in the early morning hours of March 14, 2006, Defendant Wilson was allegedly appointed by Defendant Nifong to coordinate the investigation of the State's case against the Plaintiffs. (Amended Compl. ¶ 135). Such an appointment was allegedly unprecedented given Defendant Wilson's prior experience, which, allegedly was largely limited to administrative work such a serving subpoenas and scheduling witness interviews. (Amended Compl. ¶ 135).

Crystal Mangum, (hereinafter "Mangum"), was hired to perform as an exotic dancer at an off-campus house party for members of the Duke lacrosse team on March 14, 2006 (Amended Compl. ¶ 38). Mangum later asserted that she had been raped while performing at the party (Amended Compl. ¶ 48). Plaintiffs' complaint alleges that Defendant Wilson, among other Defendants, was aware that Mangum asserted "bizarre behavior" on the night in question, that on at least one occasion she had recanted a prior allegation of rape, and that her accounts of the alleged rape included many inconsistencies and variations during the time period from March 14, 2006, to April 6, 2006. The complaint also alleges that Defendant Wilson, and others acting in

concert, were aware of the presence of scientific exculpatory evidence and prior false claims of rape by Mangum as well as several contradictions and inconsistencies in identifying suspects during a police photographic lineup. Despite this alleged knowledge and the deficiencies in Mangum's accounts, Defendant Wilson and the other Defendants allegedly continued to push forward with the prosecution of the Plaintiffs on charges of rape, first-degree sexual offense, and kidnapping. (Amended Compl. ¶ 51-79).

Kim Pittman (hereinafter "Pittman") was hired to perform alongside Mangum as an exotic dancer for the off-campus house party in the early morning hours of March 14, 2006. (Amended Compl. ¶ 38). According to Plaintiffs' complaint, Pittman told police investigators that Mangum's allegations of a rape at the house party were "a crock." (Amended Compl. ¶ 87). The complaint alleges that Defendant Wilson, acting in concert with other Defendants, was aware of this statement made by Pittman and yet "ignored" or was "deliberately indifferent" to the statement in deciding to continue the investigation and prosecution of the criminal case. (Amended Compl. ¶ 89).

Sergeant John Shelton (hereinafter "Shelton") was at all relevant times employed by the Durham Police Department. On the night of the alleged rape, Shelton was the first officer to come in contact with Mangum following a call from the parking lot of a Kroger grocery store in Durham. Upon arriving at Kroger, Mangum allegedly told Shelton differing accounts about the events which took place at the off-campus party. Mangum first told Shelton that she had been raped at the party but later recanted her rape allegations to Shelton. (Amended Compl. ¶ 42-54). Plaintiffs' complaint alleges that Defendant Wilson, among others, attempted to later intimidate and discredit Shelton by conducting internal investigations and threatening disciplinary action

against him if he revealed or testified to Mangum's recantation and her inconsistent stories on the night of the alleged rape. (Amended Compl. ¶ 262).

Moezeldin Elmostafa (hereinafter "Elmostafa"), according to Plaintiffs' complaint, was at all relevant times a taxicab driver who would have provided testimony in corroboration of an alibi defense for Plaintiff Seligmann. Specifically, Elmostafa's testimony would have placed Plaintiff Seligmann somewhere other than the scene of the crime at the time which it allegedly occurred. (Amended Compl. ¶ 245). Plaintiffs' complaint alleges that on or about April 24, 2006, Defendant Wilson, at the direction of Defendant Nifong, confronted Elmostafa concerning his knowledge of Plaintiff Seligmann's whereabouts on the night of March 14, 2006. (Amended Compl. ¶ 247). Defendant Wilson purportedly threatened Elmostafa with execution of an unrelated, uncleared 2003 arrest warrant unless Elmostafa agreed to recant his testimony in corroboration of Plaintiff Seligmann's alibi. When Elmostafa refused to recant, Defendant Nifong ordered his arrest on the 2003 arrest warrant. (Amended Compl. ¶ 247-249).

The complaint also alleges that Defendant Wilson conducted an unsupervised interview with Mangum on or about December 21, 2006. According to Plaintiffs' complaint, the "sole purpose" of the interview was to have Mangum alter her testimony to fit the relevant evidence obtained by Defendant Nifong and the police department during the State's investigation of the case. (Amended Compl. ¶ 310). Plaintiffs' complaint alleges that, during this interview, Mangum was "coached" by Defendant Wilson into changing her account of the rape as well a providing a new photographic identification of the suspects who carried out the alleged rape. (Amended Compl. ¶ 311-313).

