IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF
NORTH CAROLINA

|  |  |  |
|---|---|---|
| DAVID F. EVANS, COLLIN FINNERTY, and READE SELIGMANN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:07-CV-00739 |
| THE CITY OF DURHAM, NORTH CAROLINA, MICHAEL B. NIFONG, MARK GOTTLIEB, BENJAMIN HIMAN, DAVID ADDISON, LINWOOD WILSON, PATRICK BAKER, STEVEN CHALMERS, BEVERLY COUNCIL, RONALD HODGE, JEFF LAMB, MICHAEL RIPBERGER, LEE RUSS, DNA SECURITY, INC, RICHARD CLARK, and BRIAN MEEHAN, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

_____

**BRIEF OF DEFENDANTS BAKER, CHALMERS, COUNCIL,
HODGE, LAMB, RIPBERGER, and RUSS IN SUPPORT OF
THEIR MOTION TO DISMISS**
_____

## STATEMENT OF THE CASE

Plaintiffs filed this action on October 10, 2007, seeking damages and injunctive

relief pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and the common law of North Carolina,

arising out of their indictment on charges of rape, sexual assault, and kidnapping. On

December 11, 2007, Plaintiffs amended their Complaint. This matter is before the Court

on the Motion to Dismiss of Defendants Baker, Chalmers, Hodge, Russ, Council, Lamb,

and Ripberger (collectively designated in the Amended Complaint as "Supervisory

1

Defendants," and hereinafter referred to simply as "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

Plaintiffs' Amended Complaint contains 328 paragraphs of factual allegations, followed by 22 causes of actions, many of which do not relate to Defendants. Although Defendants strongly disagree with Plaintiffs' characterization of the events at issue, and particularly of their involvement in them, Defendants understand that for the purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs' allegations must be taken as true. The relevant allegations of the Amended Complaint are set forth below.

On March 14, 2006, Plaintiffs, along with other Duke lacrosse players, attended a party for the team in a house located at 610 N. Buchanan St. (Amend. Compl. ¶¶ 37-38.) Two "exotic dancers" were hired to entertain at the party. (*Id.*) In the early morning hours that followed, Crystal Mangum, one of the performers, alleged she had been raped and sexually assaulted at the party. (*Id.* ¶ 48.) This allegation triggered an investigation by the Durham Police Department ("DPD"). (*Id.* ¶¶ 80-81.)

At the time of this investigation, Patrick Baker was the City Manager for the City of Durham. (Amend. Compl. ¶ 19.) Steven Chalmers was the Chief of Police for the DPD. (*Id.* ¶ 20.) Ronald Hodge was the Deputy Chief of Police. (*Id.* ¶ 21.) Lee Russ was Executive Officer to the Chief of Police. (*Id.* ¶ 22.) Beverly Council was the Commander of the Uniform Patrol Bureau, (*id.* ¶ 23), and Jeff Lamb was the Commander of the District Two Uniform Patrol. (*Id.* ¶ 24.) Michael Ripberger was a lieutenant with

the DPD. (*Id.* ¶ 25.) Plaintiffs do not allege who reported to whom, or how the chain of command operates within the DPD. Plaintiffs also do not allege Defendants directly participated in any gathering or evaluation of evidence during the investigation. Rather, Plaintiffs mass Defendants together, and repeatedly and summarily allege "upon information and belief," that as a group, Defendants were aware of exculpatory evidence that they ignored. (*See, e.g., id.* ¶¶ 54, 68, 79, 90.)

During the investigation Mark Gottlieb and Benjamin Himan, investigators for the DPD, gave Michael Nifong, the district attorney for North Carolina's Fourteenth Prosecutorial District, a recitation of all their evidence, both exculpatory and inculpatory. (Amend. Compl. ¶¶ 136-38.) The investigation ultimately focused on Plaintiffs after Mangum identified them as her attackers on April 4, 2006. (*Id.* ¶¶ 188, 191-193.)

Even though the Amended Complaint suggests that all involved should have seen the innocence of the Duke lacrosse players from the beginning, (*See, e.g.,* Amend. Compl. ¶ 2, 49-50), and also should have discounted the allegations of this exotic dancer, (*id.* ¶ 2), there are few allegations of identifiable personal involvement by any of these Defendants. Plaintiffs allege that on March 24, 2006, Lamb told Gottlieb and Himan that they should take direction from Nifong regarding the investigation, in addition to the usual chain of command, but that they should report their progress to senior staff. (*Id.* ¶ 133.) During the intense media coverage of the investigation into Mangum's allegations, Plaintiffs allege that Baker and Chalmers, among others, pressured those working on the investigation to hasten its progress. (*Id.* ¶ 179.) Plaintiffs further allege that Gottlieb and

Himan briefed Lamb and Ripberger about an identification procedure, designed by Nifong, (*id.* ¶ 181), and "upon information and belief," they approved it. (*Id.* ¶¶ 182, 183.) Plaintiffs attribute a single remark to Hodge, made while in attendance at a public forum at North Carolina Central University; they claim Hodge was asked by a reporter if the police had a strong case against Duke lacrosse players, and he said "I don't think we would be here if it wasn't." (*Id.* ¶ 160(h).) Additionally, Plaintiffs allege that Lamb and others attempted to intimidate an officer who had reported to his superiors that Mangum had recanted her allegations of rape while at Duke Medical Center. (*Id.* ¶¶ 56.) Council and Russ are not referenced at all.

In contrast, Plaintiffs complain that Nifong led the investigation and was intimately familiar with the evidence. (*See, e.g.*, Amend. Compl. ¶¶ 138, 170-71, 180-81.) Nifong sought indictments, which he obtained from the grand jury on April 17 and May 15, 2006. (*Id.* ¶¶ 212-13, 238.) After Nifong got his indictments against Plaintiffs, the State Bar pressed charges against him. (*Id.* ¶¶ 316, 326-27.) Under this scrutiny, Nifong gave his case to the Attorney General. (*Id.* ¶ 317.) The Attorney General reviewed the case against Plaintiffs and dismissed the charges. (*Id.* ¶¶ 318-19.) In fact, in a public national conference, the Attorney General proclaimed Plaintiffs innocence. (*Id.* ¶¶ 320, 324.) Plaintiffs, therefore, did not stand trial. (*Id.* ¶ 319.) Nifong did. (*Id.* ¶¶ 326-28.) Nifong was found guilty of criminal contempt, and was disbarred by The State Bar in a well publicized hearing. (*Id.*)

## QUESTIONS PRESENTED

1.      Whether the official capacity claims should be dismissed as redundant.

2.      Whether the claims against Council and Russ should be dismissed because no factual allegations are asserted against them.

3.      Whether Plaintiffs have alleged a violation of a constitutional right provided under the Fourth and Fourteenth Amendments.

4.      Whether Defendants are entitled to qualified immunity from claims of constitutional and federal violations.

5.      Whether Plaintiffs have alleged a conspiracy under federal law.

6.      Whether Defendants are entitled to public officer immunity from the North Carolina common law claims for negligence.

7.      Whether Plaintiffs' North Carolina common law claims from Defendant Hodge are barred by the statute of limitations.

8.      Whether Plaintiffs have to allege the essential elements of their North Carolina common law claims.

## ARGUMENT

## I.      APPLICABLE STANDARD

A review pursuant to Rule 12(b)(6) is designed to uniformly weed out the conceivable claims against a defendant from those that are "*plausible*" on their face.  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1973-74 (2007); *Iqbal v. Hasty*, 490 F.3d 143, 157-59 (2d Cir. 2007).  After all, a plaintiff must be able to factually define the contours of his grounds for entitlement to relief before he can require defendants to justify their actions to the courts that must then adjudicate the propriety of those actions.  *See Twombly*, 127 S. Ct. at 1964-65.

In *Bell Atlantic v. Twombly*, the Supreme Court reviewed a complaint alleging violations of section one of the Sherman Act. The Court held that the plaintiffs' allegations of an agreement in violation of that Act were conclusory or just conceivable, not plausible, and thereby warranted dismissal. *Id.* at 1974 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). In so doing, the Court identified that the often misapplied language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)—that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"—was "not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S. Ct. at 1969.

> On such a focused and literal reading of *Conley's* "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery. . . . Seeing this, a good many judges and commentators have balked at taking the literal terms of the *Conley* passage as a pleading standard. . . . The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.

*Id.* at 1968-69 (internal citations omitted).

Thus, while alleging "specific facts *beyond* those necessary to state [a] claim and the grounds showing entitlement to relief" is not necessary, courts must decide whether a plaintiff has met their obligation of demonstrating the existence of a plausible claim. *See*

*id*. at 1973-74 (emphasis added) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508

(2002)); *see also Iqbal*, 490 F.3d at 157-58 (discussing *Twombly* and noting that "the

[Supreme] Court is not requiring a universal standard of heightened fact pleading, but is

instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a

claim with some factual allegations in those contexts where such amplification is needed

to render the claim plausible.").  Meeting this minimum obligation to provide the factual

grounds for relief "requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do.  Factual allegations must be enough to

raise a right to relief above the speculative level, on the assumption that all the allegations

in the complaint are true . . . ." *Twombly*, 127 S. Ct. at 1965; *LULAC v. Bredson*, 500

F.3d 523, 527 (6th Cir. 2007) ("The factual allegations, assumed to be true, must do more

than create speculation of suspicion of a legally cognizable cause of action; they must

show entitlement to relief.").

