UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

File No. 1:07-CV-739-JAB-WWD

| | | |
|---|---|---|
| DAVID F. EVANS, COLLIN FINNERTY, and READE SELIGMANN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **DEFENDANT BENJAMIN HIMAN'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS** |
| THE CITY OF DURHAM, NORTH CAROLINA, MICHAEL B. NIFONG, MARK GOTTLIEB, BENJAMIN HIMAN, DAVID ADDISON, LINWOOD WILSON, PATRICK BAKER, STEVEN CHALMERS, BEVERLY COUNCIL, RONALD HODGE, JEFF LAMB, MICHAEL RIPBERGER, LEE RUSS, DNA SECURITY, INC., RICHARD CLARK, and BRIAN MEEHAN, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

_____

NOW COMES Defendant Benjamin Himan ("Investigator Himan"), by and through his undersigned attorney, and submits the following Brief in support of his motion to dismiss this action pursuant to 12(b)(6) of the Rules of Civil Procedure.

**MATTER BEFORE THE COURT**

The matter before the Court is Defendant Investigator Benjamin Himan's motion to dismiss Plaintiffs' claims against him, set out in the First, Second, Third, Seventh, Eighth, Ninth, Tenth, Thirteenth, Fourteenth, Fifteenth, Sixteenth and Eighteenth Causes of Action

Dockets.Justia.com

in their Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF THE CASE

Plaintiffs David F. Evans, Collin Finnerty and Reade Seligmann filed this action on October 5, 2007, alleging violations of 42 U.S.C. § 1983 (2007), § 1985 (2007), § 1986 (2007) along with related violations of state law. On November 27, 2007, the parties filed a Joint Motion to Extend Page Limitations and Establish a Briefing Schedule. Judge Beaty allowed this motion on November 29, 2007. Under the terms of the Order, Defendants have until January 15, 2008, in which to file briefs in support of their motions to dismiss, not to exceed fifty pages in length. Investigator Himan's Motion to Dismiss has been filed pursuant to this Order.

## STATEMENT OF FACTS

Plaintiffs allege that they were wrongfully accused of rape by Crystal Mangum after she and another woman performed as exotic dancers at a party attended by Duke lacrosse players on March 13, 2006. Plaintiffs were cleared of all charges before trial. Amended Compl. ¶¶ 316-19. Due in part to information gathered by investigator Himan and other members of the Durham Police Department, the Attorney General ultimately dismissed all charges against Plaintiffs, completely exonerated them and declared them innocent in a public statement on April 11, 2007. Amended Compl. ¶¶ 318-19. Plaintiffs now seek to

recover damages against Investigator Himan based upon his participation in this investigation. Amended Compl. ¶¶ 38, 48.

The Amended Complaint alleges that Investigator Himan's participation in the investigation of Mangum's charges consisted of the following acts:

### *Initial Investigation*

On or about March 16, 2006, Sgt. Mark Gottlieb assigned Investigator Himan to assist him in his investigation into Mangum's claims. Amended Compl. ¶ 84. That same day, Investigator Himan interviewed Mangum, who provided him with a physical description of her alleged assailants. Amended Compl. ¶¶ 92, 101. Mangum had initially claimed she had been raped during her intake interview at Durham ACCESS, a local outpatient mental health clinic, in the early morning hours of March 14, 2006. Amended Compl. ¶¶ 45-6. Based on her rape allegation, Mangum was moved to Duke Medical Center for a rape examination, which found evidence of "diffuse edema of the vaginal walls", consistent with having engaged in intercourse with multiple different partners. Amended Compl. ¶¶ 48, 72.

On March 16, 2006, Investigator Himan and another Durham police officer also executed a search warrant for the premises of 610 N. Buchanan, the scene of the alleged offense. Amended Compl. ¶ 108. The three lacrosse players living there, including Plaintiff Evans, agreed to accompany the officers to the police station for interviews. Amended Compl. ¶¶ 110-12. All three submitted to a "Sexual Assault Suspect Kit". Amended Compl. ¶ 114.

On May 20, 2006, Investigator Himan spoke with Tammy Rose of Angels Escort Service, who identified Kim Pittman as the second dancer who performed with Mangum at 610 N. Buchanan on the night in question. Amended Compl. ¶ 86. That same day Investigator Himan contacted Pittman and asked her to come to the Durham Police station for an interview. Amended Compl. ¶ 87.

On March 22 and 23, 2006, Investigator Himan and Sgt. Gottlieb, in conjunction with the District Attorney's Office and Durham Police attorney Toni Smith, filed for and received a Non-Testimonial order, directing all white members of the Duke lacrosse team to provide DNA samples, submit to physical examinations and allow themselves to be photographed. Amended Compl. ¶ 120.

### *Investigator Himan's Reporting to Senior Officials*

On March 24, 2006, the District Two Uniform Patrol Commander of the Durham Police Department, Captain Jeff Lamb, informed Investigator Himan and Sgt. Gottlieb that Durham County District Attorney Michael Nifong would direct or help direct the investigation. Amended Compl. ¶¶ 24, 133. Captain Lamb further instructed Himan and Gottlieb to continue to report up the Durham Police chain of command and to also report to senior command staff to the Durham Police Department on the progress of their investigation. Amended Compl. ¶ 133.

Three days later, Investigator Himan and Sgt. Gottlieb met with Nifong to brief him

on the status of the investigation and provided a detailed description of all of the known information.  Amended Compl. ¶ 136-37.

### The April 4th Identification Procedure

According to the Amended Complaint, Investigator Himan and Sgt. Gottlieb met with Nifong "to plan a new identification procedure" on or about March 31, 2006.  Amended Compl. ¶ 180. Plaintiffs allege that the plan was for  "Gottlieb. . . [to] show Mangum an array consisting solely of photographs of all white Duke lacrosse players, without any non-suspects" and that this procedure was to be videotaped.  Amended Compl. ¶ 180.  Plaintiffs further allege that this array process differed from established Durham police procedure. Amended Compl. ¶ 186.

The photo array was shown to Mangum on April 4, 2006.  Amended Compl. ¶ 188. During the array Mangum identified Plaintiffs Reade Seligmann and Collin Finnerty. Amended Compl. ¶¶ 191-92.  Mangum hesitated, but said that she was "90%" certain that Plaintiff David Evans was one of the men who assaulted her.  Amended Compl. ¶ 193.

