## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID F. EVANS, et al.,

        Plaintiffs,

        v.                           Case No. 1:07CV739

CITY OF DURHAM, N.C., et al.,

        Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANT
## MARK GOTTLIEB'S MOTION TO DISMISS

### INTRODUCTION

Defendant Mark Gottlieb ("Sgt. Gottlieb") is a member of the Durham Police Department (DPD). At all times pertinent to this lawsuit, he was a first-line supervisor for the DPD assigned to investigate violent crimes, and held the rank of Sergeant. As a member of a law enforcement agency, Sgt. Gottlieb has always been careful, as he was in this case, to investigate alleged violent crimes fairly and thoroughly without regard for the social status, race or gender of the victim or perpetrator of the alleged crime.

This case arises in the aftermath of the decision of Duke University lacrosse players to hire two "exotic dancers" to perform for them at a party at 610 North Buchanan Street in Durham on the evening of March 13, 2006, and allegations by one of those dancers, Crystal Mangum, that she was raped and sodomized by three persons in attendance at that event. After Sgt. Gottlieb and Investigator Benjamin Himan

1

("Investigator Himan") conducted a preliminary investigation and shared the results of that investigation with Durham County District Attorney Michael Nifong (the "District Attorney"), the District Attorney decided to charge, and a grand jury in Durham County decided to indict, the three Plaintiffs. Plaintiffs were released on bail and they never had to stand trial for these charges because all charges were dismissed in April 2007 and Plaintiffs were publicly declared innocent.

Plaintiffs now seek to recover civil damages against Sgt. Gottlieb for his role in the investigation. In requesting this Court to allow them to pursue civil claims against a police investigator under the circumstances of this case, Plaintiffs seek an unwarranted expansion of well-established bounds of civil liability for law enforcement officers under both federal and North Carolina state law.

First, under clear and well-settled Fourth Circuit jurisprudence, a law enforcement officer who participates in a prosecution of a criminal defendant that results in an indictment exhausts any duty he owes to the criminal defendant under federal Section 1983 when he shares all relevant information learned in his investigation with the prosecutor. The prosecutor is then entrusted by law with the duty to determine whether probable cause exists to seek an indictment.

Here, the Amended Complaint affirmatively and unequivocally alleges that Sgt. Gottlieb and Investigator Himan met with the District Attorney and gave him a thorough reckoning of everything they had learned in their investigation, including all exculpatory evidence. The District Attorney then took part in all material aspects of the continuing

investigation. The independent decisions of the District Attorney to charge Plaintiffs --
and the grand jury to indict them -- fully insulate Sgt. Gottlieb from any federal civil
liability to Plaintiffs under Section 1983, particularly when the Amended Complaint
affirmatively alleges that Sgt. Gottlieb shared all material information with the District
Attorney.

Even if Sgt. Gottlieb engaged in conduct that somehow violated Plaintiffs'
Constitutional rights, he is entitled to qualified immunity under federal civil rights law
unless the rights in question were so clearly established that a reasonable officer in Sgt.
Gottlieb's position would have known his conduct was unconstitutional.  In light of clear
case law establishing that an officer is not liable under Section 1983 when he discloses all
relevant information to the prosecutor and the prosecutor makes an independent charging
decision, Sgt. Gottlieb is entitled to the protection of the qualified immunity doctrine
because he had reason to believe he satisfied any duties he owed to Plaintiffs when he
shared all relevant information with the District Attorney.

Second, a public official in North Carolina is clothed with immunity from suit
under state law unless the official acts corruptly, with malice, or outside the scope of his
duties.  Although Plaintiffs claim that Sgt. Gottlieb took steps in the course of his
investigation that were allegedly improper in response to pressure from his superiors to
resolve a case that had created a public outcry in the Durham community, there are no
allegations in the Amended Complaint from which this Court could plausibly infer that
Sgt. Gottlieb intended to injure or cause the Plaintiffs harm, that he acted corruptly for his

own personal benefit, or that he engaged in conduct that took place outside the course and scope of his official duties with the DPD. Under these circumstances, Sgt. Gottlieb as a public official employed by the city of Durham is entitled to the protection of the public official immunity doctrine, and all claims against him under North Carolina state law must be dismissed.

For reasons more fully discussed below, Sgt. Gottlieb respectfully requests the Court to dismiss all claims asserted against him in the Amended Complaint (specifically, Claims 1-3, 7-10, 13-16, and 18).

## THE STANDARD FOR EVALUATING THIS MOTION TO DISMISS

The United States Supreme Court has recently clarified that a court's duty when considering a motion to dismiss under Rule 12(b)(6) is to weed out merely "conceivable" claims against a defendant from those that are "plausible" on their face. *See Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1973-74, 167 L. Ed. 2d 929 (2007). In *Twombly*, *supra*, the Supreme Court reviewed a complaint alleging violations of the Sherman Act. The Court held that the plaintiffs' allegations of an agreement in violation of that Act were conclusory or just conceivable, not plausible, and thereby warranted dismissal. *Id.* at 1974 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

The Court stated that often-quoted language from *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957), asserting that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" was "not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S. Ct. at 1969. The Court reasoned:

> On such a focused and literal reading of *Conley's* "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery. . . . Seeing this, a good many judges and commentators have balked at taking the literal terms of the *Conley* passage as a pleading standard. . . . To be fair to the *Conley* Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.

*Id.* at 1968-69 (internal citations omitted).

Even before *Twombly,* Fourth Circuit jurisprudence required the plaintiff "to allege *facts* sufficient to state all the elements of [their] claim." *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (2003). In *Bass*, the Fourth Circuit affirmed the district court's dismissal of a claim alleging that plaintiff had been subjected to a "hostile

work environment" because there were not sufficient factual allegations to support the conclusory claims in the plaintiff's complaint:

> While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief. The words "hostile work environment" are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage.

*Bass*, 324 F.3d at 765; *see also Gladden v. Winston Salem State Univ.*, 495 F. Supp. 2d 517, 520-21 (M.D.N.C. 2007) ("The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion."). Under *Twombly* and *Bass*, this Court must determine whether the Amended Complaint alleges *facts* that plausibly support the legal claims asserted against Sgt. Gottlieb.

## THE FACTUAL ALLEGATIONS IN THE COMPLAINT RELATED TO THE CLAIMS AGAINST SGT. GOTTLIEB

The factual allegations that concern purported conduct of Sgt. Gottlieb (which must be accepted as true for purposes of the present motion to dismiss only) may be summarized as follows:

On March 15, 2006, Sgt. Gottlieb received for assignment the DPD's investigation of allegations by Crystal Mangum that she had been raped at 610 North Buchanan Street in Durham on the evening of March 13, 2006. (Amend. Compl. ¶ 81). Sgt. Gottlieb assigned Investigator Himan to assist him in the investigation. (Amend. Compl. ¶ 84). Ms. Mangum had made these allegations initially on the evening of March 13, first to

employees at a mental health facility and later to medical personnel at Duke Medical Center. (Amend. Compl. ¶'s 40 & 58).

Thirty-two days later, on April 17, 2006, the grand jury in Durham County indicted Plaintiffs Seligmann and Finnerty for first degree rape and kidnapping. Plaintiff Evans was indicted on May 15, 2006. (Amend Compl. ¶238). The investigation conducted by the DPD during the 32-day period before the first indictments were returned included interviewing Ms. Mangum (Amend. Compl. ¶ 91), executing a search warrant at 610 North Buchanan St. and interviewing the lacrosse players who resided there (Amend. Compl. ¶ 108), executing a non-testimonial identification order requiring the members of the lacrosse team to submit to physical examinations and photographs (Amend. Compl. ¶ 120), and conducting a photographic presentation with Ms. Mangum using photographs of the members of the lacrosse team (Amend. Compl. ¶ 188). The execution of the nontestimonial identification order and the photographic presentation were conducted with the participation or direction of the District Attorney's office. (Amend. Compl. ¶'s 120, 133-34, 181).

