IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No.: 1:07-cv-00739

| | | |
|---|---|---|
| DAVID F. EVANS; COLLIN FINNERTY; and READE SELIGMAN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | DEFENDANT |
| THE CITY OF DURHAM, NORTH CAROLINA; | ) | DAVID ADDISON'S |
| MICHAEL B. NIFONG; MARK GOTTLIEB; | ) | MEMORANDUM OF LAW |
| BENJAMIN HIMAN; DAVID ADDISON; | ) | IN SUPPORT OF |
| LINWOOD WILSON; STEVEN CHALMERS; | ) | MOTION TO DISMISS |
| BEVERLY COUNCIL; RONALD HODGE; | ) | (RULE 12(b)(6), (F.R.Civ.P.) |
| JEFF LAMB; STEPHEN MIHAICH; | ) | |
| MICHAEL RIPBERGER; LEE RUSS; | ) | |
| DNA SECURITY, INC.; RICHARD CLARK; and | ) | |
| BRIAN MEEHAN, | ) ) | |
| Defendants. | ) | |

Defendant David Addison (hereinafter "Addison"), by and through his counsel of record, respectfully submits his Memorandum of Law in Support of his Motion to Dismiss, pursuant to Local Rule, 7.3(a), M.D.N.C.

## 1. SUMMARY OF THE NATURE OF THE CASE

The Plaintiffs filed their First Amended Complaint and Jury Demand in the present action on December 11, 2007. As against the Defendant, David Addison, Plaintiffs' Complaint alleges claims for: 1) substantive and procedural due process in violation of the 4th and 14th Amendments to the United States Constitution and 42 U.S.C. §1983 by allegedly making and engaging in a conspiracy to make, false, misleading and inflammatory statements (Counts Four and Seven); 2) engaging in a conspiracy constituting an obstruction of justice to deny the Plaintiffs' equal protection and/or their

1

Dockets.Justia.com

equal privileges and immunities based upon alleged racial animus in violation of the 4th and 14th Amendments to the United States Constitution and 42 U.S.C. §§ 1985(2)(3) (Counts Eight and Ten); and, 3) state common law civil conspiracy, malicious prosecution, intentional infliction of emotional distress, negligence and negligent infliction of emotional distress claims (Counts Twelve, Fifteen, Sixteen and Nineteen). Plaintiffs' Complaint seeks compensatory and punitive damages, as against Defendant Addison in his individual and official capacity.

On the 15th day of January, 2008, prior to answering the Amended Complaint of the Plaintiffs, Defendant Addison filed his Motion to Dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P. on the grounds of absolute and qualified immunity and for failure to allege facts sufficient to state a claim upon which individual relief against him could be granted. This Memorandum is filed in Support of that Motion.

## II. STATEMENT OF FACTS

On December 11, 2007, the Plaintiffs filed a 162 page Amended Complaint in this action. They have named fifteen (15) individuals, one (1) corporate entity and the City of Durham as Defendants. There are 291 paragraphs of alleged "Facts" in the Amended Complaint (¶¶27 – 328) and twenty-two separate Causes of Action asserted (¶¶329 – 566). The Defendant, David Addison, is included, along with other Defendants, in only eight of those twenty-two Causes of Action and this summary of the factual allegations will only deal with those allegations which purportedly support the claims made against him.

Beginning on the evening of March 13, 2006, the three Co-Captains of the Duke University Men's Lacrosse Team hosted a party at their home on 610 N. Buchannan

2

Blvd., which is located in the Trinity Park neighborhood of the City of Durham. Most of the male guests at this party were members of the lacrosse team. Two supposedly "exotic dancers" had been invited to perform at this party and one of them, Crystal Mangum, would later claim in the early hours of March 14, 2006 that she had been raped by three men while at the party (¶¶48 and 61).

The Plaintiffs further allege that on or about March 15, 2006, Detective Sergeant, Mark Gottlieb, an investigator for the Durham Police Department and a Defendant in this action, was assigned the investigation of this incident (¶81). According to the Amended Complaint, Sgt. Gottlieb had a known "history of selective and malicious prosecution, false arrest, excessive use of force, manufacturing of evidence and filing of false police reports against students at Duke University." (¶82). On the following day, March 16, 2006, it is alleged that Sgt. Gottlieb assigned Defendant Benjamin Himan to assist him in this investigation. The Amended Complaint describes Himan as "a rookie investigator, who had started in the Investigations Department of the Durham Police only two months earlier," (¶84). It is further alleged in the Complaint that on or about March 24, 2006, Michael B. Nifong, then interim District Attorney for the 14th Prosecutorial District of North Carolina (Durham County) and now one of the individual Defendants in this action, took over the direction of the investigation (¶131); that Sgt. Gottlieb and Inv. Himan were instructed by their supervisor in the Police Department to take their direction in the investigation from Mr. Nifong (¶133); and, that Nifong continued to direct or help direct the investigation and prosecution of the Plaintiffs until January 12, 2007 (¶134). The Plaintiffs also allege that Mr. Nifong viewed the investigation and prosecution of the

