IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF
NORTH CAROLINA

DAVID F. EVANS, *et al,*        )
           )
        Plaintiffs,      )
           )
v.                 )      Case No. 1:07-CV-00739
           )
THE CITY OF DURHAM, *et al,*    )
           )
        Defendants.    )

_____

**REPLY OF DEFENDANTS BAKER, CHALMERS, COUNCIL, HODGE, LAMB, RIPBERGER, and RUSS IN SUPPORT OF MOTION TO DISMISS**

_____

## MATTERS NO LONGER AT ISSUE

Plaintiffs' concede that a number of claims set out in the Amended Complaint against Defendants Baker, Chalmers, Hodge, Council, Russ, Lamb, and Ripberger ("Defendants") warrant dismissal. Specifically conceded are the following claims:

1.      Fifth Cause of Action (*Monell* Claim), where Defendants were sued in their official capacities only on this claim. Plaintiffs concede that the Court may dismiss the official capacity claims against these Defendants. (*See* Pls.' Br. 114.)

2.      Sixteenth Cause of Action (Negligence by Durham Police), where Plaintiffs state that they are only seeking to hold the City liable, based on the acts of its officials, and not Hodge individually, (*see* Pls.' Br. 98, n.57; 110 n.72), or in his official capacity. (*See id.* at 115.) Thus, the claims in the Sixteenth Cause of Action against Hodge should be dismissed.

1

3.      Seventeenth, Eighteenth, and Nineteenth Causes of Action (Negligent Supervision and Negligent Infliction of Emotional Distress by Durham Police), where again, Plaintiffs state that they are only seeking to hold the City liable and not these Defendants in their individual (*see* Pls.' Br. 99, n.58 and 59; 112, n. 72) or in official capacities.  (*See id.* at 115.)

4.      Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action (Federal Conspiracy Claims), where Plaintiffs concede that Defendants, in their official capacities, should be dismissed from these Causes of Action.  (*See id.* at 114-15.)

Defendants' rebuttal to the remaining claims for relief is set out below.

## **ARGUMENT**

I.      Standard of Review

Plaintiffs juxtapose the absence of factual allegations in the complaint in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1973-74 (2007), against their Amended Complaint, "which consists of over 150 pages and 560 paragraphs and describes Defendants' meetings, agreements, and coordinated misconduct in painstaking detail," (Plaintiffs' Brief 20), and suggest that even bringing a motion to dismiss is almost offensive.  (*Id.* at 1.)  But just as "the Constitution does not provide a remedy for every wrong that occurs in society[,]" *Eagle v. Morgan*, 88 F.3d 620, 627 (8th Cir. 1996), bulk and effort are not the legal standard for determining whether Plaintiffs' claims survive a motion to dismiss, *see Tolley v. Kivett*, No. 1:01-CV-410, 2002 U.S. Dist. LEXIS 24368, *5 (M.D.N.C. July 1, 2002).

"In last term's *Twombly* decision, . . . the Supreme Court held that a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Iqbal v. Hasty*, 490 F.3d 143, 155-58 (2d Cir. 2007). "Although this threshold is low, it is real—and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation." *Tolley*, 2002 U.S. Dist. LEXIS 24368 at *5 (internal quotations and citations omitted). Without more, Plaintiffs' Amended Complaint falls short of "actively and plausibly" suggesting individual liability against Baker, Chalmers, Council, Hodge, Lamb, Ripberger, and Russ for violations of constitutional rights.

## II.    Allegations Against a Group Do Not Support Claims for Individual Liability

Nearly all of Plaintiffs' remaining claims rest on allegations asserted against "Supervisory Defendants," rather than allegations of specific conduct by any specific Defendant. However, when asserting claims of personal liability—as opposed to official or *Monell* liability—the burden is squarely on the plaintiff to allege a specified affirmative act or omission against *each* defendant, not rely on group monikers, team action, or mere chain of command. Grouping defendants together and attempting to state individual claims based upon allegations against that group ignores the Rule 8 requirement of properly noticing and identifying *which* defendant is personally responsible for *what* act. *See Negrich v. Hohn*, 379 F.2d 213, 215 (3d Cir. 1967) (affirming the dismissal of a complaint for cruel and unusual punishment where charges

were alleged against defendants, generally, and several individuals were not named beyond the caption: "It is apparent that *all* defendants could not have inflicted the beatings at the times and places indicated."); *see also Ashcroft v. Dep't of Corrections*, No. 05-CV-488, 2007 U.S. Dist. LEXIS 49079, *28-29 (W.D.N.Y. July 6, 2007) (omitting which defendants participated in a denial of privileges, and instead making allegations against "defendants," "fails to state a plausible claim for relief."); *Agresta v. City of Philadelphia*, 694 F. Supp. 117, 120-21 (E.D. Pa. 1988) (Complaints that "lump all the defendants together so that it is impossible to tell with specificity which defendants are responsible for which acts," should be dismissed.).

Membership in a collective group that allegedly violated a plaintiff's rights cannot yield *individual* liability. *See Jones v. Williams*, 297 F.3d 930, 939 (9th Cir. 2002) ("We reject the idea that mere presence at a search or membership in a group, without personal involvement in and a causal connection to the unlawful act, can create liability under section 1983."). "In essence, the 'team effort' standard allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his [or her] own conduct." *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996).

> The underlying problem with a 'team effort' theory is that it is an improper alternative grounds for liability. It removes individual liability as the issue and allows a jury to find a defendant liable on the ground that even if the defendant had no role in the unlawful conduct, he would nonetheless be guilty if the conduct was the result of a 'team effort.'

