# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID F. EVANS, et al.,

         Plaintiffs,

    v.

CITY OF DURHAM, N.C., et al.,

         Defendants.

Case No. 1:07CV739

---

## JOINT REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS MARK GOTTLIEB AND BENJAMIN HIMAN

Defendants Sergeant Mark Gottlieb and Investigator Benjamin Himan (collectively, "Officers Gottlieb and Himan") were the primary investigators for the Durham Police Department into allegations by Crystal Mangum that she was raped at an event sponsored by members of the Duke Lacrosse team. Officers Gottlieb and Himan filed separate motions to dismiss the Plaintiffs' Amended Complaint. The Plaintiffs responded to those motions with their Consolidated Opposition to Defendants' Motions to Dismiss The First Amended Complaint ("Plaintiffs' Brief"). Because all issues regarding the Motions to Dismiss filed by Officers Gottlieb and Himan are identical, they now respectfully submit this joint reply memorandum in support of their separate motions to dismiss.

**I. PLAINTIFFS' BRIEF FAILS TO EXPLAIN WHY THE INVESTIGATORS SHOULD NOT BE INSULATED FROM SECTION 1983 LIABILITY WHEN THEY DISCLOSED ALL RELEVANT EVIDENCE TO THE DISTRICT ATTORNEY, AND THE DISTRICT ATTORNEY MADE AN INDEPENDENT DECISION TO CHARGE PLAINTIFFS (CLAIMS 1-3, 7)**

The dispositive Fourth Circuit law governing this case – and requiring the Court to dismiss all Section 1983 claims against Officers Gottlieb and Himan – was established in *Rhodes v. Smithers*, 939 F. Supp. 1256, 1274-1275 (S.D.W.Va. 1995), *aff'd*, No. 95-2837, 1996 U.S. App. LEXIS 18638 (4th Cir. July 29, 1996). *Rhodes* stands for the proposition that where investigating officers disclose all relevant information they learn, including exculpatory information, to a prosecutor, and the prosecutor makes an independent charging decision based upon that information, the investigators are shielded from liability for wrongful seizure or malicious prosecution under Section 1983. *Rhodes*, 939 F. Supp. at 1274-75. (See Sgt. Gottlieb's Opening Brief, pp. 16-18; Inv. Himan's Opening Brief pp. 16-17). The reasoning in *Rhodes* applies with equal force here, where Plaintiffs allege that on May 27, 2006, "Gottlieb and Himan proceeded to detail [to District Attorney Michael Nifong] the extraordinary evidence of innocence and fatal defects in Mangum's allegations." (Amended Complaint ¶ 137). *See also Walker v. Scott*, No. 7:05-cv-00010, 2006 U.S. Dist. LEXIS 28559, at *22-23 (W.D. Va. May 4, 2006) ("Moreover, Walker does not point to any inaccurate fact that [defendant investigators] provided, or exculpatory evidence that they failed to provide, to the prosecutor, who then independently assessed that evidence and decided to seek the indictment and the arrest warrant. The prosecutor's decision to take the case to the grand

jury broke the causal chain, relieving [the investigators] from liability for any Fourth Amendment claim of wrongful prosecution arising from the investigation of the case), *aff'd*, 203 Fed. App'x 447 (4th Cir. 2006).

Plaintiffs have advanced several creative arguments in an effort to avoid the effect of their allegation and the force of settled Fourth Circuit law. Because Plaintiffs' novel efforts to avoid the dispositive rule governing this case are either contradicted by – or fail to find any support in – clearly established law, Officers Gottlieb and Himan are entitled to dismissal of the Section 1983 claims against them on the grounds that they violated no constitutional right of Plaintiffs and qualified immunity attaches to their actions. (Claims I, II, III, and VII). *See Saucier v. Katz*, 533 U.S. 194, 121, 102 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (a finding of qualified immunity requires a finding of whether the individual in question violated a right guaranteed to the Plaintiffs under the U.S. Constitution and whether that right was *clearly established* at the time of the alleged violation).

A. **There is No "Bad Faith Prosecutor" Exception to the Dispositive Rule in This Case**

Plaintiffs try to distinguish *Rhodes v. Smithers* by arguing that investigators are not insulated from liability by a prosecutor's independent charging decision when the prosecutor acts in bad faith. (Plaintiffs' Brief p. 46, *citing Rhodes*, 939 F. Supp. at 1274). This supposed "bad faith prosecutor" exception, however, finds no support in the Court's rationale, the facts of the case, or any other case of which Officers Gottlieb and Himan are aware. The page from *Rhodes* which Plaintiffs pinpoint in support of a "bad faith

prosecutor" exception cites twelve cases from throughout the country in support of the dispositive proposition that governs this case:

> [It] is equally well established that where an officer presents all relevant probable cause evidence to an intermediary, such as a prosecutor, a grand jury, or a magistrate, the intermediary's independent decision to seek a warrant, issue a warrant, or return an indictment breaks the causal chain and insulates the officer from a section 1983 claim based on lack of probable cause for an arrest or prosecution.

