# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CIVIL ACTION NO. 1:07-CV-739

| | |
|---|---|
| DAVID F. EVANS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| THE CITY OF DURHAM, NORTH CAROLINA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
## OF DEFENDANTS DNA SECURITY, INC. AND RICHARD CLARK

Robert J. King III
Kearns Davis
BROOKS, PIERCE, MCLENDON,
    HUMPHREY & LEONARD, L.L.P.
Post Office Box 26000
Greensboro, North Carolina 27420
Telephone: (336) 373-8850

*Counsel for Defendants DNA Security, Inc.
and Richard Clark*

Robert A. Sar
Nicholas J. Sanservino, Jr.
2301 Sugar Bush Road, Suite 600
Raleigh, North Carolina 27612
Telephone: (919) 787-9700

*Counsel for Defendant DNA Security, Inc.*

Dockets.Justia.com

# I. ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THE DSI DEFENDANTS HAVE ABSOLUTE IMMUNITY

As the DSI Defendants' Opening Brief explains, all of the claims against the DSI Defendants are barred by immunity. The DSI Defendants are entitled to absolute witness immunity because the claims against them arise from Brian Meehan's conduct as an expert witness for the State in the Criminal Action. (Br. at 11-14.) Even if this immunity did not apply, the DSI Defendants are nevertheless entitled to immunity, because Plaintiffs' alleged injury is the result of the withholding of exculpatory evidence from the grand juries -- an activity for which defendants are entitled to immunity regardless of the label applied to their role in the criminal case.

While Plaintiffs now struggle to characterize the DSI Defendants' role as that of investigators rather than expert witnesses, the Amended Complaint itself repeatedly alleges that the May 12 Report was an "expert report." (*See* Am. Compl. ¶ 342 (preparation of "expert report"); *id*. ¶ 489 (accord); ¶ 500 (accord).) Further, Plaintiffs acknowledge that Brian Meehan was designated as a trial expert by Nifong. (*Id*. ¶ 278 ("Nifong falsely stated that the Plaintiffs had received all of the reports of the experts whom the State intended to call in the case, Meehan and another employee of DSI.").) Faced with these admissions, Plaintiffs attempt to mix the DSI Defendants' actions (testing the DNA samples and preparing a report of the test results) with the numerous acts of the various police and prosecutorial defendants to create a sweeping effort to wrongfully prosecute Plaintiffs. (Opp. at 28.) The immunity analysis does not, however, turn on such generalized theories; it depends on the DSI Defendants' *own* conduct for

which immunity is claimed, not the alleged results of that conduct. *See Lyles v. Sparks*, 79 F.3d 372, 377 (4th Cir. 1996).

Plaintiffs have now made clear that their complaint as to the DSI Defendants is that: (1) the May 12 Report did not contain all of DSI's opinions (specifically, the Report supposedly did not reveal the presence of third party DNA), (2) the DSI Defendants conspired to withhold the information regarding third party DNA from the grand juries, and (3) DSI did not summarize its raw data when such data was provided to Plaintiffs in the Criminal Action.[1] Because Plaintiffs admit that Meehan was acting as an expert witness and that the May 12 Report was an "expert report" (*see* Am. Compl. ¶¶ 278, 342, 489, 500), absolute immunity plainly applies to those claims. *Sharp v. Miller*, 121 N.C. App. 616, 617, 468 S.E.2d 799, 801 (1996) (internal quotation omitted); *see Briscoe v. LaHue*, 460 U.S. 325, 335-36 (1983); *Harden v. Green*, 27 Fed. Appx. 173, 177 (4th Cir. 2001) (expert entitled to absolute immunity for performing exams and drafting written report); Br. at 13-14.[2] Accordingly, all claims against the DSI Defendants should be dismissed.

---

[1] (*See* Am. Compl. ¶¶ 208-10, 225, 232.) Plaintiffs also complain that the DSI Defendants "resisted efforts to obtain the raw data." (Opp. at 105-06.) The 567-paragraph Amended Complaint, however, does not contain such an allegation.

[2] Plaintiffs' state law claims are similarly barred by settled immunity rules applicable not only to expert testimony but also to preparation of expert reports and preliminary investigation and analysis, even if the expert never testifies, his report is never provided to the court, and he is never identified as an expert at all. Br. at 12-14; *see Sharp v. Miller*, 121 N.C. App. 616, 617, 468 S.E.2d 799, 801 (1996) (absolute immunity applicable not only to defendant appraisers' testimony and reports but also to their professional analysis).

Even if absolute witness immunity did not apply, the DSI Defendants are nonetheless immune because they made full disclosure of their work and opinions to the prosecutor, and it was the prosecutor who allegedly misrepresented and withheld the information from Plaintiffs. (Am. Compl. ¶¶ 207, 223-24, 277-78.) It is well settled that both prosecutors and police have absolute immunity in the determination of whether evidence is exculpatory and must be disclosed, as well as in the act of disclosure (or non-disclosure) of that evidence to the defense. *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34 (1976) (absolute immunity for "deliberate withholding of exculpatory information"); *Carter v. Burch*, 34 F.3d 257, 262 (4th Cir. 1994) (same); *Jean v. Collins*, 155 F.3d 701, 706 (4th Cir. 1998) (*en banc*), *vacated & remanded on other grounds*, 526 U.S. 1142 (1999) (extending *Imbler* to claims against non-prosecutors).[3] The DSI Defendants thus have absolute immunity from any claims alleging concealment of exculpatory evidence.