In their complaint, the Plaintiffs allege twenty-two causes of action against the various Defendants based on constitutional violations as well as violations of federal statutes and the

common law. Specifically, Defendant Wilson is alleged to have committed multiple violations of two federal statutes: 42 U.S.C. §1983 and 42 U.S.C. §1985. All violations arise out of the alleged actions taken by Defendant Wilson while acting at the direction and supervision of Defendant Nifong. The §1983 claims are based on malicious prosecution and seizure, concealment of evidence, fabrication of false evidence, conspiracy to engage in witness tampering, and witness intimidation. (Amended Compl. ¶ 329-358, 437-444). The §1985 claims are based on conspiracy to obstruct justice, and conspiracy to engage in witness tampering. (Amended Compl. ¶ 445-467). In addition to violations of the above listed federal statutes, the complaint also alleges separate state law causes of action against Defendant Wilson for malicious prosecution, obstruction of justice, conspiracy, and intentional infliction of emotional distress. (Amended Compl. ¶ 486-517).

## III.   **LEGAL STANDARD**

Dismissal of a complaint for failure to state a claim shall be granted only when the complaint fails to adequately state a claim for relief. Once a claim has been adequately stated, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 197 S. Ct. 1955, 1968 (2007). This principle notwithstanding, the complaint must contain direct allegations or allegations from which a cause of action can be inferred. The Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp.*, 213 F.3d 175, 180 (4th Cir. 2000).

## IV.    ARGUMENT

Plaintiffs claims against Wilson should be dismissed because Defendant Wilson is entitled to absolute immunity and because some of the claims, such as 42 U.S.C. §1985 are deficient on its face.  This brief will first examine immunity the issue of absolute immunity in general, then as it is applied to the specific allegations of the complaint, and last, the deficiency in some of the causes of action with regards to the elements.

### A.    Plaintiffs' Complaint Fails to State a Cause of Action Because Defendant Linwood Wilson is Entitled to Absolute Immunity

Plaintiffs allege several causes of action against Defendant Wilson for his alleged role in their prosecution on charges of first-degree rape, first-degree sex offense, and kidnapping.  Each cause of action took place while Defendant Wilson was employed and acting in his official capacity as an investigator for the Durham County District Attorney's office at the direction and supervision of former Durham District Attorney, Defendant Nifong.  Defendant Wilson is entitled to absolute immunity for his conduct as an investigator acting at the direction of a judicial officer performing prosecutorial functions.  Therefore, each cause of action should be dismissed for failure to state a claim upon which relief may be granted.

### B.    Absolute Immunity for Prosecutors

The United States Supreme Court granted prosecutors absolute immunity for actions taken within the scope of prosecutorial duties in *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, (1976). *Imbler* involved a claim that prosecutors violated the civil rights of the Plaintiff under 42 U.S.C. §1983.  In *Imbler*, the Court reviewed the common law tradition of granting immunity to prosecutors for various actions associated with their official duties.  The Court found that absolute immunity at common law was granted in order to allow the prosecutor to

carry out the duties of the office without having to worry about the possibility of litigation or unreasonably cautioned judgment. *Id.* at 422-423.

After review, the Court determined that absolute immunity was necessary to protect the fairness and integrity of the justice system. The Court stated that absolute immunity could result in situations where people were harmed by a dishonest prosecutor and had no legal redress. However, the Court opined that the possibility of retaliation against prosecutors ultimately posed a greater threat to the system, from a public policy standpoint, than abuse by dishonest officials. *Id.*

**C.**   **Defendant Wilson is Entitled to Absolute Immunity as an Investigator Acting at the Direction of a Prosecutor**

Since the *Imbler* decision, the protections of absolute immunity have frequently been extended to individuals other than prosecutors. In *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S. Ct. 2606, (1993), the Supreme Court noted that absolute immunity applies to the "nature of the function performed, not the identity of the actor who performed it." *Id.* at 269. Other circuits have held that investigators are entitled to the same absolute immunity as prosecutors. *See Joseph v. Patterson* 795 F.2d 549 (6th Cir. 1986) (rev'd on other grounds); *Goncalves v. Reynolds* 198 F. Supp.2d 278 (W.D.N.Y. 2001); *Davis v. Grusemeyer* 996 F.2d 617 (3d Cir.1993); *Gobel v. Maricopa County,* 867 F.2d 1201(9th Cir. 1989). Each of these cases recognized the principle that investigators performing tasks as a function of an ongoing investigation at the direction of a prosecutor should be entitled the same absolute immunity given to prosecutors. *See* e.g., *Davis,* 996 F.2d at 632.