     Indeed, the Fourth Circuit has always clearly understood the obligation on the

plaintiff "to allege facts sufficient to state all the elements of [their] claim." *See Bass v.*

*E.I. DuPont De Nemours & Comp.*, 324 F.3d 761, 765 (2003).  In *Bass*, the Fourth

Circuit was called to review the district court's dismissal of a claim for hostile work

environment.  In affirming the district court's dismissal, the Fourth Circuit stated that

factual allegations supporting the legal elements or grounds of a claim should bear the

brunt of the Court's attention on a motion to dismiss, not the plaintiff's legal conclusions:

> While a plaintiff is not charged with pleading facts sufficient to prove her
> case, as an evidentiary matter, in her complaint, a plaintiff is required to

allege facts that support a claim for relief. The words "hostile work environment" are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage.

*Id.* at 765; *see also Gladden v. Winston Salem State Univ.*, 495 F. Supp. 2d 517, 520-21

(M.D.N.C. 2007) ("The presence of a few conclusory legal terms does not insulate a

complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint

cannot support the legal conclusion."). Applying these rules of interpretation to

Plaintiffs' complaint yields the unmistakable conclusion that Plaintiffs have not met their

obligation to state the plausibility of each claim they allege against Defendants.

## II.     OFFICIAL CAPACITY CLAIMS ARE REDUNDANT
(Fifth Cause of Action; Official Capacity Claims in Eighth, Ninth, Tenth, Eleventh, Sixteenth, Seventeenth, Eighteenth, Nineteenth Causes of Action )

Plaintiffs' claims against Defendants in their official capacity are essentially

claims against the City of Durham, the governmental entity that employees them.

*Kentucky v. Graham*, 473 U.S. 159, 165-66, 168 n.14 (1985) ("[A]n official-capacity suit

is, in all respects other than name, to be treated as a suit against the entity. It is not a suit

against the official personally, for the real party in interest is the entity." (internal

citations and quotations omitted)). Since the City of Durham is a named defendant, those

claims against any of Defendants in their official capacities that are also asserted against

the City should be dismissed. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir.

2004) (affirming a district court's determination to dismiss official capacity claims in a

section 1983 action against an official when the governmental entity was a named

defendant); *W.E.T. v. Mitchell*, No. 1:06-CV-487, 2007 U.S. Dist. LEXIS 68376, *30

(M.D.N.C. Sept. 14, 2007) ("Claims against the official in his or her official capacity which are duplicative of claims against a government entity are subject to dismissal."); *Sheaffer v. County of Chatham*, [337 F. Supp. 2d 709, 721](#) (M.D.N.C. 2004) ("Because official capacity suits are essentially suits against the entity itself, they may be dismissed, where, as here, the government entity is sued.").

Application of this rule means that Plaintiffs' fifth cause of action, their "*Monell* claim," should be dismissed against Defendants, because it is against both the City of Durham and Defendants in their official capacities.[1] Plaintiffs various federal conspiracy claims—the eighth, ninth, tenth, and eleventh causes of action—are all made against the City of Durham and include official-capacity claims against Defendants. Therefore, each of these claims against Baker, Chalmers, Hodge, Russ, Council, Lamb, and Ripberger in their official capacities should be dismissed as well.

This same principle equally applies to Plaintiffs' state law claims. The North Carolina Supreme Court in *Moore v. City of Creedmoor*, [345 N.C. 356, 367](#), 481 S.E.2d 14, 21-22 (1997), adopted the United States Supreme Court's holding in *Graham*, "that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," and held that "where the governmental entity may be held liable for damages resulting from its official policy, a suit naming public

---

[1] To the extent, if any, that the Court deems any response by these Defendants to claims asserted against them in their official capacities, they hereby incorporate the analysis of the City of Durham in its Brief in support of its Motion to Dismiss Plaintiff's Amended Complaint.

officers in their official capacity is redundant." Therefore, Plaintiffs' sixteenth, seventeenth, eighteenth, and nineteenth causes of action against Baker, Chalmers, Hodge, Russ, Council, Lamb, and Ripberger in their official capacities must be dismissed because the City of Durham has been named in those causes of action.

## III.    NO ALLEGATIONS AGAINST COUNCIL AND RUSS

In order to state a claim for relief against an official in his or her individual capacity, Plaintiffs must allege that the official was personally involved in the alleged constitutional violation. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). While the concept of personal involvement will be more fully developed later, *see* section IV(C)(2) *infra*, it is axiomatic that some allegation be *personally* attributable to the official beyond their inclusion in the caption and jurisdictional averment. *See Tolley v. Kivett*, No. 1:01-CV-410, 2002 U.S. Dist. LEXIS 24368 (M.D.N.C. July 1, 2002). Plaintiffs have sued Beverly Council and Lee Russ, but failed to make any allegations of personal involvement. Indeed, there is no allegation specifically referencing either of these individuals beyond statements describing their capacity with the Durham Police Department and their North Carolina citizenship. (*See* Amend. Compl. ¶¶ 22-23, 26.) On its face, this type of *im*personal pleading is woefully insufficient to meet Plaintiffs' obligation to factually support the elements of their claims.

In *Tolley*, 2002 U.S. Dist. LEXIS 24368 at *8, this Court dismissed claims against a chief of police in a section 1983 action, "[b]ecause the complaint only name[ed] Defendant Gainey in paragraph 3 and the caption, and contain[ed] no allegations

indicating how the defendant violated the law or injured Tolley[.]" The Court noted "[f]ederal courts have held that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Id.* at *7; *see also Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999); *Greene v. Wright*, 389 F. Supp. 2d 416, 429 (D. Conn. 2005).

Under the standard established by *Twombly*, simply including Council and Russ in a group that Plaintiffs generally contend should have stopped the investigation, without any allegations of any specific act, conduct, or knowledge of either of them, is not enough to allege that Plaintiffs have a plausible claim, grounded in fact, against them. Therefore, any claims against Council and Russ must be dismissed for failure to state a claim upon which relief can be granted.

**IV.  42 U.S.C. § 1983**
(Fourth, Sixth, Seventh Causes of Action)

Pursuant to section 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "Thus, to state a claim under 42 U.S.C. § 1983, a Plaintiff must allege facts that show (1) a deprivation of a right, privilege, or immunity secured by the Constitution or federal laws, and (2) the deprivation was caused by a person acting under color of state law." *DeBerry v. Runyon*, No. 1:97-CV-777, 1998 U.S. Dist. LEXIS

12532, *8 (M.D.N.C. Apr. 20, 1998). While Defendants, as police officers and city officials, do not dispute that Plaintiffs have alleged that they acted under the color of state law, Plaintiffs have failed to adequately state a plausible claim that Defendants' actions led to a violation of constitutional rights.

A.  FOURTH AND FOURTEENTH AMENDMENT

"Section 1983 imposes liability for violations of rights protected by the Constitution, *not* for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Looking to Plaintiffs' Amended Complaint, it is apparent from the "Nature of the Action" through the factual allegations that they essentially complain of a violation of a right to be free of criminal investigation; in over 32 places Plaintiffs complain that Defendants' "rush[ed] to charge the three innocent Duke lacrosse players," or some variation thereof, like rush to: "accuse," "charge and sustain," "assist Nifong and the Durham Police with securing charges." (*See* Amend Compl. ¶¶ 2, 49, 50, 54, 55, 67, 68, 78, 79, 89, 90, 99, 100, 103, 104, 106, 107, 118, 119, 123, 124, 195, 196, 211, 221, 227, 228, 235, 237, 254, 265, and 320.) Plaintiffs seek constitutional protection for a right to be free from a "malicious investigation," within the contours of the Fourth and Fourteenth Amendment. Neither Amendment offers that specific constitutional protection.

In *Albright v. Oliver*, 510 U.S. 266, 268 (1994), the Supreme Court reviewed markedly similar circumstances and declined to recognize "a substantive right under the

Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause." There, "upon learning of [his indictment, the plaintiff] surrendered and was released on bail. The prosecution was later dismissed on the ground that the charge did not state an offense under Illinois law." *Id.* In a plurality opinion, the Court agreed that plaintiff's constitutional claim, if any, must be adjudged pursuant to the Fourth Amendment, which explicitly pertains to "matter[s] of pretrial deprivations of liberty," *id.* at 274-75, and not the substantive due process clause of the Fourteenth Amendment. *Id.* at 273. The Fourth Circuit has followed suit as well, looking only to the Fourth Amendment for matters of pretrial deprivations of liberty. *See Taylor v. Waters*, 81 F.3d 429, 436 (4th Cir. 1996) (determining that *Albright* "held that no substantive due process right against prosecution on less than probable cause exists under the Fourteenth Amendment.").

Thus, if the facts alleged here give rise to an actionable constitutional violation for malicious prosecution, *see Osborne v. Rose*, Nos. 97-1259 and 97-1264, 1998 U.S. App. LEXIS 850, *14-15 (4th Cir. Jan. 20, 1998) ("in the wake of *Albright*, substantial doubt existed over whether to give this ordinary state tort constitutional dignity"), it is pursuant only to the Fourth Amendment[2]. The interplay between malicious prosecution and the Fourth Amendment—where Plaintiffs attempt to state a claim for violation of their

---

[2] "This amendment requires that arrests be made based upon probable cause and that a neutral and detached judicial officer evaluate probable cause as a condition of *significant* pretrial restraint of liberty." *Taylor v. Waters*, 81 F.3d 429, 436 (4th Cir. 1996) (emphasis added).

constitutional rights—is, however, an unsettled area of section 1983 jurisprudence.  *See*

*Albright*, 510 U.S. at 270, n.4 ("embarrassing diversity of judicial opinion" regarding

malicious prosecution and section 1983).