### Investigator Himan's Grand Jury Testimony

On April 17, 2006, Plaintiffs Collin Finnerty and Reade Seligmann were indicted for first-degree rape, first-degree sex offense, and kidnaping.  Amended Compl. ¶¶ 212-13.  On May 15, 2006, Plaintiff David Evans was likewise indicted for first-degree rape, first-degree sexual offense and kidnaping.  Amended Compl. ¶ 238.  Plaintiffs allege that Investigator Himan, with others, "provided inculpatory testimony before the grand jury . . . despite actual

knowledge" of [their] innocence." Amended Compl. ¶¶ 215, 240. Plaintiffs further allege that Investigator Himan had agreed with Sgt. Gottlieb and District Attorney Nifong "that they would mislead the grand jury as to the nature of the evidence . . . and not reveal to the grand jury the evidence of [their] actual innocence." Amended Compl. ¶¶ 219, 241.

Plaintiffs do not allege that Investigator Himan made false statements to a grand jury or do Plaintiffs make specific allegations as to the substance of Investigator Himan's testimony. As his grand jury testimony was not recorded, Plaintiffs make only bald assertions that Investigator Himan provided "inculpatory testimony" while "knowing" of their innocence. Amended Compl. ¶¶ 215, 240-45.

### *Investigator Himan's Dealings With DNA Security, Inc.*

On or about April 10th, prior to Plaintiffs' indictments, Investigator Himan, District Attorney Nifong and Sargent Gottlieb met with representatives of DNA Security, Inc. ("DSI"). Amended Compl. ¶ 207. DSI had been engaged at District Attorney Nifong's direction to perform sensitive DNA testing. Amended Compl. ¶ 199. During the April 10th meeting, Defendant Brian Meehan detailed the results of DSI's testing, which found that none of the Duke lacrosse players were contributors of DNA on the rape kit items taken from Mangum. Amended Compl. ¶ 207. According to Plaintiffs, those present then "began to consider ways in which these exculpatory results could be concealed and obfuscated in order to manufacture probable cause, obtain indictments, and subsequently prosecute three Duke lacrosse players . . . " Amended Compl. ¶ 208.

On April 21, 2006, after the indictments of Plaintiffs Finnerty and Seligmann and before the indictment of Plaintiff Evans, Investigator Himan, District Attorney Nifong and Sargent Gottlieb again met with DSI representatives, during which they learned that DNA from four different men, none of them members of the Duke lacrosse team, was found in Mangum's rape kit. Amended Compl. ¶ 224. According to Plaintiffs, those present then "conspired and acted to fabricate [a] . . . false and misleading report" including agreeing "to conceal and obfuscate this exculpatory evidence." Amended Compl. ¶ 225-26. Specifically, they agreed that DSI would produce a written report, but that it would not include "the fact that none of the [lacrosse] players' DNA profiles matched or were consistent with any of the DNA found on the rape kit items . . . " Amended Compl. ¶ 225. Those present also agreed that there would be "no report or notes memorializing the substance of their discussions . . . during the April 21 meeting." Amended Compl. ¶ 225.

On May 12, 2006, Investigator Himan and District Attorney Nifong returned to DSI to meet with its representatives and review a ten page report that had been prepared. Amended Compl. ¶ 229. According to Plaintiffs, those present "understood and agreed that the . . . report would be provided to the Plaintiffs and the court under the knowingly false pretense that it . . . contained all of DSI's findings . . . " Amended Compl. ¶ 231. Plaintiffs further allege that the report "intentionally omitted the DNA results that matched or were consistent with the multiple unidentified men who had not provided reference specimens . . . " Amended Compl. ¶ 232.

### *Investigator Himan's Dealings With Witnesses*

Shortly after contacting Kim Pittman and getting her initial statement, Investigator Himan located an outstanding warrant against her for parole violations. Amended Compl. ¶¶ 256-57. On March 22, 2006, Pittman provided a formal written statement in which she recanted her initial statement that no assault had occurred. Amended Compl. ¶ 259. Plaintiffs allege that Pittman changed her story after being told "that if she changed her categorical denial and timeline of events, she would be given a deal on her parole violation." Amended Compl. ¶¶ 258-59. Pittman was then released on what Plaintiffs describe as "very favorable bail terms recommended by the District Attorney's Office." Amended Compl. ¶ 260.

Almost one month later, on April 24, 2006, Investigator Himan interviewed Moezeldin Elmostafa, who provided him with a written statement that corroborated Plaintiff Seligmann's alibi. Amended Compl. ¶ 246. Investigator Himan then reported the substance of the interview and statement to District Attorney Nifong. Amended Compl. ¶ 247. Investigator Himan was later directed to arrest Elmostafa on a 2003 arrest warrant for shoplifting. Amended Compl. ¶ 248. On May 10th, Investigator Himan arrested Elmostafa on the outstanding warrant. Amended Compl. ¶ 250. Plaintiffs allege that Investigator Himan and another officer inquired regarding whether Elmostafa wanted to change his story regarding his alibi for Plaintiff Seligmann both before and after his arrest. Amended Compl. ¶¶ 250-51.

Plaintiffs further allege that Investigator Himan, acting in concert with others and at the direction of the more senior officials, "attempted to intimidate and discredit Durham Police Sgt. John Shelton by subjecting him to an internal investigation, accusations of unprofessional conduct, and threats of disciplinary action for reporting Mangum's recantation of her rape claim while at Duke Medical Center on March 13." Amended Compl. ¶ 264 Amended Compl. ¶ 250.

Beginning on or about March 28, 2006, Investigator Himan, with the assistance of others, prepared and disseminated a flyer seeking information regarding the alleged assault, indicating that the Duke lacrosse team had hosted the party and the address where it occurred. Amended Compl. ¶ 160.

On April 13th, Investigator Himan and Sgt. Gottlieb entered student dormitories and attempted to conduct interviews with Duke lacrosse players regarding the events in question on March 13, 2006. Amended Compl. ¶ 263. Plaintiffs describe these as "'ambush' interviews" and allege that they were done in an "attempt[] to intimidate other Duke lacrosse players . . ." Amended Compl. ¶ 263.

## QUESTIONS PRESENTED

1.    Have Plaintiffs stated cognizable claims against Investigator Himan under federal and state law?

2.    Can Plaintiffs' claims overcome Investigator Himan's qualified immunity for federal claims and absolute immunity from personal liability for state law claims?