The investigation produced both inculpatory and exculpatory information. Information supporting Ms. Mangum's claim that she had been raped included her statements to the workers at the mental health facility, to medical personnel at Duke Medical Center and to Sgt. Gottlieb and other members of the DPD. (Amend. Compl. ¶'s 48, 58, 61, 92). Information suggesting that Ms. Mangum had not been raped included the inconsistencies in Ms. Mangum's allegations, a statement by the other dancer that Ms.

Mangum's claims were a "crock," Ms. Mangum's failure to identify her assailant in an initial photographic identification procedure, and the absence of physical or medical proof of rape other than "diffuse edema of the vaginal walls." (Amend. Compl. ¶'s 72, 87, 94, 172, 224).

Plaintiffs have alleged that Sgt. Gottlieb provided the District Attorney with a complete and fair report of the results of the DPD's investigation. At paragraph 137 of their Amended Complaint Plaintiffs allege that on March 27, 2006, Sgt. Gottlieb and Investigator Himan "detail[ed]" to the District Attorney "the extraordinary evidence of innocence and the fatal defects in Mangum's claims, including, for example, the numerous contradictions and inconsistencies in Mangum's accounts of events, the fact that Pittman had called Mangum's rape a 'crock,' that Mangum had already viewed several photo arrays and failed to identify any of her purported attackers, and that the three lacrosse team captains had voluntarily cooperated with police and denied that the alleged attack occurred." (Amend. Compl. ¶ 137). Moreover, Plaintiffs do not allege that Sgt. Gottlieb withheld any information, exculpatory or not, from the District Attorney on any later occasion.

According to the Amended Complaint, District Attorney Nifong decided to use Ms. Mangum's rape allegations for his own personal political gain. (Amend. Compl. ¶ 130). The Amended Complaint alleges that District Attorney Nifong and others (but not Sgt. Gottlieb) made a series of public statements that had the effect of creating a public outcry in the Durham community. (Amend. Compl. ¶'s 144-47, 159-60). Sgt. Gottlieb's

superiors allegedly pressured him and Investigator Himan to expedite identifications and arrests in response to this public pressure. (Amend. Compl. ¶ 179). In a purported response to this pressure, Sgt. Gottlieb and Investigator Himan met with the District Attorney and designed a new photographic presentation procedure that Plaintiffs assert was unduly suggestive. (Amend. Compl. ¶ 180). Through this procedure, Ms. Mangum identified Plaintiffs Seligmann and Finnerty with "100%" certainty and Plaintiff Evans with "90%" certainty as her assailants. (Amend. Compl. ¶'s 191-93).

On April 17, 2006, the District Attorney "successfully obtained a grand jury indictment" against Mr.Finnerty and Mr. Seligmann for first degree rape, first degree sex offense and kidnapping. (Amend. Compl. ¶'s 212-17). Sgt. Gottlieb "provided inculpatory testimony" before the grand jury. (Amend. Compl. ¶ 215). Though grand jury testimony is not recorded, Plaintiffs allege, on information and belief, that Sgt. Gottlieb did not tell the grand jury that Ms. Mangum had provided the DPD inconsistent and contradictory accounts of the events at 610 North Buchanan. (Amend. Compl. ¶ 218).

Plaintiff Evans was indicted by the grand jury on May 15, 2006, but there is no allegation that Sgt. Gottlieb testified against Evans before the grand jury. (Amend. Compl. ¶ 238). In addition to Mangum's "90%" identification of Mr. Evans, there were fragments found on fingernail specimens taken from 610 North Buchanan that were consistent with Evans' DNA. This DNA information had been presented to the District Attorney on May 10, 2006. (Amend. Compl. ¶ 224) Additional allegations concerning alleged conduct of Sgt. Gottlieb that purportedly occurred before the indictment was

returned are that he instructed Investigator Himan to arrest Kim Pittman, the other "dancer," on an outstanding warrant in an effort to tamper with a witness who provided evidence helpful to the defense (Amend. Compl. ¶ 87-88); that he and Himan tried to conduct "ambush" interviews of Duke lacrosse players on April 13, 2006 (Amend. Compl. ¶ 263); and that he agreed not to take notes from his participation in meetings in which a DNA expert reported exculpatory results from DNA tests (Amend. Compl. ¶ 209).

The only post-indictment allegations contained in the Amended Complaint specifically concerning Sgt. Gottlieb are that in July 2006 he created an "after-the-fact" report of his earlier investigative activities "fabricated to cover-up inconsistencies and contradictions in Ms. Mangum's actual statements"( Amend. Compl. ¶ 266-67) and that he was ordered by the District Attorney to execute an outstanding warrant for the arrest of a witness who provided alibi information favorable to the Plaintiffs.[1] (Amend. Compl. ¶ 248) Plaintiffs do not allege that the alleged fabricated report was used to further the prosecution of charges against them or that the arrested witness recanted his alibi statement favorable to the Plaintiffs at any time.

Plaintiffs, of course, were never tried for the crimes for which they were indicted. Rather, due in part to information gathered by the DPD, the Attorney General dismissed all charges against Plaintiffs and declared them innocent in a statement issued April 11, 2007. (Amend. Compl. ¶ 324)

---

[1] Except for two weeks in October of 2006, Sgt. Gottlieb was on medical leave from the DPD from July 2006 until January 2007.

<u>**ARGUMENT**</u>

**I.    PLAINTIFFS' SECTION 1983 CLAIMS AGAINST SGT. GOTTLIEB SHOULD BE DISMISSED (CLAIMS 1-3)**

Plaintiffs' first three causes of action assert Section 1983 claims against Sgt. Gottlieb in his individual capacity.[2]  The first claim against Sgt. Gottlieb alleges that as a result of their "wrongful prosecution" Plaintiffs were "seized" and thereby deprived of their Fourth and Fourteenth Amendment rights (Amend. Compl. ¶ 335); the second claim alleges that Sgt. Gottlieb participated in the concealment of "critical exculpatory DNA evidence and expert reports"( Amend. Compl. ¶'s 341-43) and thereby deprived them of "their rights under the Fourth and Fourteenth Amendments" (Amend. Compl. ¶ 347); and the third claim alleges that Sgt. Gottlieb intimidated potential defense witnesses and manipulated photo arrays to secure false identifications (Amend. Compl. ¶'s 353-54) and thereby deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendments. (Amend. Compl. ¶ 356).

These claims must all be dismissed.  While these three claims are separately stated they simply present different aspects of the same alleged Constitutional harm, unreasonable seizure in violation of the Fourth Amendment.  The Amended Complaint fails to state a claim for relief against Sgt. Gottlieb under Section 1983, however,

_____

[2]  Plaintiffs have also asserted claims against Sgt. Gottlieb in his "official" capacity.  These claims are the equivalent of claims against Sgt. Gottlieb's employer, the City of Durham.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66, 168 n.14 (1985)( Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent).   Plaintiffs' claims against Sgt. Gottlieb in his "official capacity" must be dismissed for reasons set forth in the Memorandum of the City of Durham.

because: (1) the decision to "prosecute" charges against the Plaintiffs was made by the District Attorney and a duly impaneled grand jury, not Sgt. Gottlieb; (2) Sgt. Gottlieb exhausted any duty he might have owed to the Plaintiffs when he disclosed all relevant information to the District Attorney; (3) the allegedly suggestive identification procedures and improper witness questioning were not used against Plaintiffs in any criminal trial; (4) Sgt. Gottlieb is absolutely immune from any liability for his testimony before the grand jury; (5) any conduct that took place after Plaintiffs were indicted or that otherwise was not material to the decision to prosecute them could not have caused them Constitutional injury; and (6) to the extent, if any, Plaintiffs did suffer some Constitutional injury, any duty owed by Sgt. Gottlieb to the Plaintiffs was not clearly established and therefore he is immune from liability under the doctrine of qualified immunity.

### A. This Court Must Determine Whether Sgt. Gottlieb "Seized" Plaintiffs in Violation of Their Fourth Amendment Rights

Section 1983 is not "a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). The Constitution does not require "an error free investigation" of criminal charges. *Id*. at 146, 99 S Ct. at 2965.