Plaintiffs as a potential source of political gain in his hotly contested election to the position of District Attorney (¶¶128 and 130)

During the period that Mr. Nifong was directing this investigation, the Plaintiffs have alleged that he and his investigative staff: 1) consistently ignored inconsistencies in the prosecuting witness's testimony or testimony from her co-dancer, which did not support Ms. Mangum's allegation (¶¶52, 57, 59, 102 and 194 among others; 2) conducted photo identification procedures which were violative of policies of the Durham Police Department (¶¶93, 186 and 187); 3) intimidated witnesses who could offer exculpatory evidence on behalf of the Plaintiffs (¶250, 258 and 259); and, 4) manipulated the disclosure, withheld the results, or produced false and misleading reports of, DNA testing from the North Carolina SBI laboratory and the private laboratory which Mr. Nifong engaged to analyze DNA samples, DNA Security, Inc., also a Defendant in this action (¶¶171, 172, 209, 211 and 277). It is the Plaintiffs' further contention that, as a result of these irregularities or alleged misconduct by Nifong and his investigative staff, including the testimony of Sgt. Gottlieb and Inv. Himan before the Durham County Grand Jury, indictments were returned against the Plaintiffs, Collin Finnerty and Reade Seligmann on April 17, 2006 (¶¶ 214 and 215) and against David Evans on May 15, 2006 (¶¶238, 240 and 241).

The Defendant, David Addison, is described in the Complaint as an "official spokesperson for the Durham Police Department" (¶¶27 and 158) and it is further alleged that he and Defendant Ronald Hodge made a series of false, misleading and inflammatory statements to media. The Defendant, David Addison, is alleged to have made the statements attributed to him on March 24 and 25 and to have "colluded" with

Defendant Himan and Durham Crimestoppers to produce a "Wanted Poster" identifying the white members of the Duke Men's Lacrosse Team to be disseminated and circulated around the Duke campus (¶ 160). It is factually significant in regard to the Defendant, David Addison, that nowhere in the entire Amended Complaint filed on behalf of the Plaintiffs, is it alleged that David Addsion:

1. ever interviewed any witness in the investigation of the allegations by Crystal Mangum;

2. ever intimidated or attempted to intimidate any witness who could offer exculpatory evidence in the investigation;

3. ever participated in, or was involved in any manner with, the photo identification procedures used in the investigation of this matter;

4. ever had any involvement with the State Bureau of Investigation or representatives of DNA Security in regard to any DNA testing or results;

5. ever, at any time, met with the interim District Attorney, Michael B. Nifong;

5. had any demonstrated problems with or history of animus toward Duke students;

6. had any demonstrated racial or religious prejudices; or

7. assisted in the preparation of, or appeared before, the Durham County Grand Jury when it returned indictments against the Plaintiffs on April 17 and May 15, 2006.

It is further noted that David Addison is not, nor is he alleged to have been, in a supervisory position with the Durham Police Department during the times relevant to this action. As alleged, he was a "spokesperson" for the Department who relayed information to the public and the media which was provided to him by those involved in the investigation of the alleged incident. Nowhere in the Amended Complaint are there any allegations that David Addison had provided to him, or was otherwise aware of, the

details of the developing investigation conducted by Mr. Nifong or those working under his supervision or reporting to him.

### III.   STANDARD OF REVIEW

While Defendant Addison acknowledges that when a Motion to Dismiss is filed pursuant to Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the plaintiffs; read the (amended) complaint as a whole; and, take the facts as asserted therein as true, dismissal is warranted when the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Schatz v. Rosenberg,* 943 F.2d 485 (4th Cir. 1991).   In addition, and as has been consistently found in this court and affirmed by the Fourth Circuit Court of Appeals, a court is not bound by any legal conclusions that are alleged in the complaint as facts in reaching the decision as to whether or not the Plaintiffs' Amended Complaint has met its burden.   *Heckman v. University of North Carolina at Chapel Hill,* 195 F. Supp.2d 468 (M.D.N.C. 1998), *rev. denied,* 166 F.3[rd] 1209 (4th Cir. 1998); *Bass v. E.I. DuPont De Nemours & Comp.,* 324 F.3[rd] 761 (4th Cir. 2003); and the recent case before this court, *Gladden v. Winston-Salem State Univ.* 495 F. Supp. 2d 517 (M.D.N.C. 2007) wherein the court wrote that: " A few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusions." *(Id.,* 520-521).   When judging the allegations against David Addison in the Amended Complaint of the Plaintiffs in this action by this standard, it must be dismissed as to him.