*Id.*

For example, in *Whisler v. City of Fresno*, No. CV F 06-1694, 2007 U.S. Dist. LEXIS 18666, *6-7 (E.D. Cal. March 16, 2007), the plaintiff sued numerous police officers following his arrest.  Plaintiff alleged that officers used excessive force as a result of policy and practice and insufficient training and supervision, resulting in physical and emotional injuries.  *Id.* at *7-9.  Although suing all officers in their individual capacities, the plaintiff was only able to allege individual involvement against the three arresting officers.  As a result of the impersonal pleading against the other officers, the court dismissed the action against them.

> The complaint alleges specific conduct by Defendants Long, Logue, and Jones.  However, the complaint does not allege any specific conduct by Defendants Pack, Bradford, or Casto other than their employment by the City of Fresno.  The complaint fails to allege how these Defendants subjected Plaintiff to an unlawful seizure and/or used excessive force.

*Id.* at 12.  In so doing, the court rejected the plaintiff's proffer that these officers were part of a group that committed the constitutional violations: personal liability "under Section 1983 requires integral participation by officers rather than simple participation in a team effort."  *Id.* at 14.  Just as the plaintiff in *Whisler*, Plaintiffs here have failed to allege specific conduct on behalf of numerous Defendants and instead have chosen to meet their burden of plausible individual liability by grouping Defendants together.

Further, it is insufficient for a section 1983 complaint to shoulder personal liability on allegations of the chain of command or who supervised whom—a quintessential

example of relying on an improper *respondeat superior* theory.[1]  *See Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974) (superintendent of prison not personally liable where a section 1983 complaint regarding an assault does nothing more than allege that he was in charge of the prison).  A proper section 1983 complaint alleging personal liability "must link each named defendant with some *affirmative* act or omission that demonstrates a violation of plaintiff's federal rights."  *Whisler*, 2007 U.S. Dist. LEXIS 18666 at *11-12.

Rank and chain of command do not demonstrate this *affirmative* act or omission. The Third Circuit recently affirmed a district court's determination that a complaint alleging a section 1983 violation for a job transfer within a state's investigative office did not allege personal liability on behalf of the state's attorney general, a named defendant:

> In contrast to the personal involvement that the Third Circuit rightly requires for a civil rights complaint, Evancho's amended complaint merely hypothesizes that Attorney General Fisher may have been somehow involved simply because of his position as the head of the Office of the Attorney General.  This conclusion, however, is not a reasonable inference to be drawn from facts alleged in Evancho's complaint.

---

[1] The statements appearing at page 68 of Plaintiff's Response relating to negotiations concerning the dismissal of Stephen Mihaich are inadmissible under Fed. R. Evid. 408(a), and are outside of the allegations of the Amended Complaint and should not be considered on this Motion.  *See* 2-12 MOORE'S FEDERAL PRACTICE - CIVIL § 12.34 (2000).  Further, they are inaccurate.  Mihaich's dismissal was based on his representations concerning *his* position in the DPD, and not on any representations concerning liability or wrongdoing of other Defendants, as implied by Plaintiffs. Additionally, as the conjunction "or" in footnote 32 of Plaintiff's Response suggests, there is more than one separate chain of command from Himan, Gottlieb, and Addison to the Chief of Police; yet, Plaintiffs have chosen to allege that all Defendants are each responsible for the acts of all three of these individuals, regardless of who they actually supervised.  Contrary to the assertions in Plaintiff's Response, while defense counsel explained that Mihaich was outside of each of these chains of command, she never stated these Defendants were all in a single chain of command, or a "decisionmaking" chain.

*Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005).

Allegations such as "the Supervisory Defendants and other City of Durham officials approved and ratified the April Photo Array," (AC ¶ 187), are simply ineffective at giving any one individual notice of what is being leveled against them as opposed to against someone else in another supervisory position at the DPD. *See Agresta*, 694 F. Supp. at 120-21. Absent more specific allegations, "it is not possible for [a defendant] to frame an answer." *Evancho*, 423 F.3d at 354; *see also Crawford v. Dep't of Corr.*, No. 07-C-840, 2008 U.S. Dist. LEXIS 6048, *13 (D. Wis. January 16, 2008) ("In the absence of such allegations, defendant . . . is not given fair notice of what the claim is against her or the grounds upon which those claims rest as required under Rule 8(a).").

Plaintiffs, now challenged on the sufficiency of their pleadings, argue that references to "Supervisory Defendants" are specific references to specific individuals. Plaintiffs' Response, for instance, calls the Court's attention to paragraphs 22, 23, 26, 183, 187, 373-388, and 404 of the Amended Complaint for the fact that Council and Russ are "Supervisory Defendants," and therefore any cases suggesting the absence of *any* allegations mentioning them warrants dismissal are "inapposite." (*See* Pls.' Br. 68.) These paragraphs either do not identify these two Defendants individually, as opposed to the seven collectively, or actually are found in Plaintiffs' *Monell* claim directed against the City based on the actions of the Durham Police Departments "Supervisory Defendants." The same can be said of Plaintiffs' defense of the allegations against Hodge, individually, for intentional infliction of emotional distress. (*See* Pls.' Br. 109.)

With the exception of a single conclusory allegation concerning "Baker, Chalmers, Hodge, and other Supervisory Defendants, (*see* AC ¶ 179),[2] none of these allegations mention Ronald Hodge at all, only "Supervisory Defendants." These and similar allegations leveled at "Supervisory Defendants" are insufficient to support claims against any one of these Defendants individually.