*Id.* at 1274. No caveat in the Court's opinion on this page or elsewhere, and nothing in the cited cases, limits this rule to situations in which the prosecutor acts in good faith. All of the cases involve decisions by a prosecutor, grand jury, or other intermediary to take independent action that results in a "seizure" despite awareness of evidence that, according to the plaintiff, negated probable cause.

The facts in *Rhodes* mock any suggestion that the prosecutor's "good faith" is a prerequisite to application of the rule that a prosecutor's charging decision insulates investigators from liability. Section 1983 claims against the investigators in *Rhodes* were dismissed based upon independent charging decisions of two prosecutors *despite serious allegations that the prosecutors actively participated in alleged misconduct.* *See Rhodes*, 939 F. Supp. at 1267-1271. The court in *Rhodes* ultimately did grant summary judgment in favor of the prosecutors (primarily on absolute and qualified immunity grounds), but did not hold that either of the prosecutors acted in good faith. *See id.* Rather, the court granted summary judgment dismissing certain claims against one prosecutor *despite evidence that the prosecutor knowingly offered immunity to an*

*unreliable witness in order to convict the plaintiff*. *See id.* The court explicitly held that absolute immunity would protect the prosecutor from liability even if the prosecutor had acted "vindictively, maliciously, or without adequate investigation." *Rhodes*, 939 F. Supp. at 1268. Similarly, the court granted summary judgment to a second prosecutor on qualified immunity grounds *despite evidence that the prosecutor coerced a witness to falsely implicate the plaintiff in exchange for dismissal of charges against the witness*. *See id*. at 1270.

Plaintiffs' theory that there is a "bad faith prosecutor" exception to the holding in *Rhodes* is defeated by *Rhodes* itself.

**B.    There is No "Concealment of Evidence" Exception to the Dispositive Rule in This Case**

Plaintiffs cite *Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000) to support their notion that police investigators can be liable for concealment of evidence even when they disclose all relevant information to the District Attorney. (See Plaintiffs' Brief p. 80). Plaintiffs' reliance on this case is, to put it charitably, misplaced. The main opinion in *Jean v. Collins* is notable for its clear explanation of why the constitutional duty to disclose exculpatory evidence belongs exclusively to the prosecutor, and investigators satisfy their duty when they provide the relevant information to the prosecutor:

> The *Brady* duty is framed by the dictates of the adversary system and the prosecution's legal role therein. Legal terms of art define its bounds and limits. The prosecutor must ask such lawyer's questions as whether an item of evidence has "exculpatory" or "impeachment" value and whether such evidence is "material." It would be inappropriate to charge

police with answering these same questions, for their job of gathering evidence is quite different from the prosecution's task of evaluating it. This is especially true because the prosecutor can view the evidence from the perspective of the case as a whole while police officers, who are often involved in only one portion of the case, may lack necessary context. To hold that the contours of the due process duty applicable to the police must be identical to those of the prosecutor's *Brady* duty would thus improperly mandate a one-size-fits-all regime.

*Id.* at 660. [1]

Plaintiffs acknowledge in their Amended Complaint that Officers Gottlieb and Himan properly performed their role in the adversarial system by disclosing everything they had learned in their investigation to the District Attorney. (Amended Compl. ¶ 137). Having performed their duty to report exculpatory information to the District Attorney, they were entitled to leave it to his discretion, based upon his legal training, to evaluate this information and decide how and when to report exculpatory DNA findings to Plaintiffs. Police investigators have no duty, clearly established or otherwise, to override the determination of a prosecutor regarding how and when to provide exculpatory information to criminal defendants.

---

[1] All members of the Fourth Circuit in *Jean v. Collins* agreed with the proposition that the only obligation of police officers with respect to exculpatory evidence is to disclose it to prosecutors. The issue that divided the main opinion from the concurrence and the dissent involved the circumstances under which a police officer could be held liable under Section 1983 for concealing evidence ***from the prosecutor***. *See Jean,* 221 F.3d at 662-63, 678. That issue is not pertinent to this case.