The essence of Plaintiffs' claim against the DSI Defendants is that they allegedly conspired to withhold exculpatory evidence (the evidence of third party DNA) from the grand juries. (*See, e.g.*, Am. Compl. ¶¶ 208-10.) Even if it were assumed that a claim can arise from the failure to provide exculpatory evidence to a grand jury (and no such claim exists; see Section II, *infra*), and even if it were further assumed that the DSI Defendants

---

[3]     *Imbler* held that prosecutors have absolute immunity for even the deliberate withholding of exculpatory information. In *Jean*, the Fourth Circuit, sitting *en banc*, extended the holding of *Imbler* to non-prosecutors. 155 F.3d at 706. The Supreme Court vacated *Jean* to have the Fourth Circuit reconsider its qualified immunity discussion in light of intervening authority. But the Fourth Circuit did not reconsider its absolute immunity ruling, and in fact continues to follow that ruling. *Brown v. Daniel*, 230 F.3d 1351 (4th Cir. 2000) (per curiam).

testified before the grand juries (although there is no such allegation in the Amended Complaint), grand jury witnesses have absolute immunity for their testimony. Such immunity extends even to allegations of perjury. *Lyles*, 79 F.3d at 379; *see Jackson v. Miller*, 2004 WL 1505396, at \*\*1-2 (W.D.N.C. Feb. 13, 2004) (absolute immunity for prosecutors alleged to have "relied on false or manufactured evidence, and committed perjury or relied on perjured testimony to obtain an indictment"), *aff'd*, 96 Fed. Appx. 921 (4th Cir. 2004). It is likewise plain that the prosecutor has absolute immunity for the decision to present the case to the grand jury -- a decision within his core function as a prosecutor. *Imbler*, 424 U.S. 984; *Lyles*, 79 F.3d at 377; *Puckett v. Carter*, 454 F. Supp. 2d 448, 452 (M.D.N.C. 2006). Since the only harm about which Plaintiffs complain regarding the DSI Defendants relates to the alleged failure to provide exculpatory information to the grand juries, Plaintiffs' claims as to the DSI Defendants should be dismissed.

Finally, it should be noted that the pair of cases Plaintiffs cite in attacking the DSI Defendants' privilege defenses both center on whether the expert witness had *manufactured positive test results* when the results should have been negative. *See Gregory v. City of Louisville*, 444 F.3d 725, 737, 744-45 (6th Cir. 2006) (claim that expert erroneously reported criminal defendant's hairs as a "match," when they were not), *cert. denied by Tarter v. Gregory*, 127 S. Ct. 962 (2007); *Keko v. Hingle*, 318 F.3d

639, 644 (5th Cir. 2003) (claim related to use of unreliable research techniques).[4] While Plaintiffs toss out conclusory charges of "fabrication" to try to fit this case within *Gregory* and *Keko*, Plaintiffs actually allege that the DSI Defendants did not disclose exculpatory evidence, rather than fabricated false inculpatory evidence. (*See* Am. Compl. ¶¶ 208-10, 225, 232.) Therefore, the cases cited by Plaintiffs simply do not apply.

## II. PLAINTIFFS HAVE NOT ALLEGED A CONSTITUTIONAL VIOLATION AS A PREDICATE FOR THEIR § 1983 CLAIMS

Plaintiffs now declare that their various § 1983 claims are based on the deprivation of their Fourth Amendment rights not to be seized following indictments (by the grand juries) that were unsupported by probable cause. (Opp. at 31-34.)[5] The DSI Defendants

---

[4] As set forth in more detail in the district court opinion, *Keko* involved allegations that the expert found a definite match between the defendant and certain bite marks when a match did not exist. *See* 1999 WL 508406, at **1-2 (E.D. La. July 8, 1999). On appeal, the Fifth Circuit denied immunity for expert reports intended to be presented at an *ex parte* probable cause hearing but noted that the result would have been different for claims directed at grand jury proceedings, as here. 318 F.3d at 643 n.6. *See also Yarris v. County of Delaware*, 465 F.3d 129, 136-37 (3d Cir. 2006) (denying claims of absolute immunity for *destroying* exculpatory information, but allowing absolute immunity for claims that prosecutors "intentionally concealed" exculpatory evidence) (cited in Opp. at 29).

[5] Plaintiffs' malicious prosecution claim is, by definition, a Fourth Amendment claim. *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000); *see* Opp. at 31. Plaintiffs' concealment and fabrication claims simply allege variations on the theme that they were unreasonably seized without probable cause following their indictments, in violation of the Fourth Amendment. *See id.* at 32 (concealment claim alleges bad faith concealment of evidence "in order to mislead the grand jury and cause Plaintiffs to be indicted and seized in the absence of probable cause"); *id.* at 33 (fabrication claim alleges fabrication of inculpatory evidence "in order to mislead the grand juries about probable cause and thus effect the unlawful seizures"); *id.* at 32 n.9 (§ 1983 claims generally allege "the right to be free from seizures caused by misconduct during a criminal investigation").

agree that "[t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996) (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). That settled proposition, however, describes a narrow Fourth Amendment claim that cannot be stated against the DSI Defendants in this case.

When Finnerty and Seligmann were indicted and seized on April 17, the May 12 Report did not exist; it follows that the alleged omission of exculpatory information from the Report cannot provide the basis for any claim by these Plaintiffs.[6] The DSI Defendants' sole activities *before* the indictments and seizures -- and thus the only possible predicate for Finnerty's and Seligmann's claims -- consisted of analysis of the physical evidence and oral reports of the preliminary test results to Nifong and the investigators. Plaintiffs affirmatively allege that the analysis and oral reports were accurate and complete, but that Nifong and the investigators withheld them from the grand jury. (Am. Compl. ¶¶ 206-07, 219, 224, 241.) Obviously, no constitutional claim can arise from the DSI Defendants' reporting of accurate and complete information to Nifong and the investigators -- indeed, that is precisely what an expert witness is expected to do. Thus, Finnerty's and Seligmann's constitutional claims with respect to the DNA evidence necessarily reduce to this: that the DSI Defendants accurately

---

[6]    *See Cleary v. County of Macomb*, 2007 WL 2669102, at **12-14 (E.D. Mich. Sept. 6, 2007) (report authored after seizure "could not have influenced the existence of probable cause because based on the allegations in Plaintiffs' Complaint . . . the report was submitted after the arrest warrant issued") (cited in Opp. at 29).

provided the allegedly exculpatory evidence to Nifong and the investigators prior to the April 17, 2006 indictments, but that the evidence was "conceal[ed] . . . in order to mislead the grand juries and cause Plaintiffs to be indicted and seized in the absence of probable cause." (Opp. at 32.) That allegation cannot state a claim against the DSI Defendants, for two reasons.