This Circuit implicitly acknowledged the same principle in *Hoover v. Keith*, 2004 U.S. Dist. LEXIS 27943 (M.D.N.C. 2004). *Hoover* involved a charge of malicious prosecution brought by a prisoner acting pro se against a prosecutor and the prosecutor's assistant. The

charges were based on an alleged violation of the prisoner's civil rights under 42 U.S.C. §1983. *Id.* at 1. The Court determined that the prisoner's suit should be dismissed because it was frivolous but alternatively held that the actions of both the prosecutor and his assistant were covered by absolute prosecutorial immunity. *Id.* at 3-4.

Applying this to the facts of the present case, Defendant Wilson was at all relevant times duly employed as a prosecutorial investigator acting at the direction of Defendant Nifong as Durham County District Attorney. (Amended Compl. ¶ 16). Defendant Nifong assigned Defendant Wilson several tasks related to the investigation of the criminal case. Throughout the performance of these tasks and at all relevant times, Defendant Wilson acted only when tasks were expressly delegated by Defendant Nifong as part of the investigation and preparation of the prosecution's case for trial. On separate occasions, Defendant Nifong, according to Plaintiffs' complaint, ordered Defendant Wilson to investigate and discredit Elmostafa (Amended Compl. ¶ 247-248, 253); to intimidate and discredit Shelton (Amended Compl. ¶ 264); and to conduct an interview with Mangum (Amended Compl. ¶ 310). As such, Defendant Wilson's actions in his role as an investigator are entitled to the same protections of absolute immunity which are afforded to a prosecutor.

### D. Defendant Wilson's Actions Are Prosecutorial in Nature and Fall Within the Scope of Absolute Immunity as Defined by the Courts

The doctrine of absolute immunity is not without limits and only extends to actions which can be fairly classified as "prosecutorial." *Burns v. Reed*, 500 U.S. 478, 111 S. Ct. 1934, (U.S. 1991). In *Burns,* the Court held that absolute immunity is extended to those functions which are considered to be prosecutorial in nature, as opposed to those functions which can be classified as "administrative" or "investigative" functions which are not traditionally within the province of a

judicial officer. *Id.* at 494-496. Further, the Court in *Imbler* noted that absolute immunity should be granted for actions which "intimately associated with the judicial phase of the criminal process." *Imbler,* 424 U.S. at 430. The precise line between administrative and investigatory functions on the one hand, and prosecutorial functions which are "intimately associated with the judicial process" on the other, is drawn with respect to the factual circumstances present in each case. The administrative/investigatory activity and the prosecutorial functions are examined below.

### 1.    Administrative/Investigatory Activity

None of the alleged actions of Defendant Wilson are administrative or investigatory in nature. Each action was different from the actions taken in *Buckley* because Defendant Wilson acted in each instance either after indictment with a focus on the pending criminal trial, or else his actions were so intimately associated with the judicial process so as to be considered "prosecutorial" in nature and thus entitled to the protections of absolute immunity.

In *Buckley*, the Supreme Court was faced with the question of whether a prosecutor's actions in attempting to identify the source of a bootprint at the scene of a murder were entitled to absolute immunity. The Court noted:

> "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Id* at 273-274.

In an effort to charge an unindicted suspect with the crime, the prosecutors sought an expert who would provide them with a positive identification of the bootprint following three unsuccessful identifications from previous sources. *Id.* Based on the fact that the attempts to fabricate evidence took place prior to a grand jury indictment and in the preliminary investigation of the crime, before there was probable cause to have anyone arrested, the Court held that such activity

was essentially police activity that could be classified as "investigatory" in nature, and therefore not entitled to the protections of absolute immunity. *Id.* Other actions that have been held to be investigatory in nature are: making public statements to the media, *Buckley,* 509 U.S. at 277; giving legal advice to the police, *Burns,* 500 U.S. at 565; and preparing a declaration in support of a search warrant, *Fletcher v. Kalina,* 93 F.3d 653 (9th Cir. 1996).