Of course, "[t]here is no constitutional right to be free from official investigation."

*Hale v. Townley* 45 F.3d 914, 920 (5th Cir. 1995) (citing *U.S. v. Allibhai,* 939 F.2d 244,

249 (5th Cir. 1991) (dismissing a section 1983 claim arising out of an investigation on

qualified immunity grounds); *see also Culpepper v. Williams*, No. 1:06-CV-125, 2007

U.S. Dist. LEXIS 24581, at *9-10 (S.D. Miss. Mar. 30, 2007) (allegation of continued

investigation was not a Fourth Amendment violation).  By referring to known and

established constitutional rights that protect a criminal defendant's due process right to a

fair *trial*, Plaintiffs attempt to establish a cause of action under the Fourth Amendment

not yet recognized.   Allegations of suggestive lineups or a failure to provide exculpatory

evidence to the defense may trigger constitutional violations when a criminal defendant is

actually tried and convicted.  *See, e.g.*, *Stovall v. Denno*, 388 U.S. 293 (1967)

(introduction of suggestive lineup at trial violates Due Process rights of defendant),

*overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987).  But without a

trial, there can be no constitutional violation.  *See, e.g., Antonio v. Moore*, 174 Fed.

Appx. 131, 135 (4th Cir. 2006) (suggestive lineup claims actionable under § 1983 only

when conduct "impair[s] . . . defendant's core right—i.e., the right to a fair trial"); *Pace*

*v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) (because plaintiff "does not

allege that his trial was unfair," his claims regarding unduly suggestive lineups fail; there

is no "constitutional right to be free of suggestive lineups"); *Alexander v. City of South Bend*, [433 F.3d 550, 555](link) (7th Cir. 2006) ("The Constitution does not require that police lineups, photo arrays, and witness interviews meet a particular standard of quality."); *Burrell v. Virginia*, [395 F.3d 508, 513-14](link) (4th Cir. 2005) (even if officer's questioning would have violated Fifth Amendment standards, no constitutional violation occurred unless incriminating statements used at trial).  The Fourth Circuit, however, has limited a Fourth Amendment violation in this context to the propriety of the "seizure" alone:

> [Our precedent] makes clear that there is no such thing as a "§ 1983 malicious prosecution" claim.  What we termed a "malicious prosecution" claim . . . is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. . . .  It is not an independent cause of action.

*Lambert v. Williams*, [223 F.3d 257, 262](link) (4th Cir. 2000) (citation and footnote omitted).

As fully discussed below, Plaintiffs have failed to allege facts indicating that these Defendants engaged in conduct that resulted in a violation of their Fourth Amendment rights.   Further, as discussed in the City of Durham's brief in support of its motion to dismiss, and in section V(B) of this brief, Defendants are not liable for any potential Fourth Amendment violation, because Nifong's decision to seek indictments broke the causal chain.  *Rhodes v. Smithers*, [939 F. Supp. 1256, 1274](link) (D.W. Va. 1995), *aff'd per curiam*, No. 95-2837, [1996 U.S. App. LEXIS 18638](link) (4th Cir. July 29, 1996) (where evidence is presented "to an intermediary, such as a prosecutor, a grand jury, or a magistrate, the intermediary's independent decision to seek a warrant, issue a warrant, or

return an indictment breaks the causal chain and insulates the officer from a section 1983 claim.")

### 1. SUPERVISORY LIABILITY OF DEFENDANTS
(Sixth Cause of Action)

In their sixth cause of action, Plaintiffs attempt to impose individual liability on seven different employees of the City of Durham and Durham Police Department; however, not one of these Defendants is alleged to be the supervisor of any particular individual.  Rather, Plaintiffs put them all in a group that they choose to label as "Supervisory Defendants" (Amend. Compl. ¶ 26), and generally allege that each them "served" in a "supervisory capacity" or "supervisory role" for the Durham Police Department.  (*Id.* ¶¶ 19-25.)  Plaintiffs' conclusory descriptions of these Defendants and their roles in these events are an insufficient factual basis to impose individual liability pursuant to section 1983 on any one of these Defendants as a supervisor.

"The plaintiff, of course, assumes a heavy burden of proof in supervisory liability cases."  *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).  Even though "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates," *Slakan,* 737 F.2d at 372 (*quoting Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)), liability is *not* premised on respondeat superior. *Id.*  Instead, "liability will only lie where it is affirmatively shown that the official charged acted *personally* in the deprivation of the plaintiffs' rights."  *Vinnedge*, 550 F.2d at 928 (dismissing complaint against supervisor for failure to allege facts that supported personal involvement in the denial of medical care) (emphasis added) (internal citations

and quotations omitted). Personal involvement by a supervisor in the deprivation of a constitutional right, therefore, is properly alleged only when three elements are factually supported:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;

> (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and

> (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotations omitted).

Here, like their failure to pinpoint a violation of a specific Fourth Amendment right, Plaintiffs have failed at "pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." *Slakan*, 737 F.2d at 373. To the contrary, impermissibly seeking to impose liability on a respondeat superior theory, they have lumped a city manager, police chief, deputy chief, two commanders, an executive officer, and a lieutenant together, claiming that this group of "supervisory officials" are all individually and personally liable for alleged constitutional violations that they "knew or should have known." Plaintiffs' failure to allege facts showing personal knowledge of these individuals is fatal to their claims against each of them. *See Harris v. Virginia Beach*, 11 Fed. Appx. 212, 214-15 (2001) (affirming district's court's dismissal of supervisor liability claim against a city manager, former and current police chiefs, a captain, and a sergeant where plaintiffs complaint

failed to allege personal involvement of each of the individuals) (unpublished opinion); *Reaves v. Fair Bluff*, No. 7:03-CV-103, 2005 U.S. Dist. LEXIS 43084, *12 (E.D.N.C. May 12, 2005) (where plaintiff failed to make "any non-frivolous allegations of personal involvement against the individual defendants," and instead named a defendant "solely on the basis of respondeat superior," the action against the city manager, former and current police chiefs, and a sergeant must be dismissed). This type of *im*personal pleading is insufficient to plausibly state a claim for supervisory liability claim against any one Defendant in their individual capacity. *See Twombly*, 127 S. Ct. at 1974.

Deliberate indifference on the part of a supervisor may not be established "by pointing to a single incident or isolated incidents, . . . for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Slakan*, 737 F.2d at 373 (internal citations and quotations omitted). Nor may it be alleged absent facts that "support a finding of deliberate indifference"; bare assertions will not do. *See Mitchell*, 2007 U.S. Dist. LEXIS 68376, *33 (quotations and citations omitted). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. A claim of deliberate indifference implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice." *Id.* at *33-34 (internal citations and quotations omitted).

Here, Plaintiffs allege that as a group, Baker, Chalmers, Hodge, Council, Russ, Lamb, and Ripberger "knew or should have known" about "abuses" in the investigation,

and that their failure to take remedial action evidenced a "deliberate indifference" to Plaintiffs' constitutional rights.[3]  (Amend. Compl. ¶¶ 414, 415, 422, 433.)  However, there is no allegation as why the City Manager, or any one of these particular members of Durham Police Department would have been in a position to personally know of a pervasive risk of constitutional violations by these specific investigators.  *See Mitchell*, 2007 U.S. Dist. LEXIS 68376, *35 (supervisory liability claim fails without assertion that "the supervisor had actual knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff."); *Layman v. Alexander*, 294 F. Supp. 2d 784, 794 (W.D.N.C. 2003) (plaintiffs allegations, "in conclusory fashion, that these defendants failed adequately to supervise their subordinates" are insufficient when "there are no allegations suggesting that either Sheriff Alexander or Lieutenant Haynes had any direct knowledge" of violation).

The few allegations of specific knowledge or conduct of any of these Defendants individually fail to show deliberate indifference to risk of constitutional injury.  For example, although summarily attributed to all "Supervisory Defendants" as a group, Plaintiff's allege that Defendant Lamb instructed Gottlieb and Himan to take direction from Nifong, in addition to the usual DPD chain of command on March 24, 2006. (Amend. Compl. ¶ 133.)  This act is alleged to form a basis for this sixth claim for relief. (*Id.* ¶ 411.)  While Plaintiffs allege that "it was unprecedented for a district attorney to play such an active role so early in a police investigation," they have not, and indeed

---

[3] As discussed above, there are *no* factual allegations against either Council or Russ.

cannot, allege that a direction to work in conjunction with a prosecutor showed an indifference to a risk of constitutional injury. As fully discussed below, police officers are immune from liability for taking direction from a prosecutor. *See Rhodes*, [939 F. Supp at 1273]. Further, although Plaintiffs allege that Defendants knew that he was running for election, (Amend. Complaint, ¶ 132), there is simply no suggestion that Lamb, or anyone else, had any reason to believe that the involvement of Nifong, the District Attorney appointed to serve by the Governor, (*id.* ¶ 125), and with the broad Constitutional grant of authority and discretion to determine what cases to prosecute and what charges to bring against a particular defendant, *see, e.g*., *State v. Ward*, [354 N.C. 231, 243], 555 S.E.2d 251, 260 (2001), would pose a risk of unconstitutional injury.