# ARGUMENT

Investigator Himan complied with his duties as a law enforcement officer under North Carolina law. Therefore Plaintiffs' novel theories of federal and state law fail to state a valid cause of action against him. Plaintiffs have not sufficiently pled violations of their constitutional or state rights for which Investigator Himan is responsible. As they cannot establish an underlying violation, Plaintiffs cannot recover.

According to the Amended Complaint, Investigator Himan provided District Attorney Nifong with all of the potentially exculpatory evidence he was aware of. The grand jury's decision to indict Plaintiffs was entirely outside of his control. As such, Investigator Himan is protected by the doctrine of qualified immunity from liability for federal constitutional claims and is absolutely immune from individual liability for state law claims.

## *Applicable Legal Standard*

A complaint should be dismissed for failure to state a claim when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991), *cert. denied*, 503 U.S. 936 (1992). To state a viable claim, the plaintiff must "allege facts sufficient to state all of the elements." *Bass v. E.I. DuPont De Nemours & Comp.*, 324 F.3d 761, 765 (4th Cir. 2003). Because the primary objective of Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims, a court is not bound by any legal conclusions that are included in the complaint. *Heckman v. University of North Carolina at Chapel Hill*, 19 F. Supp. 2d 468, 471

(M.D.N.C. 1998), *rev. denied*, 166 F.3d 1209 (4th Cir. 1998); *see also Gladden v. Winston Salem State Univ.*, 495 F. Supp. 2d 517, 520-21 (M.D.N.C. 2007) ("'The presence [] of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the Complaint' cannot support the legal conclusion." (*quoting Young v. City of Mount Rainer*, 238 F.3d 567, 577 (4th Cir. 2001))).

### *Plaintiffs' Claims Against Investigator Himan*

Plaintiffs' federal claims against Investigator Himan include alleged violations of § 1983 for "malicious prosecution and seizure" (Count 1), "concealment of evidence" (Count 2) and "fabrication of evidence" (Count 3). Plaintiffs also allege that Investigator Himan is liable for conspiracy in violation of § 1983 (Count 7) and § 1985(2)-(3) (Counts 9-10).[1] Plaintiffs' state law claims include malicious prosecution (Count 13), common law obstruction of justice (Count 14), intentional infliction of emotional distress (Count 15), negligence (Count 16) and negligent infliction of emotional distress (Count 18). A review of the actions taken by Investigator Himan make clear that Plaintiffs' claims fail as a matter of law.

---

[1]Plaintiffs allege Counts 7-10, 13-16 and 18 against Investigator Himan in both his individual and official capacity. Official capacity claims are really claims against Investigator Himan's employer the City of Durham, an entity Plaintiffs' have sued directly. They are duplicative and should be dismissed. *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004).

## I.     INVESTIGATOR HIMAN'S INVOLVEMENT IN THE PREPARATION OF THE APRIL 4th PHOTO ARRAY DOES NOT GIVE RISE TO A CAUSE OF ACTION

### A.     Plaintiffs Do Not Have a Viable Claim Arising From The April 4th Photo Array Under § 1983, as Plaintiffs Were Never Tried

There is no legal basis for a § 1983 claim arising from an allegedly suggestive photo array where Plaintiffs was never tried. *See, e.g.*, *Antonio v. Moore*, 174 Fed. Appx. 131, 134 (4th Cir. 2006) (Section 1983 claims only arise from a suggestive lineup where the conduct "impair[s] . . . defendant's core right–i.e., the right to a fair trial."). The remedy for an unconstitutional array is exclusion of the identification. As Plaintiffs were never tried, their § 1983 claim arising from the identification fails as a matter of law. *See, e.g.*, *Burrell v. Virginia*, 395 F.3d 508, 513 (4th Cir. 2005) (even if Fifth Amendment rights would have been violated by officer's questioning, no violation could be established because incriminating statements were not used at trial).

### B.     Even If The April 4th Photo Array Was Improper, Investigator Himan is Protected From Plaintiffs' Federal Claims by Qualified Immunity

Even if the April 4th photo array procedure was unconstitutional, and Plaintiffs had a viable legal claim against Investigator Himan arising out of it, his actions are protected by qualified immunity, as a "reasonable officer" in Himan's position would have believed that his conduct was lawful.[2]  *Shaw v. Stroud*, 13 F.3d 791, 801 (4th Cir. 1994). A cause of

---

[2]Determination of qualified immunity may be made at either the motion to dismiss or summary judgment stage, however, the Supreme Court has "repeatedly . . . stressed the

action under § 1983 requires more than Investigator Himan violating a right guaranteed under the U.S. Constitution; that right must also have been clearly established at the time of the alleged violation. *See Saucier v. Katz*, 533 U.S. at 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272.

For a police officer to lose his qualified immunity "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). "The right must be sufficiently particularized to put potential defendants on notice that their conduct is probably unlawful." *Gooden v. Howard County*, 954 F.2d 960, 968 (4th Cir. 1992) (*quoting Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986)). The applicability of qualified immunity is to be assessed at "the time at which the action or inaction occurred." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); *see also Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989) (determination regarding the reasonableness of an officer's use of force should not be judged "with the 20/20 vision of hindsight").

Even if the identification procedure did not comply with the Durham Police Department's own internal standards, there is little controlling authority that Plaintiffs can point to in support of their claim that the presentation of a series of photos violated "clearly

---

importance of resolving immunity questions at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001) (citations omitted).

established statutory or constitutional rights of which a reasonable person would have known." *Simmons v. Poe*, 47 F.3d 1370, 1385 (4th Cir. 1995). The photos were not unduly suggestive for the identification of the Plaintiffs. All of the photos were identical in format and the pictured individuals were similar in age. The photos did not indicate that the police suspected any specific members of the lacrosse team. Likewise, the photos of Plaintiffs Seligmann and Evans had been shown to Mangum previously, as had the photos of many other members of the team. Amended Compl. ¶¶ 93,177, 188, 191-193.