Plaintiffs purport to ground their Section 1983 claims on violations of the Fourth and Fourteenth Amendments to the U.S. Constitution. It is not clear if, by their reference to the Fourteenth Amendment, Plaintiffs are asserting specific "due process" violations or

if they reference the Fourteenth Amendment as the vehicle through which violations of the Fourth Amendment are made applicable to state actors. However, the United States Supreme Court and the Fourth Circuit have made clear that when plaintiffs seek to recover damages under Section 1983 for injuries they sustained before any criminal trial occurred, the sole source of Constitutional protection for them is the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 274, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it").

The Fourth Circuit, following *Albright*, has ruled that "[w]hat is conventionally referred to as a "Section 1983 malicious prosecution" action is nothing more than a "§ 1983 claim arising from a *Fourth* Amendment violation." *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000)(emphasis supplied). The Court in *Lambert*, following *Albright,* refused to allow a Section 1983 malicious prosecution lawsuit based upon substantive due process rights applied to state actors under the Fourteenth Amendment. *See Lambert, supra* at 261. Under *Albright* and *Lambert*, Plaintiffs must allege facts giving rise to a plausible claim that Sgt. Gottlieb engaged in an unconstitutional "seizure" that deprived them of a liberty interest protected by the Fourth Amendment, or their Section 1983 claims must be dismissed. They have not done so, and their claims must fail.

**B. Plaintiffs' Constitutional Rights Were Not Affected by Alleged Suggestive Identification Procedures or Witness Tampering Because Criminal Charges Against Them Were Dismissed Before Trial**

Plaintiffs assert that Sgt. Gottlieb engaged in a photographic presentation procedure that secured "false witness identifications" (Amended Complaint ¶ 354), and that he participated in acts that they characterize as witness intimidation or tampering. (Amend. Comp. ¶'s 87-88, 248, 264). Assuming, for purposes of this motion only, that the photographic procedure was unduly suggestive or that Sgt. Gottlieb did "tamper" with defense witnesses, Plaintiffs did not suffer any Fourth Amendment liberty deprivation because this conduct affects their Constitutional rights only if the conduct impacts a criminal trial (and a criminal trial never took place in this case).

The Fourth Circuit specifically held in *Antonio v. Moore*, 174 Fed. Appx. 131, 135 (4th Cir. 2006), that the Constitutional rights of an accused are violated by an unduly suggestive identification procedure *only if the tainted evidence is used in the plaintiff's criminal trial.* Since all charges against Plaintiffs were dismissed -- and the Plaintiffs were fully exonerated and declared innocent -- *before* a criminal trial could be held the identification procedures violated no Constitutional right of the Plaintiffs regardless of whether they were unduly suggestive and any Section 1983 claims based upon such procedures must be dismissed.[3]

---

[3] It should be noted that courts in North Carolina have upheld *convictions* of criminal defendants who were identified in procedures similar to those described in the Amended Complaint. *See State v. Daniels*, 2007 N.C. App. LEXIS 24 (Jan. 2, 2007)(upholding juvenile delinquency conviction based upon the robbery victim's 80 to 90 percent certain identification of the juvenile suspect by observing a page from the juvenile defendant's sixth grade year book containing

The Court in *Antonio* analyzed a trio of U.S. Supreme Court decisions from 1967 that created a framework of rules guiding the exclusion from evidence in a criminal trial of certain unconfronted or unreliable eyewitness identification testimony. *Id., analyzing United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967); and *Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967). The *Antonio* Court reasoned that the "evidentiary rules created in *Wade*, *Gilbert*, and *Stovall* thus protect the defendant's core right to a fair trial." *Antonio, supra*, 174 Fed. Appx at 135. Therefore, the Court held, "unduly suggestive identification procedures in the absence of the defendant's counsel do not, in and of themselves, implicate the Defendant's Fourteenth or Sixth Amendment rights, as long as the tainted evidence obtained is not used at trial." *Id*.

Since the plaintiff in *Antonio* pleaded guilty to the underlying criminal charges "thereby foreclosing the possibility that unconfronted or unreliable evidence could be used at trial," the Court held that the plaintiff's claim for relief based upon the alleged unduly prejudicial identification procedure was properly dismissed under Rule 12(b)(6). *Id*. (*citing Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006)(to recover for false identification procedure, plaintiff must show "how those flawed identification procedures compromised the constitutional right to a fair trial")). Similarly, the

---

pictures of defendant and other African-American males – the procedure took place three weeks after alleged robbery); *State v. Smith*, 134 N.C. App. 123, 516 S.E.2d 902 (1999)(upholding drug related conviction based upon officer's identification where officer reviewed a picture from the defendant's high school yearbook, defendant was the only black male on the page, and defendant's name, known to the officer, was visible below the picture – the procedure was held suggestive but the totality of circumstances rendered the identification reliable and admissible).

Plaintiffs' Section 1983 claim must hereby be dismissed because the challenged identification procedure never played a role in any criminal trial of the Plaintiffs.

A criminal defendant also has a right under the Sixth Amendment, made applicable to the states under the Fourteenth Amendment, to present witnesses in his own defense. *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). This due process right is violated by conduct that amounts to "substantial government interference with a defense witness' free and unhampered choice to testify." *United States v. Saunders*, 943 F.2d 388, 392 (4th Cir. 1991). Here again, however, no conduct of Sgt. Gottlieb could conceivably have violated Plaintiffs' right to present defense testimony, because they were never required to defend themselves in a criminal trial.[4] Plaintiffs' allegations that Sgt. Gottlieb tampered with witnesses simply do not support their claims against Sgt. Gottlieb under Section 1983.

**C.   Plaintiffs' Fourth Amendment Claim against Sgt. Gottlieb Must Be Dismissed Because Sgt. Gottlieb Disclosed All Exculpatory Evidence to the Prosecutor, and the Decisions of the Prosecutor to Charge and the Grand Jury to Indict Insulate Sgt. Gottlieb from Liability**

The Amended Complaint affirmatively alleges that Sgt. Gottlieb disclosed all relevant evidence he learned in the course of his investigation to the District Attorney. (Amended Complaint ¶ 137). Under North Carolina law, the office of the District Attorney shall "be responsible for the prosecution on behalf of the State of all criminal

---

[4] It should be noted that the mere act of arresting a defense witness who is properly subject to arrest does not, by itself, constitute witness intimidation. *See United States v. Lee*, 60 Fed. Appx. 425 (4th Cir. 2003)("The Government did not intimidate Pope but rather arrested him for participation in the tax scheme with Lee when he appeared").

actions in the Superior Courts of his district, perform such duties related to appeals therefrom as the Attorney General may require, and perform such other duties as the General Assembly may prescribe." N.C. Const. Art. I, § 18(1). The District Attorney has the sole authority to prosecute under Art. IV, § 18(1), and thus, as a representative of the State, "decides who shall be initially charged, drafts criminal indictments for submission to the grand jury, prepares informations . . . ." *State v. Smith*, 359 N.C. 199, 607 S.E.2d 607, 625 (2005). By contrast, "In North Carolina, law enforcement officers have no independent authority to make prosecutorial decisions." *State v. Sturgill*, 121 N.C. App. 629, 469 S.E.2d 557, 562 (1996). Since Sgt. Gottlieb did not have authority to "initiate" or "continue" a criminal prosecution, and since he provided all relevant information to the District Attorney, Sgt. Gottlieb cannot be held liable for the actions and decisions of the District Attorney or the grand jury.