# IV. ARGUMENT

## Introduction

In the Amended Complaint of the Plaintiffs, David Addison is identified as a (or "the") spokesperson for the Durham Police Department (¶27). His total involvement in this matter is alleged to have occurred in slightly over a five day period of time beginning on March 24 and effectively ending on March 28 (although it is alleged that he continued some activities "In subsequent days" after March 28) (¶160). While the conclusory phrase that Addison was "aware of:" Mangum's alleged bizarre behavior on March 14, 2006 (¶49); Mangum's alleged recanting of her rape allegations (¶54); Mangum's alleged inconsistent statements to medical personnel (¶67) and police (¶103); medical and scientific testing results applicable to this case (¶78); Kim Pittman's contention that Mangum's statements were a "crock" (¶89); Mangum's apparent inability to identify her alleged attackers in initial photo "lineup" procedures (¶99); and, the lacrosse captains' cooperation with police on March 16 (¶¶118 and 123), when he made statements which were reported in the media, it is nowhere alleged how Addison was to have known any of these "facts;" who would have told him about or supposedly provided him with this information; or, when or where this information was supposedly provided to him. Since he is not identified as, nor did he occupy, a "supervisory" position within the Police Department, there is no legal basis to imply that this alleged information was known by him.

## *Qualified Immunity*

David Addison's alleged statements made or actions taken between March 24 and March 28 or subsequent, were all done while in the performance of his official duties as a

police officer with the Durham Police Department. As such, he is entitled to qualified immunity from this suit as "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The mantra that surrounds all of the Plaintiffs' claims as they relate to then Corporal Addison, assert that the public statements that he made in his position as spokesman for the Durham Police Department or as the representative of CrimeStoppers were 'false, misleading and inflammatory." Even assuming for the purpose of a Rule 12(b)(6) Motion that these allegations were true, they do not give rise to the deprivation of a constitutional right or create the basis for a §1983 claim as defamation by a government official does not constitute a constitutional violation, S*eigart v. Gilley,* 500 U.S. 226, 233 (1991). A Motion to Dismiss is an appropriate method for Addison to raise this issue as the Supreme Court noted in *Saucier v. Katz,* 533 U.S. 194 (2001) that when a defendant "seeks qualified immunity, a ruling on that issue should be made early in the proceedings so the costs and expenses of trial are avoided where the defense is dispositive." *Id.* 200,

*"Official Capacity claims"*

Officer Addison is a named Defendant in Eight (8) of the Twenty-two (22) alleged Causes of Action (Nos.: 4, 7, 8, 10, 13, 15, 16 and 19). In all but the Fourth Cause of Action, it is indicated that he is sued in his "individual *and official capacities.*" For the remaining seven (7) Causes of Actions where he was sued, in part, in his "official capacity," Addison should be dismissed as such claims are, in reality, claims against the City of Durham, which is also a named Defendant. As noted by the Court in *Kentucky v.*

*Graham,* 473 U.S. 159 (1985) "such suits (official capacity suits)...generally represent only another way of pleading an action against an entity of which the officer is an agent (here, the City of Durham).... There is no longer a need to bring such official-capacity actions against local government officials......local government units can be sued directly for damages and injunctive or declaratory relief." *Id.* 165-166, 168 n. 14. This principle was recently articulated and applied by this Court in *W.E.T. v. Mitchell,* No. 1:06-CV-487. U.S. Dist. LEXIS 68376, *30 (M.D.N.C. Sept. 14., 2007) wherein it was stated that: "Claims against the official in his or her official capacity which are duplicative of claims against a government entity are subject to dismissal." See also, *Sheaffer v. County of Chatham,* 337 F. Supp. 2d 709, 721 (M.D.N.C. 2004) and *Disher v. Weaver,* 308 F. Supp. 2d 614, 628 (M.D.N.C. 2004).

### *Impact of Grand Jury Indictment*

As previously noted, the Grand Jury for Durham County returned its Indictments against Mr. Seligmann and Mr. Finnerty on April 17, 2006 and against Mr. Evans on May 15, 2006. According to the Amended Complaint, the conduct of David Addison about which the Plaintiffs complain occurred well before the first Indictments were returned by the Durham County Grand Jury and there is no issue that Addison either appeared before or presented any evidence to the Grand Jury during its deliberations. Because of the traditional and important necessity of maintaining secrecy in Grand Jury proceedings, opening an inquiry into what influenced it to return True Bills in this instance would raise serious issues of jurisprudence and federalism. See *Shell v. Wall,* 706 F. Supp. 545, 548, n. 3 (W.D.N.C. 1991). Even assuming that the Plaintiffs' Amended Complaint could be read to infer that any of the statements attributed to

Addison more than two weeks prior to the Grand Jury's first indictments, contributed to the grand jury returning those indictments, it has long been held that pretrial publicity will not be a basis for invalidating a grand jury indictment. *United States v. Waldon,* 363 F. 3d 1103, 1108-1110 (11th Cir. 2004) and *United States v. Washington,* 705 F. 2d 489, 499 (D.C. Cir. 1983).