III.    <u>Plaintiffs Fail to Allege a Constitutional Violation</u>

In their Response, Plaintiffs for the first time specify that the constitutional right at issue here is a Fourth Amendment right to be free of unlawful seizure. (*See* Pls.' Br. 31, 32.) Other purported violations are now clarified to just be causally related to the alleged seizure. For instance, Plaintiffs state they "are not alleging that their interest in their reputations is a liberty or property interest under the Fourteenth Amendment." (Pls.' Br. 36-37.) Rather, they are claiming the statements "caused Plaintiffs to be indicted and seized without probable cause." (*Id.* at 36-37, 80-81.) Further, Plaintiffs allegations of "fabricated false inculpatory evidence[,] including the April Photo Array," are all now argued to be causes of Plaintiffs' seizures without probable cause. (Pls.' Br. 75-76.) Thus, Plaintiffs apparently agree that these alleged statements and "fabrications" are not constitutional violations in and of themselves, but instead argue that they are causally related to the alleged improper seizure.[3] (*See* Pls.' Br. 78.)

---

[2] The content of this same allegation was addressed with regard to Baker and Chalmers in Defendants' initial brief in support of their Motion to Dismiss at pages 20-21. That argument applies equally to Hodge.

[3] The Sixth Circuit has held, however, that suggestive photo arrays are not actionable even as a causal connection to a seizure or deprivation of liberty. *See Hutsell v. Sayre*, 5

Plaintiffs have not, however, addressed the appropriate question here. The

appropriate question for an unlawful seizure claim is whether, or to what extent, Plaintiffs

were deprived of their liberty:

> By stating that "the accused is not entitled to judicial oversight or review of
> the decision to prosecute," *Albright* implies that prosecution without
> probable cause is not, in and of itself, a constitutional tort. [*Albright v.
> Oliver*, 510 U.S. 266, 274 (1994) (internal quotations omitted)]. Instead,
> the constitutional violation is the deprivation of liberty accompanying the
> prosecution. Thus, as the Court of Appeals for the Second Circuit stated in
> a post-*Albright* decision, a plaintiff asserting a malicious prosecution claim
> must show "some deprivation of liberty consistent with the concept of
> 'seizure.'" *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.
> 1995).

*Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998). The Court in *Gallo*

reluctantly determined that posting a bond, being restricted in travel, and participating in

a trial constituted deprivations of liberty consistent with a seizure, admitting "it is a close

question." *Id.* The Court was concerned that without more deprivation of liberty than the

plaintiff underwent, which would be common to most criminal defendants, it was

"constitutionalizing the tort of malicious prosecution." *Id.* at 225; *see also Nieves v.*

*McSweeny*, 241 F.3d 46, 53, 55 (1st Cir. 2001) ("[M]ore is needed to transform malicious

prosecution into a claim cognizable under section 1983. To bridge the gap, the plaintiff

also must show a deprivation of a federally-protected right. * * * [I]f the concept of a

---

F.3d 996, 1005 (6th Cir. 1993) (Discussing the infirmity of a section 1983 claim for
violating a prophylactic evidentiary rule, the Court dismissed a challenge to allegedly
suggestive photos resulting in a seizure. "As in *Hensley* [*v. Carey*, 818 F.2d 646, (7th
Cir. 1987)], plaintiff is not challenging a violation of the core right to a fair trial, but
merely the purported violation of a prophylactic rule which resulted in the deprivation of
his liberty.").

seizure is regarded as elastic enough to encompass standard conditions of pretrial release [there: stress over pending charges, sullied reputation, court appearances, and trial], virtually every criminal defendant will be deemed to be seized . . . [and] every malicious prosecution claim could be brought before a federal court under the aegis of section 1983.").

Those concerns in *Gallo* are more heightened here, since Plaintiffs did not stand trial. (AC ¶ 319.) In fact, other than surrendering to arrest following the indictment, Plaintiffs do not allege any facts regarding the extent of their deprivation of liberty. Relying on Third Circuit precedent, that is why the district court in *Lopez v. Maczko*, No. 07-1382, 2007 U.S. Dist. LEXIS 63416 (E.D. Pa. August 16, 2007), recently dismissed a section 1983 complaint for failure to properly allege that "the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Id.* at *10-11 (quoting *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)). Perhaps recognizing this missing element, Plaintiffs again try to amend their Amended Complaint in their Response by noting in a footnote that Plaintiffs had "restrictions on their liberty pursuant to bail." (Pls.' Br. 78, n.38.) The Court in *Lopez* rejected the same attempted modification of allegations in a response. *Lopez*, 2007 U.S. Dist. LEXIS 63416, *12-14. But just as the Court in *Lopez* determined, where there is nothing more than bail, *Gallo's* close question regarding the deprivation of liberty must be answered in the negative. *Id.* at *14 (dismissing complaint for deprivation of liberty consisting of bail, attending proceedings but not trial, and communications with pretrial services).

Further, even if Plaintiffs had alleged they suffered a constitutional deprivation of liberty, Nifong's action in the face of complete information—alleged throughout the complaint—demonstrates he is the cause of Plaintiffs supposed deprivation of liberty. In response to Defendants' citation to *Rhodes v. Smithers*, 939 F. Supp. 1256 (S.D. W.Va. 1995), *aff'd per curiam*, 91 F.3d 132 (4th Cir. 1996), for this causative break, Plaintiffs reply that Defendants are ignorant of the law, (Pls' Br. 44), or seek to turn it "on its head." (Pls.' Br. 41.)

Plaintiffs reliance on *Zahery v. Coffey*, 221 F.3d 342 (2d Cir. 2000), for this assertion is misplaced. There, a prosecutor argued a qualified immunity defense to allegations of fabricating evidence. The Second Circuit focused on the causative element: whether the alleged fabrication caused the deprivation of liberty. After lengthy analysis, the Court recognized that an "intervening cause" may shield liability for a chain of events beginning with fabrication, but noted that a decision on that point was not necessary due to the fact that the same person, *i.e.* the prosecutor, both initiated the fabrication and caused the deprivation of liberty through indictment and incarceration. *Id.* at 352-54. That fact was material to the Court's finding a constitutional violation; there was no intervening decision-maker who was not misled or coerced. *See id.* at 352. Here, that is not the case.