**C.    There is No "Conspiracy with the Prosecutor" Exception to the Dispositive Rule in This Case**

Plaintiffs argue, citing *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000), that District Attorney Nifong's decision to charge Plaintiffs cannot insulate Officers Gottlieb and Himan from liability because they allegedly *conspired with* the District Attorney to fabricate evidence, conceal evidence, and mislead the jury for the purpose of obtaining indictments.  (Plaintiffs' Brief p. 45).  In *Zahrey* the Second Circuit Court of Appeals held that a prosecutor was not shielded from liability for participating in a conspiracy to coerce witnesses to falsely accuse the plaintiff of crimes by his very own subsequent decision to use the false testimony to prosecute the plaintiff.  *Id*. at 345.  Plaintiffs contend, by analogy, that since under *Zahrey* District Attorney Nifong would not be shielded from liability for his own alleged investigative misconduct, then his alleged co-conspirators, Officers Gottlieb and Himan, should not be insulated either.  (Plaintiffs' Brief p. 45).

The problem with Plaintiffs' proposed analogy is that the holding from *Zahrey* is not good law in the Fourth Circuit.  The Court in *Zahrey* specifically observed that its holding was "in tension, if not in conflict" with *Rhodes v. Smithers*, 939 F. Supp. at 1270.  *Zahrey*, 221 F.3d at 354.  In contrast to the Second Circuit's decision, the *Rhodes* court (in an opinion affirmed and adopted by the Fourth Circuit) held that a prosecutor was ***not*** liable under Section 1983 when he first obtained a coerced witness statement falsely implicating the plaintiff and then prosecuted the plaintiff using the false witness

statement. *Rhodes*, 939 F. Supp. at 1270. The Court held that the mere act of **obtaining** the statement did not itself cause the plaintiff any constitutional harm and that the decision to charge the plaintiff with a crime based upon the false witness statement was one for which the prosecutor was entitled to absolute prosecutorial immunity. *Id.* To revisit Plaintiffs' analogy in light of Fourth Circuit law, since the District Attorney is **not** liable to Plaintiffs for allegedly fabricating evidence in his investigative role under *Rhodes* – because any harm was caused by his separate charging decision for which he is entitled to immunity – then Officers Gottlieb and Himan likewise should not be liable for allegedly conspiring with the District Attorney to fabricate evidence.

Moreover, public policy counsels against creation of a "conspiracy with the prosecutor" exception to the rule from *Rhodes v. Smithers*. If this Court allowed Plaintiffs to circumvent the dispositive rule from *Rhodes v. Smithers* by alleging that Officers Gottlieb and Himan "conspired" with the District Attorney to rig the investigation, the perverse result would be that a police officer who conducts a criminal investigation **without** seeking advice or assistance from a legally trained prosecutor would be immune from liability for the prosecutor's charging decision, while a police officer who actively sought advice from a trained prosecutor in the course of a criminal investigation would be punished for his diligence with an enhanced risk of Section 1983 liability in the event the prosecutor's judgment was incorrect.

In any event, even if this Court were inclined to adopt the rule from *Zahrey v. Coffee* and extend its holding to police officers accused of "conspiring with" prosecutors,

Officers Gottlieb and Himan are entitled to qualified immunity because any "conspiracy with the prosecutor" exception to the rule from *Rhodes v. Smithers* was not clearly established in 2006. *See McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998) ("When determining whether a reasonable officer would have been aware of a constitutional right, we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues"); *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) ("If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense").

### D. There is No "Foreseeable Consequence" Exception to the Dispositive Rule in This Case

Relying on *Zahrey* and *Washington v. Wilmore*, 407 F.3d 274 (4th Cir. 2005), Plaintiffs next argue that a prosecutor's charging decision does not insulate police investigators from Section 1983 liability if the investigators could reasonably foresee that the prosecutor would decide to initiate a prosecution based upon evidence presented by investigators. (Plaintiffs' Brief pp. 42, 44-5). Contrary to Plaintiffs' argument, these cases do not create a "foreseeable consequence" exception to the rule that the prosecutor's independent charging decision insulates Officers Gottlieb and Himan from liability.

In *Zahrey* the Second Circuit mused in *dicta* that a hypothetical investigator might not be insulated from liability by a prosecutor's charging decision when "the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent'

decision that results in a deprivation of liberty." (Plaintiffs' Brief p. 45, *citing Zahrey*, 221 F.3d at 352). This speculation, however, was recently rejected by the same Circuit Court that issued the *Zahrey* opinion. In its 2007 decision in *Wray v. City of New York*, 490 F.3d 189, 194-95 (2d Cir. 2007), the Second Circuit expressly disavowed this *dicta* and held that an investigator was insulated from Section 1983 liability for his conduct of a suggestive "showup" identification procedure by the supervening decisions of the prosecutor to bring charges and the trial court to admit the suspect identification into evidence. The Court held that "in absence of evidence that Officer Weller misled or pressured the prosecution or trial judge, he was not an 'initial wrongdoer.'" *Id*. at 195.