*First*, and most fundamentally, Plaintiffs have no constitutional right to have exculpatory evidence presented to the grand jury, so the failure to present any such evidence is not a constitutional violation. *United States v. Williams*, 504 U.S. 36, 51 (1992) ("[R]equiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body."). Plaintiffs simply refuse to face *Williams*. They cite it only in a footnote, followed by a bald assertion that "[s]ustaining Plaintiffs' claims does not require contradiction" of *Williams*' settled holding. (Opp. at 43.) That assertion is simply wrong: If Plaintiffs have no right to have exculpatory evidence presented to the grand jury, then claims based on the alleged failure to present such evidence must fail.[7]

*Second*, even if there were some right to have exculpatory evidence presented to the grand jury, the law is plain that the prosecutor alone decides what witnesses and

---

[7]    *Cf. Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 363 (3d Cir. 2003) (affirming grant of summary judgment to defendants on § 1983 "malicious prosecution" claim premised in part on allegation "that exculpatory evidence was not presented to the grand jury" because plaintiff's argument "ignore[d] Supreme Court precedent recognizing that courts have no authority to prescribe a rule which would require a prosecutor to present exculpatory evidence to a grand jury") (citing *Williams*).

evidence to present. Br. at 31-35; *Rhodes v. Smithers*, 939 F. Supp. 1256, 1274 (S.D.W.Va. 1995), *aff'd*, 91 F.3d 132 (4th Cir. 1996) (per curiam). Plaintiffs do not allege that the DSI Defendants testified before the grand jury, or even that they *could have* testified had they wished to. (*See* Br. at 27 & n.15, 33-34.) Indeed, Plaintiffs do not dispute that even the suspect has no right to present evidence to the grand jury or to cause its presentation or consideration. (*Id*.)

In the face of the authority cited in the DSI Defendants' Opening Brief, Plaintiffs argue that they can state a vague "malicious prosecution" claim against "not only prosecutors" but also "police officers, crime labs, and other investigatory personnel whose misconduct causes an unlawful seizure." (Opp. at 32.) The prosecutor's decisions, they claim, do not sever the causal link between the DSI Defendants' actions and the indictment. (Opp. at 41-46.) In an attempt to support those claims, Plaintiffs cite cases that involve either (a) direct "seizures" by police officers who made arrests in the absence of probable cause, where no question of an intervening grand jury was presented,[8] or (b) misrepresentations by the non-prosecutorial defendants to the prosecutors or the probable cause decision-makers.[9] Plaintiffs' cases stand for no more

---

[8]    *See, e.g., Rogers v. Pendleton*, 249 F.3d 279, 284 (4th Cir. 2001); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 180, 183 (4th Cir. 1996).

[9]    *See, e.g., Miller v. Prince George's County*, 475 F.3d 621, 628-29 (4th Cir. 2007) (officer made material misrepresentations to magistrate in seeking arrest warrant), *cert. denied*, 128 S. Ct. 109 (2007); *Washington v Wilmore*, 407 F.3d 274, 276, 283 (4th Cir. 2005) (officer fabricated information in police report); *Brown v. Miller*, 519 F.3d 231, 235 (5th Cir. 2008) (defendant gave "verbal confirmation" of false match to investigating officer, who "immediately swore out an affidavit"); *Kjellson v. Mills*, 517 F.3d 1232,

than this: "[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial -- none of those decisions will shield a police officer who *deliberately supplied misleading information* that influenced the decision." *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) (emphasis added; claim that officers "systematically concealed from the prosecutors, and misrepresented to them" facts that caused the prosecutors to prosecute); Opp. at 42.

This case is far different from cases in which the defendant made misrepresentations to the prosecutor. In the latter circumstance, it might be appropriate to ask whether falsification of information provided to the prosecutor "influenced the decision to bring charges." *Washington v. Wilmore*, 407 F.3d 274, 283 (4th Cir. 2005). Here, by Plaintiffs' own admission, the DSI Defendants had not "supplied misleading information" to *anyone* at or before the time Finnerty and Seligmann were indicted. The only information the DSI Defendants supplied prior to April 17, 2006 was, according to Plaintiffs themselves, a *complete and accurate* description of the results of the DNA testing, which they furnished orally to Nifong and others. (Am. Compl. ¶¶ 207, 212-14.) Plaintiffs cite no cases recognizing a constitutional claim against someone who provided the prosecutor with accurate and complete information that the prosecutor allegedly

---

1236 (11th Cir. 2008) (defendant did not disclose lab results to prosecutor; "malicious prosecution" claim still failed); *Gregory v. City of Louisville*, 444 F.3d 725, 741 (6th Cir. 2006) (defendant falsified report of match, and prosecutors relied on misrepresentations); *White v. Frank*, 855 F.2d 956, 956 (2d Cir. 1988) (defendant committed perjury before grand jury); *Jones*, 856 F.2d at 993, 994 (defendant misrepresented information to prosecutors).

chose not to share with the grand jury.[10]   Those undisputed facts and settled precedents

foreclose Finnerty's and Seligmann's § 1983 claims against the DSI Defendants.

As to Plaintiff David Evans, the situation is somewhat different.   The result,

however, is the same, as is the reason:  Evans had no right to have exculpatory evidence

presented to the grand jury.   The DSI Defendants admittedly gave *all* of the evidence to

the prosecutor; it was then entirely within the prosecutor's discretion to determine what

evidence was presented to the grand jury.   The DSI Defendants did not testify before the

grand jury, and indeed, had no right to do so.   For these reasons, Evans' Fourth

Amendment claims, like those of his cohorts, fail.