## 2. Prosecutorial Functions

All of the actions taken by Defendant Wilson are entitled to absolute immunity because they are prosecutorial as that term has been defined by courts. Under this definition, any function that cannot be fairly classified as administrative or investigatory is prosecutorial and thus entitles the actor to absolute immunity. The scope of what constitutes a prosecutorial function is not governed by the legality or constitutionality of the action; many actions that could give rise to a cognizable legal claim are protected by absolute immunity when performed within the scope of prosecutorial duties. *Carter,* 34 F.3d at 261. In *Carter*, the Fourth Circuit held that the act of withholding materially exculpatory evidence was entitled to prosecutorial immunity. *Id.* at 263. The Court, citing *Imbler,* noted that withholding evidence both before and during a trial can fairly be classified as prosecutorial because: "preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing and evaluating of evidence." *Id.,* citing *Imbler,* 424 U.S. at 431.

In addition to the withholding of materially exculpatory evidence, the Fourth Circuit has also held that the decision of "whether and when to prosecute" is entirely within the province of the prosecutor. *Lyles v. Sparks* 79 F.3d 372, 377 (4th Cir. 1996), citing *Imbler*, 424 U.S. at 431. *Lyles* involved allegations of wrongful prosecution against an Assistant United States Attorney and members of the United States Postal Service for their actions in initiating and maintaining

10

criminal charges against a merchant accused of defrauding contact lens suppliers. The Plaintiffs alleged that their indictments in the case were secured through subornation of perjury and that various other false statements were made during judicial proceedings. *Id.* at 375. Nonetheless, The *Lyles* Court recognized that the issue of when a prosecutor functions as an administrator rather than an officer of the court can be a difficult determination, but "absolute immunity protects prosecutors' decisions 'whether and when to prosecute.'" *Id. at 377.*

Other courts dealing with the issue have expanded the scope of absolute immunity to cover other illegal actions taken by judicial officers in the course of performing their judicial duties. The result is a very broad range of conduct which is considered to be prosecutorial and thus protected by absolute immunity. *See Brownlee v. Van Court*, 2007 U.S. Dist. LEXIS 78498 (E.D. Cal. 2007) (concealment of evidence); *Brandley v. Keeshan*, 64 F.3d 196 (5th Cir. 1995) (intimidation of witnesses and suppression of evidence); *Kennedy v. Grattan Twp.*, 2007 U.S. Dist. LEXIS 30980 (W.D. Mich. 2007) (allegations of conspiracy are "irrelevant as a motive" for purposes of absolute immunity).

###    E.    Specific Allegations Against Defendant Wilson

Under the facts of the present case, the causes of action against Defendant Wilson can be reduced to the following: (1) malicious prosecution in violation of 42 U.S.C. §1983; (2) concealment of evidence; (3) fabrication of false DNA evidence and false photographic arrays by conspiracy; (4) conspiracy in violation of 42 U.S.C. §1983; (5) obstruction of justice in violation of 42 U.S.C. §1985(2); (6) witness tampering in violation of 42 U.S.C. §1985(2); (7) conspiracy in violation of 42 U.S.C. §1985(3); (8) state law conspiracy and obstruction of justice; and (9) intentional infliction of emotional distress arising from the confluence of all of the above actions.

### 1. Malicious Prosecution

Applying Fourth Circuit precedent, the causes of action for malicious prosecution should be dismissed under *Lyles* which places the decision of "when and whether to prosecute" solely within the province of the prosecutor. *Lyles*, 79 F3d. at 377. Plaintiffs have accused Defendant Wilson of malicious prosecution based on the fact that there was "no probable cause for any of the criminal prosecutions of the Plaintiffs" and each prosecution was "terminated in Plaintiffs' favor." (Amended Compl ¶ 332-333, 488). In *Lyles*, however, this Circuit noted that indicting and prosecuting a Defendant, even if done maliciously or unlawfully, is an action that is completely within the scope of absolute prosecutorial immunity. *Id.* citing *Imbler*, 424 U.S. at 415-16. The allegation of malicious prosecution, therefore, goes directly to the heart of the decision "whether to prosecute" and is unquestionably a function that is "intimately related to the judicial process."

### 2. Concealment of Evidence

The cause of action for concealment of the DNA evidence in violation of 42 U.S.C. §1983 should be dismissed pursuant to the reasoning of this circuit in *Carter* which explicitly held that withholding materially exculpatory evidence is a prosecutorial act which is entitled to absolute immunity. *Carter*, 34 F.3d at 263. Furthermore, the alleged concealment and DNA conspiracy took place after the indictment of Plaintiffs' strategic advantage for presentation of evidence at trial. This is distinguishable from *Buckley* in that the initiation of the judicial process against the Plaintiff was not foreseeable and had not yet begun.