Plaintiffs' allegations that Baker and Chalmers "pressured" Gottlieb and Himan to expedite the identification of the perpetrators, also fail to give rise to a claim for supervisory liability.[4] Plaintiffs allege that this pressure occurred during a meeting on March 29, 2006, (Amend. Compl. ¶179), before the "April Photo Array" of which they complain. Significantly, Plaintiffs allege that by that time, officers had already shown Mangum two photo arrays, which Plaintiffs apparently concede were in compliance with DPD policy, and that all of the "Supervisory Defendants" were aware of the use of that procedure. (*See id.* ¶¶ 93, 100, 185.) While Plaintiffs apparently expect that the Court will infer that these Defendants should have known that the officers would depart from

---

[4] This conduct is also later accredited to all "Supervisory Defendants" (Amend. Compl. ¶ 221), although there are no factual allegations to support its attribution to any specific person other than Baker or Chalmers.

department policy and the established procedure already used in the investigation, and decide to obtain identifications in a manner that would violate their rights, there are no facts alleged to support such an inference. *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (on a motion to dismiss pursuant to Rule 12(b)(6), the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). There is no allegation that either Baker or Chalmers directly told, or even suggested, to these officers that they should obtain the identification in any way that was noncompliant with Department policy, or that they had any personal involvement in conceiving the procedure used in the "April Photo Array."

Additionally, this procedure did not violate Plaintiffs' constitutional rights. Whereas Plaintiffs do enjoy a clearly established right to a fair trial, there is no such right concerning identifications outside of trial. *See Antonio*, 174 Fed. Appx. at 135 (suggestive lineup claims actionable under § 1983 only when conduct "impair[s] . . . defendant's core right—*i.e.*, the right to a fair trial"). Further, even if Plaintiffs could establish a constitutional violation arising out of the "April Photo Array," and causally relate it to either Baker or Chalmers, Defendants are protected by qualified immunity. Plaintiffs expressly allege that Prosecutor Nifong "designed" this identification process. (Amend. Compl. ¶ 181.) Thus, they are immune from any claim that could arise out of this procedure. *See Rhodes*, 939 F. Supp at 1273.

In addition to Plaintiffs' failure to allege which, if any, of these Defendants was Addison's supervisor, or had any knowledge of his alleged "pattern of publishing

statements expressing premature conclusions of guilt," (Amend. Compl. ¶ 428), Addison's statements do not pose a pervasive risk of constitutional injury.[5]  *See Paul v. Davis*, 424 U.S. at 712.  Plaintiffs' "interest in reputation is simply one of a number which *the State* may protect against injury by virtue of *its* tort law, . . . any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws." *Id.*

Having alleged no factual basis to support a claim that Baker, Chalmers, Hodge, Russ, Council, Lamb or Ripberger knew that his or her subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury, Plaintiffs' sixth cause of action should be dismissed.  Further, if Plaintiff has alleged facts showing any one of them was deliberately indifferent to the risk of a constitutional violation, the particular Defendant involved is entitled to qualified immunity—the right not having been clearly established at the time.

2.  **42 U.S.C. § 1983 CLAIMS AGAINST HODGE**
(Fourth Cause of Action)

In paragraph 160(h) of Plaintiffs' Amended Complaint, Plaintiffs allege that Hodge remarked, "I don't think we would be here if it wasn't," in response to a question by a MSNBC reporter, who was asking whether the Durham Police Department had a strong case against Duke lacrosse players.  (Amend. Compl. ¶ 160(h).)  When asked for

---

[5] *See* section IV(C)(1) *supra*.

his thoughts, Hodge was not a speaker at an event, but simply "*attending* the public forum hosted by North Carolina Central University." (*See id.* ¶¶ 147(o), 160(h).) Further, Hodge's remark was made before the investigation had centered on the three Plaintiffs. Nonetheless, Plaintiffs include Hodge's isolated incident of personal involvement among the numerous comments of Nifong and a few of Addison. In determining Hodge's individual liability, however, the relevant inquiry relates to his personal conduct alone.

Plaintiffs allege, in their fourth cause of action, that various statements made about the case, including Hodge's single remark "inflame[d] the Durham community and grand jury pool against Plaintiffs" and caused them to suffer financial and economic loss, "physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputations." (Amend. Compl. ¶¶ 366, 369, 370.) Plaintiffs attempt to wedge all these alleged harms under the auspices of the Fourth and Fourteenth Amendments. However, these alleged injuries are not cognizable claims for relief and should be dismissed.

Plaintiffs cannot create a liberty interest protected by the due process clause of the Constitution by relying on the Supreme Court's isolated, broad language in *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (U.S. 1971), which states that "where the State attaches 'a badge of infamy' to the citizen, due process comes into play." After all, the Court later held in *Paul v. Davis*, 424 U.S. 693 (1976), that *Constantineau* did not broaden any due process rights; or, in other words, mere defamation by a government

official does not give rise to an action under section 1983.  *Id.* at 697-701.  In *Davis*, the Supreme Court reviewed a section 1983 claim by a person whose picture was placed on a flyer naming him as a shoplifter.  The plaintiff had the shoplifting charges against him dismissed.  When his employer saw the flyer, it threatened to fire the plaintiff, but ultimately did not.  Plaintiff brought suit claiming the officers who published the flyer violated his due process rights.  *Id.* at 694-696.  The Court held otherwise.

The Court logically noted the difficulty that would result if "a person arrested by law enforcement officers who announce that they believe such person to be responsible for a particular crime in order to calm the fears of an aroused populace, presumably obtains a claim against such officers under § 1983."  *Id.* at 698.  The Court reasoned that although government may actionably "defame" someone by accusing that person of a crime, injury to reputation alone is not "either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."  *Id.* at 701.  Plaintiffs' "interest in reputation is simply one of a number which *the State* may protect against injury by virtue of *its* tort law, providing a forum for vindication of those interests by means of damages actions."  *Id.* at 712 (emphasis added).  "[A]ny harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws."  *Id.*

Thus, despite recognizing the potential consequences of disparaging one's name, the Court established a high constitutional threshold, one of stigmatizing effect plus some other governmental deprivation:

> While we have in a number of our prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause.

*Id.* at 701; *see also Mosrie v. Barry*, 718 F.2d 1151, 1158 (D.C. Cir. 1983) ("Thus, the Court held that defamation alone is not enough to give rise to a due process right; 'other governmental action' is required."). Plaintiffs here have not alleged any facts supporting this high "stigma plus" element established by the Court in *Davis* as necessary to support this claim.

Financial or economic harm "caused by government imposed stigma does not transform an interest in reputation into a liberty interest." *Mosrie*, 718 F.2d at 1158 ("Indeed, in explaining that harm to reputation is not a deprivation of liberty, the Court quoted Justice Reed from *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 95 L. Ed. 817, 71 S. Ct. 624 (1951): the defamation may be 'hurtful to [the plaintiffs'] prestige, reputation and *earning power*' but nonetheless does not deprive them of a fifth amendment liberty."). A plaintiff must do more than make allegations of damages related to the defamation before a constitutional deprivation has been stated. "Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But so long as such damage

flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law . . . ." *Siegert v. Gilley*, 500 U.S. 226, 234 (1991); *see also Mosrie*, 718 F.2d at 1158 ("Proof of damages caused by a defamation does not meet that requirement. . . .  [The Court] was also aware that actual monetary damages are often proved (because required) in defamation actions.").  The damages that Plaintiffs complain of—emotional trauma, loss of privacy, loss of education, and irreparable harm to their reputations—all flow from the alleged defamatory act of making the statement. *See, e.g., O'Malley v. Martin*, No. 94-11392, 1996 U.S. Dist. LEXIS 6373 at *12 (D. Mass. Feb. 29, 1996) (noting "no law to support [the plaintiff's] notion that he has a constitutionally protected privacy interest in 'being free from damaging and false accusations prior to an indictment being issued.'").  There is no harm that does not so flow from or is otherwise synonymous with ordinary defamation, and therefore, nothing pled breaches the appropriate constitutional threshold.

## B. DEFENDANTS ARE PROTECTED BY QUALIFIED IMMUNITY

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  It "provides ample protection

to all but the plainly incompetent or those who knowingly violate the law." *Malley v.*

*Briggs*, 475 U.S. 335, 341 (1986).

"In evaluating whether a government official is entitled to qualified immunity, a

court is required to determine, first, whether the facts alleged show that the official's

conduct violated a constitutional right." *Layman*, 294 F. Supp. 2d at 792-93 (citing

*Saucier v. Katz*, 533 U.S. at 201).

> The operation of this standard, however, depends substantially upon the
> level of generality at which the relevant 'legal rule' is to be identified. . . .
> It should not be surprising, therefore, that our cases establish that the right
> the official is alleged to have violated must have been 'clearly established'
> in a more particularized, and hence more relevant, sense: The contours of
> the right must be sufficiently clear that a reasonable official would
> understand that what he is doing violates that right. This is not to say that
> an official action is protected by qualified immunity unless the very action
> in question has previously been held unlawful, but it is to say that in the
> light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987) (internal citations and quotations

omitted).