This procedure lacked suggestiveness equal to that of leaving a photo of a single individual on the desk of an undercover police officer, something that the Supreme Court found reasonable under the circumstances in *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977) (stating that "reliability is the linchpin in determining the admissibility of identification testimony"). Nor was the procedure as suggestive as the viewing of a single individual at the police station approximately seven months after a rape, which the Supreme Court likewise found reasonable under the circumstances in *Neil v. Biggers*, 409 U.S. 188, 198, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

Where the procedure was not unduly suggestive of the Plaintiffs, there is little support for the contention that the photo array was necessarily improper. *See, e.g.*, *United States v. Saunders*, 501 F.3d 384, 390 (4th Cir. 2007) (holding that the six-photo array shown to witness was impermissibly suggestive due in part to the fact that the defendant's photo "looked strikingly different"). Investigator Himan cannot have been on notice that the April

4th photo array was "probably unlawful" under the Fourth Amendment, as Plaintiffs now claim. *Gooden*, 954 F.2d at 968 (quotations omitted). As a reasonable officer, Investigator Himan was justified in believing that any questions regarding the alleged suggestiveness of the April 4th photo array would have been resolved in the criminal trial.

## II. INVESTIGATOR HIMAN DID NOT CAUSE THE INDICTMENTS AND THEREFORE CANNOT BE HELD LIABLE FOR PLAINTIFFS' FEDERAL CLAIMS ARISING OUT OF THEM

### A. The Grand Jury Made Its Own, Independent, Decision to Indict Plaintiffs

The decision by the grand jury to indict Plaintiffs is an independent and intervening action that breaks the causal chain between Investigator Himan's purported malfeasance and Plaintiffs' claimed injuries. *See Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996) ("[T]he chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor."); *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996) (even if defendant officer had "set in motion a malicious prosecution . . . , the preliminary hearing broke the 'chain of causation.'").

Plaintiffs' insinuations that the grand jury proceedings were somehow tainted by Investigator Himan's alleged failure to present the grand jury with exculpatory evidence, Amended Compl. ¶¶ 154, 162, 219-19, 241, are legally irrelevant. The Amended Complaint does not allege Investigator Himan perjured himself before the grand jury, only that he

provided "inculpatory testimony" while "knowing" of Plaintiffs' innocence. Comp. ¶¶ 215, 238, 340-45. "[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence . . . or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination". *U.S. v. Calandra*, 414 US 338, 344, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974) (citations omitted); *see also United States v. Waldon*, 363 F.3d 1103, 1109 (11th Cir. 2004) ("The government is under no duty to bring exculpatory evidence to the grand jury's attention.").[3]

### B. The District Attorney, Not Investigator Himan, Was Responsible For Producing Potentially Exculpatory Evidence to Plaintiffs

According to Plaintiffs' Amended Complaint, Investigator Himan provided District Attorney Nifong with all of the purported exculpatory evidence he was aware of. Amended Compl. ¶ 137. Under North Carolina law, the office of the District Attorney is "responsible for the prosecution on behalf of the State of all criminal actions in the Superior Courts of his district, perform such duties related to appeals therefrom as the Attorney General may require, and perform such other duties as the General Assembly may prescribe." N.C. Const. Art. I, § 18(1). The District Attorney has sole authority to prosecute under Art. IV, § 18(1), and thus, as a representative of the State, "decides who shall be initially charged, drafts

---

[3]Although some courts have suggested that an indictment might not break the causal chain if the defendant committed perjury before the grand jury, *see, e.g.*, *Wilkins v. Clary*, No. 3:01CV795, 2005 LEXIS 13398, at * 26 (E.D. Va. July 5, 2005), Plaintiffs make no such allegation.

criminal indictments for submission to the grand jury, prepares information . . . " *State v. Smith*, 359 N.C. 199, 225, 607 S.E.2d 607, 625 (2005) (Brady, J., concurring).  In that role as prosecutor, District Attorney Nifong had the "ultimate responsibility" for disclosing all potentially exculpatory evidence to Plaintiffs.  *Jean v. Collins*, 221 F.3d 656, 661 (4th Cir. 2000) (for purposes of § 1983 claims, "the law has already placed ultimate responsibility upon the prosecutor for disclosing [evidence favorable to the accused, as discussed in] *Brady* . . . to the defense." (*citing Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963))).

As a law enforcement officer in North Carolina, Investigator Himan has "no independent authority to make prosecutorial decisions." *State v. Sturgill*, 121 N.C. App. 629, 638, 469 S.E.2d 557, 562 (1996).  The presentation of evidence to the grand jury, and its decision to indict, was out of Investigator Himan's control.  *See Rhodes v. Smithers*, 939 F. Supp. 1256, 1274 (S.D. W.Va. 1995) ("[W]here an officer presents all relevant probable cause evidence to an intermediary, ***such as a prosecutor, a grand jury***, or a magistrate, the intermediary's independent decision to seek a warrant, issue a warrant, or return an indictment breaks the causal chain and insulates the officer from a section 1983 claim based on lack of probable cause for an arrest or prosecution.") (italics added).

**III. INVESTIGATOR HIMAN CANNOT BE HELD LIABLE UNDER PLAINTIFFS' FEDERAL CLAIMS FOR NOT PROVIDING PURPORTEDLY EXCULPATORY EVIDENCE OR FOR HIS ALLEGED INVOLVEMENT IN THE FABRICATION OF A DNA REPORT**

**A. Investigator Himan is Not Responsible Under North Carolina Law For Providing Exculpatory Evidence to Plaintiffs**

According to Plaintiffs' allegations, Investigator Himan provided all alleged exculpatory evidence he was aware of to the prosecutor, District Attorney Nifong. Amended Compl. ¶ 137. It was District Attorney Nifong, in his role as prosecutor, who is responsible for providing exculpatory evidence to defendants and their counsel. *See* N.C. Const. Art. I, § 18(1). Thus the allegation that Investigator Himan "attempt[ed] to hide exculpatory DNA evidence in hundreds of pages of raw data", Amended Compl. ¶ 491, states no claim against Investigator Himan.

**B. Investigator Himan Had no Connection to, or Role in, The DSI DNA Report Plaintiffs Describe in Paragraph 352 of Their Amended Complaint**

The DNA report was not even prepared until after Plaintiffs Collin Finnerty and Reade Seligmann were indicted, Amended Compl. ¶ 225, so it cannot possibly be a cause of their indictments.

Plaintiffs do not allege that Investigator Himan played a role in the presentation of the DNA report to the grand jury for Evans' indictment. Amended Compl. ¶ 240. Nor could they. Investigator Himan's grand jury testimony was not recorded and is not known. In any

event, Plaintiffs have not alleged that Himan testified falsely or with intent to deceive the grand jury to return an indictment against Evans.