The case of *Rhodes v. Smithers*, 939 F. Supp. 1256 (S.D.W.Va. 1995) *aff'd* 1996 U.S. App. LEXIS 18638 (4th Cir. 1996), demonstrates that a Section 1983 cause of action will not lie against a law enforcement officer when the law enforcement officer discloses all information to the prosecutor and the prosecutor makes the decision whether to charge plaintiffs based upon that information. The Court in *Rhodes* reviewed numerous Section 1983 malicious prosecution cases from multiple jurisdictions, whose authority it summarized as follows:

> On the basis of the cited authority, it may be said that there is a clearly established constitutional right not to be prosecuted without probable cause. Nonetheless, in that context, *the only particularized duty of an investigative officer who participates in the prosecution is the duty to turn*

*over all relevant information, especially information of an exculpatory nature, to a prosecutor or grand jury for an independent assessment of the probable cause evidence.*

*Id*. at 1275 (emphasis supplied). Since the defendant officers in that case were not shown to have withheld exculpatory evidence from the prosecutor, they were entitled to summary judgment dismissing all Section 1983 claims against them. *Id*. at 1278 ("The police officer defendants thus fulfilled their duty of providing all relevant probable cause information to prosecutor Welch. Prosecutor Welch having made an independent decision to proceed before the grand jury, the police officer defendants are shielded from liability for that decision"). The Fourth Circuit affirmed the district court's ruling, explicitly confirming that its decision to affirm was based "on the reasoning set forth in the district court's extensive and careful memorandum opinion." *Rhodes, supra*, 1996 U.S. App. LEXIS 18638. Under *Rhodes*, Sgt. Gottlieb is entitled to dismissal of the Section 1983 claims against him because the Amended Complaint affirmatively alleges that he disclosed all exculpatory evidence to the District Attorney, whose charging decision fully insulates Sgt. Gottlieb from liability to Plaintiffs.

**D.    Sgt. Gottlieb Cannot be Held Responsible for the District Attorney's Alleged Failure to Disclose Exculpatory Evidence to the Defense**

Plaintiffs allege that Sgt. Gottlieb is responsible to them because, though he disclosed all evidence to the Prosecutor, he also somehow played a role in the suppression of DNA evidence favorable to the Plaintiffs. (*See* Amended Complaint ¶'s 207-210, 225, 232). A Section 1983 claim based upon the failure to disclose exculpatory evidence *to the defendants* does not exist against a law enforcement officer, however,

because the duty to provide exculpatory evidence to defendants under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), belongs exclusively to the District Attorney.

This question was addressed in depth by the Fourth Circuit in the two *Jean v. Collins* cases, *Jean v. Collins*, 155 F.3d 701 (4th Cir. 1998)(*en banc*)("*Jean I*"), *vacated and remanded*, 526 U.S. 1142, 119 S. Ct. 2016, 143 L. Ed. 2d 1029 (1999); *Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000)("*Jean II*"). In *Jean I*, at 710, the Court approved summary judgment dismissing on qualified immunity grounds a claim that law enforcement officers failed to provide exculpatory evidence *to the prosecutor*, holding that police officers in 1982 could reasonably believe that they would not be liable under Section 1983 for failing to turn over exculpatory information *to the prosecutor*. After the Supreme Court vacated the *Jean I* decision based upon a recent case that clarified the doctrine of qualified immunity, an equally divided *en banc* Court in *Jean II* affirmed the dismissal of the case. The concurring opinion for the Court ruled (1) that the *Brady* duty to provide all exculpatory evidence to the defendant rests *exclusively* with the prosecutor; and (2) that a police officer cannot be held liable for a good faith failure to disclose exculpatory information *to the prosecutor. Jean II* at 660-62.

Any claim against Sgt. Gottlieb arising from the alleged concealment of exculpatory evidence must fail under *Jean II* because the Amended Complaint makes clear that District Attorney Nifong was aware of all exculpatory information that was allegedly suppressed. Indeed, the Amended Complaint specifically alleges that Sgt.

Gottlieb and Investigator Himan met with Mr. Nifong in March 2006 and "proceeded to detail the extraordinary evidence of innocence and the fatal defects in Mangum's claims . . ." (Amend. Compl. ¶ 137). Further, the Amended Complaint makes clear that District Attorney Nifong had access to all DNA information and was present during all meetings in which the DNA expert discussed his findings. (See Amend. Compl. ¶'s 223-37). Since the obligation to disclose exculpatory evidence to defendants belongs exclusively to the prosecutor, and the Amended Complaint affirmatively alleges that all exculpatory evidence was available to the District Attorney, it is clear that Sgt. Gottlieb cannot be held liable under Section 1983 for any failure to disclose exculpatory information to the defense.

### E.  Sgt. Gottlieb is Absolutely Immune from Liability to Plaintiffs for his Testimony to the Grand Jury

Plaintiffs allege, upon information and belief, that Sgt. Gottlieb failed to provide certain exculpatory information during his testimony before the grand jury in connection with the indictments of Plaintiffs Finnerty and Seligmann. Plaintiffs do not allege that Sgt. Gottlieb gave false testimony to the grand jury. Plaintiffs' allegations cannot form the basis of a Section 1983 claim against Sgt. Gottlieb, because it is well settled in the Fourth Circuit that law enforcement officers are entitled to *absolute* immunity from liability under Section 1983 for their testimony before a grand jury. *Lyles v. Sparks*, 79 F.3d 372 (4th Cir. 1996)(holding that rule from *Briscoe v. LaHue*, 460 U.S. 325, 326, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983) that government officials are entitled to absolute

immunity from liability for their testimony at criminal trials is equally applicable to grand jury testimony).

Indeed, courts have held that a grand jury finding of probable cause is an *absolute defense* to a cause of action for malicious prosecution under Section 1983. *See Kompare v. Stein*, 801 F.2d 883, 892 (7th Cir. 1986). The Court in *Kompare* explained that a grand jury determination constitutes an absolute defense, unlike the determination of a magistrate based upon an arrest warrant, because "[t]he procedural protections in grand jury hearings, particularly the involvement of a group of jurors, are much greater than those available when arrest warrants are issued." *Id*. at 892, n. 10. As the U.S. Supreme Court explained in *United States v. Calandra*, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974):

> The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.

*Id*. at 344-45, 94 S. Ct. at 618.

In an unpublished opinion, the Fourth Circuit considered the issue of whether a law enforcement officer can be held liable under Section 1983 for alleged wrongful acts that precede a grand jury indictment: *White v. Wright*, 150 Fed. Appx. 193 (4th Cir. 2005). In *White,* the plaintiff alleged numerous acts of wrongdoing by the defendant law enforcement officer, including intentionally providing prosecutors with false information and intentionally destroying exculpatory information. *Id*., 150 Fed. Appx. at 195-96.

Nonetheless, the district court dismissed the plaintiff's complaint under Rule 12(b)(6) on grounds that there was no "seizure" under the Fourth Amendment where the plaintiff turned himself in after the issuance of a grand jury indictment.[5] *Id*. at 196.

The Fourth Circuit upheld the dismissal. *Id*. at 200**.** Though it determined that a technical "seizure" might have occurred, the Court ruled that the plaintiff failed to allege any specific wrongful act of the defendants that would constitute a legal cause of the plaintiff's seizure. The Court observed that the plaintiff could not be held liable based upon his testimony before the grand jury under *Lyles v. Sparks*. *White, supra,* at 197-98. The Court further determined that the plaintiff had failed to allege specific facts to support the conclusory assertion that a "nontestimonial" act of the defendant violated the plaintiff's Fourth Amendment rights. *Id*. This holding was not disturbed by allegations that defendant intentionally fabricated evidence and destroyed exculpatory evidence. *Id*. at 195-96.

The grounds for dismissal of the present case against Sgt. Gottlieb are even stronger than were the grounds for dismissal in *White*. In *White,* the plaintiff asserted that law enforcement officers withheld information from the prosecutor. By contrast, in this case Plaintiffs have affirmatively alleged that Sgt. Gottlieb provided all material information to the District Attorney. The only arguable grounds for holding a law enforcement official liable under Section 1983, when a grand jury has returned an indictment, exist when the official provides false information or withholds exculpatory

---

[5] The district court alternatively ruled that summary judgment was appropriate based upon evidence that had been submitted by the parties. *Id*. at 196.

evidence from the prosecutor. *See* Section I.D above. Since Sgt. Gottlieb provided all relevant information to the District Attorney, Plaintiffs' Section 1983 claim against Sgt. Gottlieb must be dismissed.