Therefore, even assuming that in his official capacity as a spokesperson for the Durham Police Department, Addison made some false, misleading or inflammatory statements (which is all denied by the Defendant, David Addison), a properly convened grand jury's quasi-judicial determination to issue an indictment is and has been consistently held to break the chain of causation for any "seizure" of the Plaintiffs in this action giving them constitutional protection or cognizable rights. A decision by a grand jury to indict (after which a defendant is arrested) is viewed as an independent and intervening action that breaks the casual chain between alleged malfeasance by investigators (which David Addison was not) and alleged harm suffered by Plaintiffs as a result of the seizure that thereafter occurs. See *Reed v. City of Chicago,* 77 F. 3d 1049 (7th Cir. 1999); *White v. Wright,* 159 Fed.Appx. 193 (4th Cir. 2005).

Since all of David Addison's alleged actions occurred prior to the grand jury returning its indictments and, since the Plaintiffs' "seizure" did not occur until they voluntarily turned themselves in for processing (and were immediately released) after the grand jury returned its indictments which are "a written accusation by a grand jury, filed with a superior court charging a person with the commission of one or more criminal offenses" (N.C.G.S. §15A-641(a)), all of the federal and state claims asserted against him must be and should be dismissed.

**Federal Claims (Causes of Action 1 – 12)**

Without waiving any of the defenses set out in this Introduction, this Defendant will briefly address each of the Causes of Action that are specifically directed to him to demonstrate additional reasons why each should be dismissed with prejudice. In regard to the federal claims asserted against David Addison (Fourth, Seventh, Eighth and Tenth Causes of Action), he contends that the §1983 claims contained in the Fourth and Seventh Causes of Action should be initially dismissed because Plaintiffs' allegations against Addison fail to state with specificity facts necessary to sustain such a claim; they have no clearly established right which could be violated pursuant to this section and the action of the Durham County Grand Jury insulates any of the alleged statements of Addison; and, as to the §1985 claims alleged in the Eight and Tenth Causes of Action, the Plaintiffs are not members of a "protected class" entitling them to such relief. Rather than re-brief these issues and to save this Court from having to read through repetitive legal arguments in numerous Briefs, this Defendant incorporates the arguments on behalf of the City of Durham (Argument IV(C)(1)(2), pp. 21-28; and, (F), pp. 35-40); and the Supervisory Defendants (Baker, Chalmers, Council, Hodge, Lamb, Ripberger and Russ) (Argument IV(A)(B)(C)(1), pp. 13-28; (C)(4), pp. 35-36; and, V(A), pp. 36-40) on these issues.

### A. Making False Statements in Violation of 42 U.S.C. §1983 (Fourth Cause of Actions)

In the Complaint, the Plaintiffs correctly note that David Addison was assigned to work with the public supported entity referred to as Crimestoppers. Crimestoppers is a national organization which publicizes crimes that have not been solved and invites the public to provide anonymous information to investigators that might assist in such

investigations. There is often a reward associated with helpful information. The program has been very successful in assisting law enforcement agencies in obtaining information from the public who might not otherwise have come forward. Typically, investigators would provide information to the Crimestoppers liaison about the crime under investigation and that information would be then transmitted to the public in a variety of methods. It was in that context that David Addison was initially provided with information about the alleged criminal activity at 610 N. Buchanan Blvd. on the evening of March 13 or early morning hours of March 14, 2006, when his organization was asked to help.

At the heart of each claim against David Addison are comments that Plaintiffs allege he made to the media beginning on March 24 and ending on March 28, 2006 based upon information he had been provided in his position as police liaison for Crimestoppers. Specifically, the following comments are ascribed to David Addison in paragraph 160 of the Plaintiffs' Complaint:

a.  "On or about March 24, 2006, Addison told a reporter for WRAL TV: You are looking at one victim brutally raped. If that was someone else's daughter, child, I don't think 46 would be a large enough number to figure out exactly who did it." (in reference to the DNA sampling of the entire Duke Men's Lacrosse team)

b.  "On or about March 25, 2006, Addison told reporters from CBS and ABC News that a "brutal rape" occurred at 610 N. Buchanan."

c.  "On or about March 25, 2006, Addison told the Durham *Herald-Sun* that when Durham Police served the search warrant at 610 N. Buchanan on March 16, 2006, the Duke lacrosse players who lived there had refused to cooperate."

d.  "On or about March 25, 2006, Addison told the Durham *Herald-Sun* that there was "really, really strong physical evidence" of a crime."

e. "On or about March 25, 2006, Addison told the Raleigh *News & Observer* that an attack had occurred, that some of the Duke lacrosse players knew about it, and that the players should stop obstructing the investigation and come forward to provide evidence. Addison repeated these statements to the Durham *Herald-Sun,* ABC News, and WRAL-TV on or about March 25, 26 and 28, 2006."

f. "On or about March 28, 2006, Addison colluded with Himan and Durham Crimestoppers to produce a "Wanted" poster, which he caused to be disseminated in and around the campus of Duke University."