Nifong, as prosecutor here, allegedly knew every piece of evidence, its validity or weakness, and sought indictments despite inadequate evidence. (*See* AC ¶¶ 136-38, 207, 219, 220.) "[T]he violation was caused by the ill-considered acts and decisions of the

prosecutor," *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007), not Defendants. Facing review of circumstances like that—an intervening decision-maker who was not misled or pressured by others—the Second Circuit distinguished its own opinion in *Zahery* and held that any "initial wrongdoer" would be shielded. *See Wray*, 490 F.3d at 189. In *Wray*, after holding that an officer's participation in a suggestive identification alone is not a constitutional violation, the Second Circuit held that the officer alleged to have set up the identification was not the cause of the deprivation—the plaintiff's incarceration following trial—because the "constitutional deprivation was caused by an intervening actor, not Officer Weller." *Id.* at 192-93, 195.

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), does not change this analysis. There, officers went to great lengths to obscure and mislead the prosecutor, thus leading the Court to hold that the officers "cannot hide behind the officials whom they have defrauded." *Id.* at 994. Here, however, there is no allegation that any officer defrauded or misled *Nifong*, the intervening decision-maker here. Thus, the *Jones* court would have looked on this case the same as the Court in *Wray*. *See Jones*, 856 F.2d at 993 ("If the prosecutors had known Laverty's evidence [an officer with exculpatory information scuttled by supervisors], they would almost certainly have dropped the charges against Jones before trial. Indeed, he might not never have been charged in the first place if the prosecutors had known the facts militating against Jones's guilt . . . .").

Nifong's decision to indict Plaintiffs, absent pressure from anyone else and absent any misinformation from Defendants or other officers, insulates Defendants from liability

for any precipitating wrongs that allegedly caused Plaintiffs' deprivation of liberty.  *See Brady v. Dill*, 187 F.3d 104, 114-15 (1st Cir. 1999) (distinguishing *Jones* and noting that "[o]ne standard police function is to provide information to the prosecutor and courts. Thus, a police officer sometimes may be liable if he fails to apprise the prosecutor or judicial officer of known exculpatory information.").

IV.     Plaintiffs Fail to Allege Actionable Claims for Civil Conspiracy

Plaintiffs retort that the mandates of *Simmons v. Poe*, 47 F.3d 1370 (4th Cir. 1995), do not impose a more stringent pleading requirement in this Circuit with regard to their conspiracy claims.  (Pls.' Br. 84-86.)  That contention is wrong.  Relying on the Fourth Circuit's analysis in *Brissett v. Paul*, No. 97-6898, 1998 U.S. App. LEXIS 6824 (4th Cir. April 16, 1998), this Court recently dismissed vague and conclusory allegations of conspiracy in *McHam v. North Carolina Mut. Life Ins. Co.*, No. 1:05-CV-01168, 2007 U.S. Dist. LEXIS 42582 (M.D.N.C. June 11, 2007), *aff'd,* No. 07-1623, 2007 U.S. App. LEXIS 23988 (4th Cir. 2007), specifically noting this Circuit's "stringent" standard. *McHam*, 2007 U.S. Dist. LEXIS 42582, *13 ("In light of the stringent Fourth Circuit standard, Mr. McHam's claims under § 1985(2) and § 1985(3) fail because he has not sufficiently pled the existence of a conspiracy.").  Given the inadequately plead specific basis for the Plaintiffs' conspiracy claims, the Seventh through Eleventh Causes of Action should be dismissed.

Further, Plaintiffs are not capable of stating witness tampering or obstruction of justice claims under 42 U.S.C. § 1985(2).  It is obvious from the Amended Complaint

that Plaintiffs intended to rely on clause one of 42 U.S.C. § 1985(2) for their claims of

witness tampering: Plaintiffs' Ninth Cause of Action is labeled as "Witness Tampering,"

and specifically tracts the "by force, intimidation, and threat . . . and testifying freely,

fully, and truthfully" language of clause one of 42 U.S.C. § 1985(2).  (*See* AC ¶ 455.)

Yet, as clarified by Defendants in their Brief in support of Motion to Dismiss, witness

tampering under this clause fails because the acts complained of in the Amended

Complaint took place in state, not federal court.  (Defs.' Br. 33-35.)  Perhaps realizing

this, Plaintiffs artfully argue that this cause of action is really a witness tampering claim

pursuant to clause two of section 1985(2).  (Pls.' Br. 89.)  However, Plaintiffs' purported

obstruction of justice claim cannot stand under these circumstances because Plaintiffs are

not members of a protected class.

     To state a claim under 42 U.S.C. §§ 1985(2), clause 2, and 1985(3), "a plaintiff

must allege that a federally secured right has been invaded by the defendants, that

defendants conspired to deprive plaintiff of his rights, and that the defendants' actions

were motivated by a *class-based* invidiously discriminatory motive."  *Phillips v. Mabe*,

367 F. Supp. 2d 861, 873 (M.D.N.C. 2005) (emphasis added).  "Plaintiffs have standing

under § 1985 *only* if they can show they are members of a class that the government has

determined requires and warrants special federal assistance in protecting their civil

rights."  *Id.* (internal quotations and citations omitted) (emphasis added).  Plaintiffs'

reliance on *Mabe* does not further their cause.  There, the court granted the defendants'

motion to dismiss, finding that the plaintiff—a white law enforcement officer who

alleged that he was terminated because of his desire to investigate a racially hostile environment against black students—failed to establish that he was a member of a protected class warranting "special federal protection." *Id.* at 874 (While one does not necessarily have to be a racial minority to bring a section 1985(3) claim, "Plaintiff still must be able to show . . . that he is a 'member of a protected class' that warrants special federal protection. The Court finds that Plaintiff has not done so.").