The case of *Washington v. Wilmore*, similarly, does not create a "foreseeable cause" exception to the insulating cause rule from *Rhodes v. Smithers*. In *Wilmore*, the Fourth Circuit upheld the district court's denial of qualified immunity to a police investigator who allegedly prepared a police report falsely stating that in the course of his confession (later retracted) the plaintiff had volunteered nonpublic details that only someone present at the crime scene could know. *Wilmore*, 407 F.3d at 283, 284, 278-79. The investigator in *Wilmore* did not claim that the prosecutor knew the police report was false and nevertheless decided to bring charges. *Wilmore*, 407 F.3d at 283. To the contrary, the Fourth Circuit noted that the prosecutor referred to the subject matter of the false police report in his opening statement, thus suggesting that the prosecutor was misled by the false information. *Id*. *Wilmore* does not speak to the dispositive question

here – whether an independent charging decision by a prosecutor who knows all the facts shields an investigator who allegedly fabricates evidence from liability.

In short, under Fourth Circuit law when a prosecutor makes an independent decision to bring charges with full knowledge of the relevant facts, the prosecutor – who has the requisite legal training and is entrusted by state and federal law with the exclusive authority to evaluate probable cause evidence and decide whether to seek indictments – is the sole legal cause of any resulting seizure, regardless of whether an investigator could or could not foresee what decision the prosecutor will make. Plaintiffs' proposal for this Court to create a foreseeable cause exception to the dispositive rule from *Rhodes v. Smithers* should be rejected, and their Section 1983 claims against Officers Gottlieb and Himan dismissed. At a minimum, Officers Gottlieb and Himan are entitled to qualified immunity since any "foreseeable cause" exception to the rule from *Rhodes v. Smithers* was not clearly established in this Circuit in 2006.

**E.    There is No "Fabrication of Evidence" Exception to the Dispositive Rule in This Case**

Plaintiffs argue that Officers Gottlieb and Himan "fabricated" evidence by conducting an improper photographic identification procedure, participating in a conspiracy to have the DSI Defendants prepare a misleading DNA report, and "coercing" Kimberly Pittman to recant her initial exculpatory statements by threatening to arrest her pursuant to an outstanding warrant. (Plaintiffs' Brief pp. 75-79.) The simple answer to these charges is that the sole legal cause of the seizure of the Plaintiffs under *Rhodes v.*

*Smithers* was the charging decision by the District Attorney, who, as Plaintiffs' have alleged, was fully aware of how the allegedly fabricated evidence was obtained. (Amended Complaint ¶'s 137, 180, 209, 258). Courts have held that investigators who engaged in actions very similar to those alleged in the Amended Complaint were insulated from liability by a prosecutor's independent charging decision.

For instance, in *Wray v. City of New York*, the Second Circuit considered a Section 1983 case against a police officer who told the victim of an armed robbery and a witness to the robbery that police had apprehended the robbers, then took the victim and the witness to look at the suspect, who was in a holding cell at the police station. 490 F.3d at 191-95. The victim and the witness each identified the person in the cell as the gunman. *Id*. at 191. The suspect was indicted on multiple counts of robbery and weapons possession. *Id.* A criminal trial was ultimately held and the trial court excluded the victim's identification, but allowed the witness to testify to his identification of the suspect at the courthouse. *Id.* at 191-92. A jury convicted the suspect but his conviction was later reversed on grounds that the showup identification was suggestive. *Id.* at 192. The suspect filed suit against the police officer who conducted the "showup" identification under Section 1983. *Id.* The Second Circuit ruled that summary judgment should have been granted dismissing plaintiff's case. *Id.* at 193. The Court explained:

> The question is whether Wray can establish a claim against Officer Weller for the erroneous admission at trial of testimony regarding the unduly suggestive identification. We agree with the defendants that extending liability to Officer Weller is unprecedented and unwarranted. In the absence of

> evidence that Officer Weller misled or pressured the prosecution or trial judge, we cannot conclude that his conduct caused the violation of Wray's constitutional rights; rather, the violation was caused by the ill-considered acts and decisions of the prosecutor and trial judge.

*Id.*

To support their theory, Plaintiffs cite two state cases, *State v. Richardson*, 328 N.C. 505, 511, 402 S.E.2d 401, 405 (1991) and *State v. Oliver*, 302 N.C. 28, 45, 274 S.E.2d 183, 194-95 (1981), for the proposition that "an identification procedure violates constitutional rights where it includes only suspects or the witness is told it includes a suspect." (Plaintiffs' Brief p. 77 n. 37).[2]  These cases in fact demonstrate why Officers Gottlieb and Himan should not be liable to Plaintiffs under Section 1983.  In *Richardson* and *Oliver*, the North Carolina Supreme Court considered appeals from jury convictions of two criminal defendants.  *See Richardson*, 328 N.C. at 511, 402 S.E.2d at 405; *Oliver*, 302 N.C. at 45, 274 S.E.2d at 194.  In both cases, the Supreme Court criticized certain identification procedures employed by police officers, but ultimately upheld criminal convictions based in part upon those challenged identifications.  *See Richardson*, 328 N.C. at 512, 402 S.E.2d at 405; *Oliver*, 302 N.C. at 45, 274 S.E.2d at 194.