Plaintiffs have seemingly abandoned their other claims against the DSI

Defendants.   Although they still purport to maintain a Fourteenth Amendment due

process claim against other defendants (*see* Opp. at 34-35), they consistently refer to their

claims against the DSI Defendants as Fourth Amendment claims related to their arrests

following indictment (*see id.* at 31-34).   They therefore have abandoned their Fourteenth

Amendment due process claims that they had any right to disclosure of evidence during

---

[10]     Plaintiffs' main causation authority, *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000)
(Opp. at 45), supports the DSI Defendants' position.  *Zahrey* involved the determination
of causation in the "unusual circumstance that the same person [the prosecutor] took both
the initial act of alleged misconduct [fabricating evidence] and the subsequent
intervening act [presenting it to the grand jury]." *Id.* at 352.  There was no intervening
actor.   The Second Circuit specifically distinguished that case from a raft of cases
recognizing that police officers are "insulated from liability for any deprivation of liberty
resulting from their misconduct by the intervening acts of other participants in the
criminal justice system." *Id.* at 351 (citing cases).  *Zahrey* thus recognizes that in this
case -- where there was an intervening actor who "exercise[d] independent judgment" --
Plaintiffs cannot state a claim against the DSI Defendants. *Id.*

the course of the proceeding.  (*See, e.g., id.* n.10.)  Indeed, they must abandon those

claims, because none of the Plaintiffs were tried or convicted, and thus by definition they

could not have been deprived of the fair trial rights that *Brady* protects.  Br. at 22-24; *see*

*Brooks*, 85 F.3d at 184 (no due process right to avoid prosecution on less than probable

cause); *Taylor v. Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996).[11]

Moreover, Plaintiffs only meekly assert that that they have a Fourth Amendment

right not to have their prosecution *continued* on less than probable cause.  (Opp. at 38.)

They claim that "several courts" have recognized such a claim.  (*Id*. at 38 & n.13.)  In

support of that proposition, however, they cite a Fourth Circuit case -- *Gay v. Wall*, 761

F.2d 175 (4th Cir. 1985) -- that has been expressly overruled.  *Brooks*, 85 F.3d at 184 &

n.6.  In *Brooks*, the Fourth Circuit held that the "reasoning of *Gay* -- that a defendant is

deprived of substantive due process by continued prosecution in the absence of probable

cause -- was rejected by the Supreme Court in *Albright v. Oliver* [510 U.S. 266 (1994)]."

*Brooks*, 85 F.3d at 184 & n.6; *see also Taylor*, 81 F.3d at 436-37 (no Fourth Amendment

claim for actions after indictment).  *Gay* simply is not good law.

---

[11]     While Plaintiffs vaguely hint at other, unspecified constitutional due process
violations, none of their cases would support such a claim.  In every case that they cite
that involved a due process claim, the claim was founded on the allegations that plaintiffs
were subject to an unfair criminal trial.  *See, e.g., Brown v. Miller*, 519 F.3d 231, 237-38
(5th Cir. 2008); *McGhee v. Pottawattamie County*, 514 F.3d 739, 747 (8th Cir. 2008);
*Harris v. Bornhorst*, 513 F.3d 503 (6th Cir. 2008); *Wilmore*, 407 F.3d at 282-83; *Jean*,
221 F.3d at 663 (Wilkinson, J.); *Zahrey*, 221 F.3d at 346.  Any effort by these Plaintiffs
to assert a Fourteenth Amendment claim in the absence of a trial and conviction would
run squarely into this Circuit's precedent rejecting such a claim.

## III.   PLAINTIFFS' § 1985 AND § 1986 CLAIMS FAIL

Although Plaintiffs belittle the suggestion that "only members of a 'minority' or 'traditionally disadvantaged' group may seek relief under § 1985" (Opp. at 94), their claims are firmly foreclosed by this Circuit's precedent.  They rely upon two decisions of this Court, but neither establishes that Plaintiffs have stated a claim.

*Waller v. Butkovich*, 605 F. Supp. 1137 (M.D.N.C. 1985), did refuse to dismiss § 1985(3) conspiracy claims brought by plaintiffs alleging animus against them as "anti-Communists" and Christians.  *Waller* "reject[ed] the notion that Section 1985(3) requires that animus be directed against a traditionally disadvantaged group." *Id*. at 1144.  But just months after *Waller*, the Fourth Circuit's held that "the class protected" by § 1985 "*can extend no further* than to those classes of persons who are, so far as the enforcement of their rights is concerned, 'in unprotected circumstances similar to those of the victims of Klan violence.'" *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985) (emphasis added & quotation omitted).  *Buschi* effectively overruled *Waller*.[12]  Unsurprisingly, Plaintiffs do not address *Buschi* at all.

---

[12]     *Waller* relied on three decisions from other circuits adopting the dubious proposition that § 1985(3) applies once a plaintiff shows "the requisite animus against [any of several] other groups," including Republicans and "critics of the President." 605 F. Supp. at 1144 (relying on *Keating v. Carey*, 706 F.2d 377 (2d Cir. 1983), *Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir. 1975), and *Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971)).  In *Harrison v. KVAT Food Mgmt., Inc.*, 766 F.2d 155, 159-60 (4th Cir. 1985), the Fourth Circuit described each of those three decisions as adopting an expansive view of § 1985 that the Fourth Circuit rejected.  *See also Buschi*, 775 F.2d at 1258 (cases discussed in *Harrison* (including *Keating*, *Glasson* and *Action*) are of "doubtful . . . continued precedential reliability").

*Phillips v. Mabe*, 367 F. Supp. 2d 861 (M.D.N.C. 2005), is simply inapposite. Phillips was a white law enforcement officer who alleged that he was the victim of retaliation -- not because he was white, but because he was engaged in protecting the civil rights of black high school students. *See id.* at 868. Phillips thus made a claim recognized in *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), which established that § 1985 protects both African-Americans and "those who championed their cause." *See Phillips*, 367 F. Supp. 2d at 873-74; *Carpenters v. Scott*, 463 U.S. 825, 836 (1983). Plaintiffs make no such claim here.[13]

Moreover, Plaintiffs' claims fail for a number of other reasons. ***First***, Plaintiffs do not dispute that this Court has established that, in order to state a § 1985 claim, "all of the conspirators must share the same forbidden animus." *Martin v. Boyce*, 2000 WL 1264148, at *7 (M.D.N.C. July 20, 2000).[14] While Plaintiffs claim that the DSI Defendants' animus is a question of fact (Opp. at 94), their Amended Complaint nowhere even alleges that the DSI Defendants had any discriminatory animus, much less that they shared the same animus as all of the other Defendants (Br. at 38).