### 3. Fabrication of DNA Evidence and Coercion of Witnesses

With respect to the fabrication claim, Plaintiffs' complaint mentions two separate instances of fabrication involving Defendant Wilson: preparing and releasing the "false" DNA

reports and coercion of alibi witnesses. (Amended Compl. ¶ 352-353). Defendant Wilson's role in the alleged DNA conspiracy fits squarely within the reasoning of this circuit in *Carter* which allows absolute immunity for withholding evidence. Withholding exculpatory evidence is clearly within the prosecutor's role as an advocate as it strengthens the case relative to the position of the other side.

This situation is distinguishable from *Buckley* where the prosecutors were trying to fabricate evidence in order to win an indictment against a suspect. Here, the alleged "fabrication" took place on April 21, 2006, when Defendant Nifong met with Defendant Brian Meehan and other Defendants in an effort to produce a misleading DNA report. (Amended Compl. ¶ 225-226). Plaintiffs Seligmann and Finnerty were indicted four days earlier, on April 17, 2006. (Amended Compl. ¶ 223). Any fabrication or concealment of DNA evidence was geared towards preparing the State's case for trial against the Plaintiffs and not as part of the preliminary investigation of a crime. The fact that the Defendants might have known that such evidence should have been disclosed as exculpatory is irrelevant. As stated by the Seventh Circuit in *Auriemma v. Montgomery*, [it is] "now well-settled rule that a prosecutor cannot be held personally liable for the knowing suppression of exculpatory information." 860 F.2d 270 (7th Cir. 1988).

With respect to the claim of fabrication of evidence based on coercive witness interviews, all of the relevant actions involving Defendant Wilson also took place after indictment and in preparation for the pending criminal trial. The alleged intimidation involved Defendant Wilson interviewing and evaluating the testimony of important potential witnesses, including a December, 2006 interview with Mangum after indictment of all three players, and an April 24,

2006 interaction with Plaintiff Seligmann's alibi witness, Moezeldin Elmostafa, which occurred after the indictment of Plaintiff Seligmann. (Amended Comp. ¶ 247, 308).

In any event, interviewing, evaluating or otherwise attempting to discredit potential witnesses prior to trial is an activity that is at the heart of the adversarial system and fits squarely within the judicial functions of a prosecutor. *See Burns,* 500 U.S. at 492. In fact, Plaintiffs' complaint notes that the purpose of this "fabrication" was to "obtain accounts to be used in the criminal proceedings." (Amended Compl. ¶ 352). As such, this portion of the allegation against Defendant Wilson for fabrication of evidence based on intimidation of witnesses should be dismissed.

### 4. Witness Intimidation

The decision in *Brandley* affords absolute immunity to attempts by prosecutors to intimidate or tamper with witnesses. According to Plaintiffs' complaint, Defendant Wilson tampered with or otherwise intimidated three separate witnesses: Sergeant John Shelton, Moezeldin Elmostafa, and Crystal Mangum. (Amended Compl. ¶ 247, 264, 310). Defendant Wilson's actions with respect to these three witnesses were taken based on the contents of each individual's projected testimony in court proceedings. The alleged actions were done after indictment of the Plaintiffs and were not taken in the preliminary investigation of a crime as in *Buckley.* Even though Defendant Wilson's alleged actions might have lead to a deprivation of a constitutional right or are otherwise illegal, absolute immunity still applies where the conduct is done, as here, in preparation for a criminal trial. *Carter,* 34 F.3d at 261.

### 5. Conspiracy and Intentional Infliction of Emotional Distress

Under the reasoning in *Kennedy,* the fact that there might have been a conspiracy to engage in these actions is irrelevant because the motives of Defendant Wilson do not provide the

standard for determining whether he is entitled to immunity for his actions. *Kennedy* at 14. The proper inquiry is to look to the nature of the underlying action and not necessarily to the motives of the actors. *See e.g., Burns,* 500 U.S. at 506. Since the actions of Defendant Wilson are entitled to absolute immunity because they were done in preparation for trial, it is of no consequence that there might have been a conspiracy to engage in the actions. The nature of the action protected by absolute immunity does not become any more or less protected simply because it is undertaken as part of an alleged conspiracy.