A complaint, such as Plaintiffs', that fails to clearly identify the specific right

allegedly violated is "far from a model of clarity, rendering enigmatic an identification of

the specific constitutional right allegedly infringed by the challenged conduct," *Taylor*,

81 F.3d at 433 (complaint simply stated that "the facts alleged implicate rights protected

by the Fourth, Fifth, and Fourteenth Amendments" (internal quotations and citations

omitted)), and is subject to dismissal. *Osborne*, 1998 U.S. App. LEXIS 850 at *9

("[C]ivil liability under § 1983 may be imposed for deprivation of a constitutional right

if, but only if, in the light of pre-existing law the unlawfulness under the Constitution is

apparent.") (internal citations and quotations omitted).  If identifying the clearly established right arising out of the "most chilling episode of . . . misconduct in modern American history" escapes such experienced constitutional litigators, it must certainly vex the officers asked to walk that line every day.  *See Layman*, 294 F. Supp. 2d at 792-93 ("If the facts produced or alleged by the plaintiff do not establish the violation of a constitutional right, the inquiry ends.").

In fact, in what the Fourth Circuit stated was an "extensive and careful memorandum opinion," the Southern District of West Virginia reviewed similar accusations to those of Plaintiffs here and found the officers shielded by qualified immunity.  *See Rhodes*, 939 F. Supp. at 1273.  There, the Court found that the officers complied with the only known specific duty impressed upon them when they "disclose[d] exculpatory evidence to the prosecuting attorney for an independent assessment of whether there [was] probable cause to prosecute," as well as refrained from making "false or misleading reports to the prosecutor, omit[ing] material information from the reports, or otherwise interfere[ing] with the prosecutor's ability to exercise independent judgment."  *Id.* at 1273 (citing cases).[6]

---

[6] Although the Court's determination that the Fourth Circuit's right to be free of seizures without probable cause was modified by *Lambert*, the officer's duty to turn information over to the district attorney remained the same in 2006.  *See Walker v. Scott*, No. 7:05-CV-10, 2006 U.S. Dist. LEXIS 28559, *19 (W.D. Va. 2006) ("[I]f the investigating officer provided complete and accurate evidence to the prosecutor, who then made an independent assessment of probable cause and decided to seek an indictment, this intervening decision breaks the 'causal chain' and insulates the investigator against constitutional claims for improper seizure, investigation, or prosecution.").

Here, according to Plaintiffs' Amended Complaint, Nifong received a "detailed" briefing of both the exculpatory and inculpatory evidence known to the Durham Police Department on March 27, 2006.  (*See* Amend. Compl. ¶ 136-38.)  Plaintiffs do not allege that Defendants withheld information or obfuscated the accuracy of information from Nifong; he is alleged to know everything that these Defendants knew, and more.  Like *Rhodes*, Plaintiffs have plainly alleged that the "police officer defendants thus fulfilled their duty of providing all relevant probable cause information to prosecutor Welch. Prosecutor Welch having made an independent decision to proceed before the grand jury, the police officer defendants are shielded from liability for that decision."  *Rhodes*, 939 F. Supp. at 1278.  Thus, because the Amended Complaint discloses that all of the evidence and investigatory actions at issue here were known to Nifong, Defendants are immune from liability.

"If, however, the facts viewed in the light most favorable to the plaintiff do establish [a clearly identified constitutional] violation, the court must determine whether the right was clearly established such that a reasonable official would have known that his conduct would violate that right."  *Layman*, 294 F. Supp. 2d at 792-93.  "Such inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  *Homily v. Klugiewicz*, No. 04-C-669, 2005 U.S. Dist. LEXIS 19534, at *16 (D. Wis. Sept. 8, 2005) (citing *Saucier*, 533 U.S. at 201)).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Saucier*, 533 U.S. at 202.  "Officials are not liable for bad guesses in gray areas; they are

liable for transgressing bright lines."  *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.

1992).

"In determining whether a right was clearly established at the time of the claimed

violation, courts in this circuit ordinarily need not look beyond the decisions of the

Supreme Court, this court of appeals, and the highest court of the state in which the case

arose."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (internal

quotations and citations omitted).

> The concern of the immunity inquiry is to acknowledge that reasonable
> mistakes can be made as to the legal constraints on particular police
> conduct. It is sometimes difficult for an officer to determine how the
> relevant legal doctrine, here excessive force, will apply to the factual
> situation the officer confronts.  An officer might correctly perceive all of
> the relevant facts but have a mistaken understanding as to whether a
> particular amount of force is legal in those circumstances.  If the officer's
> mistake as to what the law requires is reasonable, however, the officer is
> entitled to the immunity defense.

*Saucier*, 533 U.S. at 205.  Thus, any constitutional or federal causes of action against

Defendants, individually, should be dismissed on the basis of qualified immunity because

Plaintiffs fail to state a clear violation of the Fourth Amendment, much less one that in

the circumstances of this case was clearly established by this jurisdiction's highest courts

before investigation into Mangum's allegations began.  *See id.* at 200 ("Where the

defendant seeks qualified immunity, a ruling on that issue should be made early in the

proceedings so that the costs and expenses of trial are avoided where the defense is

dispositive.").

## V. FEDERAL CONSPIRACY CLAIMS FAIL

### A. CONCLUSORY ALLEGATIONS OF CONSPIRACY INSUFFICIENT.
(Seventh, Eighth, Ninth & Tenth Causes of Action)

"It is well settled 'where the complaint makes only conclusory allegations of a conspiracy under § 1983 or § 1985 and fails to allege *facts* suggesting an agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint.'" *Sherwin v. Piner*, No. 5:03-CV-275-H(3), 2003 U.S. Dist. LEXIS 26855, at *7-8 (E.D.N.C. July 22, 2003) (emphasis added) (quoting *Sales v. Murray*, 862 F. Supp. 1511, 1517 (W.D. Va. 1994); *see also Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995); *Hooper v. State of North Carolina*, No. 1:04-CV-14, 2006 U.S. Dist. LEXIS 72268, at *54 (M.D.N.C. Oct. 3, 2006). Further, "courts have [] required that plaintiffs alleging unlawful intent in conspiracy claims under § 1985[] or § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss." *Gooden v. Howard County*, 954 F.2d 960, 969-70 (4th Cir. 1992) (en banc).

The Fourth Circuit has made clear that this pleading standard is difficult to reach. *Simmons*, 47 F.3d 1370. In *Gooden*, the plaintiff sought relief pursuant to 42 U.S.C. §§ 1983 and 1985 arising from the defendants' conduct in subjecting her to an involuntary psychiatric evaluation. *Gooden*, 954 F.2d at 964. The plaintiff alleged that the defendants were liable under sections 1983 and 1985 for conspiring to deprive her of her constitutional rights. *Id.* at 969. "Specifically, [the plaintiff] allege[d] that the officers demonstrated the racial animus necessary to a § 1985(3) claim by believing [] a white woman, and not her, a black woman, and by taking her for an emergency evaluation . . .

." *Id.*  In dismissing the plaintiff's conspiracy claims, the Court stated that this "mere statement" failed to comply with the pleading requirement that the plaintiff allege specific facts to support the elements of her conspiracy claims, namely, a meeting of the minds and unlawful intent.  *Id.* at 969-70.

Like the plaintiff in *Gooden*, Plaintiffs' blanket allegations fall woefully short of the factual specificity necessary to allege a claim for conspiracy.  Plaintiffs' repeatedly allege that "[u]nder color of state law, Nifong, Addison, Clark, Gottlieb, Himan, Meehan, Wilson, DSI, and the Supervisory Defendants conspired and entered into express, and/or implied agreements, understandings, or meetings of the mind among themselves" to violate Plaintiffs' rights.  (*See* Amend. Compl. ¶¶ 439, 447, 455, 462.)  Plaintiffs fail to allege a single specific fact in support of these conclusory allegations.  These allegations lack the requisite factual underpinnings to show unlawful intent and meeting of the minds to state a claim for conspiracy and, therefore must be dismissed.

**B.**     **42 U.S.C. § 1983**
          (Seventh Cause of Action)

In addition to the wholly inadequate allegations of fact to support a conspiracy, Plaintiffs have failed to allege that Defendants violated Plaintiffs' constitutional rights, as fully discussed in section IV *supra*.  Without allegations of such a violation, "'there is no basis for a section 1983 action' or civil conspiracy action under § 1983."  *Powell v. Keller,* No. 5:03-CV-160, 2004 U.S. Dist. LEXIS 30266, at *12 (W.D.N.C. Aug. 18, 2004) (quoting *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988)).  Therefore, Plaintiff's claim for conspiracy pursuant to section 1983 should be dismissed.

**C.** **42 U.S.C. § 1985(2) – WITNESS TAMPERING**
(Ninth Cause of Action)

42 U.S.C. § 1985(2) provides a right of action for a plaintiff damaged when "two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully." (emphasis added). One of the essential elements a plaintiff must meet to state a claim for witness tampering under this statute is that the alleged conspiracy "hampered the claimant's ability to present an effective case in federal court." *Rutledge v. Arizona Bd. Of Regents*, 859 F.2d 732, 735 (9th Cir. 1988) (emphasis added).