### C. Investigator Himan Complied With His Duties Under State Law, And Therefore Is Entitled to Qualified Immunity For Purposes of Plaintiffs Federal Claims

Even if Investigator Himan was required by his role as a police officer to circumvent the prosecutor and provide all exculpatory evidence directly to defendants or the grand jury, the fact remains that Investigator Himan's actions did not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known" by failing to do so. *Simmons*, 47 F.3d at 1385. There is little legal support for Plaintiffs' implicit argument that a "reasonable person" in Investigator Himan's position would have gone around the prosecutor and directly provided exculpatory evidence to defendants or the grand jury. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (in determining whether a right was clearly established, courts do not ordinarily need to "look beyond the decisions of the Supreme Court, the [local Circuit] court of appeals and the highest court of the state in which the case arose . . . "). "[A] reasonable officer possessing the same information [as Investigator Himan] would have believed his conduct was lawful." *Shaw*, 13 F.3d at 801 (citation omitted).

## IV. INVESTIGATOR HIMAN'S ALLEGED "WITNESS INTIMIDATION" DID NOT AFFECT PLAINTIFFS' RIGHTS

Allegations regarding Investigator Himan allegedly "ambushing" Duke students to get statements regarding the events which occurred at 610 N. Buchanan on March 13, 2006, Amended Compl. ¶ 261, are on their face unrelated to the grand jury indictment. There are no allegations that these interviews produced fraudulent statements or that such statements were used to indict Plaintiffs.

### A. Creation of Crimestoppers Fliers

Claims that Investigator Himan conspired with David Addison to create Crimestoppers posters do not support a cause of action under § 1983. Amended Compl. ¶ 160. Claims based entirely on damage to reputation are not a constitutional deprivation, and are therefore not cognizable. *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991) ("Defamation, by itself is an actionable tort under the laws of most states, but not a constitutional deprivation").

Moreover, Investigator Himan is entitled to qualified immunity for his alleged role in the preparation and distribution of the Crimestoppers flyers, as the distribution of such flyers seeking information about pending criminal investigations does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Simmons*, 47 F.3d at 1385 ("The law is well settled that a public official or employee is entitled to qualified immunity for civil damages unless his conduct violates

clearly established statutory or constitutional rights of which a reasonable person would have known.") (*citing Harlow*, 457 U.S. at 818, 102 S. Ct. at 2738, 73 L. Ed. 2d 396). There is little support for the contention that the preparation and distribution of these flyers is arguably unconstitutional.

For a police officer to lose his qualified immunity "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523. "The right must be sufficiently particularized to put potential defendants on notice that their conduct is probably unlawful." *Gooden*, 954 F.2d at 968 (quotations omitted). Plaintiffs do not, and cannot, point to any particularized right that Investigator Himan should have been on notice regarding the use of such flyers.

Moreover, Plaintiffs' allegations indicate that they would have been arrested and indicted regardless of the flyers. See, e.g., Amended Compl. ¶153 ("The Nifong Statements foreclosed any objective search for truth, and committed Durham Police . . . to arrest three Duke lacrosse players."). To the extent that the Crimestoppers flyers could have caused Plaintiffs' arrest, the theory of liability is so tenuous that Investigator Himan cannot be said to have been on notice that he was violating Plaintiffs' constitutional rights. *See Simmons*, 47 F.3d at 1385-86 (police officer was entitled to qualified immunity where it was not "'clearly established' law that it is unconstitutional for a profile including race, along with other factors, to be included in a warrant application").

### B. The Allegations of "Witness Tampering" Involving Moezeldin Elmostafa Are Unrelated to Plaintiffs' Indictments

Investigator Himan arrested Moezeldin Elmostafa on a valid arrest warrant for larceny. Amended Compl. ¶¶ 248, 252. Plaintiffs claim that the enforcement of this valid warrant was done to push Elmostafa to "change his previous statement exonerating Seligmann." Amended Compl. ¶ 251-52. However there are no allegations that Elmostafa changed his statement, or that any alleged "intimidation" of Elmostafa was a cause of Plaintiffs' indictments.

### C. The Allegations of "Witness Tampering" Involving Kim Pittman Are Unrelated to The Indictments

Kim Pittman was arrested on a valid warrant for a parole violation. Amended Compl. ¶ 257. Plaintiffs allege that Ms. Pittman was told "that if she changed her categorical denial and timeline of events, she would be given a deal on her parole violation." Amended Compl. ¶ 258. However, Plaintiffs do not allege that Ms. Pittman recanted her March 22, 2006, formal written statement, or that she deliberately included false information. See Amended Compl. ¶¶ 256-59.

The conclusory allegation that Investigator Himan and others obtained "false statements that they *could* use to manufacture probable cause, to secure indictments . . . ", Amended Compl. ¶ 353, provides nothing to support the claim that these actions *actually caused* Plaintiffs' indictments. (italics added)

### D. The Allegations of "Witness Tampering" Involving Sgt. John Shelton Are Unrelated to The Indictments

Plaintiffs further allege that Investigator Himan and others "**attempted to intimidate and discredit** Sgt. Shelton . . . for reporting Mangum's recantation of her rape claim." Amended. Compl. ¶ 264. (italics added) Such conclusory allegations of alleged retaliation cannot possibly be a cause of Plaintiffs' indictments.

## V. INVESTIGATOR HIMAN CANNOT BE HELD LIABLE FOR CONSPIRACY UNDER FEDERAL LAW

### A. There is no Constitutional Violation to Support The Federal Conspiracy Claims

Where there has been "'no violation of a federal right, there is no basis for a section 1983 action' or civil conspiracy under § 1983 . . . " *Powell v. Keller*, 5:03CV160-5-MU, 2004 U.S. Dist. LEXIS 30266, at *12 (W.D.N.C. August 18, 2004) (*quoting Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988)). Investigator Himan cannot have acted "in furtherance of the conspiracy" to deprive Plaintiffs of their constitutional rights where he acted to fulfill his duties as a police officer to investigate claims of sexual assault and kidnaping. *See, e.g.*, N.C.G.S.A. §§ 15A-31; *see Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (plaintiff must show that the defendants acted "jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in . . . deprivation of a constitutional right").