**F.     Plaintiffs Fourth Amendment Rights Were Not Impacted by Acts that Occurred After Indictments Were Returned or that Otherwise Were Not Material in Obtaining Indictments**

Plaintiffs have asserted that Sgt. Gottlieb participated in certain alleged wrongful acts after Plaintiffs were indicted, such as the alleged "intimidation" of witness Elmostafa and the alleged fabrication of information in his "Supplemental Case Notes." Any claim that Sgt. Gottlieb's conduct following the indictments gives rise to liability must fail, however, because the failure to take action to terminate criminal proceedings after they have been initiated does not give rise to a Section 1983 malicious prosecution claim. *Brooks v. City of Winston Salem*, 85 F.3d 178 (4th Cir. 1996). The Court explained:

> Brooks next charges that Officer Barker's failure to attempt to terminate the criminal proceedings after it became clear that Brooks was innocent deprived him of his constitutional rights under the Fourth and Fourteenth Amendments. We conclude that these allegations fail to state a claim upon which relief may be granted.
>
> As we recently explained, the Due Process Clause of the Fourteenth Amendment does not provide protection in this area. *Taylor v. Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996). The Supreme Court has rejected the proposition that a defendant possesses a liberty interest in avoiding prosecution upon less than probable cause. *Id*. at 436 (recognizing that a majority of the Supreme Court has rejected the existence of substantive due process protection in this area). And, the Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial. *Id*. at 435-36. Thus, Brooks' claim that Officer Barker failed to attempt to have the criminal proceedings terminated after it became apparent that Brooks was not the perpetrator fails to state a claim upon which relief may be granted.

*Id*. at 184.

Finally, Plaintiffs' Amended Complaint alleges several actions of Sgt. Gottlieb which, even assuming they were wrongful, clearly had nothing to do with the indictment or continued prosecution of Plaintiffs.  Sgt. Gottlieb can only be held liable for acts that foreseeably resulted in the "seizure" of Plaintiffs.  *See Monroe v. Pape*, 365 U.S. 167, 187, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961)(recognizing applicability to Section 1983 claims of tort rule "that makes a man responsible for the natural consequences of his actions").

Thus, for instance, assuming *arguendo* that alleged witness tampering could be a Constitutional violation when there was no criminal trial, there is no plausible factual allegation that any alleged acts of witness tampering were material in obtaining the indictment against Plaintiffs.  Indeed, there is no allegation that Elmostafa or Shelton ever recanted their statements that were helpful to the defense.  Similarly, though Plaintiffs allege that officers conducted "ambush" interviews of Duke students, there is no plausible allegation that those interviews affected the prosecution.  Finally, though Plaintiffs assert that Sgt. Gottlieb fabricated information in his "Supplemental Case Notes," the Amended Complaint alleges that that those notes were prepared long after the indictments were issued (Amend Compl. ¶ 266), and there is no plausible allegation that the Supplemental Notes had any effect on the prosecution.  *See Washington v. Wilmore*, 407 F.3d 274, 283 (4th Cir. 2005)("The proper inquiry, however, is whether Washington's conviction was a reasonably foreseeable result of Wilmore's initial act of fabrication –

the police report"); *Landrigan v. Warwick*, 628 F.2d 736, 744 (1st. Cir. R.I. 1980) ("[W]e do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution and laws").

### G. Sgt. Gottlieb Is Immune From Liability to Plaintiffs Under the Doctrine of Qualified Immunity

Assuming this Court determines that any of the claims against Sgt. Gottlieb under Section 1983 are sufficient to state a Constitutional violation, this lawsuit still must be dismissed because Sgt. Gottlieb is protected by the doctrine of qualified immunity. Plaintiffs' Section 1983 claims against Sgt. Gottlieb must be dismissed unless he violated some right of the Plaintiffs that was *clearly established* at the time of the alleged violation. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272, 281 (1982). Sgt. Gottlieb is entitled to dismissal of the Section 1983 claims on qualified immunity grounds unless it would be clear to an objectively reasonable officer that his conduct violated the Plaintiffs' constitutional rights. *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). The basis for the doctrine of qualified immunity has been explained as follows:

> Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."

Harlow v. Fitzgerald, 457 800, 818, 102 S. Ct. 2727, 2739, 73 L. Ed. 2d 396 (1982),

*quoting Pierson v. Ray*, 87 S. Ct. 1213, 1217 (1967).

Given (1) the lack of Fourth Circuit precedent holding a law enforcement officer liable for Section 1983 malicious prosecution when the "seizure" of Plaintiffs occurs following a grand jury indictment; (2) that Sgt. Gottlieb did not withhold any exculpatory information from the District Attorney, who bears the exclusive responsibility for disclosing exculpatory evidence to those accused of crimes under *Brady*; (3) that evidence concerning the challenged identification procedure was never used against the Plaintiffs in a criminal trial, and therefore the identification procedure could not have affected the Plaintiffs' rights; (4) that Sgt. Gottlieb is absolutely immune from liability for his testimony before the grand jury; and (5) that all charges against Plaintiffs were dismissed and they were declared innocent of the charges, it is plain on the face of the Amended Complaint that none of Sgt. Gottlieb's actions violated any of the Plaintiffs' clearly established Fourth Amendment rights. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272, 281 (1982). Plaintiffs' Section 1983 claims against Sgt. Gottlieb should be dismissed under the doctrine of qualified immunity.

## II.     PLAINTIFFS' SECTION 1983 CONSPIRACY CLAIM AGAINST SGT. GOTTLIEB MUST BE DISMISSED (CLAIM 7)

In their Seventh Cause of Action, Plaintiffs assert that Sgt. Gottlieb participated with others in an alleged conspiracy to violate the Plaintiffs' constitutional civil rights under § 1983. To prove a Section 1983 conspiracy, Plaintiff "must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in a [plaintiff's] deprivation of a constitutional right . . ."

*Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown,* 983 F.2d 570, 577 (4th Cir.1992)).

The Plaintiffs have "a weighty burden to establish a civil rights conspiracy" under § 1983. *Byrd v. Hopson*, 265 F. Supp. 2d 594, 601 (W.D.N.C. 2003)(quoting *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir. 1996)). "It is well settled that 'where the complaint makes only conclusory allegations of a conspiracy under § 1983 or § 1985 and fails to allege facts suggesting an agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint." *Sherwin v. Piner*, 2003 U.S. Dist. LEXIS 26855, at *7-8 (E.D.N.C. July 22, 2003) (quoting *Sales v. Murray*, 862 F. Supp. 1511, 1517 (W.D. Va. 1994) and citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (applying same rule to summary judgment ruling)); *see Davis v. Hudgins,* 896 F. Supp. 561, 571 (E.D. Va. 1995), *aff'd*, 87 F.3d 1308 (4th Cir. 1996).

While the Plaintiffs allege in conclusory fashion that Sgt. Gottlieb and several other defendants entered into a conspiracy to engage in a long laundry list of alleged wrongful acts (Amend. Compl. ¶ 440), they have only specifically alleged that Sgt. Gottlieb entered into agreements with others in connection with: the alleged conspiracy to use an unduly suggestive identification procedure (Amend. Compl. ¶'s 175-183); the alleged conspiracy to withhold exculpatory information learned from the expert's DNA testing results (Amend. Compl. ¶'s 207-11, 223-26, 232); and the alleged conspiracy to conceal exculpatory evidence in testimony before the grand jury. (Amend. Compl. ¶'s 219, 241). The remaining conspiracy allegations must be dismissed as they apply to Sgt.

Gottlieb because there is no adequate claim, beyond conclusory statements, that he entered into agreements with others to performed the alleged wrongful acts. *Twombly, supra*., *Sherwin v. Piner, supra*, and cases cited therein.

Sgt. Gottlieb cannot be liable under Section 1983 for an alleged conspiracy to use a suggestive identification procedure because, as set forth previously, no constitutional right of Plaintiffs was violated because the identification procedure was not used in a criminal trial. "Significantly, '[i]f there is no violation of a federal right, there is no basis for a section 1983 action' or civil conspiracy action under § 1983." *Powell v. Keller,* No. 5:03CV160-5MU, 2004 U.S. Dist. LEXIS 30266, at *12 (quoting *Clark v. Link,* 855 F.2d 156, 161 (4th Cir. 1988)).