In their Fourth Cause of Action, the Plaintiffs allege that these remarks (in addition to those attributed to Nifong and Deputy Chief of Police Hodge) were intended to "inflame the Durham community and grand jury pool...and to compromise the fairness of subsequent judicial proceedings." (¶366) They further allege that as a result of these false public statements, "Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the Constitution" (¶368). In addition, they allege that these actions caused them emotional distress, loss of liberty (among other enumerated claimed losses) and financial expense to defend themselves.

This Cause of Action is subject to dismissal as against the Defendant David Addison in that interest in or damage to one's reputation has been unequivocally held to not be a constitutional right protected by the Constitution. *Paul v. Davis,* 424 U.S. 693 (1976) and *Siegart v. Gilley,* 500 U.S. 226, 233 (1991). Just as important in the context of this lawsuit, the Plaintiffs claim that these statements were intended to "inflame" the grand jury pool and "compromise the fairness of subsequent judicial proceedings." As previously mentioned in this Brief and others, the only "seizure" of the Plaintiffs occurred in this case after the indictment was issued by the grand jury and the Plaintiffs were arrested, allowed to voluntarily submit themselves for processing and immediately released without spending any time in jail. As previously noted, it is not alleged that

13

David Addison provided any information for presentation to or testified before the grand jury and the Complaint acknowledges that the indictment was sought and obtained by the legal official responsible for such action, the District Attorney, Michael B. Nifong (¶¶212 – 215). The return of a "True Bill" by that judicial body insulates David Addison from liability in this action (see pages 9 – 10 of this Brief). See *Albright v. Oliver,* 510 U.S. 266 (1994) where the Court rejected the concept that where an accused was arrested, but never tried, he experienced an unreasonable "seizure" protected by the Fourth Amendment holding that he was not "entitled to judicial oversight or review of the decision to prosecute." *Id. 274.* Further, our courts have long rejected the concept that a grand jury indictment may be invalidated on the ground of prejudicial publicity (such as is attributed here to Addison). *United States v. Walden,* 363 F.3d 1103 (11th Cir. 2004). As was noted in *United States v. Washington,* 705 F.2d 489 (D.C. Cir. 1983), "the concern over adverse publicity" for constitutional purposes is "its affect on the fairness of the ensuing trial....not its effect on the grand jury." *Id,* 499. Fortunately for these Plaintiffs, they never experienced a trial as the judicial process of North Carolina, as it was ultimately applied to them, resulted in the Attorney General dismissing all criminal charges against them (¶319).

### B. Conspiracy in Violation of 42 U.S.C. §1983 (Seventh Cause of Action)

In this cause of action, the Plaintiffs' allege and contend that there was a conspiracy among all of the Defendants to deprive them of their constitutional rights "by charging and prosecuting" them, when the charges were not supported by probable cause (¶439). At the outset, it should be noted that David Addison, serving as the "spokesperson" for the police department in the early days of the investigation into this

matter, did not (and could not as a matter of law) "charge" or "prosecute" anyone, including these three Plaintiffs. As previously pointed out in this Brief, he not only did not present any evidence to, nor testify before, the grand jury, he was not involved in any aspect of the investigation conducted by investigators in this matter under the supervision of Mr. Nifong.

The Fourth Circuit Court of Appeals has noted that in order to establish a conspiracy under §1983, a plaintiff "must present evidence that the (defendants) acted jointly and that some overt act was done in furtherance of the conspiracy which resulted in a (plaintiff's) deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W.Va.,* 81 F.3d 416, 421 (4th Cir. 1996). As previously discussed, there was no deprivation of a cognizable constitutional right of the Plaintiffs in this action, certainly by any "statements" made by, or attributed to, Addison. It has also been noted that "where the complaint makes only conclusory allegations of a conspiracy under §1983 or §1985 and fails to allege facts suggesting an agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint." *Sherwin v. Piner,* No. 5:03-CV-275-H(3), 2003 U.S. Dist. LEXIS 26855 at*7-8 (E.D.N.C., July 22, 2003).

Applying those principles to this case as it relates to Defendant Addison, and acknowledging the statements that he allegedly made in the five day period of March 24 through March 28, the grand jury intervened in this instance and "the chain of causation was broken by (the) indictment." *Reed v. City of Chicago, supra,*

## C. Conspiracy in Violation of 42 U.S.C. §1985(2) and §1985(3) (Eight and Tenth Causes of Action)

Of all the claims asserted against David Addison, this cause of action appears to be the most problematical or difficult to understand. 42 U.S.C. §1985(2) purpose is

defined, in part, by its heading: "Obstructing justice: intimidating party, witness or juror." There is no allegation anywhere in the complaint that David Addison ever met with or talked to any party, witness or juror in this matter, let alone that he ever attempted in any manner to intimidate any witnesses. While there are some allegations of "intimidation" in regard to certain witnesses, the Defendant Addison is not alleged to have been involved in any manner in such acts or efforts to intimidate. "Conspiracy to obstruct justice under 42 U.S.C. §1985(2) occurs when 'two or more persons conspire to injure (a) party or witness in [her] person or property in retaliation for that person testifying in any court of the United States." *Hooper v. State of North Carolina,* 1:04-CV-0014, 2006 U.S. Dist. LEXIS 72268 at*54 (M.D.N.C. Oct. 3, 2006). Regardless of whether the alleged intimidation was subsequent to a person testifying or prior to such an event, there are no factual allegations which could or would tie Addison into a conspiracy with any other defendant to intimidate any witness. As noted in the preceding argument and in quoting *Sherwin v. Piner, supra,* making conclusory allegations of a conspiracy pursuant to either §1983 or §1985 is insufficient to prevent a dismissal.