Plaintiffs argue that they have alleged racial animus, but do not identify protected class to which they belong. (Pls.' Br. 92-95.) This omission is fatal to their claim. *Mabe*, 367 F. Supp. 2d at 873-74. Moreover, courts have been reluctant to recognize protected classes other than those traditionally protected or disadvantaged.[4]

---

[4] Courts have rejected numerous attempts for class-based status far more compelling than that of Plaintiffs. *See McCalden v. California Library Ass'n*, 955 F.2d 1214 (9th Cir. 1992) (holocaust revisionists); *Eitel v. Holland*, 787 F.2d 995 (5th Cir. 1986), *different results reached on reh'g on other grounds*, 798 F.2d 815 (5th Cir. 1986) (pro se plaintiffs); *Harrison v. KVAT Food Mgmt.*, 766 F.2d 155 (4th Cir. 1985) (Republicans); *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir. 1985) (whistle blowers); *Trerice v. Summons*, 755 F.2d 1081 (4th Cir. 1985) (military prisoners); *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173 (10th Cir. 1983) (handicapped persons); *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711 (9th Cir. 1981), *cert. denied*, 454 U.S. 967 (1981) (law enforcement officers); *Carchman v. Korman Corp.*, 594 F.2d 354 (3d Cir. 1979), *cert. denied*, 444 U.S. 898 (1979) (organizers of tenants); *De Santis v. Pacific Tel. & Tel. Co.* 608 F.2d 327 (9th Cir. 1979) (homosexuals); *D'Amario v. Russo*, 718 F. Supp. 118 (D. R.I. 1989) (freelance rock photographers); *Redner v. Citrus County*, 710 F. Supp. 318 (M.D. Fla. 1989), *rev'd in part on other grounds*, 919 F.2d 646 (11th Cir. 1990) (nude dancers and adult entertainers); *New Port Largo v. Monroe County*, 706 F. Supp. 1507 (S.D. Fla. 1988), *vacated on other grounds*, 985 F.2d 1488 (11th Cir. 1993) (land developers); *Moats v. Schaumburg*, 562 F. Supp. 624 (N.D. Ill. 1983) (union members ); *Miller v. Indiana Hosp.*, 562 F. Supp. 1259 (W.D. Pa. 1983), *rev'd on other grounds*, 843 F.2d 139 (3d Cir 1988) (physicians); *Nakao v. Rushen*, 542 F. Supp. 856 (N.D. Cal. 1982), *reh'g denied*, 545 F. Supp. 1091 (N.D. Cal. 1982) (state prisoners); *Wagar v. Hasenkrug*, 486 F. Supp. 47 (D. Mont. 1980) (public drunks); *Kops v. New York Tel. Co.*,

*Waller v. Butkovich*, 605 F. Supp. 1137 (M.D.N.C. 1985), also cited by Plaintiffs in support of their purported class allegations, was decided before the Fourth Circuit's decision in *Harrison v. KVAT*, 766 F.2d 155 (4th Cir. 1985), which was discussed in Defendants' Brief. In addition, the *Waller* court did not hold that all white people were members of a protected class; rather, the Court held that the members of certain political organizations (*e.g.* the Klu Klux Klan and Nazi party) could, under appropriate circumstances, state a claim under section 1985. *Waller*, 605 F. Supp. at 1145. Plaintiffs have made no such allegations here.

As argued in the City's Reply Brief,[5] Plaintiffs' attempted application of the section 1982 "exploitation theory" is inappropriately applied to Plaintiffs' section 1985 claims. Further, Plaintiffs fail to allege any specific facts suggesting that any one of these Defendants harbored any animus toward Plaintiffs or exploited any such animus in the Durham community. Plaintiffs have alleged only that Defendant Nifong made several statements indicating that a racially motivated rape had occurred, for his own political gain. (AC ¶¶ 130; 147(b), (e), (g), (o).) None of the "Durham Police Statements," whether attributed to Addison or Hodge, are alleged to have made any mention at all of race. (*Id.* ¶¶ 159-60.) Conclusory allegations that "one or more of these Defendants engaged in overt acts that were motivated by invidious racial animus," (*Id.* ¶¶ 448, 463), without any alleged factual support, are insufficient to state a claim for individual

456 F. Supp. 1090 (S.D.N.Y. 1978), *aff'd without opinion*, 603 F.2d 213 (2d Cir. 1979) (legal professionals); *Rutledge v. Arizona Bd. of Regents*, 711 P.2d 1207 (Ariz. App.1985) (football players).
[5] Defendants incorporate herein the argument of the City on this issue.

liability.  *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993); *see also*
Section II, *supra*.

Therefore, all of Plaintiffs' claims pursuant to section 1985 should be dismissed
because Plaintiffs are not members of a protected class.  Further, because Plaintiffs fail to
state a claim under section 1985, their claim under 42 U.S.C. § 1986 must be dismissed
as well.