---

[2] Both of these cases are factually more similar to the facts in *Wray* than to the facts alleged here.  In *Richardson*, the putative victims were told that "they had somebody" at the security office of the hospital and the defendant was sitting alone or with uniformed personnel in the security office.  *Richardson*, 328 N.C. at 511, 402 S.E.2d at 405.  In *Oliver*, the Supreme Court discussed the fact that the identification was not a lineup but a showup, which consisted of the police telling the putative victim that he "could see that man again" and then let him view the defendant as  he stood alone in a room.  *Oliver*, 302 N.C. at 45, 274 S.E.2d 194.

Courts determining the admissibility of a pre-trial identification procedure in North Carolina apply a sophisticated legal analysis in which they consider several factors, including the opportunity of the witness to see the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Richardson*, 328 N.C. at 510, 402 S.E.2d at 404. Legal commentators and theorists may find it interesting as an academic exercise to consider hypothetically whether Crystal Mangum's identification of the Plaintiffs in the April 4 photo array ultimately would have been admissible in court.[3] What should not be subject to question is that Officers Gottlieb and Himan violated no clearly established **constitutional** right of Plaintiffs through the mere act of conducting the April 4 photo procedure. *See McVey v. Stacy*, 157 F.3d at 277 ("When determining whether a reasonable officer would have been aware of a constitutional right, we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues").

In light of their limited role in an adversarial system that contains multiple checks and balances, Officers Gottlieb and Himan were entitled to conduct the April 4th photo array in the manner requested by the District Attorney, and then leave the ultimate

---

[3] At least one respected commentator has suggested that the identifications might have been admissible. *See* Robert P. Mosteller, "The Duke Lacrosse Case, Innocence, and False Identification: A Fundamental Failure to 'Do Justice,'" 76 Fordham L. Rev. 1337, 1381 (2007).

decision regarding how to use the identifications generated during that procedure to the prosecutor, the grand jury, and ultimately the trial court, the jury, and the appellate courts.

Plaintiffs' contention that Officers Gottlieb and Himan should be liable under Section 1983 because they allegedly coerced Kimberly Pittman to recant exculpatory testimony likewise must be rejected based upon the clear holding of *Rhodes v. Smithers*. *See* 939 F. Supp. at 1274-1275. In *Rhodes*, the court refused the plaintiff's Section 1983 claim against a prosecutor who allegedly fabricated evidence by coercing a witness to provide a false statement. The court held that the act of *obtaining* the coerced statement did not violate the plaintiff's rights because the legal cause of the plaintiff's ultimate seizure was the separate decision to use the statement to prosecute the plaintiff. *Id*. Similarly, in this case, the participation of Officers Gottlieb and Himan in the alleged coercion of witness Kimberly Pittman to falsely recant her exculpatory statement does not give rise to any claim by these Plaintiffs because the legal cause of any alleged harm from Ms. Pittman's statement was the District Attorney's decision to initiate a prosecution despite his knowledge of the circumstances surrounding her statement. (See Amended Compl. ¶ 258).

## II. THIS COURT CANNOT SECOND GUESS TESTIMONY OF OFFICERS GOTTLIEB AND HIMAN TO THE GRAND JURY

Plaintiffs continue to insist that they have stated a claim under Section 1983 based upon allegations that Officers Gottlieb and Himan entered into an agreement with the

District Attorney to mislead the Grand Jury about the state of the evidence against Plaintiffs. (See Plaintiffs' Brief p. 75). As stated in Sgt. Gottlieb's Initial Memorandum, this argument directly contradicts Fourth Circuit precedent that government officials are entitled to absolute immunity from liability for their grand jury testimony, *Lyles v. Sparks*, 79 F.3d 372, 378 (4th Cir. 1996); *White v. Wright*, 150 Fed. Appx. 193, 197-98 (4th Cir. 2005), and the rule – applied by the vast majority of the Circuit Courts to have considered the issue and by the only court within the Fourth Circuit known to have considered the issue – that a person cannot be held responsible for a conspiracy to give false testimony when he is absolutely immune from liability for actually giving false testimony. (See Sgt. Gottlieb's Opening Brief p. 29).