---

[13] Plaintiffs' other authorities applying § 1985 are no more persuasive. (Opp. at 94-95.) *Park v. City of Atlanta*, 120 F.3d 1157 (11th Cir. 1997), involved a claim by racial minorities. *Action* has been rejected by the Fourth Circuit. (*See* n.12, *supra*.) *Stevens v. Tillman*, 568 F. Supp. 289 (N.D. Ill. 1983), reaches the same conclusion as *Action* and, like *Action*, predates and is inconsistent with *Harrison* and *Buschi*.

[14] Plaintiffs cite some Seventh Circuit cases that they claim stand for the contrary position. (Opp. at 93-94.) But those cases interpret other statutes, not § 1985, and Plaintiffs nowhere even attempt to address this Court's on-point decision in *Martin*.

**Second**, Plaintiffs do not dispute that their § 1985 and § 1986 claims must fail if they have not alleged any underlying constitutional claims. For the reasons discussed above, they have not.[15]

**Third**, as the DSI Defendants' Opening Brief noted, Plaintiffs have not sufficiently alleged a conspiracy to support either claim.

**Finally**, the § 1986 claim fails because the DSI Defendants did not have the "power to prevent or aid in preventing the commission" of constitutional violations by others. 42 U.S.C. § 1986; Br. at 39-40. As set forth above, the sole basis for Plaintiffs' § 1983 claims is their arrests following the grand jury indictments. The DSI Defendants had no legal ability to control the presentation of the case to the grand jury (or the subsequent determination of probable cause). Without that legal ability, the DSI Defendants lacked the power to prevent or aid in preventing any alleged violations, as a matter of law.[16]

## IV. PLAINTIFFS' RESPONDEAT SUPERIOR AND SUPERVISORY LIABILITY CLAIMS SHOULD BE DISMISSED

Plaintiffs do not dispute that, with respect to their civil rights claims, the same standards apply to DSI as apply to the City of Durham. (Opp. at 69-70.) Accordingly,

---

[15]     Plaintiffs also do not dispute the settled proposition that their § 1986 claims are dependent upon their underlying § 1985 claims, and thus the latter fail when the former fail. *See Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985); Opp. at 96.

[16]     Plaintiffs' only authority, *Waller v. Butkovich*, 584 F. Supp. 909 (M.D.N.C. 1984), is distinguishable. Law enforcement officers plainly have the legal authority to stop violence on the streets of Greensboro. *Id*. at 943.

they can state claims against DSI only if they adequately allege that "an official policy or custom of the corporation causes the deprivation of federal rights," *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (cited in Br. at 28).  The mere fact that some of the alleged actions were taken by someone with decisionmaking authority does *not* state a claim against the organization.  *See, e.g.*, *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) ("Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy.").  Instead, the decisions must establish DSI's official policy with respect to those actions.

Straining to meet that standard, Plaintiffs now claim that the actions of Clark and Meehan established an "official policy or custom" of DSI. [17]  But even if Plaintiffs could state a claim based upon the reporting of the DNA results -- which they cannot, *see* Section II, *supra* -- the Amended Complaint does not suggest that DSI implemented a "policy" of reporting DNA test results in the manner that Plaintiffs object to here, or that DSI ever applied the Mangum reporting "protocol" in any other case.  Instead -- and this is dispositive -- Plaintiffs affirmatively allege that DSI's reporting methodology in this case was *contrary to established company policy*.  (Am. Compl. ¶¶ 225, 235.)  Their civil rights claims against DSI thus fail.  *See J.S. v. Isle of Wight County Sch. Bd.*, 368 F. Supp. 2d 522, 526 (E.D. Va. 2005) (no § 1983 municipal liability where "individual defendants act[ed] *contrary* to the school board's policy") (emphasis in original).

---

[17]   Meehan was DSI's laboratory director, a position that does not obviously or by definition entail policymaking authority.  Plaintiffs nowhere allege that Meehan actually had or exercised any such authority, an omission that reflects far more than a failure to "invoke . . . purportedly talismanic words."  (Opp. at 70.)

Plaintiffs' supervisory liability claims against Clark are similarly flawed, for the reasons explained in the DSI Defendants' Opening Brief. (Br. at 29-31.) In response, Plaintiffs do not dispute that (1) to state a claim for supervisory liability, they must allege "pervasive" conduct by DSI employees -- meaning similar conduct on several occasions -- and (2) they have not made such allegations. (Br. at 30 n.17; Opp. at 70-71). Instead, they now appear to be making not supervisory claims, but claims that Clark himself directly violated Plaintiffs' rights. (Opp. at 71.) However, Plaintiffs allege nothing other than Clark's presence in meetings where the DNA results and reporting were discussed. Clark is not alleged to have played any role whatsoever in the DNA testing or reporting, nor is he alleged to have been in any position to have played any role in the prosecution of Plaintiffs. If mere allegations of a defendant's physical presence in meetings with the primary actors were adequate to state direct claims, then the restrictions on supervisory liability recognized in this Circuit would be easily avoided in virtually every case.

## V.     PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED

### A.     Plaintiffs Cannot State Any Negligence Claims Against the DSI Defendants Because the DSI Defendants Owed No Duty to Plaintiffs.

The DSI Defendants' Opening Brief demonstrated that (1) a negligence claim requires the existence of a relationship that gives rise to a legal duty, and (2) every court that has ever considered the matter has ruled that an expert has no duty to adverse parties. (Br. at 41-42.) In response, Plaintiffs take an absurd position about North Carolina negligence law: that *every person* owes a duty to *every other person* who might be foreseeably injured by that person's conduct, in *every context*. (Opp. at 110-11.)