The claim for intentional infliction of emotional distress against Defendant Wilson individually is necessarily dependent on there being a cause of action on the other charges and must also be dismissed. Plaintiffs' complaint accuses Defendant Wilson, acting individually and in concert with others, of intimidating witnesses and manipulating witness identification procedures in an effort to perpetrate criminal proceedings against the Plaintiffs. (Amended Compl. ¶ 509). These alleged actions of Defendant Wilson were performed as part of his official duties in his role as an assistant acting at the direction and supervision of a prosecutor. For compelling policy reasons, there can be no tort action against a public official, in an individual capacity, whose conduct falls within the accepted boundaries for absolute immunity. *Barr v. Matteo,* 360 U.S. 564, 79 S. Ct. 1335 (1959); *See also, Andrejko v. Sanders,* 638 F. Supp. 449 (W.D. Pa. 1986). The cause of action for intentional infliction of emotional distress against Defendant Wilson individually must therefore be dismissed because all of the actions giving rise to a potential claim for intentional infliction of emotional distress are prosecutorial in nature and protected by the doctrine of absolute immunity.

### 6. Claims under 42 U.S.C. §1985(2) and 1985(3) Should be Dismissed for Failure to State a Claim Founded on Racial or Class-Based Animus

In their complaint, Plaintiffs have alleged three separate causes of action against

Defendant Wilson for violations of 42 U.S.C. §1985 (2). The actions are: (1) conspiracy in

violation of 42 U.S.C. §1985(3); (2) conspiracy pursuant to 42 U.S.C. §1985(2) for obstruction

of justice; and (3) conspiracy pursuant to 42 U.S.C. §1985(2) for witness tampering. Under

established federal law, clause three and the relevant portion of part two of clause two of 42

U.S.C. §1985 require that alleged violators take the actions with respect to some racial or class-

based animus in order to make out an actionable legal claim. (Amended Compl. ¶ 445-467).

### a. 42 U.S.C. §1985(3)

The Fourth Circuit has considered whether 42 U.S.C. §1985(3) requires that a Plaintiff

allege some racial or class-based animus as an underlying motive for the conduct of a Defendant

and has answered affirmatively. In *Hughes v. Ranger Fuel Corp., Div. of Pittston Co,* 467 F.2d 6

(4th Cir. 1972), the Court explicitly held that clause three of §1985 required an allegation of a

racial or class-based discriminatory behavior in order to bring a cause of action. *Hughes*

involved a suit by a group of whistleblowers who attempted to report violations committed by

the Defendant coal company in discharging unauthorized materials into a nearby stream. The

Plaintiffs' attempts to report this activity were thwarted by the Defendant coal company, and the

Plaintiffs subsequently brought suit for violations of civil rights based on 42 U.S.C.§1985(3).

The court stated:

> Accordingly, it is an essential element of any action under the
> statute as construed in *Griffin,* that there be in the case "the kind
> of invidiously discriminatory motivation stressed by the sponsors
> of the limiting amendment. This requires that, *there must be some
> racial, or perhaps otherwise class-based, invidiously discriminatory
> animus behind the conspirators' action.* (emphasis added) *Id.* at 10.

### b. 42 U.S.C. §1985(2)

42 U.S.C. §1985(2) is a two-part clause with an essential distinction between clauses which is relevant to stating a claim under the statute. The first part of 42 U.S.C. §1985(2) proscribes witness intimidation at the federal court level. Part two of 42 U.S.C. §1985(2) deals with allegations of obstruction of justice or conspiracy which take place at the state level. Plaintiffs' complaint states a cause of action based on part two of the statute because it alleges that Defendants took actions to deprive Plaintiffs of their rights under the Fourth and Fourteenth amendments based on the pending criminal trial in the state courts of North Carolina. (Amended Compl. ¶ 448-450, 455).

In *Kush v. Rutledge*, 460 U.S. 719 (U.S. 1983), the Supreme Court affirmed a lower court judgment which held that part two of 42 U.S.C.§1985(2) required that a Plaintiff make an allegation of race or class-based animus in order to sustain a cause of action against a Defendant based on proceedings in state courts. *Kush,* 460 U.S. at 722. In contrast, the Court held that a claim under part one of clause two did not require a claim of racial or class-based animus. However, it is important to note that part one of clause two applies only to claims made by Plaintiffs based on action taken at the federal court level. *Id.* at 1487.

*Merrigan v. Affiliated Bankshares of Colorado, Inc.*, 775 F. Supp. 1408 (D. Colo. 1991) explicitly held that, in order to state a cause of action under clause two based on conspiracy or obstruction of justice which has taken place at the state level, the Plaintiff must allege an action motivated by racial or class-based animus. *Id.* at 1411. Other courts dealing with this issue have held that an allegation of race or class-based animus is an essential element to a claim under the second part of 42 U.S.C. §1985(2). *Daigle v. Gulf State Utilities Co.*, 794 F.2d 974, 979 (5th Cir.