In their witness tampering claim, Plaintiffs allege that Lamb, with others, conspired to intimidate witnesses "from attending the Superior Court of Durham County." (Amend. Compl. ¶ 56). As the district court held in *Rhodes v. Smithers*, 939 F. Supp. 1256, 1271 (D.W. Va. 1995), *aff'd per curiam*, 91 F.3d 132 (4th Cir. 1996), dismissal of a section 1985(2) witness tampering claim is necessary where the plaintiff alleges witness tampering in a state court. In affirming *Rhodes*, the Fourth Circuit is in line with every Court that has ruled that a claim for witness tampering under section 1985(2), clause one, applies to a deprivation of a plaintiff's civil rights in federal court, not state court.[7] *See Rhodes v. Smithers*, 91 F.3d 132 (4th Cir. 1996). As stated in *Shaw*

---

[7] *See Warner v. Greenbaum, Doll, & McDonald*, 104 Fed. Appx. 493 (6th Cir. 2004); *Donahue v. City of Boston*, 304 F.3d 110 (1st Cir. 2002); *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031 (11th Cir. 2000); *Archbold v. Northwest Cmty. Hosp.*, No. 98-4313,

*v. Garrison*, [391 F. Supp. 1353, 1370](#) (E.D. La. 1975), *rev'd on other grounds*, [436 U.S.](#) [584](#) (1978), "[a]s defined in [28 U.S.C. §451](#), 'courts of the United States' refers only to the Article III courts and certain federal courts created by Congress. *It does not include the various state courts*." *See also Redcross v. County of Rensselaer*, [511 F. Supp. 364,](#) [374](#) (N.D.N.Y. 1981) (emphasis added) ("The constitutional basis for the enactment of § 1985(2) (cl. 1) was Congress's plenary power over the federal courts, [U.S.Const. art. 1, §](#) [8](#), cl. 9. There is no such authority to act over state courts.").

In a case factually similar to this case, involving alleged witness tampering among the district attorney, his investigator, and three officers, the Ninth Court of Appeals dismissed the plaintiff's section 1985(2) claim stating:

> Section 1985(2) provides a cause of action against a conspiracy to intimidate a witness from attending or testifying freely in *federal* court. *Rutledge v. Arizona Board of Regents*, [859 F.2d 732, 735](#) (9th Cir. 1988). Here, [plaintiff] has alleged the government intimidated witnesses in *state* court. Consequently, [plaintiff] has not pled a cause of action upon which relief can be granted. Section 1985(2) applies to a deprivation of civil rights in federal, not state court, proceedings.

*Lee v. Ventura County Sheriff's Dept.*, No. 90-56368, [1992 U.S. App. LEXIS 7361, at *4](#) (9th Cir. April 14, 1992) (emphasis original) (unpublished decision). Like the plaintiff in *Lee*, Plaintiffs here complain of alleged witness tampering in <u>state court, not federal court</u>. (Amend. Compl. ¶ 455.) They specifically allege that Defendants conspired to

---

[1999 U.S. App. LEXIS 16875](#) (7th Cir. June 23, 1999); *Biby v. Board of Regents*, [338](#) [F.Supp.2d 1063](#) (D. Neb. 2004).

deter witnesses from attending "the Superior Court of Durham County." (*Id.*) (emphasis added). Thus, Plaintiffs' claim can only be dismissed.

### D. 42 U.S.C. § 1985(2) & (3) – NO PROTECTED CLASS
(Eighth and Tenth Causes of Action)

Claims for conspiracy pursuant to sections 1985(2), clause 2, and 1985(3) require that plaintiffs be members of a protected class. *See Bey v. Celebration Station*, 3:02-CV-461, 2006 U.S. Dist. LEXIS 72479, at *9-10 (W.D.N.C. Sept. 29, 2006) (noting that section 1985(2) and section 1985(3), which cover general equal protection violations, "both . . . require proof of a racial or otherwise class-based discriminatory animus behind the defendant's actions" (citing *Griffin v. Breckenridge*, 403 U.S. 88, 91 (1971)). "In construing this requirement neither the Supreme Court nor the Fourth Circuit has identified any classes other than racial or religious classes." *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985) (military prisoners not "protected class"); *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985) ("It is obvious that . . . the class protected can extend no further than to those classes of persons who are, so far as the enforcement of their rights is concerned, in unprotected circumstances similar to those of the victims of Klan violence." (internal citation omitted)).

In *Harrison v. KVAT Food Mgmt.*, 766 F.2d 155, 161-62 (4th Cir. 1985), the Fourth Circuit thoroughly analyzed the decision of the Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88 (1971), and the case that followed, *United Brotherhood of Carpenters, etc. v. Scott*, 463 U.S. 825 (1983). The Court pointed out that in *Griffin*, the Supreme Court "expressly chose to reserve the question of whether a conspiracy

motivated by invidiously discriminatory animus other than racial bias would be actionable under § 1985(3)." *Harrison*, 766 F.2d at 159. Expanding its analysis, the Court reviewed the *Scott* decision and stated, "the opinion in *Scott* exhibits a noticeable lack of enthusiasm for expanding the coverage of § 1985(3) to any classes other than those expressly provided by the Court." *Id.* at 161. In relying on the decisions in *Griffin* and *Scott*, the Fourth Circuit declined to expand section 1985(3) to include Republicans, or Democrats, as a protected class. *Id.* at 163. Specifically, the Court determined that those decisions of the Supreme Court, along with the legislative history surrounding the enactment of section 1985(3), mandated that its scope be limited. *Id.*

Applying this reasoning in *Cloaninger v. McDevitt*, No. 1:06-CV-135, 2006 U.S. Dist. LEXIS 65913 (W.D.N.C. Sept. 3, 2006), the District Court stated: "it is clear that in creating Section 1985(3) and its predecessors, Congress acted to protect African-Americans whose enjoyment of liberty was being targeted by conspiracies motivated by a racial animus directly toward such community." *Id.* at *17-20 ("As recognized by the controlling law in the Fourth Circuit, *Harrison v. KVAT*, remains that the only class of persons protected by Section 1985(3) are African-Americans."). As evident from the Court's ruling in *Harrison*, Plaintiffs cannot state a claim for conspiracy under section 1985(2), clause two, and (3) because they are not members of a protected class. Despite having amended the Complaint to make references to a discriminatory racial animus, white Duke lacrosse players are not a protected class recognized as needing protection by the government. *Rutledge*, 859 F.2d 732 (football players are not a protected class);

*Moore v. Denver*, 744 F. Supp 1028 (D. Colo. 1990) (Caucasian males are not a protected class).

**VI.    42 U.S.C. § 1986**
         (Eleventh Cause of Action)

The "[v]iability of a § 1986 claim is based on the antecedent § 1985 claim.  If the [§] 1985 claim is dismissed, the § 1986 claim also fails."  *Savage v. North Carolina Dept. of Corrections*, No. 5:06-CV-171, 2007 U.S. Dist. LEXIS 73340, at *15 (E.D.N.C. Sept. 29, 2007) (citing *Buschi*, 775 F.2d at 1243); *see also Trerice*, 755 F.2d at 1085 ("A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985."). In this case, Plaintiffs fail to state a claim for conspiracy pursuant to section 1985, thus, their section 1986 claim must be dismissed.

**VII.    STATE LAW CLAIMS**

    **A.    NEGLIGENCE CLAIMS AGAINST DEFENDANTS**

        (Sixteenth, Seventeenth, Eighteenth and Nineteenth Causes of Action)

"A public officer performing discretionary acts . . . is absolutely immune from mere negligence claims."  *Shaw*, 13 F.3d at 803; *see also Mitchell*, 2007 U.S. Dist. LEXIS 68376 at *50 ("Under the North Carolina doctrine of public official immunity, a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." (internal quotations and citations omitted)).  A police officer performing his official duties is engaged in a discretionary, governmental function.  *Wright v. Hill*, No. 1:03-CV-109, 2004 U.S. Dist. LEXIS 13667, *17 (M.D.N.C. July 16, 2004).

Moreover, "the North Carolina Supreme Court has never allowed a showing of gross negligence to suffice to pierce an officer's immunity, absent a statute specifically abolishing the common law immunity." *Shaw*, 13 F.3d at 803. "Stated another way, 'public officers are absolutely immune from liability for discretionary acts absent a showing of malice or corruption.'" *Layman*, 294 F. Supp. 2d at 795 (quoting *Jones v. Kearns*, 120 N.C. App. 301, 305, 462 S.E.2d 245, 247 (1995)). Since police officers are public officers, "a police officer in North Carolina enjoys absolute immunity from personal liability for discretionary acts done without corruption or malice." *Wright*, 2004 U.S. Dist. LEXIS 13667 at *17-18. "A plaintiff seeking to hold a public official liable for conduct in the performance of official or governmental duties involving the exercise of discretion, therefore, must allege and prove corruption or malice; allegations of negligence or even 'reckless indifference' are not sufficient." *Layman*, 294 F. Supp. 2d at 795. Therefore, Plaintiffs' sixteenth, seventeenth, eighteenth and nineteenth causes of action which are all grounded in negligence, must be dismissed.