**B.   Investigator Himan's Actions Cannot be Based on an Improper Discriminatory Animus When Duke Students Are Not a Protected Class**

Duke students are not members of a protected class for purposes of § 1985. *See Bey v. Celebration Station*, 3:02CV461, 2006 U.S. Dist. LEXIS 72479, at *9-10 (W.D.N.C. Sept. 29, 2006) (noting that § 1985(2) and § 1985(3), which cover general equal protection violations, "require proof of a racial or otherwise class-based discriminatory animus behind the defendant's actions") (citations omitted).  Unlike race, gender, national origin or religion, Duke students do not belong to any single identifiable class that might be considered protected.  "[N]either the Supreme Court nor the Fourth Circuit has identified any classes other than racial or religious classes." *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985) (military prisoners not "protected class").  *See also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269, 113 S. Ct. 1233, 122 L. Ed. 2d 640 (1993) (holding that women seeking an abortion were not a protected class for purposes of § 1985(3)).

As Plaintiffs are not part of such a protected class, Investigator Himan and other defendants cannot have, as a matter of law and logic, have acted with the requisite discriminatory purpose. *See Fletcher v. Nebrasksa*, 7:06cv5001, 2007 U.S. Dist. LEXIS 14465, at *5-6 (D. Neb. February 28, 2007) ("[a] review of the plaintiff's pleadings reveals that the plaintiff has asserted no racial or other class-based invidiously discriminatory animus.  Therefore, the plaintiff has not alleged a claim on which relief may be granted pursuant to 42 U.S.C. § 1985(3).").  The Supreme Court has stated that "discriminatory

purpose . . . implies more than intent as volition or intent as awareness of the consequences." *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279, 99 S. Ct. 2282, 60 L. Ed. 870 (1979) (internal quotation marks omitted). "[I]t implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* The required "requisite intent in this context is more than simple awareness of the course of action being taken." *Id.*

Plaintiffs baldly assert that "Defendants engaged in overt acts that were motivated by invidious racial animus, Amended Compl. ¶ 463, but do not allege that ***Plaintiffs*** are part of a protected class. An allegation of generalized racial animus is insufficient where the elements of a claim for conspiracy in violation of § 1985 "require proof of a racial or otherwise class-based discriminatory animus ***behind the defendant's actions***". *Bey*, 2006 U.S. Dist. LEXIS 72479, at *9-10 (italics added).

### C. There Were Valid and Extant Criminal Charges Against Moezeldin Elmostafa And Kim Pittman, Therefore Plaintiffs Cannot Establish "Force and Intimidation" For Purposes of § 1985(2)

A claim for conspiracy in violation of § 1985 requires "two or more persons . . . conspire to deter, by force, intimidation, or threat, any party or witness . . . from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully . . . " § 1985(2).[4] This standard cannot be met here, where the witnesses, Moezeldin Elmostafa

---

[4] Claims under § 1985(2) are intended "to protect against direct violations of a party or witness's right to testify in federal court." *Dooley v. United Technologies Corp.*, No. 91-

and Kim Pittman, were arrested on a valid warrants. Amended Compl. ¶¶ 248, 252, 257.

Investigation and arrests for "legal claims possessing a reasonable basis in law and fact" such

as these "do not constitute the 'force or intimidation' necessary to satisfy [a claim for

conspiracy pursuant to] § 1985(2)." *Raiser v. Kono*, No. 06-4243, 2007 U.S. App. LEXIS

16120, at * 12 (10th Cir. July 5, 2007) (issuance of a bench warrant as a result of defendant's

failure to appear "cannot support a § 1985 claim") (*citing Timmerman v. U.S. Bank, N.A.*,

483 F.3d 1106, 1124 (10th Cir. 2007)).

## VI. INVESTIGATOR HIMAN FULFILLED HIS DUTY AS A PUBLIC OFFICIAL AND POLICE OFFICER UNDER NORTH CAROLINA LAW AND THEREFORE CANNOT BE HELD LIABLE ON PLAINTIFFS' STATE LAW CLAIMS

Under North Carolina law, a public official performing discretionary acts can be liable

for wrongdoing only (1) if the wrongdoing occurs outside the scope of official authority or

if the conduct is (2) intended to be prejudicial or injurious to the Plaintiff or (3) malicious or

corrupt. David A. Logan and Wayne A. Logan, *North Carolina Torts* § 107 (2d Ed. 2004);

*Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996).

As a police officer employed by a North Carolina municipality engaged in the

investigation of an alleged crime, Investigator Himan is a public official for purposes of the

public official immunity doctrine. *See Campbell v. Anderson*, 156 N.C. App. 371, 376 576

S.E.2d 726, 730 (2003). The law presumes that "in the performance of his official duties [the

2449, 1992 U.S. Dist. LEXIS 8653, at *37 (D.C. Cir. June 17, 1992) (quotations omitted).
As this matter pertains to a state prosecution, § 1985(2) is inapplicable.

officer] 'acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." *Green v. Town of Valdese*, 306 N.C. 79, 82, 291 S.E.2d 630, 632 (1982). It is the Plaintiffs' burden to overcome this presumption and "make a prima facie showing that the official's actions (under the color of state authority) are sufficient to pierce the cloak of official immunity." *Moore*, 124 N.C. App. at 42, 476 S.E.2d at 421. Plaintiffs fail to satisfy this burden and, as such, their state law claims must be dismissed.

Plaintiffs' claims of negligence (Count 16) and negligent infliction of emotional distress (Count 18) must be dismissed, as such negligent conduct fails to convey the intent, malice or corruption necessary to overcome public official immunity.

Plaintiffs' remaining state law claims, for malicious prosecution (Count 13), common law obstruction of justice (Count 14) and intentional infliction of emotional distress (Count 15) likewise fail to overcome Investigator Himan's absolute immunity. Plaintiffs' allegations do not create a plausible inference that Investigator Himan acted outside the scope of his employment, acted corruptly (e.g., for personal benefit), or that he "intended his actions to be prejudicial or injurious" to Plaintiffs. *Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995). Investigator Himan's duty as a police officer is to investigate claims of sexual assault and kidnaping made by anyone within the jurisdiction. *See, e.g.*, N.C.G.S.A. §§ 15A-31. This is precisely what Plaintiffs' allegations show he did. According to the Amended Complaint, Investigator Himan was assigned to the investigation

by Sargent Gottlieb and was told to report both to District Attorney Nifong and up the Durham Police chain of command. Amended Compl. ¶¶ 24, 84, 133, 136-37. Investigator Himan did so, providing all evidence he uncovered to District Attorney Nifong. Amended Compl. ¶¶ 24, 84, 133, 136-37.