Similarly, Sgt. Gottlieb cannot be held liable for an alleged conspiracy to withhold exculpatory evidence from the DNA tests to the defense because, as explained previously, the duty to disclose information to the defense belongs to the prosecutor, not Sgt. Gottlieb. Plaintiffs cannot impose a duty upon Sgt. Gottlieb that belongs to the prosecutor merely by alleging that Sgt. Gottlieb participated in a conspiracy with the prosecutor. *See Mowbray v. Cameron County*, 274 F.3d 269, 280 (5th Cir. 2001)(affirming 12(b)(6) dismissal of claim that police officer participated in conspiracy to violate the plaintiff's civil rights by failing to disclose evidence to defense counsel because "police officers have no constitutional duty under Brady to disclose exculpatory evidence to defense counsel").

Finally, Sgt. Gottlieb cannot be held liable for an alleged conspiracy to withhold exculpatory evidence from the grand jury because law enforcement officers are entitled to *absolute* immunity from liability for their testimony before a grand jury. *Lyles v. Sparks*, 79 F.3d 372 (4th Cir. 1996). A person cannot be held responsible for a *conspiracy* to give false testimony when he is absolutely immune from liability for actually *giving* false testimony. *Mowbray v. Cameron County, supra*, at 277, *Franklin v. Terr*, 201 F.3d 1098, 1100 (9th Cir. 2000); *Snelling v. Westhoff*, 972 F.2d 199, 200 (8th Cir. 1992); *Jones v. Cannon*, 174 F.3d 1271, 1288-89 (11th Cir. 1999); *Watterson v. Page*, 987 F.2d 1, 9 (1st Cir. 1993); *House v. Belford*, 956 F.2d 711, 720-21 (7th Cir. 1992); *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Alioto v. Shively*, 835 F.2d 1173, 1174 (6th Cir. 1987).[6]

## III. Plaintiffs' Sections 1985 and 1986 Conspiracy Claims Against Sgt. Gottlieb Should Be Dismissed (CLAIMS 8-10).

Plaintiffs allege that Sgt. Gottlieb participated in conspiracies under Sections 1985 and 1986 to deprive them of equal protection of the law. *See* Cause of Action Nos. 10-12. As the Memorandum submitted by the City of Durham in support of its motion to dismiss (the "City's Memorandum") explains, these claims must fail because Plaintiffs have failed to allege any facts to support their conclusory allegations that Sgt. Gottlieb

---

[6] The First Circuit Court of Appeals stated in *dicta* in *San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 254-55 (2d Cir. 1984), in disagreement with the overwhelming majority rule, that it is theoretically possible to have a Section 1983 conspiracy to provide false testimony even though the testimony itself is subject to absolute immunity. A district court in the Fourth Circuit has disagreed with the reasoning in this case, and determined that the majority rule is more persuasive. *See Marshall v. Odom*, 156 F. Supp. 2d 525, 534 (D. Md. 2001)(Unless immunity is extended to conspiracy claims, "[i]nstead of suing state witnesses for perjured testimony, a defendant could simply transform the perjury complaint into an allegation of conspiracy to do the same").

targeted Plaintiffs because they are members of a protected class. Plaintiffs' Section 1985 and 1986 causes of action against Sgt. Gottlieb must be dismissed, for reasons fully set forth in Section IV.F. of the City's Memorandum, which is incorporated herein by reference.

## IV. The Public Official Immunity Doctrine Shields Sgt. Gottlieb from All State Law Claims Because Plaintiffs Have Not Alleged any Facts Showing Sgt. Gottlieb Was Corrupt or Acted With Intent to Injure the Plaintiffs. (CLAIMS 13-16, 18)

Plaintiffs have asserted several North Carolina state law claims against Sgt. Gottlieb, including: malicious prosecution, common law obstruction of justice, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress. These claims are based upon the same factual allegations that underlie Plaintiffs' federal claims. Plaintiffs' state law claims against Sgt. Gottlieb (in his individual capacity) must be dismissed because the Amended Complaint affirmatively alleges facts demonstrating that Sgt. Gottlieb is protected from liability under the doctrine of public official immunity.[7]

"To maintain a suit against a public official in his/her individual capacity, the plaintiff must make a *prima facie* showing that the official's actions (under color of [state] authority) are sufficient to pierce the cloak of official immunity." *Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996). "As a general rule it is presumed that

---

[7] As was the case with Plaintiffs' federal claims, Plaintiffs' state law claims against Sgt. Gottlieb in his "official" capacity are the functional equivalent of claims against his employer, the City of Durham. *See Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d 14, 21-22 (1997). Any state law claims against Sgt. Gottlieb in his official capacity must be dismissed for reasons set forth in the City's Memorandum.

a public official in the performance of his official duties 'acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." *Green v. Valdese*, 306 N.C. 79, 82, 291 S.E.2d 630, 632 (1982). A police officer employed by a North Carolina municipality and engaged in the investigation of an alleged crime is a public official for purposes of the public official immunity doctrine. *Campbell v. Anderson*, 156 N.C. App. 371, 376, 576 S.E.2d 726, 730 (2003).

A public official performing discretionary acts can be liable for wrongdoing only (1) if the wrongdoing occurs outside the scope of official authority or if the conduct is (2) malicious or (3) corrupt. *Moore v. Evans, supra; Epps v. Duke Univ.,* 122 N.C. App. 198, 207, 468 S.E.2d 846, 853, *rev. denied*, 344 N.C. 436, 476 S.E.2d 115 (1996). For purposes of public official immunity, an official acts with malice only "when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty *and* which he *intends to be prejudicial or injurious to another.*" *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984)(emphasis added). An act is wanton if it is done with a wicked purpose or with reckless indifference to the rights of others. *Id.*

The Amended Complaint must be dismissed because it does not describe any alleged conduct of Sgt. Gottlieb that was intended to cause the Plaintiffs injury, that was corrupt (i.e., for his undue personal benefit), or that occurred outside the scope of his duties as a police sergeant overseeing the investigation of an alleged crime. According to the Amended Complaint, Sgt. Gottlieb took part in the investigation of Crystal Mangum's

claims because that was part of his duties with the DPD. (Amend. Compl. ¶ 81). He worked with Himan to interview the alleged victim, obtain other witness statements, and gather information from the purported crime scene. (Amend. Compl. ¶'s 91, 87, 110, 112). He was told early in the investigation that due to the high profile nature of the case he should work in cooperation with the District Attorney, who held the ultimate authority to decide whether to charge anyone with a crime. (Amend. Compl. ¶ 133) Sgt. Gottlieb fully disclosed everything he learned in his investigation to District Attorney Nifong, including all exculpatory information. (Amend. Compl. ¶ 137).

Nifong allegedly decided to use the sensational nature of the allegations as a tool to help him win re-election as the Durham District Attorney. (Amend. Compl. ¶ 's 144-46, 151), Nifong and others (*but not Sgt. Gottlieb*) made a series of public statements that had the effect of creating a public outcry in the Durham community. (Amend. Compl. ¶ 179). In response to this public outcry, Sgt. Gottlieb's supervisors allegedly pressured Sgt. Gottlieb and Himan to expedite identifications and arrests of Duke lacrosse players in hopes that this would "satisfy" the Durham community. (*Id*). In the context of this alleged atmosphere of heightened pressure to produce identifications and arrests, Sgt. Gottlieb allegedly engaged in certain investigative steps which the Plaintiffs characterize as improper, such as allegedly tampering with witnesses, using a "suggestive" identification procedure, conducting "surprise" witness interviews, failing to take notes during meetings with a DNA expert, and preparation of "supplemental case notes." (Amend. Compl. ¶'s 188, 209, 248, 258, 263, 266).