In addition to the specificity requirements of §1985 claims, it is required that the Plaintiffs be members of a protected class and subjected to animus as a result of being members of that class. In this case, such a requirement applies to both the equal protection and equal privileges and immunities claims asserted by the Plaintiffs. *Griffin v. Breckenridge,*403 U.S. 88 (1971); *Bey v. Celebration Station,* 3:02CV461, 2006 U.S.Dist. LEXIS 72479, at *9-10 (W.D.N.C. 2006). White male students at Duke University do not fall within any recognized protected class. As noted by the Fourth Circuit, the only protected class for §1985(3) claims are those who are African-

American. *Harrison v. KVAT Food Mgmt.*, 766 F.2d 155, 161-62 (4th Cir. 1985) and despite several efforts over the years to expand that definition from such divergent groups as Republicans, Democrats, or disabled veterans, the courts have declined to do so.

**State Claims (Causes of Action 13 – 22)**

Generally, these Causes of action allege claims against various Defendants for State torts ranging from malicious prosecution and conspiracy, to negligence (in a variety of alleged manifestations) to intentional and negligent infliction of emotional distress. Of these causes of action, David Addison is a named Defendant in four: Thirteen (Malicious Prosecution and Conspiracy), Fifteen (Intentional Infliction of Emotional Distress), Sixteen (Negligence) and Nineteen (Negligent Infliction of Emotional Distress). In essence, each of these claims is based on the same factual allegations that pervade the allegations in regard to the Plaintiffs' federal claims. Nevertheless, at all times relevant to this Complaint, David Addison was a "public official" as a duly sworn police officer of the Durham Police Department. As such, and for, at least, the claims sounding in negligence, he is protected from this action by the public official immunity doctrine in North Carolina. "A public officer performing discretionary acts, however, is absolutely immune from mere negligence claims." *Shaw v. Stroud,* 13 F.3d 791, 803 (4th Cir. 1994). This is so because: "As a general rule, it is presumed that a public official in the performance of his official duties 'acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." *Green v. Town of Valdese,* 306 N.C. 79, 82, 291 S.E.2d 630, 632 (1982). It has been held in North Carolina that a police officer employed by a North Carolina municipality and engaged in his official duties is a public

official for purposes of this public official immunity. *Campbell v. Anderson*, 156 N.C. App. 371, 576 S.E.2d 726 (2003); *Wright v. Hill*, No. 1:03 CV 109, 2004 U.S. Dist. LEXIS 13667, *17 (M.D.N.C. July 16, 2004).

In order to pierce this veil of public official immunity, the conduct must be: 1) outside the scope of official authority; 2) malicious; or, 3) corrupt. *Moore v. Evans*, 124 N.C. App. 35, 476 S.E. 2d 415 (1996). Accordingly, since the allegations of the Complaint clearly indicate that Addison was acting within the scope of his official authority as a police spokesperson when all the complained of statements were made and there are no allegations that his statements were made with malice or that he was corrupted in any manner, each of these claims must fail.

### D. Malicious Prosecution and Conspiracy (Thirteenth Cause of Action)

The elements of a malicious prosecution claim are: 1) that the defendant initiated the prior proceeding; 2) that he did so maliciously; 3) without probable cause; and, 4) that the prior proceeding terminated in plaintiff's favor. *Jones v. Gwynne*, 312 N.C. 393, 397, 323 S.E.2d 9, 11 (1984). As was (hopefully) clearly enunciated in prior portions of this Brief, Addison did not "initiate" the proceedings against these Plaintiffs. At an early stage of the proceedings, he made some public statements based upon the information that was provided to him. The District Attorney, a duly constituted public official with the authority and responsibility to do so, initiated the proceedings in this action when he made the decision to seek a True Bill from the grand jury and the grand jury made the decision to indict the Plaintiffs with no information or testimony from David Addison.

## E. Intentional Infliction of Emotional Distress, Negligence and Negligent Infliction of Emotional Distress (Causes of Action Fifteen, Sixteen and Nineteen)

As with the other claims asserted against David Addison, each of these remaining three Causes of Action are based on his alleged public statements to members of the media set forth on pages 12 – 13 of this Complaint and contained in paragraph 160 of the Amended Complaint. The Plaintiffs repeatedly assert that these statements were "false, misleading and inflammatory" when made. Despite how the Plaintiffs might try to categorize those statements in various alleged causes of action, the gist of their complaint is that the statements attributed to Addison defamed the Plaintiffs and constituted libel and slander against them. As such, each of those claims is now barred by the applicable one year statute of limitation on claims of defamation. N.C.G.S. § 1-54.