V.     Claims Against Defendant Hodge Should Be Dismissed

       A.     Section 1983 Claim

       Plaintiffs acknowledge that their Fourth Cause of Action arises out of statements
allegedly made by Nifong, Addison, and Hodge.  (Pls.' Br. 80-81.)  Plaintiffs maintain
that between them, these three Defendants made over 100 public statements.  (*Id.* at 34.)
Consistent with their expansive pleading style, Plaintiffs imply that Hodge made multiple
statements by arguing that "Defendants" made almost daily statements over the course of
three weeks that three members of the lacrosse team had raped a young black women,
that the crime was "horrific" and racially motivated, that there was "really, really strong
physical evidence," and that the team had engaged in a "stone wall of silence."  (*Id.* at
81.)  Yet, statements cited in support of this argument are attributed to either Nifong or
Addison.  (*Id.* at 81 (citing AC ¶¶ 144-63, 359-70).)  Plaintiffs can point to only *one*
statement made by Hodge in support of this claim: that on or about April 11, 2006,
Hodge was asked if Durham Police had a strong case against Duke lacrosse players, and
he replied, "I don't think we would be here if it wasn't."  (AC ¶ 160(h).)

In a remarkably similar case, the First Circuit found that no federal right was violated by a police chief's comment under circumstances even more compelling than those alleged about Hodge here. *See Burke v. Town of Walpole,* [405 F.3d 66](#) (1st Cir. 2005). In *Burke*, the plaintiff had been arrested and jailed for a violent murder. While he was still in custody, released DNA test results indicated that he was not the perpetrator of the crime. Despite this knowledge, the local chief of police appeared at a public forum and stated to the press, "I can tell you we've got the right man."

> Chief Betro made an appearance in his official capacity at a public meeting organized by the East Walpole Civic Association on or about January 13, 1999, after the exculpatory DNA results became public and while Burke was awaiting release to house arrest. Approximately two dozen citizens, fearful that the murderer was still at large, attended the meeting. The Boston Herald, relying on an article in the Daily Transcript, reported on January 25, 1999 that Chief Betro assured the audience, "I can tell you we've got the right man."
>
> Chief Betro then advanced a theory to explain how Burke could be the killer despite having been excluded as a source of the foreign DNA found in the bite mark on the victim's breast.

*Id.* at 93. Thus, even though the plaintiff alleged constitutional liability arising from the statement, the First Circuit dismissed any suggestion that those facts could support a claim pursuant to section 1983, ultimately "[d]iscerning no federal right affected by Chief Betro's public statements." *Id.* at 93, n 35.

Plaintiffs concede that reputational harm, standing alone, is insufficient to support their claim under section 1983, (Pls.' Br. 34 (citing *Paul v. Davis,* [424 U.S. 693, 710](#) (1976)), and argue that the indictments satisfy the post-*Paul* "plus" requirement for their claims. Courts, however, have established no clear rule delineating what constitutes the

"plus" to meet the "stigma plus" standard.  *See DiBlasio v. Novello*, [344 F.3d 292, 302](#)

(2d Cir. 2003) ("Although it is clear that defamation 'plus' loss of government

employment satisfies the *Paul* 'plus factor,' we have also observed that, outside that

context, 'it is not entirely clear what the 'plus' is.'") (citation omitted); *see also Allen v.*

*Denver Public Sch. Bd.*, [928 F.2d 978, 982](#) (10th Cir. 1991) ("only 'where the

stigmatization results in the inability to obtain other employment does this type of claim

rise to a constitutional level.'") (citation omitted).  Like the First Circuit in *Burke*, many

courts have specifically rejected claims that arrest or wrongful prosecution in conjunction

with "reputational" stigma satisfies the stigma-plus standard under section 1983.  *See,*

*e.g., Thomas v. Kippermann,* [846 F.2d 1009, 1010](#) (5th Cir. 1988) (publication of false

"wanted" posters, resulting plaintiff "being defamed, falsely arrested and imprisoned, and

maliciously prosecuted, "insufficient to establish a cause of action under § 1983" under

*Paul*); *Geter v. Fortenberry,* [849 F.2d 1550, 1556-1557](#) (5th Cir. 1988); *Wolf v. Carey*,

[438 F. Supp. 545, 547-48](#) (N.D. Ill. 1977), *aff'd* [582 F.2d 1282](#) (7th Cir. 1978)

(allegations of false, inflammatory television comments by the defendant prior to

plaintiff's indictment concerning the plaintiff did not state a claim under § 1983).

    In support of their argument to the contrary, Plaintiffs rely on cases where, unlike

Hodge here, the defendant made a alleged defamatory statement(s) at or

contemporaneously with the plaintiff's arrest.[6]  *See, e.g., Marrero v. Hialeah*, [625 F.2d](#)

---

[6] All of the authority cited by Plaintiffs for this proposition appears in footnote 12 of their
Response.  Several of the cases are misplaced because they do not touch at all upon
whether an arrest renders a public statement a constitutional violation.  *See, e.g., Buckley*

499, 519 (5th Cir. 1980) (where a search of the plaintiffs' business and their arrests were filmed by local television stations as the defendants made false statements that stolen property had been recovered in the raid, the court concluded that because "the defamation alleged here occurred *in connection with* the alleged violation of appellants fourth amendment rights, the injury to appellants' personal and business reputations constitutes the deprivation of liberty interests.") (emphasis added); *Gobel v. Maricopa County*, 867 F.2d 1201, 1205 (9th Cir. 1989) (allegations that the media filmed the plaintiffs' arrests, and that the prosecutors falsely accused them of criminal conduct at the time held sufficient). Thus, these cases from other jurisdictions relied on by Plaintiffs require a clear contemporaneous connection between the statements and the alleged "plus." *See, e.g., Velez v. Levy,* 401 F.3d 75, 89 (2d Cir. 2005) (where the actor making the defamatory statement is not the same person as the actor imposing the "plus," the *Paul* standard is satisfied where the "stigma and the plus would appear to a reasonable observer to be connected" and the "actor imposing the plus adopted (implicitly or explicitly) those statements in doing so."). No such connection is alleged to exist here.