Plaintiffs cite *White v. Frank*, 855 F.2d 956 (2d Cir. 1988) for the proposition that a "complaining witness" will not be shielded from liability for knowingly giving false testimony to a grand jury. (Plaintiffs' Brief. p. 42). The Second Circuit's twenty year old decision in *White v. Frank* cannot be reconciled with the Fourth Circuit's determinations in *Lyle v. Sparks* and *White v. Wright* that witnesses before grand juries, including investigating law enforcement officers, are entitled to absolute immunity for their grand jury testimony. 79 F.3d at 378; 150 Fed. App'x at 197-98. Because Officers Gottlieb and Himan are entitled to absolute immunity from claims that they gave, or conspired to give, false grand jury testimony, Plaintiffs' claims that they conspired to provide false testimony to the grand jury do not save their inadequate Section 1983 claims from dismissal. At the very least, in light of the precedent from *Lyle v. Sparks* and *White v.*

*Wright* and the lack of any contrary Fourth Circuit precedent, Officers Gottlieb and Himan are entitled to qualified immunity from any Section 1983 claim based upon the allegation that they gave false testimony, or conspired to give false testimony, to the grand jury. *See Edwards v. City of Goldsboro*, 178 F.3d at 251 ("If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense").

### III. PLAINTIFFS' SECTION 1985 AND 1986 CLAIMS SHOULD BE DISMISSED (CLAIMS 8-10)

Plaintiffs' claims that Officers Gottlieb and Himan participated in witness tampering and conspiracies to violate the Equal Protection rights of Plaintiffs under 42 U.S.C. §§ 1985 and 1986 must be dismissed, for reasons set forth in the Reply Memorandum filed by the City of Durham, which Officers Gottlieb and Himan incorporate by reference.

### IV. THIS COURT SHOULD DISMISS PLAINTIFFS' STATE LAW CLAIMS (COUNTS 13-16, 18)

Plaintiffs' Amended Complaint asserted five causes of action under North Carolina state law against Officers Gottlieb and Himan – for malicious prosecution (Count 13), common law obstruction of justice (Count 14), intentional infliction of emotional distress (Count 15), negligence (Count 16), and negligent infliction of emotional distress (Count 18).  Plaintiffs now concede that their claims against Officers Gottlieb and Himan for negligence and negligent infliction of emotional distress are barred by the doctrine of public official immunity and must be dismissed.  (Plaintiffs'

Brief p. 115). Despite Plaintiffs' arguments to the contrary, the remaining claims for malicious prosecution, obstruction of justice, and intentional infliction of emotional distress must also be dismissed.

### A. Plaintiffs Rely Upon a Case That Has No Precedential Value to Support Their Malicious Prosecution Claim

Plaintiffs rely heavily upon the case of *Moore v. City of Creedmoor*, 120 N.C. App. 27, 38-39, 460 S.E.2d 899, 906 (1995) to contend that they have properly alleged that Officers Gottlieb and Himan "initiated" criminal proceedings against them for purposes of the malicious prosecution cause of action. (Plaintiffs' Brief p. 100). Plaintiffs fail to mention, however, that the Court of Appeals' decision in *Moore* has **no precedential value.** The Court of Appeals' specific ruling on the issue of whether a law enforcement officer "initiated" the alleged malicious prosecution in that case was considered on appeal by the North Carolina Supreme Court, whose members were equally divided upon the question of whether to affirm or reverse the ruling. *Moore*, 345 N.C. at 372, 481 S.E.2d at 29. Under these circumstances, the North Carolina Supreme Court explained that the Court of Appeals decision cannot be used in support of the Plaintiffs' argument:

> With regard to the issue presented by virtue of the dissent, defendants argue that the Court of Appeals erred in concluding that defendants could be found to have 'initiated' the malicious prosecution suit. Judge Greene, in his dissent, stated that plaintiffs' malicious prosecution claim was properly dismissed because, in his view, neither the City of Creedmoor nor defendant [, a police officer,] Seagroves 'initiated' the public nuisance action against plaintiffs.

> Justice Whichard recused and took no part in the consideration or decision of this case. The remaining members of the Court are equally divided on this issue, with three members voting to affirm and three members voting to reverse the decision of the Court of Appeals. *Therefore, as to this issue, the Court of Appeals is left undisturbed and stands without precedential value.*

*Moore*, 345 N.C. at 372, 481 S.E.2d at 29 (emphasis added). [4]

Other than a single appellate court decision that has no "precedential value," Plaintiffs have failed to present North Carolina authority for the proposition that Officers Gottlieb and Himan can be liable for malicious prosecution when they conducted an investigation, they disclosed all information they learned in the investigation to the District Attorney, and the District Attorney made the decision to seek indictments. As law enforcement officers, Sgt. Gottlieb and Investigator Himan had "no independent authority to make prosecutorial decisions," *State v. Sturgill*, 121 N.C. App. 629, 637, 469 S.E.2d 557, 562 (1996), and they may not be held liable for how these decisions were made. *See, e.g.*, *Eubanks v. Gerwen*, 40 F.3d 1147, 1160-61 (11th Cir. 1994) (affirming summary judgment for arresting officers on dismissal of claim for malicious prosecution in violation of § 1983 where it was "clear that none of the defendants were responsible for the decision to prosecute, and that none of them improperly influenced the decision to prosecute."). Plaintiffs' cause of action for malicious prosecution should be dismissed.