It is true that, in many circumstances, a person owes a duty to those who might foreseeably be injured by his conduct. But in numerous cases, North Carolina courts have recognized that the nature of the relationships between the parties gives rise to no legal duty, even when injury would have been reasonably foreseeable. For example, in what is probably the most closely analogous North Carolina case, the Court of Appeals has held that an attorney owes no duty to an opposing party. *Petrou v. Hale*, 43 N.C. App. 655, 661, 260 S.E.2d 130, 135 (1979). Plaintiffs simply decline to address any case contrary to their theory about the scope of North Carolina tort law,[18] and they similarly ignore the cases cited from other jurisdictions.[19]

Instead, Plaintiffs offer two arguments to resuscitate their negligence claims. **First**, they contend that the claims are not based on the DSI Defendants' testimony as expert witnesses, since they did not testify (Opp. at 110), but instead on their allegedly negligent failure to include all findings in their May 12 Report. (Opp. at 111-12.) However, the same cases that have refused to recognize claims against experts for their testimony have similarly refused to recognize claims against them for their underlying investigations or reports. *See, e.g., Kahn v. Burman*, 673 F. Supp. 210 (E.D. Mich.

---

[18]    In addition to *Petrou,* see also *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 224-26 (4th Cir. 2002) (bank owed no duty to noncustomer); *Vickery v. Olin Hill Constr. Co.*, 47 N.C. App. 98, 103, 226 S.E.2d 711, 715 (1980) (seller and real estate agent owed no duty to buyer); *Sterner v. Penn*, 159 N.C. App. 626, 630-31, 583 S.E.2d 670, 673-74 (2003) (brokerage firm owed no duty to supervise actions of customer).

[19]    Every single jurisdiction that has considered similar claims against experts has rejected those claims (Br. at 41-42.). Plaintiffs not only ignore those cases, but they fail to explain why North Carolina would apply a different rule.

1987), *aff'd on other grounds*, 878 F.2d 1436 (6th Cir. 1989) (expert had no duty to adverse party, *inter alia*, with respect to statements in preliminary expert report provided to attorney before litigation was filed).

*Second*, Plaintiffs confuse the separate elements of duty and breach when they argue that the DSI Defendants' alleged breach of DSI's own internal policies means that the DSI Defendants owed a duty to Plaintiffs. In support, Plaintiffs cite *Peal v. Smith*, 115 N.C. App. 225, 444 S.E.2d 673 (1994). However, the Court of Appeals decision in *Peal* was the subject of an equally divided vote in the Supreme Court and so is "without precedential value," *Peal v. Smith*, 340 N.C. 352, 352, 457 S.E.2d 599, 599 (1995), and cannot be relied upon, *see State v. Braxton*, 183 N.C. App. 36, 45, 643 S.E.2d 637, 643, *rev. denied*, 361 N.C. 697, 653 S.E.2d 4 (2007). Moreover, as the Court of Appeals subsequently made clear in *Hall v. Toreros II, Inc.*, 176 N.C. App. 309, 626 S.E.2d 861 (2006), *rev. allowed*, 361 N.C. 219, 642 S.E.2d 248 (2007), company policy may help establish "a method by which the defendants could comply with the underlying legal duty already existing under law," but *company policy cannot establish a legal duty if none otherwise exists*. 176 N.C. App. at 317, 626 S.E.2d at 867. In cases where courts have recognized a negligence claim, "the legal duty already existed, and the failure to follow an adopted rule, policy, or procedure was merely some evidence of a breach of that legal duty." *Id.* at 317, 626 S.E.2d at 867. Here, there is no duty, so Plaintiffs' negligence claims against the DSI Defendants should be dismissed.

## B. Plaintiffs Fail to State a Claim for Malicious Prosecution.

As the DSI Defendants' Opening Brief made clear (Br. at 42-45), no North Carolina court has recognized a malicious prosecution claim against those who do not actually initiate criminal proceedings (*e.g.*, arresting officers or complaining witnesses who either swear out warrants or provide the primary motivation for the initiation of proceedings).[20] The principal case that Plaintiffs cite for the contrary proposition, *Moore v. City of Creedmoor*, 120 N.C. App. 27, 460 S.E.2d 899 (1995) (Opp. at 100-01), is no longer good law. As with *Peal v. Smith* (p. 18, *supra*), the malicious prosecution ruling in *Moore* was the subject of an equally divided vote in the Supreme Court and so is "without precedential value." *Moore v. City of Creedmoor*, 345 N.C. 356, 372, 481 S.E.2d 14, 24 (1997). Accordingly, it cannot be relied upon. *See Braxton*, 183 N.C. App. at 45, 643 S.E.2d at 643.

Regardless, all of Plaintiffs' cases (Opp. at 101-02) prove DSI's point. In every one of those cases recognizing a malicious prosecution claim against a non-law

---

[20]    Plaintiffs claim that the Supreme Court recognizes malicious prosecution claims not only against those who initiate proceedings, but against those who institute, procure, or participate in the proceedings. (Opp. at 102-03 (citing *Cook v. Lanier*, 267 N.C. 166, 147 S.E.2d 910 (1966)).) Plaintiffs urge the Court to follow *Cook* rather than the DSI Defendants' authority -- *Best v. Duke University*, 337 N.C. 742, 448 S.E.2d 506 (1994) -- because *Cook* is older and *Best* did not say that it was overruling *Cook*. By that same logic, however, *Cook*'s expansive view of the nature of the claim should be ignored because *even older* Supreme Court cases limited the malicious prosecution claim, and *Cook* did not purport to overrule or expand the standard set forth in those earlier cases. *See Carson v. Doggett*, 231 N.C. 629, 632, 58 S.E.2d 609, 611 (1950) (defendant must have "instituted or procured the institution" of criminal charges); *Alexander v. Lindsey*, 230 N.C. 663, 671, 55 S.E.2d 470, 476 (1949) (same).

enforcement officer, the defendant had been the principal complaining witness against the plaintiff.[21]  Accordingly, Plaintiffs might have stated a claim against Crystal Mangum, but they cannot state one against a private laboratory that did not initiate the complaints against Plaintiffs and, in fact, did nothing but analyze evidence gathered by others.