1986); *Harrison v. Springdale Water & Sewer Com'n.*, 780 F.2d 1422, 1429 (8th Cir. 1986);

*Phelps v. Wichita Eagle Bacon*, 886 F.2d 1262, 1269 (10th Cir. 1989).

> **c.    Plaintiffs Allege No Racial or Class-Based Invidious Discrimination**

Applying this law to the present case, Plaintiffs' claims based on Defendant Wilson's

alleged violations of clauses two and three of 42 U.S.C. §1985 must be dismissed. Plaintiffs'

complaint entirely fails to allege any racial or class-based animus on the part of Defendant

Wilson as motivation for engaging in any of the purported actions. The only reference to an

alleged potential racial intent in the complaint states: "During the March 29 Meetings, upon

information and belief, the Supervisory Defendants ordered Himan and Gottlieb to expedite the

identifications and arrests of white Duke lacrosse players...in order to satisfy a Durham

Community..."  (Amended Compl. ¶ 412.)  There is no reference to Wilson's motivation for

acting with racial or class-based animus or what actions that he took with any racial or class-

based animus.  This case clearly involves conduct taken at the state court level and thus a claim

of racial or class-based animus is required to sustain a claim based on part two of 42 U.S.C.

§1985(2).  42 U.S.C. §1985(3) unequivocally requires a claim based on racial or class-based

animus.  As a result, there is no cognizable legal claim made by Plaintiffs' pursuant to alleged

violations of 42 U.S.C. §1985.

> **7.    Plaintiffs' Claims of Conspiracy Against Defendant Wilson Must Be Dismissed for Failure to Allege Conspiracy**

> **a.  Conspiracy under 42 U.S.C. §1985**

As already noted, in order to bring an action under 42 U.S.C. §1985, a Plaintiff must

allege the existence of discrimination founded on race or class-based animus.  In *Hoffman v.*

*Baltimore*, 379 F. Supp. 2d 778, 796 (D. Md. 2005), the court stated that one element of a

conspiracy charge pursuant to 42 U.S.C. §1985(2) and (3) is that the conspiracy must be carried out by "two or more persons who are motivated by a specific class-based, invidiously discriminatory animus." As stated above, the Plaintiffs have completely failed to allege the requisite race or class-based animus in their complaint on the part of Wilson. As a result, the allegations of conspiracy for obstruction of justice, witness tampering, and general conspiracy pursuant to §1985 must be dismissed.

### b. Other Claims of Conspiracy

In addition to the conspiracy causes of action under §1985, Plaintiffs also allege in their second, third, seventh, thirteenth, and fourteenth causes of action that Defendant Wilson and others "acted in concert" to fabricate and conceal DNA evidence by developing a "limited reporting protocol" and to manufacture "a false and misleading DNA report." (Amended Compl. ¶ 341, 352-353, 439-440, 489-492, 498-503). This "DNA conspiracy" is described in detail in Plaintiffs' complaint and lays the foundation for a conspiracy cause of action pursuant to 42 U.S.C. §1983, §1985 and common law. (Amended Compl. ¶ 198-242, 275-315). The law in this area is well-settled that allegations of conspiracy cannot be merely conclusory in nature. *Sales v. Murray,* 862 F. Supp.2d 1511, 1517 (W.D. Va. 1994); *Ruttenberg v. Jones* 464 F. Supp. 2d 536, 551 (E.D. Va. 2006); *Scinto v. Preston* 170 Fed. Appx. 834, 836 (4th Cir. 2006).

Plaintiffs' allegations with respect to Defendant Wilson's role in the alleged DNA conspiracy to fabricate and conceal evidence are nothing more than conclusory. The alleged DNA conspiracy and cover-up began in April, 2006 with a meeting between Defendants Nifong, Meehan, Himan, Gottlieb, and Clark. (Amended Compl. ¶ 225-226). Defendant Wilson is not mentioned as a participant in this meeting. Another meeting was held on May 12, 2006 between

Defendants Meehan, Clark and Nifong. (Amended Compl. ¶ 229). Again, there is no allegation of Defendant Wilson's involvement in the alleged DNA conspiracy or attendance at the meeting.

In fact, in the section of Plaintiffs' complaint describing the substance of the entire conspiracy, Defendant Wilson is mentioned only once. (Amended Compl. ¶ 310-312). Defendant Wilson's purported "involvement" is limited to the December, 2006, interview with Mangum in which he allegedly, upon the order of Defendant Nifong, attempted to coach Mangum into changing her testimony to fit the relevant DNA evidence obtained by the Defendants as part of the conspiracy. (Amended Compl. ¶ 310-312). The involvement of Defendant Wilson is further weakened by the fact that the interview of Mangum took place after the alleged conspiracy had been uncovered in a court hearing following a confession from Defendant Meehan. (Amended Compl. ¶ 308.