In their eighteenth and nineteenth causes of action, Plaintiffs seek to maintain claims for negligent infliction of emotional distress against these Defendants as a group. In *Shaw*, 13 F.3d at 803, the Fourth Circuit affirmed the dismissal of a plaintiff's negligent infliction of emotional distress claim against a police officer based upon that officer's immunity from claims for negligence: "A negligent infliction of emotional distress claim, by its very definition, necessarily alleges only negligence. Therefore, Morris is absolutely immune from any negligent infliction of emotional distress claim

under North Carolina law." *Id.*  The Court further indicated that because a claim for negligent infliction of emotional distress necessarily involves neither malice nor corruption, the exception to immunity did not apply.  *Id.*  Thus, these causes of action fail to state a claim for relief, and should be dismissed.

In the seventeenth cause of action, Plaintiffs accuse Baker, Chalmers, Hodge, Council, Russ, Lamb, and Ripberger of *negligently* training, supervising, disciplining, and retaining Addison, Gottlieb and Himan.  (Amend. Compl. ¶¶ 526, 527, 528.)  There are no allegations anywhere in the Amended Complaint that this conduct was either malicious or corrupt.  While Plaintiffs allege throughout the factual allegations of the Amended Complaint, in a consistently conclusory fashion, that these Defendants were "deliberately indifferent" or "grossly negligent," this characterization of Defendants conduct is insufficient to overcome their immunity.  *Layman*, 294 F. Supp. 2d at 795; *Shaw*, 13 F.3d at 803.

Further, even if Defendants were not immune from liability for claims for negligent hiring, supervision, and retention, they are not the proper defendants for such claims.  Defendants are not Gottlieb's, Himan's, or Addison's "employer."  North Carolina recognizes the existence of a cause of action for negligent supervision and retention against an employer.  *Braswell v. Braswell,* 330 N.C. 363, 373, 410 S.E.2d 897, 903 (1991).  "To support a claim of negligent retention and supervision against an *employer*, the plaintiff must prove that the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had

reason to know of the employee's incompetency."  *Smith v. Privette*, [128 N.C. App. 490, 495](#), 495 S.E.2d 395, 398 (1998) (internal quotation and citation omitted) (emphasis added).

Applying North Carolina law, the Western District has held that any "claim for negligent hiring, retention, and supervision would be actionable only against *employers*," not supervisory employees.  *Cox v. Indian Head Indus.*, [123 F. Supp. 2d 892, 914](#) (W.D.N.C. 2000), *also available at*, No. 2:98cv175, [2000 U.S. Dist. LEXIS 20118, *25](#) (May 16, 2000) (rejecting a cause of action for negligent supervision as applied to an individual and not an employer).  "Absent specific guidance from North Carolina decisions," Magistrate Judge Cogburn, in a recommended decision adopted by the District Court, looked to North Carolina's judicial rejection of a wrongful discharge claim against a supervisor as a basis for predicting North Carolina's response to a negligent retention claim.  *Id.* at 915, 2000 U.S. Dist. LEXIS at *27 ("No North Carolina case has been cited for the proposition that a supervisory employee is subject to liability under such a claim.").  Therefore, even without public official immunity, which clearly bars this claim, this claim should be dismissed against these Defendants.

### B.   CLAIMS AGAINST DEFENDANT HODGE
(Fifteenth & Sixteenth Causes of Action)

Plaintiffs allege that two members of the Durham Police Department, Addison and Hodge, made several public statements which Plaintiffs label as the "Durham Police Statements."  (Amend. Compl. ¶ 159.)  While Plaintiffs enumerate several statements allegedly made by Addison from March 24-28, 2006, they attribute a single specific

remark to Hodge.  Hodge's April 11, 2006, answer to a reporter's question forms the

factual basis for two claims alleged against him[8] under North Carolina common law:

intentional infliction of emotional distress (Fifteenth Claim for Relief), and negligence

(Sixteenth Claim for Relief). [9]

These claims all arise out of an allegedly false statement, and are barred by the

one-year statute of limitations for defamation.  Additionally, this remark is insufficient to

support a claim for either intentional infliction of emotional distress or negligence.

### 1.   THE STATUTE OF LIMITATIONS
(Fifteenth & Sixteenth Causes of Action)

"North Carolina law requires a court . . . to consider the essence of the claim,

rather than the labels a plaintiff may apply."  *Adams v. McIntyre*, No. 4:97-CV-210, 1997

U.S. Dist. LEXIS 15942 *4 (W.D.N.C. Sept. 4, 1997), *aff'd,* 194 F.3d 1303 (4th Cir.

1999).  The essential elements of a defamation claim under North Carolina law are that

"the defendant caused injury to the plaintiff by making *false*, defamatory statements of or

---

[8] These claims are not asserted against the remaining "Supervisory Defendants."
(Amend. Compl. ¶¶ 108-11, 140-43.)

[9] Defendant Hodge's remark is not alleged to be the basis of a claim for negligent
infliction of emotional distress, apparently in recognition of this Court's decisions that
intentional acts, alleged to be committed negligently, cannot make out a claim for
negligent infliction of emotional distress, *see Sabrowski v. Albani-Bayeux, Inc*., No. 1:02-
CV-728, 2003 U.S. Dist. LEXIS 23242, *16-17 (M.D.N.C. Dec. 19, 2003) (quoting
*Barbier v. Durham County. Bd. of Educ*., 225 F. Supp. 2d 617 (M.D.N.C. 2002)), and
because this remark, which did not reference any Plaintiff specifically, could not meet the
claim's foreseeability requirement.  *See Gardner v. Gardner*, 334 N.C. 662, 435 S.E.2d
324 (1993) (plaintiff's injury was not foreseeable without evidence that the defendant
knew that the plaintiff was susceptible to emotional distress of the requisite severity as a
result of his negligently killing her child.)

concerning the plaintiff, which were published to a third person." *Boyce & Isley v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002) (emphasis added). In North Carolina, the statute of limitations for defamation is one year. N.C. Gen. Stat. § 1-54(3); *Gibson v. Mutual Life Ins. Co.*, 121 N.C. App. 284, 287, 465 S.E.2d 56, 58 (1996).

Although labeled as claims for "intentional infliction of emotional distress," and "negligence," Plaintiffs' state law claims arising out of Hodge's remark to the MSNBC reporter on April 11, 2006, are essentially claims for defamation. Indeed, Hodge's alleged "false statement," (*see* Amend. Compl. ¶ 160(h)), is the sole fact alleged against him in support of these claims. (*Id.* ¶¶ 494, 510, 521.) (Hodge and Addison "demonstrated malice, spite, ill-will, and wanton disregard for Plaintiffs' rights by making repeated false, inflammatory, and misleading statements regarding the Duke lacrosse team and the Plaintiffs."). Plaintiffs' claims arising out of these statements were brought on October 10, 2007, six months after the statute of limitations had expired.

In *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981), the North Carolina appellate courts squarely addressed the question of whether a claim had been mislabeled as intentional infliction of emotional distress to avoid the statute of limitations. In *Dickens,* the plaintiff had been kidnapped, beaten over a period of two hours, threatened with castration, and with death if he did not leave North Carolina, by the defendant and three masked men. Three years later, in 1981, the plaintiff filed a claim for intentional infliction of emotional distress. At that time, the statute of limitations for assault was one

year.[10]  The North Carolina Court of Appeals affirmed summary judgment for the

defendants, concluding that despite the label, the plaintiff's claim was one for assault, and

was barred by the statute of limitations. *Dickens v. Puryear*, 45 N.C. App. 696, 263

S.E.2d 856 (1980)  The Court of Appeals reasoned: "Where the gist of a claim for relief

is assault and battery, courts have applied the statute of limitations applicable to assault

and battery despite allegations in the complaint that it was some other tort.  This is

particularly true where it appears the purpose in the use of a label different from assault

and battery is to provide a different and longer statute of limitations."  *Id. at* 700, 263

S.E.2d at 859.

On appeal, the North Carolina Supreme Court agreed with the Court of Appeals

that "[t]he nature of the action is not determined by what either party calls it . . .  The

nature of the action is determined by the issues arising on the pleading and by the relief

sought."  *Dickens*, 302 N.C. at 454, 276 S.E.2d at 336 (internal citations and quotations

omitted).  The Court held that the plaintiff's claims for mental and physical injuries

arising out of physical beatings were barred by the one-year statute of limitations.  *Id.*[11]

---

[10] Formerly, the one-year statute, N.C. Gen. Stat. 1-54(3) applied to "libel, slander,
assault, battery or false imprisonment."  In 2001, it was amended and now only applies to
claims for "libel and slander."

[11] The Court concluded, however, that the threat to kill the plaintiff if he returned to the
State was not the threat of imminent harm, and was therefore not properly characterized
as an assault.  This single threat was "actionable, if at all, as an intentional infliction of
mental distress," and was not time-barred.  *Dickens v. Puryear,* 302 N.C. 437,454, 276
S.E.2d 325, 336 (1981).

In *Adams v. McIntyre,* the Court applied the analysis of *Dickens* to claims

designated as negligent and intentional infliction of emotional distress, primarily arising

out of the defendants' publication of "false statements about him, as a result of which he

suffered damage to his 'personal and business' reputation, embarrassment, and mental

anguish." *Adams*, 1997 U.S. Dist. LEXIS 15942, *4. In its decision later adopted by the

District Court, the Magistrate Judge recommended dismissal of these claims, pursuant to

Rule 12(b)(6), reasoning:

> Inasmuch as claims for infliction of emotional distress have a longer
> limitations period, it is common for plaintiffs who have missed the
> deadlines for filing claims for shorter-lived torts to attempt to re-dress their
> claims. *See Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). . . .
> As discussed briefly above, plaintiff has alleged damage to his personal and
> business reputation and his standing in the community arising from
> allegedly false and defamatory statements about him published by
> defendants in their newspaper. Plaintiff's claim is most certainly one for
> libel.