Plaintiffs detail a host of alleged improper actions Investigator Himan took during the course of the investigation, but they fall short of pleading specific facts to support a claim that he acted outside the scope of his authority, was corrupt or "intended . . . to be prejudicial or injurious" to Plaintiffs. *Marlowe*, 119 N.C. App. at 128, 458 S.E.2d at 223 (granting summary judgment dismissing claims against deputy sheriff in his individual capacity for false imprisonment and false arrest based on public official immunity where evidence showed that "[a]t most" plaintiff had presented evidence showing that defendant "negligently believed he had probable cause to arrest plaintiffs"); *see also Jetton v. Caldwell County Board of Education*, No. COA05-1389, 2007 N.C. App. LEXIS 1699, at *17-18 (August 7, 2007) ("While Defendants may not have always acted in a professional manner, or treated Plaintiff with patience, respect or kindness, there is no evidence they intended to hurt Plaintiff. Any alleged harm resulting to Plaintiff from Defendants' allegedly improper conduct was simply a collateral consequence").

KCBC:242154

**B.      Investigator Himan Did Not Owe Plaintiffs a Duty For Purposes of Their Negligence Claim**

Even if Plaintiffs' negligence claims against Investigator Himan somehow pierced the cloak of public official immunity, they still fail.  Actionable negligence occurs only where there is "a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances they were placed." *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 490 (2002) (*quoting Mattingly v. N.C.R.R. Co.*, 253 N.C. 746, 750, 117 S.E.2d 844, 847 (1961)).

No reported North Carolina decision addresses the question whether a law enforcement officer's alleged negligence in the course of the investigation of a crime is an actionable tort.  However other jurisdictions have held that no such cause of action exists. *See Fondren v. Klickitat County*, 905 P.2d 928 (Wash. App. 1995) (a claim for negligent investigation is not cognizable under Washington law); *Wimer v. State of Idaho*, 841 P.2d 453 (Idaho 1993) (holding that a claim for negligent investigation does not exist and stating that to hold otherwise would "impair vigorous prosecution and have a chilling effect on law enforcement"); *Lewis v. McDorman*, 820 F. Supp. 1001 (W.D. Va. 1992), *aff'd*, 28 F.3d 1210 (4th 1994) (police officers owe no duty of reasonable care in conducting investigations).  As a police officer for a municipal law enforcement agency, Investigator Himan owed a duty to the public, not Plaintiffs in particular.  By investigating Mangum's claims, including searching for suspects and physical evidence, Investigator Himan was fulfilling this duty.

There is no legal basis for Plaintiffs' allegation that he owed them a separate duty in conducting his investigation.

### C. Investigator Himan Did Not Initiate The Prosecution For Purposes of the Malicious Prosecution Claim

Investigator Himan cannot be said to have "initiated" the criminal action against Plaintiffs, and carried out the prosecution, when his actions were performed at the behest of, and under the direction of, District Attorney Nifong. *See, e.g.*, *Shillington v. K-Mart Corp.*, 102 N.C. App. 187, 402 S.E.2d 155 (1991) (malicious prosecution claim was properly dismissed where defendant corporation's agents provided information to police officer that led to plaintiff's arrest, but did not arrest plaintiff, press charges or appear before the magistrate).

A valid state law claim of malicious prosecution has four elements: "'(1) the defendant initiated the earlier proceeding; (2) malice on the part of the defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff.'" *Beroth Oil Co. v. Whiteheart*, 173 N.C. App. 89, 99, 618 S.E.2d 739, 747 (2005) (*quoting Best v. Duke Univ.*, 337 N.C. 742, 749, 448 S.E. 2d 506, 510 (1994), *appeal dismissed, disc. rev. denied*, 360 N.C. 531, 448 S.E.2d 506 (2006)).

According to the Amended Complaint, Investigator Himan was assigned to this matter by Sgt. Gottlieb. Amended Compl. ¶¶ 24, 84. Investigator Himan investigated the matter

and provided all evidence to the district attorney who made the decision to prosecute. Amended Compl. ¶ 137. As a law enforcement officer, Investigator Himan had "no independent authority to make prosecutorial decisions," *Sturgill*, 121 N.C. App. at 638, 469 S.E.2d at 562, and therefore should not be held liable for how these decisions were made. *See, e.g.*, *Eubanks v. Gerwen*, 40 F.3d 1157, 1160-61 (11th Cir. 1994) (affirming summary judgment for arresting officers on dismissal of claim for malicious prosecution in violation of § 1983 where it was "clear that none of the defendants were responsible for the decision to prosecute, and none of them improperly influenced the decision to prosecute."). No North Carolina decision has held that a police officer initiates a prosecution under such circumstances.

### D. Investigator Himan's Alleged Actions Do Not Support A Claim For Obstruction of Justice

Investigator Himan's actions, as alleged in the Amended Complaint, could not have impeded or hindered Plaintiffs' defense of their claims where District Attorney Nifong directed the investigation and was responsible for the prosecution. Thus, Investigator Himan's actions cannot be said to have prevented, obstructed, impeded or hindered public justice. *See, e.g.*, *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 33, 588 S.E.2d 20, 30 (2003) (affirming summary judgment on obstruction of justice claim where "plaintiff presented no evidence that her case was in some way judicially prevented, obstructed, impeded or hindered by the acts of defendants"). Investigator Himan did not

control, or attempt to control, Plaintiffs' prosecution or the efforts to seek indictments against them.  *See, e.g.*, *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983) (finding judge removable for obstruction of justice where he unsuccessfully called on another judge to delay grand jury investigation); *State v. Rogers*, 68 N.C. App. 358, 387-88, 315 S.E.2d 492, 512-13 (1984) (finding sufficient evidence to sustain conviction of attorney for attempting to interfere with a witness where the attorney engaged in overt acts designed to induce witness to leave court so that attorney could obtain a dismissal of the charges against his client).  The facts as alleged by Plaintiffs do not support such a claim.