In short, the Amended Complaint alleges that Sgt. Gottlieb cut corners in a high profile rape investigation in response to pressure from his superiors to crack the case. While Plaintiffs' allegations do not paint Sgt. Gottlieb's conduct in a favorable light, they do not create a plausible inference that Sgt. Gottlieb acted outside the scope of his employment, that he acted corruptly (e.g., for personal benefit), or that he "intended his actions to be prejudicial or injurious" to the Plaintiffs. *Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995). Plaintiffs' state law claims must, therefore, be dismissed on grounds of public official immunity. *See Id.* (granting summary judgment dismissing claims against deputy sheriff in his individual capacity for false imprisonment and false arrest based upon public official immunity where evidence showed that "[a]t most" plaintiff had presented evidence showing that defendant "*negligently* believed he had probable cause to arrest plaintiffs); *Olvera v. Edmundson*, 151 F. Supp. 2d 700, 706 (W.D.N.C. 2001)(dismissing wrongful death claim against sheriff under Rule 12(b)(6) based upon public official immunity since plaintiff alleged only that the sheriff acted with *deliberate indifference* towards decedent rather than having an *intention* to injure or otherwise prejudice the decedent); *Jetton v. Caldwell County Bd of Educ.*, 2007 N.C. App. LEXIS 1699 (Aug. 7, 2007)("While Defendants may not have always acted in a professional manner, or treated Plaintiff with patience, respect, or kindness, there is no evidence they intended to hurt Plaintiff. Any alleged harm resulting to Plaintiff from Defendants' allegedly improper conduct was simply a collateral consequence"); *Compare Blair v. County of Davidson*, 2006 U.S. Dist. LEXIS 34253 (M.D.N.C. May 10,

2006)(public official immunity claim rejected where plaintiff alleged among other things that the law enforcement defendants repeatedly shocked and burned her with high voltage taser devices, forced her to assume lewd poses and "reveal her genitals" while others made salacious comments, and kicked, assaulted, and battered her).

Allowing the state law individual capacity claims against Sgt. Gottlieb to go forward would be contrary to the purpose of the public official immunity doctrine.  North Carolina's public official immunity doctrine grows out of a strong public policy concern that "it would be difficult to find those who would accept public office or engage in the administration of public affairs if they were to be held personally liable for acts or omissions involved in the exercise of discretion and sound judgment which they had performed to the best of their ability, and without any malevolent intention toward anyone who might be affected thereby." *Miller v. Jones*, 224 N.C. 783, 787, 32 S.E.2d 594 (1945).  Here, there is a fine line between legitimate law enforcement tools that police officers use everyday and the actions characterized as wrongful in the Amended Complaint.  It would be difficult for law enforcement officers to do their jobs on a day to day basis if, for instance, they were concerned based upon precedent from this case that they could never question a witness in a criminal investigation after arresting that person based upon the existence of a valid arrest warrant; or if they felt the need to be sure that whenever two officers take part in the same witness interview, their notes had better be consistent in all details; or if their use of a photographic presentation procedure designed in part by the District Attorney could not only be suppressed in a criminal trial but could

also give the law enforcement officer who conducted the procedure *civil liability* to a suspect identified through the procedure.

North Carolina courts have wisely concluded that law enforcement officers will perform their public duties more faithfully when freed from the fear that discretionary decisions they make in the course of an investigation will be second guessed in a subsequent civil lawsuit, absent extreme circumstances such as personal malice, corruption, or action outside the course and scope of employment. Since Plaintiffs have failed to allege acts that fall within any of these excepted categories, the public official immunity doctrine protects Sgt. Gottlieb from individual capacity liability to Plaintiffs.

## V. PLAINTIFFS HAVE FAILED TO SATISFY ONE OR MORE NECESSARY ELEMENTS OF EACH OF THEIR STATE LAW CLAIMS AGAINST SGT. GOTTLIEB (CLAIMS 13-16, 18)

If this Court determines that the public official immunity doctrine does not act as a bar to all of Plaintiffs' state law claims, this Court must consider whether Plaintiffs have set forth viable causes of action. For reasons set forth below, Sgt. Gottlieb respectfully asserts that the causes of action for malicious prosecution, obstruction of justice, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress must be dismissed as they apply to the conduct of Sgt. Gottlieb.

### A. Plaintiffs' Claim for Malicious Prosecution Must be Dismissed (Claim 13)

"The elements of a malicious prosecution claim are (1) that the defendant initiated the earlier proceeding; (2) that he did so maliciously; (3) without probable cause; and (4) that the prior proceeding terminated in plaintiff's favor." *Jones v. Gwynne*, 312 N.C.

393, 397, 323 S.E.2d 9, 11 (1984). Plaintiffs' malicious prosecution claim against Sgt. Gottlieb must be dismissed because the allegations of the Amended Complaint demonstrate conclusively that Sgt. Gottlieb did not "initiate" the proceedings against Plaintiff.

North Carolina state courts have not been clear in their explanation of what a defendant must do to "initiate" a proceeding for purposes of the tort of malicious prosecution. *See* Daye, Morris, North Carolina Law of Torts § 9.41 (1991)("It is not clear exactly what the defendant must do" to initiate a proceeding for purposes of a malicious prosecution cause of action).

In several cases North Carolina courts have considered whether *private citizens* "initiated" prosecutions when they made charges and provided information that led to prosecutions pursued by others. In some of these cases, courts have dismissed the plaintiff's claims where shown that the defendant did not personally "initiate" proceedings against the plaintiff. *See, e.g., Shillington v. K-Mart Corp.*, 102 N.C. App. 187, 196, 402 S.E.2d 155 (1991)(upholding summary judgment dismissing malicious prosecution claim where the defendant corporation's agents provided information to police officer that led to plaintiff's arrest, but "defendant's agents neither directed that they [arrest plaintiff] nor did defendant's agents press charges themselves, nor did they appear at the magistrate's office at any time"); *Hawkins v. Webster*, 78 N.C. App. 589, 593, 337 S.E.2d 682, 685 (1985)("there is no allegation that defendants . . . ever initiated a prior action against [plaintiff]; rather, [plaintiff] alleged that defendants 'procured or

caused to be instituted against [plaintiff]' the third party indemnity actions filed by the Bank. This does not, in our estimation, satisfy the requirement that the defendant initiate a prior proceeding").

In other cases, courts have held that a private citizen defendant "initiates" a prosecution conducted by others if the person approaches authorities and volunteers all or virtually all information upon which an arrest warrant, indictment, and prosecution are based. *See Hung Nguyen v. Burgerbusters, Inc.*, __ N.C. App. __, 642 S.E.2d 502 (2007); *Williams v. Kuppenheimer Mfg. Co.*, 105 N.C. App. 198, 412 S.E.2d 897 (1992)(defendant "brought all the documents used in the prosecution to the police" and "[e]xcept for the efforts of defendant, it is unlikely there would have been a criminal prosecution of plaintiff").

This case presents a fundamentally different problem than the one addressed in the "private citizen" prosecution cases. Sgt. Gottlieb did not volunteer information that formed the basis for the prosecution of a third party. He is a police sergeant whose responsibilities included the investigation of an alleged rape. He turned over all information he learned, whether helpful to a prosecution or not, to the District Attorney. The District Attorney made the decision to seek charges against Plaintiffs, and the grand jury decided to indict them. To the best of Sgt. Gottlieb's knowledge, North Carolina courts have never held that a police officer "initiates" a prosecution under these circumstances. Plaintiffs' claim for malicious prosecution must be dismissed because Sgt. Gottlieb did not "initiate" the prosecution of charges against them.

**B. Plaintiffs' Claim for Obstruction of Justice Must Be Dismissed (Claim 14)**

Under North Carolina law, a civil cause of action for obstruction of justice is available against one who performs an act that prevents, obstructs, impedes, or hinders public or legal justice. *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 33, 588 S.E.2d 20, 29-30 (2003). Plaintiffs base their claims here upon allegations of alleged witness tampering, withholding information from the DSI expert reports, and use of a suggestive identification procedure.

These claims must be dismissed. The use of an allegedly suggestive photographic identification procedure cannot be fairly characterized as obstruction of justice. Sgt. Gottlieb did not hide the manner in which the identification procedure took place, and the criminal process afforded to Plaintiffs gave them ample opportunity to challenge the identification procedure and seek to suppress any identification evidence presented to the Court. Similarly, there is no basis for concluding that Sgt. Gottlieb had a legal duty to take notes of what he learned during meetings that also included District Attorney Nifong and a DNA expert. District Attorney Nifong, not Sgt. Gottlieb, had a legal duty to disclose the results of the DNA reports to the defense. *See* above Section I.C., *infra*. Sgt. Gottlieb is aware of no case in which a law enforcement officer was held liable for obstruction of justice based upon allegedly improper witness identification procedures or failure to disclose exculpatory evidence directly to criminal defendants.