As is thoroughly discussed in the Supervisory Defendants (Baker, Chalmers, Council, Hodge, Lamb, Ripberger and Russ) Brief, [VII(B)(1)], "North Carolina law requires a court...to consider the essence of the claim, rather than the labels a plaintiff may apply." *Adams v. McIntyre,* 1997 U.S. Dist. LEXIS 15942 *4 (W.D.N.C. 1997). In this instance, and in order to attempt to avoid the bar of the applicable statute of limitations as it would apply to Addison for his public statements, the Plaintiffs have asserted claims of intentional infliction of emotional distress, negligence and negligent infliction of emotional distress for those statements. This Defendant (Addison) incorporates the argument of the Supervisory Defendants mentioned above on the ineffectiveness of this "labeling" by the Plaintiffs without restating or arguing the same points and cases here. The statements which comprise the basis of these remaining

claims against David Addison were made between March 24 and March 28, 2006. This suit was initially instituted with the filing of a Complaint on October 5, 2007 or more than six (6) months after the applicable statute of limitations had expired.

### 1. Intentional Infliction of Emotional Distress and Conspiracy (Fifteenth Cause of Action)

It should initially be observed that, while this Cause of Action alleges a "conspiracy," the only individuals who are alleged to have been engaged in a conspiracy are the Defendants Nifong, Clark, Gottlieb, Himan, Meehan, Wilson and DSI in various combinations (¶509 and ¶511). Addison is not alleged to have been part of that conspiracy. As far as the allegations of intentional infliction of emotional distress are concerned, the Plaintiffs reassert their same contentions (with somewhat different adjectives) that the statements attributed to Addison were "false, insulting, offensive, and inflammatory" ("insulting" and "offensive" having been added to the previous descriptions) which were "calculated to shame, to humiliate, and to produce public condemnation of the Plaintiffs." (¶510). The statements attributed to David Addison are insufficient as a matter of law, to support a claim for intentional infliction of emotional distress as against him.

The elements necessary to support a claim for intentional infliction of emotional distress are: 1) extreme and outrageous conduct 2) which is intended to cause and does cause 3) severe and disabling emotional distress. *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325 (1985); *Waddle v. Sparks,* 331 N.C. 73, 414 S.E.2d 22 (1912). The burden to establish this tort has been set high in North Carolina and, generally, intemperate or even churlish behavior or language will not suffice. Conduct (in the case of David Addison, "language") is extreme and outrageous when it is "so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly 'intolerable in a civilized' community." *Briggs v. Rosenthal,* 73 N.C. App. 672, 677, 327 S.E.2d 308, 311, *cert. denied,* 314 N.C. 11, 332 S.E.2d 479 (1985). The determination of whether the alleged conduct reaches such a level is a matter of law for the trial judge. *Briggs v. Rosenthal, supra,* at 676 and *Lenins v. K-Mart Corp.,* 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990). When judged by this standard, as is required here, statements of a police department spokesperson made in the course and scope of his employment in an effort to assist investigators in uncovering evidence in a criminal investigation through his work with Crimestoppers, cannot, as a matter of law, meet that standard. None of the Plaintiffs were mentioned by name; there is no indication that Addison was attempting to cause them harm (as compared to performing his duties to assist in the ongoing investigation of an alleged criminal act); and, there is not even a pleading to indicate that any of the Plaintiffs are now, or at any point since March 28, 2006, have been "disabled" by anything that Addison might have said.

### 2. Negligence by Durham Police and Negligent Infliction of Emotional Distress (Durham Police Statements) (Sixteenth and Nineteenth Causes of Action)

As previously discussed, claims of negligence against a public official, such as a police officer performing duties in the normal course and scope of his employment, are barred in North Carolina under the doctrine of public official immunity. That immunity will attach to David Addison as against these claims of Negligence (Sixteenth Cause of Action) and Negligent Infliction of Emotional Distress (Nineteenth Cause of

Action) and constitute a bar to any recovery against him or, through him, the City of Durham.

However, even if these claims were not barred by that immunity, Plaintiffs have failed to establish a key element of any claim of negligence as against Officer Addison. In order to establish a viable claim of negligence, a plaintiff must show that: 1) the defendant failed to exercise due care in the performance of some legal duty *owed to the plaintiff* under the circumstances; and, 2) the negligent breach of this duty was a proximate cause of injury to the plaintiff. *Guthrie v. Conroy,* 152 N.C. App. 15, 567 S.E.2d 403 (2002); *Wood v. Guilford County,* 355 N.C. 161, 558 S.E.2d 844 (2002). In this instance, the Plaintiffs have failed to specify any legal duty that Officer Addison, either in his position as a spokesperson for the Durham Police Department or as the liaison for Crimestoppers, owed to them. In fact, and as a matter of law, he owes them no legal duty in the exercise of his police functions. Rather, the only duty he owes to them is to refrain from conduct which is intended to injure them or from corrupt conduct intended to benefit himself or specifically to harm them. As was noted in *Shaeffer v. County of Chatham, supra,* "the lack of a duty from the defendant to a plaintiff is fatal to negligent infliction of emotional distress claim." See also, *Guthrie v. Conroy, supra* at 25, 411.