Hodge is alleged to have made one remark about the strength of the case in general, on April 11, 2006, well before the indictments on April 17 and May 15. While

---

*v. Fitzsimmons,* 509 U.S. 259, 261 (1993) (holding that a prosecutor was not entitled to absolute immunity for false statements at a press conference announcing an indictment, assuming that plaintiff had alleged "constitutional violations for which § 1983 provides a remedy." ); *Barrett v. Harrington,* 130 F.3d 246 (6th Cir. 1997) (holding judge not entitled to absolute immunity for statements accusing the plaintiff of stalking); *Univ. Gardens Apartments Joint Venture v. Johnson,* 419 F. Supp. 2d 733, 740, n.4 (D. Md. 2006) (rejecting the result reached in *Marrero, supra,* on several grounds, including the absence of an alleged seizure, without holding that a seizure would have been sufficient).

these indictments may have been consistent with statements attributed to Nifong, the prosecutor who sought and obtained them, there is no alleged relationship with Hodge's statement.[7]  Hodge's statement was not alleged to be "intertwined" with the indictment or to have been "adopted" by Nifong.  Thus, Defendant Hodge's statement could not have violated Plaintiff's Fourth or Fourteenth Amendment rights.

Further, Hodge is entitled to qualified immunity for his remark.  As the Fourth Circuit has observed:

> For a right to have been clearly established, "the 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional."  In determining whether a right was clearly established at the time of the claimed violation, "courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose . . . ."  "If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense."  Notably, however, the nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent the denial of qualified immunity. In analyzing the applicability of the qualified immunity defense, we lastly consider whether a reasonable person in the official's position would have known that his conduct would violate that right.

*Edwards v. City of Goldsboro*, [178 F.3d 231, 251](#) (4th Cir. 1999) (internal citations omitted).

Plaintiffs do not attempt to put up a fight on the issue of whether Defendant Hodge is entitled to qualified immunity.  They do not cite a single fact or case to that would support the conclusion that he is not immune from suit for his single remark.  As before,

---

[7] In Paragraph 162 of the Amended Complaint, Plaintiffs make the conclusory allegation that statements "mark[ed] the Plaintiffs as violent sex offenders whose guilt had already been established beyond reasonable doubt."  Defendant Hodge is not alleged to have made such a statement.

they devote their energy only to Defendants Nifong and Addison, quoting only statements made by them in their brief.  (Pls.' Br. 81.)

Plaintiffs rely upon a single wholly inapposite case, *Buckley v. Fitzsimmons,* 509 U.S. 259 (1993), to try and defeat Hodge's qualified immunity.  The sole question in *Buckley* was whether a prosecutor was entitled to *absolute* immunity for alleged fabrication of evidence and false statements at a press conference.  The Court analyzed the differences between qualified and absolute immunity at length, noting that most public officials have only qualified immunity, which protects them from damages liability when "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* at 268 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  By contrast, absolute immunity is reserved for officials performing certain "special functions," such as conduct of prosecutors that was "intimately associated with the judicial phase of the criminal process."  *Id.* at 268 (citations omitted).  The Court held that the prosecutors' statements to the media were not entitled to absolute immunity, because they were not made during the course of judicial proceedings.  *Id.* at 277.  The Court noted that he may have been entitled to qualified immunity, like any other public official, *id.* at 278, but that issue had not been raised on appeal.  *Id.* at 261 ("[W]e have no occasion to consider whether some or all of respondents' conduct may be protected by qualified immunity.").  Further, the Court was "not concerned with petitioner's actions against the police officers (who have asserted the defense of qualified immunity)."  *Id.* at 264 (parentheses in original).

Finally, Plaintiffs' citation of *Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004) is tantamount to a concession that there is no authority in this Circuit for the proposition that any of the statements complained of deprived their liberty or property rights under the Fourth or Fourteenth Amendments. (*See* Pls.' Br. 81) *Owens* is cited for the proposition that: "When there are no such decisions from courts of controlling authority, we may look to 'a consensus of cases of persuasive authority' from other jurisdictions, if such exists." *Owens*, 372 F.3d at 280 (citations omitted). As demonstrated above, there is no such consensus; for every case cited recognizing a violation of a right where the offending statements were made at the time of the arrest, there are other cases declining to recognize such a right. *See supra*. No cases have been cited from which Hodge could have reasonably concluded that his single expression of an opinion, that references no one in particular, and made a week or a month before an indictment violated anyone's Fourth or Fourteenth Amendment right. In the absence of any authority from North Carolina, the Fourth Circuit, or a clear consensus from other jurisdictions, any section 1983 claims against Hodge for his remark are barred by qualified immunity.

B.     Intentional Infliction of Emotional Distress

In response to Hodge's argument that Plaintiffs have failed to allege that he engaged in extreme and outrageous conduct, Plaintiffs again refer the Court to statements made by Nifong and Addison. (Pls.' Br. 107-08.) Despite the assertion in their Response that several Defendants caused Plaintiffs to be arrested, charged, and prosecuted, Plaintiffs have not leveled any such factual allegations in their Amended Complaint

against Hodge. Additionally, Plaintiffs attempt to bolster this claim with references to conclusory allegations of knowledge or actions of "Supervisory Defendants" elsewhere in the Amended Complaint. As discussed above, these allegations directed at a group are insufficient to support a claim for individual liability against Hodge. *See Thomas & Howard Co. of Shelby, Inc. v. American Mut. Liability Ins. Co.,* 241 N.C. 109, 84 S.E.2d 337 (1954).