### B. Plaintiffs Have Failed to Allege that Officers Gottlieb and Himan Engaged in Extreme or Outrageous Conduct to Support A Claim For Intentional Infliction of Emotional Distress

---

[4] Plaintiffs' Brief incorrectly states that the Court of Appeals' decision in *Moore* was "aff'd and rev'd in part **on other grounds**." Plaintiffs' Brief p. 100, n. 61.

Plaintiffs argue that the facts alleged in their Amended Complaint, specifically the supposed "intimidation" of witnesses and manipulation of identification procedures "with the intention of perpetuating criminal proceedings against Plaintiffs", Amended Compl. ¶ 511, are sufficiently outrageous to support a claim of intentional infliction of emotional distress. Plaintiffs' Brief pp. 106-07. Plaintiffs' specifically cite *West v. King's Dept. Store*, 321 N.C. 698, 705, 365 S.E.2d 621 (1988) to support their allegation that the conduct alleged here is sufficiently outrageous. Plaintiffs' Brief pp. 106-07.

Plaintiffs' argument leaves out some key facts. Both plaintiffs in *West* suffered actual *physical injury*, which the responsible defendant knew he might cause at the time of his alleged actions. *See West*, 321 N.C. at 705, 365 S.E.2d at 625 (the plaintiff husband "warned the manager that his wife was receiving out-patient treatment . . . and could not withstand a confrontation such as this"). The Supreme Court noted that the potential of physical injury was critical to its finding that the conduct was sufficiently extreme and outrageous, stating "[t]hough neither physical injury nor foreseeability of injury is required for intentional infliction of emotional distress . . . both of these factors go to the outrageousness of the store manager's conduct." *See West*, 321 N.C. at 705, 365 S.E.2d at 626. Because Plaintiffs have not alleged that Officers Gottlieb and Himan were aware that Plaintiffs might suffer physical injury as a result of their alleged actions, *West* does not support Plaintiffs' claim for intentional infliction of emotional distress.

As set forth in the Opening Briefs of Officers Gottlieb and Himan, the allegations of wrongful conduct in this case simply do not rise to the level of extreme and outrageous activities that have given rise to successful claims for intentional infliction of emotional distress in North Carolina. *See, e.g.*, *Hogan v. Forsyth Country Club*, 79 N.C. App. 483, 490, 340 S.E.2d 116, 121 (1986) (behavior considered extreme and outrageous where defendant screamed profanities, threatened bodily harm and slammed a knife down on a table in front of plaintiff when she refused his sexual advances); *Watson v. Dixon*, 130 N.C. App. 47, 53 502 S.E.2d 15, 20 (1998) *aff'd* 352 N.C. 343, 532 S.E.2d 175 (2000) (behavior considered extreme and outrageous where defendant frightened and humiliated plaintiff with cruel practical jokes, made ongoing obscene comments and threatened her physical safety); *Compare Woodruff v. Miller*, 64 N.C. App. 364, 307 S.E.2d 176 (1983) (behavior not considered extreme and outrageous where defendant with personal grudge against plaintiff placed posters of him in public places, approached other private citizens, including teacher and students at high school in jurisdiction where plaintiff was the superintendent, reading and showing portions of papers about the plaintiff's *nolo contendere* plea while a college student decades earlier).

### C. Plaintiffs' Allegations Cannot Support a Valid Cause of Action For Common Law Obstruction of Justice

Plaintiffs interpret North Carolina law to allow recovery for violation of the common law tort of "obstruction of justice" whenever a person allegedly does "*any act which prevents, obstructs, impedes or hinders public or legal justice,*" regardless of

whether the act in question caused the plaintiff any injury.  Plaintiffs' Brief p. 104.