After the DSI Defendants filed their Opening Brief, the Court of Appeals issued the first known North Carolina decision involving a malicious prosecution claim against a potential law-enforcement expert witness.  *Tuck v. Turoci*, 656 S.E.2d 15, 2008 WL 304719 (N.C. Ct. App. Feb. 5, 2008) (unpublished table decision).  If there were any doubt about the pertinent North Carolina law, *Tuck* eliminated it.  *Tuck* involved malicious prosecution claims against, among others, veterinarians who had (1) provided law enforcement with evidence about why an animal shelter's procedures were criminal,

---

[21]     *See, e.g., Nguyen v. Burgerbusters, Inc.*, 182 N.C. App. 447, 449, 642 S.E.2d 502, 505 (2007) (in embezzlement case, employer/alleged victim was complaining witness who "provided *all* of the information on which the arrest warrant, indictment, and initial prosecution were all based") (emphasis added), *rev. denied*, 316 N.C. 695, 652 S.E.2d 650 (2007); *Becker v. Pierce*, 168 N.C. App. 671, 675, 608 S.E.2d 825, 829 (2005) (defendant/alleged victim was complaining witness who provided all information leading to search warrant); *Saxon v. Smith*, 125 N.C. App. 163, 166, 479 S.E.2d 788, 790 (1997) (defendant/alleged victim was complaining witness whose complaint about alleged consumer fraud formed basis of arrest warrant); *Williams v. Kuppenheimer Mfg. Co.*, 105 N.C. App. 198, 201, 412 S.E.2d 897, 900 (1992) (in embezzlement case, employer/alleged victim was complaining witness who reported allegations to police and "brought all the documents used in the prosecution to the police"); *Scarborough v. Dillard's, Inc.*, 2004 WL 77764, at **2-3 (N.C. Ct. App. Jan. 20, 2004) (same; investigating police officers were also employees of employer/alleged victim); *accord Moore*, 120 N.C. App. at 39-41, 460 S.E.2d at 906-07 (defendants were officer who "singlehandedly" provided all evidence supporting civil public nuisance action and verified complaint and city that employed officer and adopted resolution authorizing filing of action) (opinion vacated as non-precedential).

(2) met with county officials and police officers to encourage the criminal action, and (3) offered to provide expert testimony at trial. The Court of Appeals held that the veterinarians could not be liable for "provid[ing] opinions to [law enforcement] regarding the criminality of [Plaintiff's activities], and/or offer[ing] to provide expert testimony for [law enforcement] in the trial." *Id.* at *7. The DSI Defendants did the same kinds of things but, as in *Tuck*, did not initiate the prosecutions against Plaintiffs. Thus, as against the DSI Defendants, Plaintiffs' malicious prosecution claims fail.

## C. Plaintiffs Fail to State a Claim for Obstruction of Justice.

Consistent with the DSI Defendants' Opening Brief (Br. at 45), Plaintiffs cite cases that recognized obstruction of justice claims with respect to documentary or physical evidence only when the defendants had destroyed or altered documentary or physical evidence. (Opp. at 104.)[22] Plaintiffs try to shoehorn their Amended Complaint into that line of authority by describing the May 12 Report as "fabricated." (*Id.* at 105.) Yet however often Plaintiffs repeat that characterization, the actual facts alleged in their Amended Complaint acknowledge that the May 12 Report provided accurate information

---

[22] *See Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984) (altered patient's medical chart); *Grant v. High Point Reg'l Med. Sys.*, 645s S.E.2d 851, 855 (2007) (destroyed x-rays); *Jones v. City of Durham*, 183 N.C. App. 57, 59, 643 S.E.2d 631, 633 (2007) (destroyed videotape of accident). Plaintiffs mischaracterize these cases as concerning a "conspiracy to conceal a medical diagnosis," a "failure to preserve relevant evidence," and a "failure to produce evidence." (Opp. at 104.) Notwithstanding Plaintiffs' efforts to craft creative descriptions of the cases, Plaintiffs do not dispute that each of those cases, in fact, involved the destruction or alteration of evidence, which is classic obstruction of justice. *See* N.C. Gen. Stat. § 14-221.1. The other cases cited by Plaintiffs do not involve physical or documentary evidence, but instead witness, litigant, or juror tampering.

as to the results that it reported and that all of the underlying DNA results were maintained and were provided to the prosecutor (and eventually to Plaintiffs). (*See* Br. at 3.) This case is, therefore, very different from the cases recognizing obstruction of justice claims where documents were destroyed or altered. No precedent exists for imposing liability under the circumstances alleged in the Amended Complaint.

**D.     Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress.**

In an attempt to demonstrate the sort of "extreme and outrageous" conduct necessary to sustain their intentional infliction of emotional distress claim, *Jolly v. Acad. Collection Serv., Inc.*, 400 F. Supp. 2d 851, 866 (M.D.N.C. 2005), Plaintiffs point principally to alleged conduct by *other* defendants, such as witness tampering, fabrication of evidence, and public vilification of Plaintiffs. (Opp. at 107-08.) While other Defendants are alleged to have engaged in such "outrageous" conduct, Plaintiffs' allegations as to the DSI Defendants are that the DSI Defendants (1) accurately tested DNA samples; (2) accurately determined that no matches existed between the rape kit samples and Plaintiffs; (3) accurately reported their findings to Nifong and the investigators; (4) prepared a written report that contained accurate information but omitted some conclusions; and (5) produced all of the underlying raw data to Plaintiffs.[23]

---

[23]     Conversely, there is no allegation that the DSI Defendants made any false statements, destroyed documents, testified before the grand jury, made any public statements regarding Plaintiffs, or participated in the decision to prosecute any of the Plaintiffs.

That alleged conduct does not approach the type of extreme and outrageous behavior necessary to sustain a claim for intentional infliction of emotional distress.[24]

## VI. PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

While Plaintiffs argue at length that they might return to Durham and so are entitled to an injunction against the City, they make no serious effort to defend their claim for an injunction against the DSI Defendants. (Opp. at 116-18.) Plaintiffs do not contest that they have failed to allege (1) a real and immediate threat that they will be parties to a future court proceeding, (2) that scientific evidence would be relevant to any such proceeding, (3) that the DSI Defendants would provide such scientific testimony, or (4) that the DSI Defendants would do so in a way calling that testimony into question, all of which are necessary elements of a claim for injunctive relief against the DSI Defendants. (Br. at 47-48.)[25]

---

[24]    Plaintiffs' primary authority -- *West v. Kings Dep't Store, Inc.*, 321 N.C. 698, 365 S.E.2d 621 (1988) -- is readily distinguishable.  In *West*, the defendant's knowledge of the plaintiffs' unusual physical vulnerability, among other factors, rendered his conduct extreme and outrageous.  *Id*. at 705-706, 365 S.E.2d at 625-26.