Defendant Wilson is never mentioned as one of the individuals who engaged in meetings, which were allegedly designed to conceal and withhold exculpatory evidence and develop the "limited reporting formula." (Amended Compl. ¶ 198-242). These secretive meetings were essential to the development and implementation of the alleged DNA conspiracy among the Defendants. There is nothing else in the complaint which indicates that Defendant Wilson was ever aware of these meetings or otherwise actively participated in the alleged conspiracy to conceal or withhold exculpatory DNA evidence. The allegations against Defendant Wilson arising from the DNA conspiracy are conclusory and must therefore be dismissed for failure to state a cause of action.

## V.  CONCLUSION

All causes of action against Defendant Wilson must be dismissed because they are either insufficiently pled, barred by the doctrine of absolute immunity, or both.   Accordingly, Defendant Wilson respectfully moves this Court to dismiss all claims with prejudice.

The _15th_ day of January, 2008.

Linwood Wilson
6910 Innesbrook Way
Bahama, North Carolina  27503-9700

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID F. EVANS, et al.,

Plaintiffs,

v.

CITY OF DURHAM, N.C., et al.,

Defendants.

Case No. 1:07CV739

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing Defendant Linwood

Wilson's Motion to Dismiss by depositing a copy of the same in an official depository of the US

Postal Service in a postage-paid envelope addressed to the following:

James B. Craven III
340 West Main Street
P.O. Box 1366
Durham, N.C. 27702

*Counsel for Michael B. Nifong*

Reginald B. Gillespie, Jr.
FAISON & GILLESPIE
5517 Durham-Chapel Hill Blvd., Ste. 2000
P.O. Box 51729
Durham, N.C. 27717-1729

*Counsel for Defendant City of Durham, N.C.*

Joel M. Craig
KENNON CRAVER BELO CRAIG & MCKEE, PLLC
4011 University Drive, Suite 300
P.O. Box 51579
Durham, N.C. 27717-1579

*Counsel for Defendant Benjamin Himan*

James B. Maxwell,
MAXWELL, FREEMAN & BOWMAN, P.A.
P.O. Box 52396
Durham, N.C. 27717-2396

*Counsel for Defendant David Addison*

Edwin M. Speas
POYNER & SPRUILL, LLP
3600 Glenwood Avenue
Raleigh, N.C. 27612

*Counsel for Defendant Mark Gottlieb*

Patricia P. Kerner
TROUTMAN SANDERS LLP
434 Fayetteville Street, Suite 1900
Raleigh, N.C. 27601

*Counsel for Defendants Steven Chalmers, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, and Lee Russ*

Robert J. King III
Kearns Davis
BROOKS, PIERCE, McLENDON, HUMPHREY & LEONARD, LLP
2000 Renaissance Plaza
Post Office Box 26000
Greensboro, North Carolina 27420

*Counsel for Defendant DNA Security, Inc. & Richard Clark*

Robert A. Sar
Nicholas J. Sanservino, Jr.
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC 27612

*Counsel for Defendant DNA Security*

Roger E. Warin
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. N.W.
Washington, D.C. 20036

*Counsel for Defendant City of Durham, N.C.*

Paul R. Dickinson, Jr.
LEWIS & ROBERTS, PLLC
5960 Fairview Rd., Ste. 102
Charlotte, N.C. 28210-3103

James A. Roberts, III
LEWIS & ROBERTS, PLLC
1305 Navaho Drive, Suite 400
Raleigh, N.C. 27609-7482

*Counsel for Defendant Brian Meehan*

Barry C. Scheck
100 Fifth Avenue
New York, NY 10011

Richard D. Emery
EMERY CELLI BRINCKERHOFF & ABADY LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019

*Counsel for Plaintif Reade Seligmann*

Charles Davant IV (N.C. Bar No. 28489)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. (202) 434-5000

*Attorney for Plaintifs David F. Evans and
Collin Finnerty*

David S. Rudolf
RUDOLF WIDENHOUSE & FIALKO
312 West Franklin Street
Chapel Hill, NC 27516

*Counsel for Plaintiff Reade Seligmann*


THIS, the ___15th___ day of _Qanuary_____, 2008.

_Linwood Wilson_____
Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503-9700