*Id.* at *5-6. In this case, Plaintiff's state tort claims against Hodge arise out of his

having allegedly made a false statement about Plaintiffs to a reporter. Thus, these

claims are most certainly claims for defamation, which are barred by the statute of

limitations.

### 2. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Fifteenth Cause of Action)

The only act of Hodge that is alleged as a basis for this claim is his purported

answer to a reporter's inquiry.[12] (Amend. Compl. ¶ 510.) Even if this claim were not

---

[12] While the Fifteenth Cause of Action is entitled "Intentional Infliction of Emotional
Distress and Conspiracy," an examination of this claim discloses that all of the

barred by the applicable statute of limitations, it should be dismissed, because this act is insufficient to support a claim for intentional infliction of emotional distress.

The essential elements of a common law claim for intentional infliction of emotional distress in North Carolina are: "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (citation omitted). "The determination of whether the conduct alleged was intentional and was extreme and outrageous enough to support such an action is a question of law for the trial judge." *Lenins v. K-Mart Corp.*, 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990).

"A claim for intentional infliction of emotional distress exists when a defendant's conduct exceeds all bounds usually tolerated by decent society[.]" *Watson v. Dixon*, 130 N.C. App. 47, 52-53, 502 S.E.2d 15, 19-20 (1998) (internal quotations and citations omitted). Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly 'intolerable in a civilized' community." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985) (internal quotations and citation omitted). The North Carolina Supreme Court has summarized the nature of this claim:

> This tort imports an act which is done with the intention of causing emotional distress or with reckless indifference to the likelihood that

---

conspiracy allegations are alleged against only Defendants Nifong, Gottlieb, Himan, and DSI and its agents for allegedly conspiring to manufacture inculpatory evidence and intimidating witnesses. (Amend. Compl. ¶¶ 509, 511.) These allegations are <u>not</u> asserted against Defendant Hodge, and he is nowhere accused in the Amended Complaint of participating in that conduct.

emotional distress may result. A defendant is liable for this tort when he desires to inflict severe emotional distress . . . [or] knows that such distress is certain, or substantially certain, to result from his conduct . . . [or] where he acts recklessly . . . in deliberate disregard of a high degree of probability that the emotional distress will follow and the mental distress does in fact result.

*Dickens*, 302 N.C. at 449, 276 S.E.2d at 333 (internal quotations and citations omitted).

The standard for conduct sufficient to support a claim for intentional infliction of emotional distress was addressed in *Hogan v. Forsyth Country Club Co.,* 79 N.C. App. 483, 340 S.E.2d 116:

The liability clearly does not extend to mere insults, indignities, threats, . . . . The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. . . .

*Id.* at 493-94, 340 S.E.2d at 123 (citations omitted).

In numerous cases, North Carolina's appellate courts have found false accusations insufficient to meet this standard. In *Smith-Price v. Charter Behavioral Health Sys.,* 164 N.C. App. 349, 595 S.E.2d 778 (2004), the North Carolina Court of Appeals held that the defendant's false accusations of sexual harassment at work, while sufficient to support a claim for defamation, were not sufficient to support a claim for intentional infliction of emotional distress. The Court held that "[a]lthough defendant's behavior was undeniably churlish and ill-mannered, it does not rise to the level of the extreme and outrageous conduct which is required to sustain a claim for intentional infliction of emotional

distress." *Id.* at 355, 595 S.E.2d at 783; *see also Dobson v. Harris,* 134 N.C. App. 573, 521 S.E.2d 710 (1999) (false accusation of child abuse was not "extreme and outrageous conduct" that would support a claim for intentional infliction of emotional distress), *other portion of opinion rev'd on other grounds,* 352 N.C. 77, 530 S.E.2d 829 (2000); *see also, Johnson v. Colonial Life & Accident Ins. Co.,* 173 N.C. App. 365, 618 S.E.2d 867 (2005); *Ausley v. Bishop,* 133 N.C. App. 210, 515 S.E.2d 72 (1999) (false report to police resulting in embezzlement charges, and negative and accusatory comments to creditors and potential clients, although "deplorable," did not meet standard).

Hodge's remark simply does not meet the standard of extreme and outrageous conduct, as that standard has been applied by North Carolina's courts. Thus, this claim must be dismissed.

### 3. NEGLIGENCE
(Sixteenth Cause of Action)

In an obvious effort to avoid the bar of the statute of limitations, Plaintiffs attempt to allege that Hodge owed Plaintiffs a duty "to use due care" in making public statements, and that he "negligently breached" that duty in making the "false" statement discussed above. (Amend. Compl. ¶¶ 519, 521, 523.) Publication of false statements is defamation. *Boyce & Isley,* 153 N.C. App. at 29, 568 S.E.2d at 897. Research has disclosed no North Carolina authority for the proposition that such conduct also gives rise to a claim for negligence. For the reasons discussed by the Western District in *Adams,* North Carolina's courts would not restyle this as a claim for negligence, simply to give Plaintiffs the benefit of a longer limitations period. *Adams,* 1997 U.S. Dist. LEXIS

15942, *4-6.  This cause of action does not state a claim for relief recognized by North Carolina, and it should be dismissed.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Defendants' Motion to Dismiss.

Respectfully submitted, this the <u>15th</u> day of January, 2008.

TROUTMAN SANDERS LLP


By: <u>/s/ Patricia P. Kerner</u>
    Patricia P. Kerner
N.C. State Bar No. 13005
    Hannah G. Styron
N.C. State Bar No. 28824
    D. Martin Warf
N.C. State Bar No. 32982
*Attorneys for Defendants Baker, Chalmers,*
*Council, Hodge, Lamb, Ripberger, and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com
hannah.styron@troutmansanders.com
martin.warf@troutmansanders.com

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned attorney for Defendants Baker, Chalmers, Council, Hodge, Lamb, Ripberger, and Russ hereby certifies that on January 15, 2008, the foregoing Brief in Support of Defendants' Motion to Dismiss was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Brendan V. Sullivan, Jr.
Robert M. Cary
Christopher N. Manning
Charles Davant IV
Williams & Connolly, L.L.P.
725 Twelfth Street, N.W.
Washington, DC 200005
*Attorneys for Plaintiffs Evans*
   *And Finnerty*

Reginald B. Gillespie, Jr.
Faison & Gillespie
5517 Chapel Hill Blvd., Suite 2000
Durham, NC 27717-1729
*Attorneys for Defendant City*
*City of Durham*

Joel M. Craig
Kennon, Craver, Belo,
   Craig & McKee, PLLC
4011 University Drive, Suite 300
Post Office Box 51579
Durham, NC 27717-1579
*Attorneys for Defendant Himan*

Nicholas J. Sanservino
Robert A. Sar
Ogletree Deakins Nash Smoak
& Stewart, P.C.
PO Box 31608
Raleigh, NC 27622
*Attorneys for Defendant DNA*
*Security, Inc.*

David S. Rudolf
Rudolf, Widenhouse & Fialko
312 West Franklin Street
Chapel Hill, NC 27516
*Attorneys for Plaintiff Seligmann*

Robert J. King, III
Kearns Davis
Brooks, Pierce, McLendon,
Humphrey & Leonard, L.L.P.
Post Office Box 26000
Greensboro, NC 27420
*Attorneys for Defendants DNA*
*Security, Inc. and Richard Clark*

James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
Post Office Box 52396
Durham, NC 27717
*Attorneys for Defendant Addison*

Edwin M. Speas
Poyner & Spruill, L.L.P.
3600 Glenwood Avenue
Raleigh, NC 27612
*Attorneys for Defendant Gottlieb*

James B. Craven, III
Post Office Box 1366
Durham, NC 27702
*Attorney for Defendant Nifong*

The undersigned attorney further certifies that on January 15, 2008, a copy of the foregoing Defendants' Brief in Support of Motion to Dismiss was served upon each of the following non-CM/ECF participants by United States mail, postage prepaid, addressed as follows:

Barry C. Scheck
100 Fifth Avenue
New York, NY 10011
bcsinnocence@aol.com
*Attorneys Plaintiff Seligmann*

Richard D. Emery
Emery, Celli, Brinkerhoff & Abady, L.L.P.
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
*Attorneys for Plaintiff Seligmann*

Roger E. Warin
Steptoe & Johnson, L.L.P.
1330 Connecticut Ave. N.W.
Washington, DC 20036
*Attorneys for Defendant City of Durham, NC*

Paul R. Dickinson, Jr.
Lewis & Roberts, P.L.L.C.
5960 Fairview Road; Suite 102
Charlotte, NC 28210-3103
*Attorneys for Brian Meehan*

James A. Roberts, III
Lewis & Roberts, P.L.L.C.
1305 Navaho Drive; Suite 400
Raleigh, NC 27609-7482
*Attorneys for Brian Meehan*

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503-9700
*Pro Se*

By: /s/ Patricia P. Kerner
   Patricia P. Kerner
N.C. State Bar No. 13005
*Attorneys for Defendants Baker, Chalmers, Council, Hodge, Lamb, Ripberger, and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com