### E.  Investigator Himan's Alleged Actions do Not Support a Claim of Intentional Infliction of Emotional Distress

Investigator Himan's alleged "intimidation" of witnesses and manipulation of identification procedures "with the intention of perpetuating criminal proceedings against Plaintiffs", Amended Compl. ¶ 511, does not qualify as sufficiently extreme or outrageous conduct to support a claim of intentional infliction of emotional distress.

To establish a valid claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct; (2) which is intended to cause and does cause; (3) severe and disabling emotional distress.  *Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981).  For conduct to qualify, it must be "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  *Bradley v. Lowe's Cos.*, 3:05CV488-MU,

2007 U.S. Dist. LEXIS 69872, at *10 (W.D.N.C. Sept. 20, 2007) (*quoting Briggs v. Rosenthal*, 327 S.E.2d 308, 311 (N.C. App. 1985). Plaintiffs must allege facts that, if later proved, "exceed all bounds of decency," *Peck v. Town of Lake Lure*, 2001 U.S. Dist. LEXIS 13179, * 15 (W.D.N.C. Feb. 23, 2001) (internal quotations omitted), or are "regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (*quoting Wagoner v. Elkin City School Bd. of Educ.*, 113 N.C. App. 579, 440 S.E.2d 119, 123 (N.C. Ct. App. 1994).

Plaintiffs' alleged behavior is not sufficiently extreme or atrocious. Plaintiffs do not allege that Investigator Himan threatened or used force against them, only that he aggressively investigated Ms. Mangum's claims. *See, e.g., Dickens v. Puryear*, 302 N.C. 437, 447 276 S.E.2d 325, 332 (1981) (valid claim of intentional infliction of emotional distress where defendants threatened plaintiff's life, pointed a gun between his eyes, beat him with a nightstick and threatened him with castration). It does not compare with a husband's knowing of and intentionally refusing to pay a tax deficiency as part of a separation agreement, resulting in foreclosure of the wife's home, *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979), or with a private citizen placing posters of plaintiff in public places, approaching other citizens, including teachers and students in high school within the jurisdiction where defendant was a superintendent, and reading or showing portions of papers about the plaintiff's *nolo contendere* plea while a college student decades earlier. *Woodruff v. Miller*, 64 N.C. App. 364, 307 S.E.2d 176 (1983).

**F.     Plaintiffs Do Not State a Valid State Law Claim For Civil Conspiracy Where Investigator Himan's Actions Were a Good Faith Attempt to Fulfill His Duties**

Investigator Himan cannot be part of a conspiracy to do an unlawful act or to do a lawful act in an unlawful way by simply fulfilling his duties as a police officer.  As detailed above, Investigator Himan investigated the criminal charges against Plaintiffs and presented all evidence, including purportedly exculpatory evidence, to prosecutors.  Investigator Himan fulfilled his duty as a police officer to investigate claims of sexual assault and kidnaping made by anyone within the jurisdiction.  *See, e.g.*, N.C.G.S.A. §§ 15A-31.  As a law enforcement officer, Investigator Himan has "no independent authority to make prosecutorial decisions."  *Sturgill*,  121 N.C. App. at 638, 469 S.E.2d at 562.

## CONCLUSION

The allegations in Plaintiffs' Amended Complaint, once stripped of their hyperbole and generalized assertions of bad faith, allege that Investigator Himan was assigned to investigate an allegation of rape, participated in the investigation consistent with his duty as a law enforcement officer  and then turned over all evidence he uncovered to District Attorney Nifong.  Although Plaintiffs detail a host of purportedly improper actions by Investigator Himan, they do not make specific allegations that would support a viable cause of action against him under federal or state law.

This the 15th day of January, 2008.

                                            KENNON, CRAVER, BELO,
                                            CRAIG & MCKEE, PLLC

By:  <u>*/s/ Joel M. Craig*</u>
         North Carolina State Bar No. 9179
         Attorneys for Defendant Benjamin
         Himan
         4011 University Drive, Suite 300
         P.O. Box 51579
         Durham, NC 27717-1579
         (919) 490-0500
         jcraig@kennoncraver.com

KCBC:242154

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that I electronically filed the foregoing Defendant Benjamin Himan's Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Christopher N. Manning
Robert M. Cary
Charles Davant, IV
Brendan V. Sullivan, Jr.
Williams & Connolly LLP
725 12th St. N.W.
Washington, DC 20005
*Attorneys for Plaintiffs Collin Finnerty and David F. Evans*

David S. Rudolf
Rudolf, Widenhouse & Fialko
312 W. Franklin St.
Chapel Hill, NC 27516
*Attorney for Plaintiff Reade Seligmann*

James B. Craven, III
P.O. Box 1366
Durham, NC 27702
*Attorney for Defendant Michael B. Nifong*

*Robert James King, III*
Kearns Davis
Brooks, Pierece, McClendon, Humphrey & Leonard, LLP
P.O. Box 26000
Greensboro, NC 27420-6000
*Attorneys for Defendants DNA Security, Inc. and Richard Clark*

Nicholas J. Sanservino
Robert A. Sar
Ogletree Deakins Nash Smoak & Stewart, P.C.
P.O. Box 31608
Raleigh, NC 27622
*Attorneys for DNA Security, Inc.*

KCBC:242154

Reginald B. Gillespie, Jr.
Faison & Gillespie
P. O. Box 51729
Durham, NC 27717-1729
*Attorney for Defendant City of Durham, North Carolina*

Patricia P. Kerner
Troutman Sanders, LLP
P.O. Box 1389
Raleigh, NC 27602-1389
*Attorney for Defendants Beverly Council, Jeff Lamb, Michael Ripberger, Ronald Hodge, Steven W. Chalmers and Patrick Baker*

James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
P.O. Box 52396
Durham, NC 27717-2396
*Attorney for Defendant David Addison*

Edwin M. Speas, Jr.
Poyner & Spruill LLP
P.O. Box 10096
Raleigh, NC 27605-0096
*Attorney for Defendant Mark Gottlieb*

This the 15th day of January, 2008.

KENNON, CRAVER, BELO,
CRAIG & MCKEE, PLLC

By:     */s/ Joel M. Craig*
North Carolina State Bar No. 9179
Attorneys for Defendant Benjamin Himan
4011 University Drive, Suite 300
P.O. Box 51579
Durham, NC 27717-1579
(919) 490-0500
jcraig@kennoncraver.com