Finally, Plaintiffs' claim for obstruction of justice based upon Sgt. Gottlieb's alleged witness tampering must be dismissed because Plaintiffs have failed to allege facts

creating a plausible inference that any alleged act of witness tampering materially affected the prosecution of charges against them. *See Broughton, supra* ("However, plaintiff presented no evidence that her case . . . was in some way judicially prevented, obstructed, impeded, or hindered by the acts of defendants").

**C.  Plaintiffs' Claim for Intentional Infliction of Emotional Distress Must be Dismissed (Claim 15)**

In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct (2) which is intended to cause and does cause (3) severe and disabling emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E. 2d 325, 335 (N.C. 1981); *see Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116 (1986) (*quoting* Restatement (Second) of Torts, § 46 cmt. (d) (1965)).  Plaintiffs' Amended Complaint fails to adequately allege that Sgt. Gottlieb engaged in the requisite extreme and outrageous conduct, or that his conduct was intended to cause the Plaintiffs severe and emotional distress.

"The standard of 'extreme and outrageous' is quite high.  Indeed, the allegations must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded at atrocious, and utterly intolerable in a civilized community.'" *Bradley v. Lowe's Cos.*, 2007 U.S. Dist. LEXIS 69872, at *10 (W.D.N.C. Sept. 20, 2007) (*quoting Briggs v. Rosenthal*, 73 N.C. App. 672, 327 S.E.2d 308, 311 (N.C. App. 1985)).  Plaintiffs must allege facts that, if later proved, would "exceed all bounds of decency," *Peck v. Lake Lure*, No. 2001 U.S. Dist LEXIS 13179, at *15 (W.D.N.C. Feb. 23, 2001) (*quoting West v. King's Dep't Store, Inc.*, 321 N.C. 698,

365 S.E.2d 621, 625 (N.C. 1988)), or would be '"regarded as atrocious, and utterly intolerable in a civilized community."' *Id*. (*quoting Wagoner v. Elkin City Sch. Bd. of Educ.*, 113 N.C. App. 579, 440 S.E.2d 119, 123 (N.C. Ct. App. 1994)). The question of whether the alleged conduct is sufficiently "extreme and outrageous" is initially a question of law. *Briggs v. Rosenthal, supra*, at 676, 327 S.E.2d at 311.

In this case, the Amended Complaint does not describe any alleged conduct of Sgt. Gottlieb that exceeded all bounds of decency, that was intended to cause Plaintiffs severe emotional distress, or that showed a "reckless indifference" to the likelihood of causing the Plaintiffs severe emotional distress. *See Dickens v. Puryear, supra*, at 449, 276 S.E.2d at 333. There are no allegations, for instance, that Sgt. Gottlieb threatened Plaintiffs, that he used any physical force against them, or that he even treated them discourteously. Rather, the Amended Complaint alleges that Sgt. Gottlieb conducted an aggressive investigation motivated by his desire to produce identifications and arrests in response to pressure from his superiors. (*See* Amend Compl. ¶ 179). This is not the type of conduct that supports a claim for intentional infliction of emotional distress.

### D. Plaintiffs' Claims for Negligence and Negligent Infliction of Emotional Distress Must be Dismissed (Claims 16 and 18)

Plaintiffs assert causes of action against Sgt. Gottlieb for negligence and negligent infliction of emotional distress and negligence. These claims are *clearly* barred by the public official immunity doctrine. Even if they weren't, however, Plaintiff has failed to satisfy a key element of both claims. In order to prevail on a claim for negligence or negligent infliction of emotional distress, a plaintiff must show: (1) that defendant failed

to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury. *Guthrie v. Conroy*, 152 N.C. App. 15, 25, 567 S.E.2d 403, 410-11 (2002) (citation omitted). A legal duty is an obligation recognized by law requiring a person to conform to a certain standard of conduct for the protection of others against unreasonable risks. *Id*. at 411.

Plaintiff has failed to specify any legal duty Sgt. Gottlieb allegedly owed to Plaintiffs to exercise due care. Indeed, as explained previously, under the public official immunity doctrine a public official is immune from civil liability for any alleged failure to use due care in the performance of his public duties. *Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995)(summary judgment in favor of sheriff upheld under public official immunity doctrine where evidence showed that "[a]t most" plaintiff had presented evidence showing that defendant "*negligently* believed he had probable cause to arrest plaintiffs). Rather, the only duty he has is to refrain from conduct intended to injure others or from corrupt conduct intended to obtain undue personal benefit. As this Court noted in *Shaeffer v. County of Chatham*, 337 F. Supp. 2d 709, 734 (M.D.N.C. 2004), "[t]he lack of a duty from a defendant to a plaintiff is fatal to a negligent infliction of emotional distress claim." *Id*., citing *Guthrie*, 152 N.C. App. at 25, 567 S.E.2d at 411. Because they have failed to allege that Sgt. Gottlieb owed them a legal duty of due care, their claims for negligence and negligent infliction of emotional distress must be dismissed.

**CONCLUSION**

For the foregoing reasons, Sgt. Gottlieb respectfully requests the Court to dismiss all claims asserted against him in the Amended Complaint (Claims 1-3, 7, 13-16, 18) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This the 15th day of January, 2008.

**POYNER & SPRUILL LLP**

By: /s/Edwin M. Speas, Jr.
       Edwin M. Speas, Jr.
       North Carolina Bar #4112
       Eric P. Stevens
       North Carolina Bar # 17609
       P.O. Box 10096
       Raleigh, N.C. 27605-0096
       Tel.    (919) 783-6400
       Fax    (919) 783-1075
       Email  espeas@poynerspruill.com
       Email: estevens@poyners.com

*Attorneys for Defendant Mark Gottlieb*

## CERTIFICATE OF SERVICE

      The undersigned attorney hereby certifies that on January 15, 2008, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Brendan V. Sullivan, Jr.
Robert M. Cary
Christopher N. Manning
Charles Davant IV
Williams & Connolly, LLP
725 Twelfth Street, NW
Washington, DC  20005
*Attorneys for Plaintiffs David F. Evans*
*and Collin Finnerty*

Richard D. Emery
Emery, Celli, Brinkerhoff & Abady, LLP
75 Rockefeller Plaza, 20th Foor
New York, NY  10019
*Attorney for Plaintiff Reade Seligmann*

David S. Rudolf
Rudolf, Widenhouse & Fialko
312 West Franklin Street
Chapel Hill, NC  27516
*Attorney for Plaintiff Reade Seligmann*

Barry C. Sheck
100 Fifth Avenue
New York NY 10011
*Attorney for Plaintiff Reade Seligmann*

James B. Craven, III
P.O. Box 1366
Durham, NC  27702
*Attorney for Defendant Michael B. Nifong*

Joel Miller Craig
Kennon Craver Belo Craig & McKee,
PLLC
P.O. Box 51579
Durham, NC  27717-1579
*Attorney for Benjamin Himan*

Robert James King, III
Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard
P.O. Box 26000
Greensboro, NC  27420-6000
*Attorney for Defendant DNA Security, Inc. and*
*Richard Clark*

Mr. James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
P.O. Box 52396
Durham, NC  27717
*Attorney for Defendant David Addison*

Ms. Patricia P. Kerner
Troutman Sanders, LLP
434 Fayetteville Street Mall
Two Hannover Square, Suite 1100
Raleigh, NC  27601
*Attorneys for Defendants Steven Chalmers, Beverly*
*Council, Ronald Holdge, Jeff Lamb, Stephen*
*Mihaich, Michael Ripberger, and Lee Russ*

Mr. James A. Roberts, III
Mr. Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC  27609
*Attorneys for Defendants DNA Security,*
*Inc. and Brian Meehan*

Robert A. Sar
Nicholas J. Sanservino, Jr.
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC 27612

*Counsel for Defendant DNA Security*

Linwood Wilson
*Pro Se*
120 East Parrish Street, Suite 210
P.O. Box 2301
Durham, NC  27702

January 15, 2008

By:     /s/ Edwin M. Speas, Jr.
         Edwin M. Speas, Jr.

RALEIGH/541183v4