While no specific case has been located in North Carolina in which the specific issue of a police officer's alleged negligence or conduct in investigating, or assisting in an investigation, alleged criminal activity constitutes an actionable tort, it has been addressed elsewhere. As is pointed out in the Brief filed on behalf of Officer Benjamin Himan in this matter (II(C)(2)), which is incorporated herein, several other jurisdictions

have considered this issue and uniformly concluded that no such cause of action exist. Perhaps best stating the public policy for such a finding, the Idaho Court found in denying an actionable tort for negligent investigation that to hold otherwise would "impair vigorous prosecution and have a chilling effect on law enforcement." *Wimer v. State of Idaho,* 841 P.2d 453 (Idaho 1993). As a police office of Durham, David Addison owed a duty to the public to serve and protect it. He did not owe a specific legally cognizable duty to the Plaintiffs to carry out this public responsibility in a manner they found acceptable.

## Conclusion

As a police officer for the Durham Police Department and, as its liaison to Crimestoppers, who occasionally served as spokesperson for the Department, David Addison is alleged to have made comments to the media about the then ongoing investigation in the alleged rape at 610 N. Buchanan Blvd. during the early morning hours of March 14, 2006. These statements were made between March 24 and March 28, 2006. Officer Addison did not engage in any "on ground" investigation of these allegations; he did not interview any witnesses or handle any physical evidence (including the DNA samples); he never met with the District Attorney, Michael Nifong who assumed control of the investigation; and, he did not appear before the Durham Grand Jury when it returned its Indictments in this matter on April 17, 2006 and May 15, 2006.

Because he is a public official, David Addison is entitled to immunity from civil suits. He claims that immunity. Since he was, at all times, acting within the course and scope of his employment as a police officer for the Durham Police Department and, in

seven of the eight Causes of Action in which he is a named Defendant, he is identified as being sued "individually and in *his official capacity*" and the City of Durham is a named Defendant in this action, he should be dismissed as an individual Defendant. The grand jury's action in returning an Indictment against the Plaintiffs in this action is a further bar to proceeding with any claims, federal or state, in that he was not responsible for any "seizure" of any of the Plaintiffs that might have thereafter occurred in this action.

As to David Addison, all Causes of Action in the Amended Complaint of the Plaintiffs filed herein purporting to seek recovery from him should be dismissed with prejudice

Respectfully submitted, this the 15th day of January, 2008.

/s/ *James B. Maxwell*
James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
Attorney for David Addison
P. O. Box 52396
Durham, NC 27717
(919) 493-6464
jmaxwell@mfbpa.com
State Bar No.: 2933

\

## Certificate of Service

I hereby certify that I have served a copy of Defendant David Addison's Memorandum of Law in Support of Motion to Dismiss upon the below listed individuals by electronically filing the document with the Court on this date using the CM/ECF system or by placing a copy in the U.S. Mail.

Charles Davant, IV
Brendan V. Sullivan, Jr.
Robert M. Cary
Christopher N. Manning
Williams & Connolly, LLP
725 12th St., N.W.
Washington, DC 20005

David S. Rudolf
Rudolf, Widenhouse & Fialko
312 West Franklin St.
Chapel Hill, NC 27516

Barry C. Scheck
100 Fifth Avenue
New York, NY 10011

Richard D. Emery
Emery, Celli, Brinckerhoff &
   Abady, LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019

James B. Craven, III
P. O. Box 1366
Durham, NC 27702

Roger E. Warin
Steptoe & Johnson, LLP
1330 Connecticut Ave., N.W.
Washington, DC 20036

James A. Roberts, III
Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
1305 Navaho Dr., Ste. 400
Raleigh, NC 27609

Joel M. Craig
Kennon, Craver, Belo, Craig
   & McKee, PLLC
P. O. Box 51579
Durham, NC 27717-1579

Edwin M. Speas
Poyner & Spruill, LLP
P. O. Box 10096
Raleigh, NC 27605-0096

Patricia P. Kerner
Troutman Sanders
P. O. Drawer 1389
Raleigh, NC 27602

Reginald B. Gillespie, Jr.
Faison & Gillespie
P. O. Box 51729
Durham, NC 27717

Robert J. King, III
Kearns Davis
Brooks, Pierce, McLendon,
   Humphrey & Leonard, LLP
P. O. Box 26000
Greensboro, NC 27420

Linwood Wilson
c/o P. O. Box 2301
Durham, NC 27702

This the 15th day of January, 2008.

/S/James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
Attorneys for David Addison
P. O. Box 52396
Durham, NC 27717-2396
(919) 493-6464
State Bar No.: 2933