The only case cited by Plaintiffs in support of their intentional infliction of emotional distress claim, *West v. King's Department Stores, Inc.,* 321 N.C. 698, 365 S.E.2d 621 (1988), has no application to the allegation concerning Hodge. In *West,* as Plaintiffs point out, the defendant store manager loudly and repeatedly accused the plaintiffs of shoplifting merchandise and threatened them with arrest, in the presence of other shoppers, while also refusing to look at their proof of purchase. *Id.* at 705, 365 S.E.2d at 625. Here, Hodge is not alleged to have said *anything* about these Plaintiffs in particular. He is certainly not accused of personally threatening them with arrest. All he is alleged to have done is to impliedly acknowledge that "the case" was "strong."

Further, *West* does not stand for the proposition that a plaintiff can recast a time-barred defamation claim as a claim for intentional infliction of emotional distress. In *West,* this issue was neither raised nor addressed, and is thus not authority for this contention. *See In re A.G.*, No. COA 04-1536, 2006 N.C. App. LEXIS 211, *16 (N.C. Ct. App. Jan. 17, 2006). Indeed, there is no suggestion in the Court's opinion in *West* that the plaintiff's defamation claim was time-barred; rather, the evidence was

24

insufficient to support one of the essential elements of that claim. *West*, 321 N.C. at 704, 365 S.E.2d at 625. Thus, for the reasons stated in Defendants' initial brief, and under the authorities cited therein, Plaintiffs' claim here arising out of Hodge's statement is simply a defamation claim that were filed too late. This claim, therefore, should be dismissed.

Respectfully submitted, this the 9th day of May, 2008.

TROUTMAN SANDERS LLP

By: /s/ Patricia P. Kerner
    Patricia P. Kerner
N.C. State Bar No. 13005
    Hannah G. Styron
N.C. State Bar No. 28824
    D. Martin Warf
N.C. State Bar No. 32982
    Whitney S. Waldenberg
N.C. State Bar No. 37116
*Attorneys for Defendants Baker, Chalmers,*
*Council, Hodge, Lamb, Ripberger, and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com
hannah.styron@troutmansanders.com
martin.warf@troutmansanders.com
whitney.waldenberg@troutmansanders.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF
NORTH CAROLINA

DAVID F. EVANS, *et al,*       )
                             )
       Plaintiffs,         )
                             )
v.                              )     Case No. 1:07-CV-00739
                             )
THE CITY OF DURHAM, *et al,*   )
                             )
       Defendants.       )

---

## CERTIFICATE OF SERVICE

---

I hereby certify that the foregoing was electronically filed with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the

following:

| | |
|---|---|
| Brendan V. Sullivan, Jr. | David S. Rudoph |
| Robert M. Cary | RUDOLPH, WIDENHOUSE & FIALKO |
| Christopher N. Manning | 312 W. Franklin Street |
| Charles Davant IV | Chapel Hill, NC 27516 |
| WILLIAMS &CONNOLLY, LLP | *Attorneys for Plaintiff Seligmann* |
| 725 Twelfth Street, N.W. | |
| Washington, DC 20005 | |
| *Attorneys for Plaintiffs Evans and Finnerty* | |
| | |
| Robert J. King, III | Robert A. Saar |
| Kearns Davis | Nicholas J. Sanservino, Jr. |
| BROOKS, PIERCE, McLENDON, | OGLETREE DEAKINS NASH SMOAK |
| HUMPHREY & LEONARD, LLP | & STEWART, PC |
| Post Office Box 26000 | 2301 Sugar Bush Rd., Suite 600 |
| Greensboro, NC 27420 | Raleigh, NC 27612 |
| *Attorneys for Defendants DNA Security, Inc. and Richard Clark* | *Attorneys for DNA Security* |

James A. Roberts, III
LEWIS & ROBERTS, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27605
*Attorneys for Brian Meehan*

Paul R. Dickinson, Jr.
LEWIS & ROBERTS, PLLC
590 Fairview Rd., Suite 102
Charlotte, NC 28210
*Attorneys for Brian Meehan*

Reginald B. Gillespie, Jr.
FAISON & GILLESPIE
Post Office Box 51729
Durham, NC 27717
*Attorneys for Defendant City of Durham*

Joel M. Craig
Henry W. Sappenfield
KENNON, CRAVER, BELO, CRAIG &
MCKEE, PLLC
Post Office Box 51579
*Attorneys for Defendant Himan*

Edwin M. Speas
Eric P. Stevens
POYNER & SPRUILL, LLP
3600 Glenwood Avenue
Raleigh, NC 27612
*Attorneys for Defendant Gottlieb*

James B. Maxwell
MAXWELL, FREEMAN & BOWMAN,
P.A.
Post Office Box 52396
Durham, NC 27717
*Attorneys for Defendant Addison*

I further certify that a copy of the foregoing was served today upon each of the

following non CM/ECF participants by United States mail, postage prepaid, addressed as

follows:

Richard D. Emery
Ilann M. Maazel
EMERY, CELLI, BRINKERHOFF &
ABADY, LLP
75 Rockefeller Plaza, 20th Floor
New York, NY
*Attorneys for Plaintiff Seligmann*

Barry C. Scheck
100 Fifth Avenue
New York, NY 10011
*Attorneys for Plaintiff Seligmann*

Linwood Wilson
Post Office Box 2301
Durham, NC 27702
*Pro Se*

Roger E. Warrin
Michael A. Vatis
John P. Nolan
Ana H. Voss
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave. N.W.
Washington, DC 20036
*Attorneys for Defendant City of Durham*

This the 9th day of May, 2008.

Respectfully submitted,

By: /s/ Patricia P. Kerner
    Patricia P. Kerner
N.C. State Bar No. 13005
*Attorneys for Defendants Baker, Chalmers,*
*Council, Hodge, Lamb, Ripberger, and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com