While courts have employed broad and vague language in describing the tort of obstruction of justice, the handful of North Carolina cases applying this language do not justify expanding its reach to the situation alleged here, in which Plaintiffs allege that two law enforcement officers, in the general course of their duties, investigated allegations that a sexual assault occurred, disclosed all results of the investigation to the District Attorney, and the District Attorney made an independent charging decision.  The allegations against Officers Gottlieb and Himan in the Amended Complaint are simply not comparable to the types of perversion of the justice system or abuses of power that have given rise to civil liability for obstruction of justice.  *Compare Reed v. Buckeye Fire Equip.*, 241 Fed. Appx. 917, 919 (4th Cir. 2007)(defendant allegedly attempted to blackmail plaintiff by threatening to reveal his extramarital affair in exchange for not filing a Family Medical Leave Act lawsuit); *Burgess v. Busby*, 142 N.C. App. 393, 544 S.E.2d 4, 12-13 (2001)(defendant physician retaliated against jurors who entered verdict against him in malpractice lawsuit by sending letter disclosing the jurors' names to other health care providers in Rowan County); *In re Kivett*, 309 N.C. 635, 309 S.E.2d 442 (1983)(abuse of power by Superior Court judge); *Jones v. City of Durham*, 183 N.C. App. 75, 643 S.E.2d 631 (2007)(destruction of evidence by law enforcement officers); *Jackson v. Blue Dolphin Communs. of N.C., LLC*, 226 F. Supp. 2d 785 (W.D.N.C. 2002)(employer's termination of employee in retaliation for employee's refusal to sign a false affidavit); *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d 326 (1984)(physician's

alteration of medical records). Plaintiffs' cause of action for obstruction of justice should be dismissed.

## CONCLUSION

For reasons set forth in this Reply and their Opening Briefs, Officers Gottlieb and Himan respectfully request the Court to dismiss all claims against them in the Amended Complaint (Claims 1-3, 7, 13-16, and 18) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This the 9th day of May, 2008.

**POYNER & SPRUILL LLP**

By: /s/Edwin M. Speas, Jr.
      Edwin M. Speas, Jr.
      North Carolina Bar #4112
      Eric P. Stevens
      North Carolina Bar # 17609
      P.O. Box 10096
      Raleigh, N.C. 27605-0096
      Tel.    (919) 783-6400
      Fax    (919) 783-1075
      Email  espeas@poynerspruill.com
      Email: estevens@poyners.com
      *Attorneys for Defendant Mark Gottlieb*

**KENNON, CRAVER, BELO,
CRAIG & MCKEE, PLLC**

By: /s/ Joel M. Craig
      North Carolina State Bar No. 9179
      Henry W. Sappenfeld
      North Carolina State Bar No. 37419
      4011 University Drive, Suite 300
      P.O. Box 51579
      Durham, NC 27717-1579
      (919) 490-0500
      *Attorneys for Defendant Benjamin Himan*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on May 9, 2008, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Brendan V. Sullivan, Jr.
Robert M. Cary
Christopher N. Manning
Charles Davant IV
Williams & Connolly, LLP
725 Twelfth Street, NW
Washington, DC 20005
*Attorneys for Plaintiffs David F. Evans*
*and Collin Finnerty*

Barry C. Sheck
100 Fifth Avenue
New York NY 10011
*Attorney for Plaintiff Reade Seligmann*

Joel Miller Craig
Kennon Craver Belo Craig & McKee,
PLLC
P.O. Box 51579
Durham, NC 27717-1579
*Attorney for Benjamin Himan*

Mr. James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
P.O. Box 52396
Durham, NC 27717
*Attorney for Defendant David Addison*

Richard D. Emery
Emery, Celli, Brinkerhoff & Abady, LLP
75 Rockefeller Plaza, 20th Foor
New York, NY 10019
*Attorney for Plaintiff Reade Seligmann*

David S. Rudolf
Rudolf, Widenhouse & Fialko
312 West Franklin Street
Chapel Hill, NC 27516
*Attorney for Plaintiff Reade Seligmann*

James B. Craven, III
P.O. Box 1366
Durham, NC 27702
*Attorney for Defendant Michael B. Nifong*

Robert James King, III
Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard
P.O. Box 26000
Greensboro, NC 27420-6000
*Attorney for Defendant DNA Security, Inc. and*
*Richard Clark*

Ms. Patricia P. Kerner
Troutman Sanders, LLP
434 Fayetteville Street Mall
Two Hannover Square, Suite 1100
Raleigh, NC 27601
*Attorneys for Defendants Steven Chalmers, Beverly*
*Council, Ronald Holdge, Jeff Lamb, Stephen*
*Mihaich, Michael Ripberger, and Lee Russ*

Mr. James A. Roberts, III
Mr. Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC  27609
*Attorneys for Defendants DNA Security,
Inc. and Brian Meehan*

Robert A. Sar
Nicholas J. Sanservino, Jr.
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC 27612

*Counsel for Defendant DNA Security*

Linwood Wilson
*Pro Se*
120 East Parrish Street, Suite 210
P.O. Box 2301
Durham, NC  27702

May 9, 2008

By:    /s/ Edwin M. Speas, Jr.
         Edwin M. Speas, Jr.

RALEIGH/554377v1