[25]    Plaintiffs' principal case -- *Gillespie v. Dimensions Health Corp.*, 369 F. Supp. 2d 636 (D. Md. 2005) -- demonstrates the need for such pleading.  In *Gillespie*, the plaintiffs were deaf persons who alleged that (a) they or their family members had frequently been treated at the defendant hospital, (b) they lived near the hospital and their conditions would likely cause them to be treated there again, (c) their deafness required them to have certain accommodations on each hospital visit, and (d) the defendant hospital had a consistent policy of not providing those accommodations.  *Id*. at 637-38.  The court dismissed the injunction claims by plaintiffs who had moved from the area and, therefore, did not allege a likelihood of future injury.  *Id.* at 645-46.

Instead, Plaintiffs make two principal arguments against dismissal, both of which are frivolous. First, they appear to argue that they can act as self-appointed attorneys general because they are crusading to prevent perceived future harms to the public at large, and that they may do so without alleging a real and immediate threat that the DSI Defendants will harm them in the future. (Opp. at 116-17.) That is simply wrong, *even if* Plaintiffs had alleged a real and immediate threat that the DSI Defendants will harm *anyone* in the future, which they have not.[26] Second, they urge that they should not be required to allege a real and immediate threat of harm at the pleading stage, but should be allowed to grope for a basis for injunctive relief during discovery. (Opp. at 118.) That, too, is simply wrong.[27] Plaintiffs do not even attempt to cite a case adopting their flawed position.

---

[26] *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional."). Plaintiffs misstate the holding of *Lyons*, claiming that it would support a claim for injunctive relief if Plaintiffs alleged merely that there was a policy of unlawful behavior. (Opp. at 118.) The very sentence that Plaintiffs quote includes, in the portion tellingly omitted by Plaintiffs: "In order to establish an actual controversy in this case, Lyons would have had to allege *not only that he would have another encounter with the police but also*" that the encounter would happen pursuant to policy. *Lyons*, 461 U.S. at 105-06 (emphasis added).

[27] *See Lyons,* 461 U.S. at 110 (district court "was quite right" in dismissing claims on judgment on pleadings); *Gillespie*, 369 F. Supp. 2d at 645-46.

## CONCLUSION

For the reasons stated above and in the Brief in Support of the Motion to Dismiss of Defendants DNA Security, Inc. and Richard Clark, those Defendants respectfully request that the claims against them be dismissed.

Respectfully submitted,


/s/ Robert J. King III
Robert J. King III
N.C. State Bar No. 15946
Kearns Davis
N.C. State Bar No. 22014
Brooks, Pierce, McLendon, Humphrey &
  Leonard, L.L.P.
Post Office Box 26000
Greensboro, North Carolina 27420
Telephone: (336) 373-8850
Facsimile: (336) 378-1001

*Counsel for Defendants DNA Security, Inc. and
Richard Clark*


Robert A. Sar
N.C. State Bar No. 22306
Nicholas J. Sanservino, Jr.
N.C. State Bar No. 36557
2301 Sugar Bush Road, Suite 600
Raleigh, North Carolina 27612
Telephone: (919) 787-9700
Facsimile: (919) 783-9412

*Counsel for Defendant DNA Security, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2008, I electronically filed the foregoing **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS DNA SECURITY, INC. AND RICHARD CLARK** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Charles Davant IV
Brendan V. Sullivan, Jr.
Robert M. Cary
Christopher N. Manning
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
*Counsel for Plaintiffs David F. Evans
and Collin Finnerty*

David S. Rudolf
RUDOLF WIDENHOUSE & FIALKO
312 West Franklin Street
Chapel Hill, NC 27516

*Counsel for Plaintiff Reade Seligmann*

James B. Craven III
340 West Main Street
PO Box 1366
Durham, NC 27702

*Counsel for Michael B. Nifong*

Reginald B. Gillespie, Jr.
FAISON & GILLESPIE
5517 Durham-Chapel Hill Blvd., Ste. 2000
PO Box 51729
Durham, NC 27717-1729

*Counsel for Defendant City of Durham, NC*

Edwin M. Speas
POYNER & SPRUILL, LLP
3600 Glenwood Avenue
Raleigh, NC 27612

*Counsel for Defendant Mark Gottlieb*

James B. Maxwell
MAXWELL FREEMAN & BOWMAN, PA
PO Box 52396
Durham, NC 27717-2396

*Counsel for Defendant David Addison*

Patricia P. Kerner
TROUTMAN SANDERS, LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601

*Counsel for Defendants Steven
Chalmers, Beverly Council, Ronald
Hodge, Jeff Lamb, Patrick Baker,
Michael Ripberger, and Lee Russ*

Robert A. Sar
Nicholas J. Sanservino, Jr.
OGLETREE DEAKINS NASH
SMOAK & STEWART, PC
2301 Sugar Bush Road, Suite 600
Raleigh, NC 27612

Paul R. Dickinson, Jr.
LEWIS & ROBERTS PLLC
5960 Fairview Road, Ste. 102
Charlotte, NC 28210-3103

LEWIS & ROBERTS PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27609-7482

*Counsel for Defendant Brian Meehan*

Joel M. Craig
KENNON CRAVER BELO CRAIG
& McKEE, PLLC
4011 University Drive, Suite 300
PO Box 51579
Durham, NC 27717-1579

*Counsel for Defendant Benjamin Himan*

I further certify that I caused the foregoing document to be served by first-class mail, postage-prepaid, to the following non CM/ECF participants:

Barry C. Scheck
100 Fifth Avenue
New York, NY 10011

Richard D. Emery
EMERY CELLI BRINCKERHOFF
& ABADY LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019

*Counsel for Plaintiff Reade Seligmann*

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503-9700

*Pro se*

Roger E. Warin
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, DC 20036

*Counsel for Defendant City of Durham, NC*

Respectfully Submitted,

/s/ Robert J. King III