# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CIVIL ACTION NO. 1:07-CV-00739

| | |
|---|---|
| **DAVID F. EVANS, *et al.*,** )<br><br>          **Plaintiffs,** )<br>     **v.** )<br><br>**THE CITY OF DURHAM, NORTH CAROLINA,** )<br>***et al.*,** )<br><br>          **Defendants.** ) | **REPLY IN SUPPORT OF DEFENDANT CITY OF DURHAM, NORTH CAROLINA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

**FAISON & GILLESPIE**
Reginald B. Gillespie, Jr.
North Carolina State Bar No. 10895
5517 Chapel Hill Boulevard, Suite 2000
Durham, North Carolina  27717-1729

**STEPTOE & JOHNSON LLP**
Roger E. Warin*
Michael A. Vatis*
Matthew J. Herrington*
John P. Nolan*
Ana H. Voss*
1330 Connecticut Avenue, NW
Washington, DC  20036

*(Motion for Special Appearance to be filed)

Attorneys for Defendant City of Durham, North Carolina

**May 9, 2008**

# **TABLE OF CONTENTS**

I.  PLAINTIFFS' FEDERAL CLAIMS OF UNLAWFUL SEIZURE FAIL. ........................2

    A.  The Causal Chain Between Defendants' Alleged Acts and Plaintiffs' Seizure Was Broken by the Decisions of Nifong and the Grand Jury....................2

    B.  There Is No Fourth Amendment Violation for a "Continuing Seizure.".................7

II. THE CITY IS NOT RESPONSIBLE FOR NIFONG OR DSI. .........................8

    A.  The City Could Not Delegate Policymaking Authority to Nifong. ........................8

    B.  The City Is Not Responsible for the Private DSI Defendants. .............................10

III. THE ALLEGED POLICY OF TARGETING DUKE STUDENTS IS NOT SUFFICIENTLY RELATED TO THE CONDUCT ALLEGED TO SUPPORT A CLAIM AGAINST THE CITY. ...............................................................................12

IV. PLAINTIFFS' CLAIM OF "WITNESS TAMPERING" FAILS BECAUSE THERE IS NO RIGHT TO PRESENT WITNESSES TO A GRAND JURY. .................13

V.  PLAINTIFFS' FEDERAL CONSPIRACY CLAIMS FAIL BECAUSE PLAINTIFFS DO NOT ALLEGE MEMBERSHIP IN A PROTECTED CLASS OR RACIAL ANIMUS BY THE DEFENDANTS............................................................15

VI. PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF...........................20

VII. CONCLUSION...........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Alamo Rent-A-Car v. Mancusi,*
632 So. 2d 1352 (Fla. 1994) ................................................................. 5

*Albright v. Oliver,* 510 U.S. 266, 274 (1994) ................................... 8

*Andrews v. Fowler,*
98 F.3d 1069 (8th Cir. 1996) ............................................................. 19

*Becker v. Kroll,*
494 F.3d 904 (10th Cir. 2007) ............................................................ 8

*Blackman v. Perez,*
791 F. Supp. 1086 (E.D. Va. 1992) ................................................... 16

*Board of County Commissioners v. Brown,*
520 U.S. 397 (1997) ........................................................................... 13

*Brooks v. City of Winston-Salem,*
85 F.3d 178 (4th Cir. 1996) ................................................................. 8

*Buschi v. Kirven,*
775 F.2d 1240 (4th Cir. 1985) ................................................ 16, 17, 18

*Cain v. Rock,*
67 F. Supp. 2d 544 (D. Md. 1999) .................................................... 13

*Carter v. Morris,*
164 F.3d 215 (1999) ........................................................................... 13

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1981) ............................................................. 21, 23, 24, 25

*City of Memphis v. Greene,*
451 U.S. 100 (1981) ........................................................................... 20

*City of St. Louis v. Praprotnik,*
485 U.S. 112 (1988) ............................................................................. 9

*Clark v. Universal Builders, Inc.,*
501 F.2d 324 (7th Cir. 1974) ............................................................. 20

*Cloaninger v. McDevitt*,
 No. 1:06CV135, 2006 U.S. Dist. LEXIS 65913 (W.D.N.C. Sept. 3, 2006)......... 16, 18

*DaimlerChrysler Corp. v. Cuno*,
 547 U.S. 332 (2006)................................................................................................... 22

*Eubanks v. Gerwen*,
 40 F.3d 1157 (11th Cir. 1994) ................................................................................... 5

*Frankos v. La Vallee*,
 535 F.2d 1346 (2d Cir. 1976)................................................................................... 14

*Gay v. Wall*,
 761 F.2d 175 (4th Cir. 1985) ..................................................................................... 8

*Gillespie v. Dimensions Health Corp.*,
 369 F. Supp. 2d 636 (D. Md. 2005) .................................................................... 23, 24

*Gooden v. Howard County*,
 954 F.2d 960 (4th Cir. 1992) ................................................................................... 19

*Harris v. City of Va. Beach*,
 11 Fed. Appx. 212 (4th Cir. 2001) ........................................................................... 19

*Harrison v. KVAT Food Mgmt.*,
 766 F.2d 155 (4th Cir. 1985) .............................................................................. 17, 18

*Howard v. Food Lion*,
 232 F. Supp. 2d 585 (M.D.N.C. 2002) .................................................................... 19

*Jones v. Alfred H. Mayer Co.*,
 392 U.S. 409 (1968)................................................................................................... 20

*Jones v. City of Chicago*,
 856 F.2d 985 (7th Cir. 1988) ..................................................................................... 6

*Jones v. Ziegler*,
 894 F. Supp. 880 (D. Md. 1995), *aff'd sub nom. Jones v. Wellham*, 104 F.3d
 620 (4th Cir. 1997)................................................................................................10-11

*Jordan ex rel. Jordan v. Jackson*,
 15 F.3d 333 (4th Cir. 1994) ................................................................................12-13

*Kingsland v. City of Miami*,
    382 F.3d 1220 (11th Cir. 2004) ................................................................ 5

*Kinzer v. Jackson*,
    316 F.3d 139 (2d Cir. 2003) ..................................................................... 4

*Maynard v. City of San Jose*,
    37 F.3d 1396 (9th Cir. 1994) .................................................................. 17

*McCord v. Bailey*,
    636 F.2d 606 (D.C. Cir. 1980) ............................................................... 15

*McMillian v. Monroe Co., Ala.*,
    520 U.S. 781 (1997) ............................................................................... 9

*Metro. Housing Dev. Corp. v. Village of Arlington Heights*,
    517 F.2d 409 (7th Cir. 1975) .................................................................. 20

*Morgan v. Null*,
    117 F. Supp. 11 (S.D.N.Y. 1953) ............................................................ 14

*NAACP v. Brackett*,
    130 Fed. Appx. 648 (4th Cir. 2005) ........................................................ 22

*Nieves v. McSweeney*,
    241 F.3d 46 (1st Cir. 2001) ...................................................................... 8

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ........................................................................... 9, 10

*Phillips v. Mabe*,
    367 F. Supp. 2d 861 (M.D.N.C. 2005) .................................................... 17

*Reed v. City of Chicago*,
    77 F.3d 1049 (7th Cir. 1996) .................................................................... 6

*Riley v. Dorton*,
    115 F.3d 1159 (4th Cir. 1997) .................................................................. 8

*Sanders v. English*,
    950 F.2d 1152 (5th Cir. 1992) ............................................................... 4, 8

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ............................................................................... 22

*Simmons v. Poe*,
  47 F.3d 1370 (4th Cir. 1995) ......................................................... 25

*Smith v. Montgomery County*,
  573 F. Supp. 604 (D.C. Md. 1983), *appeal dismissed* 740 F.2d 963 (4th Cir.
  1984) ............................................................................................. 25

*Spell v. McDaniel*,
  824 F.2d 1380 (4th Cir. 1987) ....................................................... 13

*State ex rel. Finley v. Lodwich*,
  29 N.E.2d 959 (Ohio 1940)............................................................. 10

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)......................................................................... 22

*United Bhd. of Carpenters & Join., Local 610 v. Scott*,
  463 U.S. 825 (1983)....................................................................... 17

*United States v. Williams*,
  504 U.S. 36 (1992)......................................................................... 14

*Veney v. Wyche*,
  293 F.3d 726 (4th Cir. 2002) (affirming dismissal of § 1983 claim) ................... 11, 23

*Village of Arlington Heights v. Metro. Housing Dev. Corp.*,
  429 U.S. 252 (1977).................................................................... 20-21

*Walker v. Scott*,
  No. 7:05-CV-00010, 2006 WL 1288315 (W.D. Va. May 4, 2006).............................. 5

*Waller v. Butkovich*,
  605 F. Supp. 1137 (M.D.N.C. 1985) .............................................. 17-18

*Whittington v. N.C. Dep't of Juvenile Justice*,
  No. Civ. 1:05CV348, 2006 U.S. Dist. LEXIS 17862 (W.D.N.C. Apr. 7, 2006)......... 11

*Wood v. Kesler*,
  323 F.3d 872 (11th Cir. 2003) ......................................................... 4

*Wood v. Sink*,
  No. 6:95CV00362, 1996 U.S. Dist. LEXIS 21928 (M.D.N.C. July 30, 1996) .......... 23

*Wray v. City of New York*,
   490 F.3d 189 (2d Cir. 2007)..........................................................................6

*Yesteryears, Inc. v. Waldorf Restaurant, Inc.*,
   730 F. Supp. 1341 (D. Md. 1989) ..............................................................19

*Zahrey v. Coffey*,
   221 F.3d 342 (2d Cir. 2000)......................................................................5, 6

CONSTITUTIONS

Fourteenth Amendment ...................................................................................20

Fourth Amendment..................................................................................passim

N.C. Const., Art. IV, § 18...............................................................................2

U.S. Const. art. III, § 2....................................................................................22

STATUTES

42 U.S.C. § 1983 ..................................................................................passim

42 U.S.C. § 1985 ..................................................................................passim

42 U.S.C. § 1986 ..................................................................................passim

N.C. Gen. Stat. § 7A-61 ................................................................................2

N.C. Gen. Stat. § 15A-621, *et seq.* ..............................................................6

N.C. Gen. Stat. § 15A-626(a) .....................................................................14

Ohio Rev. Code Ann. 309.09(A) (1979) .....................................................10

RULES

Fed. R. Evid. 201(b)(1)................................................................................11

Fed. R. Evid. 201(b)(2)................................................................................11

In their Consolidated Opposition to Defendants' Motions to Dismiss the First Amended Complaint ("Opposition" or "Opp."), Plaintiffs concede that their official capacity claims (in Causes of Action 5, 7-11, & 16-19) are duplicative and should be dismissed. Opp. 114-15, 120. Plaintiffs also concede that they cannot state a claim under the North Carolina Constitution. Likewise, Plaintiffs concede that they cannot obtain punitive damages from the City. Opp. 119-20. Finally, they concede that their allegations about defamatory statements, suggestive photo arrays, and failure to turn over exculpatory evidence do not state a claim under the Due Process Clause but must be evaluated solely under the Fourth Amendment. Opp. 31-39.

Despite these significant concessions, Plaintiffs continue to press claims against the City of Durham that are plainly deficient as a matter of law. First, Plaintiffs have failed to state a § 1983 claim against City employees because any seizure was caused by the intervening acts of the prosecutor and the grand jury. Even if City employees could be said to have caused the seizures, Plaintiffs have failed to allege facts sufficient to link the alleged policy of targeting Duke students with the conduct complained of in this case. In addition, the City could not have "delegated" final policymaking authority to Nifong, since it had no authority under North Carolina law to delegate such authority, and Nifong no authority to exercise it. Nor did the City have any authority to supervise or control Nifong's actions, making delegation of City policymaking authority to him impossible.

Plaintiffs' §§ 1985 and 1986 claims must also be dismissed because Plaintiffs are not members of a protected class and have not adequately alleged racial animus on the

part of Defendants. Plaintiffs' claim regarding witness tampering is also deficient because they had no right to present witnesses to the grand jury. Finally, Plaintiffs lack standing to seek injunctive relief because they have not alleged a real or immediate threat of future harm resulting from the same conduct described in the Amended Complaint.

## I.  PLAINTIFFS' FEDERAL CLAIMS OF UNLAWFUL SEIZURE FAIL.

Plaintiffs utterly fail to rebut the clear Fourth Circuit precedent holding that alleged actions by police investigators do not "cause" a seizure where there is an intervening decision by a prosecutor to seek an indictment or a grand jury to indict. Plaintiffs' additional argument that post-indictment actions by the police are relevant because they resulted in a "continuing seizure" of Plaintiffs has also been expressly rejected by the Fourth Circuit. For these reasons, Plaintiffs' § 1983 claims against the City (including "official capacity" claims against the individual Defendants) based on their alleged unlawful seizures must be dismissed.[1]

### A.  The Causal Chain Between Defendants' Alleged Acts and Plaintiffs' Seizure Was Broken by the Decisions of Nifong and the Grand Jury.

Plaintiffs do not dispute that any seizure happened only after Nifong, who had the exclusive authority to seek an indictment (N.C. Const., Art. IV, § 18; N.C. Gen. Stat. § 7A-61), decided to present the case to a grand jury and the grand jury then decided to indict them. Opp. 35-36. Nor do they dispute that the officers provided all relevant

---

[1] Plaintiffs acknowledge that their entitlement to reputational damages (Causes of Action 1-14) is dependent on first proving an independent constitutional injury. Opp. 36-37. Since Plaintiffs have failed to establish a violation of the Fourth Amendment, their claims for reputational damages are not cognizable. Plaintiffs' theory that they may recover for reputational damages under the "stigma plus" doctrine is thus untenable as well. *See* Supervisory Defendants' Reply Brief at 18-20.

evidence to Nifong, including exculpatory evidence, before his decision to seek an indictment. Opp. 44-45; AC ¶ 137 (investigators "proceeded to detail [to Nifong] the extraordinary evidence of innocence and the fatal defects" in Mangum's allegations). Nor do they allege that any police Defendants committed perjury before the grand jury. *E.g.*, Opp. 42-45. In these circumstances, the intervening actions by Nifong and the grand jury independently break the chain of causation between the police Defendants' alleged actions and Plaintiffs' seizure. Without causation, Plaintiffs' § 1983 claims must fail.

With regard to Nifong's intervening decision, the decision in *Rhodes v. Smithers*, which was adopted by the Fourth Circuit, is on all fours with this case and clearly requires dismissal of Plaintiffs' § 1983 claims:

> [It] is . . . well established that where an officer presents all relevant probable cause evidence to an intermediary, such as a prosecutor, a grand jury, or a magistrate, the intermediary's independent decision to seek a warrant, issue a warrant, or return an indictment breaks the causal chain and insulates the officer from a section 1983 claim based on lack of probable cause for an arrest or prosecution.

939 F. Supp. 1256, 1274 (S.D. W. Va. 1995), *aff'd mem.*, 91 F.3d 132 (4th Cir. 1996) (per curiam) ("Our review of the record and the appropriate legal standards in this case persuades us that the rulings of the district court were correct. We therefore affirm the judgment on the reasoning set forth in the district court's extensive and careful memorandum opinion.").[2]

---

[2] Numerous cases—including some cases cited by the Plaintiffs (Opp. 38 n. 13)—confirm that investigators fully discharge their legal duty by disclosing exculpatory evidence to the prosecutor. *See, e.g.*, *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003); *Kinzer v.*

Plaintiffs assert that *Rhodes* is "inapposite" because "that case makes clear [that] the actions of a prosecutor serve as an intervening cause only where he or she acts in good faith." Opp. 46. Not so: the plaintiffs in *Rhodes*—just like the Plaintiffs here— specifically alleged that the prosecutors had acted with bad faith and had conspired with the police investigators in the investigation and prosecution of the plaintiff without probable cause.[3] The court nevertheless dismissed the claims against the prosecutors on immunity grounds. *See, e.g., id.* at 1268 ("a prosecutor's decision to file charges is protected by absolute immunity *even if done vindictively, maliciously, or without adequate investigation*") (emphasis added); *id.* at 1272. More to the point, the court dismissed the claims against the police because the prosecutors' independent decisions broke the causal chain, *without regard to* whether the prosecutors had acted in bad faith. *Id.* at 1274-75. The only question was whether the police had turned over all relevant information to the prosecutors. Since they had, the court granted their motion to dismiss. *Id.* at 1275.

Plaintiffs proffer the Eleventh Circuit's decision in *Eubanks v. Gerwen*, 40 F.3d 1157 (11th Cir. 1994), as a case in which it was "undisputed" that the police had acted in good faith. Opp. 46. In fact, the plaintiffs in *Eubanks* had alleged both § 1983 claims and state malicious prosecution claims, which required a finding that the defendants had

---

*Jackson*, 316 F.3d 139, 143-44 (2d Cir. 2003); *Sanders v. English*, 950 F.2d 1152, 1163 (5th Cir. 1992).

[3] *Rhodes*, 939 F. Supp. at 1263-65 (alleging that the prosecutor "targeted Michael Rhodes as the sole subject of the investigation without following other leads and without regard to confessions from others," "coerced, encouraged and induced [witnesses] to give false and misleading statements incriminating [Rhodes]," and "offered immunity from prosecution . . . to 'anyone' who would testify against [Rhodes]").

acted with malice.[4]  The district court had found that a reasonable person in the police

defendants' position should have known that a key witness was "lying or fabricating

evidence."  *Id*. at 1160.  But the investigators' state of mind was irrelevant to the

Eleventh Circuit, which rejected the § 1983 claims on the ground that the investigators

had disclosed all relevant evidence to the prosecutor, who alone was responsible for the

decision to prosecute.  *Id*. at 1160-61.[5]

Plaintiffs' citation of *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000), also is of no

help to them.  Opp. 45.  There, the court held that the *prosecutor* could be liable on a

§ 1983 claim for his alleged role in fabricating evidence before he decided to indict the

plaintiff.  The case did not address whether *police officers* could be liable for their

investigative activity despite the intervening decision by an independent prosecutor.

Indeed, the Second Circuit later explicitly distinguished *Zahrey* in rejecting a § 1983

claim against a police officer based on an allegedly suggestive identification procedure,

where there was no evidence that the officer had misled or pressured the prosecutor to

use the identification at trial.  *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007)

---

[4] *E.g., Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004); *Alamo Rent-A-Car v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994) (in Florida "malice on the part of the present defendant" is an element of a common law malicious prosecution claim).

[5] Plaintiffs do not even mention *Walker v. Scott*, No. 7:05-CV-00010, 2006 WL 1288315 (W.D. Va. May 4, 2006).  That case (Open. Br. 28), like *Rhodes*, held that the "prosecutor's decision to take the case to the grand jury broke the causal chain, relieving [investigators] from liability for any Fourth Amendment claim . . . arising from the investigation of the case.  Thus, [plaintiff's allegations] fail to state any Fourth Amendment claim whatsoever . . . regarding [the] pre-indictment investigation."  *Id.* at *6.

("In the absence of evidence that [the police officer] misled or pressured the prosecution or trial judge . . . extending liability to [the officer] is unprecedented and unwarranted.").[6]

The same principle applies to the grand jury's decision to indict. *See* Open. Br. 24-27. The grand jury is an independent body to which the prosecutor presents evidence, and the police have no role in deciding what evidence is presented. N.C. Gen. Stat. §§ 15A-621, *et seq.* Just as with a prosecutor's decision to seek an indictment, a grand jury's decision to indict is an intervening cause that relieves investigators of any legal responsibility for the indictment and resulting seizure "absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996); *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) (supporting claim where police officers allegedly kept a separate file of exculpatory evidence that was never presented to the prosecutor). Plaintiffs' allegations about Defendants' alleged misdeeds during the investigation thus are simply irrelevant. They do not allege that the Defendants lied to or somehow pressured Nifong or withheld evidence from him in an effort to influence what evidence he put before the grand jury. Nor do they allege that the Defendants committed

---

[6] Plaintiffs also appear to suggest that the City Defendants are liable despite Nifong's intervening decision because of the common law notion that defendants are responsible for "the natural consequences of [their] actions" and because they conspired with Nifong. Opp. 44. Whatever the validity of these concepts in tort or conspiracy law, they are simply inapplicable to the question at hand: whether a seizure can be said to have been caused by an investigator's acts if the investigator provides all relevant evidence to a prosecutor, and the prosecutor decides to seek an indictment. Under *Rhodes, Walker, Eubanks*, and numerous other cases cited therein, the answer is clearly no.

perjury before the grand jury.[7]  The grand jury's decisions to indict therefore break the causal chain between the police Defendants' actions and Plaintiffs' seizure.

**B.       There Is No Fourth Amendment Violation for a "Continuing Seizure."**

Plaintiffs also halfheartedly suggest that the police Defendants were somehow responsible for a "continuing seizure" that went on *after* their arrest and release.  Opp. 38. They argue that this theory makes the Defendants' post-indictment conduct relevant to their § 1983 claims, and keeps Nifong's and the grand jury's actions from breaking the causal chain.  This argument fails for two reasons.  First, Plaintiffs do not actually allege post-arrest "continual" seizure as a factual matter.  Second, the Fourth Circuit has squarely rejected the idea of a continuing seizure that is based either on failure to terminate a prosecution or on pretrial restrictions, such as bond or travel restrictions. *Riley v. Dorton*, 115 F.3d 1159, 1162 (4th Cir. 1997) ("[T]he Fourth Amendment does not embrace a theory of 'continuing seizure.'"); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996) ("[Plaintiff's] claim that [the law enforcement officer] failed to attempt to have the criminal proceedings terminated after it became apparent that [plaintiff] was not the perpetrator fails to state a claim upon which relief may be

---

[7] At most, Plaintiffs allege that the Defendants misleadingly withheld exculpatory evidence from the grand jury.  AC ¶¶ 219, 241.  Such an allegation, however, is insufficient to attach liability.  *Rhodes*, 939 F. Supp. at 1278.  *Rhodes* did consider the possibility that an officer may be liable for concealing facts from the grand jury "when those facts had been *specifically requested*" by the grand jury.  *Id.*  But there is no such allegation here.  Moreover, there is no right to have exculpatory evidence presented to a grand jury.  *United States v. Williams*, 504 U.S. 36, 51-55 (1992).  So an officer's failure to provide such evidence on his own does not prevent a grand jury indictment from breaking the causal chain between the officer's actions and a post-indictment seizure.

granted.") (citations omitted).[8]  The cases on which they rely (Opp. 38 n.13) thus do not reflect the law of the Fourth Circuit.[9]

## II.     THE CITY IS NOT RESPONSIBLE FOR NIFONG OR DSI.

### A.     The City Could Not Delegate Policymaking Authority to Nifong.

Plaintiffs' Opposition makes plain their basic theory of the case—that the City should have stopped Nifong in some way and, because it did not, it should be held legally responsible for his actions.  But the liability of a governmental entity for the acts of an official depends entirely on "the definition of the official's functions under relevant State law."  *McMillian v. Monroe Co., Ala.*, 520 U.S. 781, 786 (1997); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) ("[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than were the applicable law purports to put it."); Open. Br. 13-19.  North Carolina law makes it absolutely clear that: a District Attorney acts solely on behalf of the State; a District Attorney has no authority to act on behalf of municipalities; and municipalities have no

---

[8] *Accord Sanders*, 950 F.2d at 1163; *see also Becker v. Kroll*, 494 F.3d 904, 915-16 (10th Cir. 2007) (citing *Riley* and cases from the First, Second, Third, Fifth, Seventh, Ninth, and Eleventh Circuits); *Nieves v. McSweeney*, 241 F.3d 46, 55 (1st Cir. 2001) ("[I]f the concept of a seizure is regarded as elastic enough to encompass standard conditions of pretrial release, virtually every criminal defendant will be deemed to be seized pending the resolution of the charges against him.  That would mean, in turn, that nearly every malicious prosecution claim could be brought before a federal court under the aegis of section 1983.").

[9] For example, in *Gay v. Wall*, 761 F.2d 175, 179 (4th Cir. 1985), the plaintiff was detained until he was exonerated.  There was no question that plaintiff remained "seized." Moreover, "[t]he reasoning of *Gay*—that a defendant is deprived of substantive due process by continued prosecution in the absence of probable cause—was rejected by the Supreme Court in *Albright v. Oliver[,*510 U.S. 266 (1994)]."  *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 n.6 (4th Cir. N.C. 1996).

authority to control or delegate power to a District Attorney. Open. Br. 13-14. Thus, any federal claims against the City based on Nifong's actions must be dismissed under *Monell* because Nifong had no final policymaking authority for the City.[10]

Plaintiffs do not dispute these clear statements of North Carolina law. Opp. 53. Instead, they attempt to circumvent them by arguing that the City *delegated* policymaking authority to Nifong. This theory, however, depends entirely on a misreading of the Supreme Court's decision in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Plaintiffs argue that the *McMillian* rule—requiring courts to look to state law to determine whether an official has final policymaking authority on behalf of a municipality—applies only where a plaintiff is alleging that the official exercised such authority "in the normal course of business." Opp. 53. They claim that *Pembaur* establishes a separate rule that holds that an official can be imbued with final policymaking authority *regardless* of state law, if the municipality actually delegates that authority to him. But *Pembaur* said no such thing. In actuality, the Court in *Pembaur* based its decision *expressly* on the fact that the prosecutor in that case was authorized to make policy for the municipality under Ohio law:

> [B]oth the County Sheriff and the County Prosecutor could establish county policy under appropriate circumstances . . . . Ohio Rev. Code Ann. 309.09(A) (1979) provides that county officers may "require . . . instructions from [the County Prosecutor] in matters connected with their official duties." Pursuant to standard office procedure, the Sheriff's Office referred this matter to the Prosecutor and then followed his instructions.

---

[10] Similarly, any state law claims against Nifong in his "official capacity" must be dismissed because he simply had no "official capacity" with the City.

*Pembaur*, 475 U.S. at 484-85 (citation omitted); *see also State ex rel. Finley v. Lodwich*, 29 N.E.2d 959, 960 (Ohio 1940) ("A prosecuting attorney is a county officer whose election is provided for and whose duties are prescribed by statute."). Thus, the very statute that was critical to the decision in *Pembaur* conferred on the prosecutor the authority to make policy on behalf of the county.

By contrast, the City of Durham is an independent municipality and North Carolina statutes expressly and uniformly state that the District Attorney is exclusively a state actor, with no role in setting municipal policy—either directly or by delegation. In direct contrast to Ohio, then, a North Carolina city has no statutory basis to delegate its policymaking authority to a District Attorney, and a District Attorney has no statutory basis for accepting such a delegation.[11] *See, e.g., Jones v. Ziegler*, 894 F. Supp. 880, 893 & n.12 (D. Md. 1995), *aff'd sub nom. Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997) (county could not be held liable for alleged acts of state prosecutor because the prosecutor is a state official who acts only pursuant to state mandate).

**B.**     **The City Is Not Responsible for the Private DSI Defendants.**

Plaintiffs also apparently seek to hold the City responsible for the acts of DSI and its employees, Clark and Meehan, by suing them in their "official capacit[ies]." *See*

---

[11] Plaintiffs cite N.C. Gen. Stat. § 7A-61, which provides: "The district attorney shall . . . advise the officers of justice in his district[.]" Opp. 52-53. But this statute merely says that the district attorney can "advise" —*not* that it can direct, instruct, or command— officers of justice. This distinction is critical to the issue of policymaking authority. Indeed, the Court in *Pembaur* noted that it "might be inclined to agree with [the county] if we thought that the Prosecutor had only rendered "legal advice." 465 U.S. at 485. But it found that under the Ohio statute, the Prosecutor was authorized to do more than give advice—he could "command" the police. *Id.* North Carolina law, in contrast, authorizes district attorneys only to give advice. Under *Pembaur*, then, Nifong could not have exercised policymaking authority for the City, whether by "delegation" or otherwise.

Causes of Action No. 7-8, 10, 12-15, & 20-22.  This attempt also fails as a matter of law.

The conduct of the DSI Defendants is the responsibility of the State of North Carolina, not the City.  Open. Br. 18-19.  Plaintiffs argue that this Court should not take judicial notice of the orders of the State court regarding payment for DSI's services.  But the judicial notice requirements actually require only that a matter be "generally known within the territorial jurisdiction" (Fed. R. Evid. 201(b)(1)), *or* "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" (Fed. R. Evid. 201(b)(2)).  The attached orders clearly fall within the second category.  The rules of judicial notice do not require the matter to have been litigated (Opp. 63); it suffices that the document is a matter of public record.[12]

Plaintiffs concede that the orders show the State was paying DSI.  Opp. 63.  This conclusion, read in conjunction with Plaintiffs' own allegations that Nifong was dissatisfied with the SBI lab report and began to look for another firm (AC ¶ 76), directed the initial contact with DSI (AC ¶ 199), and obtained an order for transfer of the rape kit

---

[12] The Fourth Circuit has approved the use of judicial notice for public records at the motion to dismiss stage, stating that a court is not bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (affirming dismissal of § 1983 claim) (internal quotation and citation omitted); *see also Whittington v. N.C. Dep't of Juvenile Justice*, No. Civ. 1:05CV348, 2006 U.S. Dist. LEXIS 17862, at *4 (W.D.N.C. Apr. 7, 2006) (taking judicial notice of "'publicly-recorded papers from prior . . . proceedings'" in the context of a motion to dismiss) (citation omitted).

to DSI (AC ¶ 202), shows that DSI was not an agent of the City. All claims based on the alleged "official capacity" of the DSI Defendants therefore must be dismissed. [13]

## III. THE ALLEGED POLICY OF TARGETING DUKE STUDENTS IS NOT SUFFICIENTLY RELATED TO THE CONDUCT ALLEGED TO SUPPORT A CLAIM AGAINST THE CITY.

To make out a "policy or custom" sufficient to establish municipal liability under *Monell*, Plaintiffs must plead prior instances of the same or closely related conduct. Open. Br. 30-31; *Wellham*, 104 F.3d at 627. Only with such a pleading can they claim that a relevant policy existed and that the policy caused the alleged injury in this case.

Plaintiffs respond that their allegations of a general policy of targeting Duke students for enforcement of criminal laws[14] are sufficient and that they do not need to plead multiple particular incidents of similar constitutional violations to allege the existence of a policy or a causal link between the policy and the alleged harm. Opp. 56 (citing *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333 (4th Cir. 1994)). But *Jordan* was decided several years before the Fourth Circuit's decision in *Carter v. Morris*, 164 F.3d 215 (1999) and the Supreme Court's decision in *Board of County Commissioners v. Brown*, 520 U.S. 397, 405 (1997), on which *Carter* relied. *Carter* could not have been clearer in rejecting the precise argument made by Plaintiffs:

> [A] plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation. Instead, a "plaintiff must demonstrate that a municipal

---

[13] Plaintiffs' character attack on Defendant Nifong is inapposite. Nifong's censure had nothing to do with misrepresentations regarding payment to DSI. Nothing in the letters calls into question the representations there that the State is responsible for paying DSI.

[14] Plaintiffs' Amended Complaint makes no reference to a "Zero Tolerance" policy.

decision reflects deliberate indifference to the risk that a violation of a *particular* constitutional or statutory right will follow the decision."

*Id.* at 218 (quoting *Brown*, 520 U.S. at 411).

Thus, the Fourth Circuit rejected a "nebulous chain" of causation that connected unrelated past actions with the alleged violation in that case because it "fail[ed] the 'rigorous standards of culpability and causation' required for municipal liability under section 1983." *Id.* at 219 (quoting *Brown*, 520 U.S. at 405); *see also id.* at 218 (alleged policy must "'*make the specific violation almost bound to happen, sooner or later*, rather than merely likely to happen in the long run'" (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1389-91 (4th Cir. 1987))); *Cain v. Rock*, 67 F. Supp. 2d 544, 550 (D. Md. 1999). Yet that is precisely what the Plaintiffs have offered here: a nebulous assertion that a general policy of taking action against Duke students for minor violations somehow caused the individual Defendants to investigate Plaintiffs (based on a claim of rape by the alleged victim), fabricate and conceal evidence, and conspire with a rogue prosecutor to pursue felony indictments. This allegation fails to establish the "close fit" and "inevitability" required between the alleged prior instances of misconduct and the particular constitutional violation alleged in this case. Plaintiffs therefore have not satisfied the causation standard for a § 1983 claim against the City under *Monell*.

## IV. PLAINTIFFS' CLAIM OF "WITNESS TAMPERING" FAILS BECAUSE THERE IS NO RIGHT TO PRESENT WITNESSES TO A GRAND JURY.

Plaintiffs now assert that their claim of "witness tampering" (Cause of Action 9) is based on the second clause of 42 U.S.C. § 1985(2), since the first clause of § 1985(2) applies only to federal court proceedings and is thus obviously inapplicable to their case.

Opp. 83 n.40.  But Plaintiffs' claim is still fatally flawed.  There is no right for the subject

of an investigation to present witness testimony to a grand jury.  *United States v.*

*Williams*, 504 U.S. 36, 51-55 (1992); N.C. Gen. Stat. § 15A-626(a).  Plaintiffs can have

no legally cognizable claim that the City Defendants intimidated Plaintiffs' witnesses

from testifying before the grand jury that indicted them.[15]

Plaintiffs attempt to argue that the second clause of § 1985(2) is not limited to

"'court' proceedings or proceedings where a person may call witnesses but rather

[applies] to 'any' efforts to pervert 'the due course of justice in any State.'"  Opp. 90.

The problem with Plaintiffs' new theory, though, is that they allege only a conspiracy

"for the purpose of deterring alibi and other defense  witnesses . . . by force, intimidation,

and threat from attending the Superior Court of Durham County and testifying freely."

AC ¶ 455.  Cause of Action 9 does not allege any other effort to pervert the course of

justice.  Since Plaintiffs had no right to present grand jury witnesses, this alleged

conspiracy to deter defense witnesses from testifying could not have perverted justice in

the manner alleged, as a matter of law.

Plaintiffs also assert that "courts have routinely applied the *first* clause of § 1985

to grand jury witness tampering."  Opp. 90.  None of those cases involved the second

clause of § 1985, and none is from this Circuit.  In any event, each case is readily

distinguishable.  In each, the § 1985 witness tampering claim was brought by the *witness*.

---

[15] *See also*, *e.g., Morgan v. Null*, 117 F. Supp. 11, 16 (S.D.N.Y. 1953) (because no right
exists to present evidence to a grand jury, plaintiff failed to state a claim that a denial of
her opportunity to do just that was cognizable under § 1985(2), clause 2); *Frankos v. La
Vallee*, 535 F.2d 1346, 1348 (2d Cir. 1976) (dismissing § 1985(2), clause 2 claim based
on alleged interference with testimony at state court grand jury proceeding).

Also, in all but one of those cases,[16] the witness alleged that he was intimidated by the party being investigated, *not* by the prosecutor. Here, Plaintiffs allege that the prosecutor intimidated witnesses to prevent them from testifying, even though the Plaintiffs had no right to have them testify in the first place. Plaintiffs' cases are thus entirely inapposite.

Finally, even if § 1985(2), clause 2, could conceivably apply to tampering with prospective defense witnesses in a grand jury proceeding, Cause of Action 9 would still fail to state a claim because Plaintiffs are not members of a protected class, and they have not adequately alleged that the Defendants acted out of racial animus, as discussed below.

## V. PLAINTIFFS' FEDERAL CONSPIRACY CLAIMS FAIL BECAUSE PLAINTIFFS DO NOT ALLEGE MEMBERSHIP IN A PROTECTED CLASS OR RACIAL ANIMUS BY THE DEFENDANTS.

Plaintiffs do not state a claim upon which relief can be granted under § 1985, or by extension § 1986[17] because (a) they have not alleged, and cannot allege, that they are members of a protected class,[18] and (b) they have not adequately pled that the Defendants acted with racial animus against them. Open. Br. 34-40. In their Opposition, Plaintiffs ignore Fourth Circuit precedent that clearly rejects the idea that whites (or Duke students

---

[16] In *McCord v. Bailey*, 636 F.2d 606 (D.C. Cir. 1980), the subject of an investigation claimed that his attorneys "conspired with others to dissuade him from testifying in his own behalf before the grand jury." *Id.* at 613-14. The court did not discuss whether the plaintiff had a right to testify before the grand jury and thus had a cognizable claim under § 1985, since the issue was apparently not raised by the defendants. Rather, the court's brief discussion focused on whether the first clause of § 1985(2), like the second, requires racial animus. The court did not address the issue raised here.

[17] Plaintiffs do not dispute that section 1986 is dependent upon the existence of a viable claim under section 1985. Open. Br. 35-36; Opp. 82.

[18] Plaintiffs' claims must be dismissed for this fundamental failure to plead this element of their cause of action. *E.g., Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (plaintiff must allege discrimination against an "identifiable class").

or lacrosse players) might be regarded as a protected class under § 1985. Similarly, they concoct a radical and expansive theory of what constitutes racial animus under § 1985 that has never been accepted by any court.

The Fourth Circuit has held that only those classes of people "'in unprotected circumstances similar to those of the victims of Klan violence'" are protected under § 1985. *Buschi v. Kirven*, 775 F.2d 1240, 1258 (4th Cir. 1985) (citation omitted); *see also Cloaninger v. McDevitt*, No. 1:06CV135, 2006 U.S. Dist. LEXIS 65913, at *18 (W.D.N.C. Sept. 3, 2006) ("As recognized by the controlling law in the Fourth Circuit, . . . the only class of persons protected by Section 1985(3) are African-Americans."); *Blackman v. Perez*, 791 F. Supp. 1086 (E.D. Va. 1992) (rejecting equal protection claim based on Caucasian race). The Fourth Circuit has *never* held that whites (or Duke students or lacrosse players) are a protected class under § 1985.[19]

Plaintiffs rely on a twenty-three-year old district court case, *Waller v. Butkovich*, 605 F. Supp. 1137 (M.D.N.C. 1985), to support their contrary position. *Waller* held that § 1985 was not necessarily limited to those in "traditionally disadvantaged groups." *Id*.

---

[19] *Phillips v. Mabe*, 367 F. Supp. 2d 861 (M.D.N.C. 2005), *supplemental op.* 367 F. Supp. 2d 86, 2005 U.S. Dist. LEXIS 6998 (M.D.N.C. 2005), does not support Plaintiffs' argument. First, the cited portion (Opp. 94) is dictum, as the court ultimately found that the plaintiff was not a member of a protected class. *Id.* at 873. Second, the court's statement came from two cases in which white plaintiffs were held to state claims under § 1985 because they were discriminated against on account of their support of blacks. *Maynard v. City of San Jose*, 37 F.3d 1396 (9th Cir. 1994); *Yesteryears, Inc. v. Waldorf Restaurant, Inc.*, 730 F. Supp. 1341 (D. Md. 1989). While the Supreme Court has suggested that § 1985 might protect blacks AND their political supporters, *United Bhd. of Carpenters & Join., Local 610 v. Scott*, 463 U.S. 825 (1983), it would be an anomalous stretch to say that § 1985 also protects whites who do not allege that they were discriminated against because they were supporting blacks. The remaining authorities Plaintiffs cite are outside the Fourth Circuit or the § 1985(3) context. Opp. 95 nn.50-51.

-16-

at 1144.  But this broad reading was expressly rejected by the Fourth Circuit in

subsequent cases.  *See Buschi*, 775 F.2d at 1258 (rejecting an expansive reading of §

1985(3) and holding that "the class protected" is comprised of those in "circumstances

similar to those of the victims of Klan violence." (internal punctuation and citation

omitted)); *Harrison v. KVAT Food Mgmt.*, 766 F.2d 155, 161-62 (4th Cir. 1985)

(rejecting Republicans as a protected class because the Supreme Court "provided no

authority on which to base the extension of § 1985(3) protection" to any class beyond

African Americans).  In fact, the court in *Harrison* and *Buschi* specifically rejected the

reasoning of some of the  cases on which the *Waller* court relied.[20]

Plaintiffs dismiss *Harrison* as "standing only for the proposition that 'victims of

purely political conspiracies' cannot bring a § 1985(3) claim."  Opp. 95.  (Notably,

Plaintiffs do not mention *Buschi* and *Cloaninger*.).  But Plaintiffs ignore the actual

reasoning of *Harrison.*  While the case involved alleged discrimination against

Republicans, the court's reasoning is utterly inconsistent with Plaintiffs' attempt to

characterize whites as a protected class.  After carefully considering the legislative

history of § 1985 and Supreme Court precedent narrowly interpreting the statute, the

court rejected expansive interpretations adopted by some courts in other jurisdictions.  It

noted that the Supreme Court in *Scott,* 463 U.S. at 825, had "exhibit[ed] a noticeable lack

of enthusiasm for expanding the coverage of Sec. 1985(3) to any classes other than those

expressly provided by the Court," and that "[s]ince the Court in *Griffin* [*v. Breckenridge,*

___

[20] *Harrison*, 766 F.2d at 160; *Buschi*, 775 F.2d at 1258 ("[I]t is doubtful that the
expansive view of the statute . . . could be considered of continued precedential
reliability.").

403 U.S. 88 (1971)] provided blacks a remedy under Sec. 1985(3) against private conspiracies, no other group or class has achieved similar status." *Harrison*, 766 F.2d at 161. It concluded that "the Court provided no authority on which to base the extension of Sec. 1985(3) protection urged upon us here." *Id.* Since *Harrison*, the Fourth Circuit has consistently rejected efforts to expand the categories of "protected classes" beyond those previously recognized by the Supreme Court. Open. Br. at 35.

Even if Plaintiffs *were* members of a protected class, their Amended Complaint would still fail to state a claim because they have not adequately pled racial animus against them on the part of the Defendants. Plaintiffs' allegations of animus were made in the alternative—the Defendants had animus and/*or* they took advantage of animus in the community. AC ¶¶ 448, 463. Plaintiffs now remove the alternative, stating that the Defendants themselves had racial animus *and* exploited racial animus that existed in the Durham community. Opp. 92. But even if the court accepts the Plaintiffs' implicit amendment of their Complaint, their allegations fail to state a claim under either theory.

With regard to their new claim that the Defendants themselves had racial animus, Plaintiffs have failed to come forward with anything other than conclusory allegations.[21] Plaintiffs have sued fourteen individuals, the City, and DSI, yet they have alleged absolutely no facts suggesting which, if any, of these multiple parties had animus against them because they are white, or any facts demonstrating such animus. Plaintiffs'

---

[21] *See Harris v. City of Va. Beach*, 11 Fed. Appx. 212, 215 (4th Cir. 2001) (affirming dismissal where district court required a plaintiff "alleging unlawful intent in conspiracy claims under § 1985(3) or § 1983 [must] plead specific facts in a nonconclusory fashion to survive a motion to dismiss"); *Gooden v. Howard County*, 954 F.2d 960, 969-970 (4th Cir. 1992); *Howard v. Food Lion*, 232 F. Supp. 2d 585, 597 (M.D.N.C. 2002).

allegations of motive focus entirely on Nifong's desire to get elected and on the City's alleged policy of targeting Duke students. *See* AC ¶¶ 3, 130, 132, 151, 153, 384-85, 388, 393, 395. A late, conclusory statement that the Defendants were motivated by racial animus, with no alleged facts supporting that statement, does not state a claim under § 1985, especially in light of other, factually-supported, plausible motivations. *Andrews v. Fowler*, 98 F.3d 1069, 1079-80 (8th Cir. 1996); *Hill v. Philip Morris USA*, 03 Civ. 6922 (GEL), 2004 U.S. Dist. LEXIS 8402 (S.D.N.Y. May 6, 2004).

Plaintiffs' alternative theory is that the Defendants "fomented" and "exploited" racial animus on the part of others. Yet they do not cite even one case under § 1985 adopting this theory. Instead, they cite two cases from the Seventh Circuit and one from the Northern District of Illinois *involving § 1982*. Opp. 93-94. But § 1982 and § 1985 are very different statutes. Section 1982 was enacted as part of the Civil Rights Act of 1866 and has been interpreted broadly to remedy the badges and incidents of slavery in property markets. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968). Some courts have interpreted § 1982 as not requiring proof of an intent to discriminate on the basis of race and have held that a plaintiff can state a claim by merely alleging a discriminatory *impact*. *Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir. 1974).[22]

In contrast, § 1985 was enacted as part of the Ku Klux Klan act of 1871, *Scott,* 463 U.S. at 835, and has been interpreted much more narrowly to avoid creating a federal tort law, *Bray*, 506 U.S. at 274. Most importantly, proof of an intent to discriminate is

---

[22] The Supreme Court has not resolved whether § 1982 requires an intent to discriminate. *City of Memphis v. Greene*, 451 U.S. 100, 130 (1981) (White, J., concurring).

required under § 1985. *Id.* at 272 n.3.[23] Even if one indulges the assumption that

Plaintiffs' exploitation theory makes sense in §1982 cases, where discriminatory intent is

not necessarily required, that theory makes no sense whatsoever in the § 1985 context,

where discriminatory intent *is* required. *See Bray*, 506 U.S. at 271-72 ("'Discriminatory

purpose' . . . implies more than intent as volition or intent as awareness of consequences.

It implies that the decisionmaker . . . selected or reaffirmed a particular course of action

at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an

identifiable group.") (citations omitted). This Court therefore should reject Plaintiffs'

invitation to expand § 1985 into a federal tort law by eliminating the requirement that the

Defendants themselves have acted with racial animus against a protected class. *Bray*,

506 U.S. at 268; *Griffin*, 403 U.S. at 102.

## VI.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF.

Plaintiffs acknowledge that *City of Los Angeles v. Lyons*, 461 U.S. 95 (1981), sets

forth the standard for determining whether they have standing to seek injunctive relief.

Opp. 118. Under *Lyons*, Plaintiffs must show that they are subject to a "real and

immediate threat" that they would again be victimized by the conduct of which they

---

[23] The Supreme Court has required proof of discriminatory intent under § 1985 in part
because that statute implements the Equal Protection Clause of the Fourteenth
Amendment and proving a deprivation of equal protection requires proof of
discriminatory intent. *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429
U.S. 252, 265 (1977). Notably, the Supreme Court in *Arlington Heights* reversed a
decision by the Seventh Circuit, which had extended the "exploitation" rationale of one
of Plaintiffs' § 1982 cases, *Clark*, 501 F.2d at 324, to an equal protection suit and did not
require proof of discriminatory intent on the part of the defendants. *Metro. Housing Dev.
Corp. v. Village of Arlington Heights*, 517 F.2d 409, 414-15 (7th Cir. 1975). Plaintiffs'
identical effort to extend the logic of a limited set of § 1982 cases to the § 1985 context
should similarly be rejected by this Court.

complain. *Id.* at 106-07. In other words, Plaintiffs must allege that "'it is likely that they again will find themselves in the same or similar circumstances giving rise to the allegedly unconstitutional conduct'" and that "'it is likely that they again will be subjected to the allegedly unconstitutional conduct.'"[24] Because Plaintiffs' allegations do not even come close to meeting this standard, their claim for injunctive relief must be dismissed.

Plaintiffs' principal response is that it is "premature" to dismiss the claim now because "the Injunction will not be requested until trial, and . . . the factual basis for it may change before then." Opp. 18. This remarkable argument, which is completely unsupported, flies in the face of consistent Supreme Court and Fourth Circuit jurisprudence holding that standing is a jurisdictional issue that must be assessed at the outset of a case, and the hornbook rule that a plaintiff must plead sufficient facts to state a claim for relief in the complaint or face dismissal.

Standing goes to the question of whether a federal court has jurisdiction to decide a case under Article III, § 2, of the United States Constitution, which limits the court's jurisdiction to live "[c]ases" and "[c]ontroversies."[25] Plaintiffs must plead facts sufficient to establish standing with respect to each claim for relief.[26] For this reason, numerous

---

[24]  *NAACP v. Brackett*, 130 Fed. Appx. 648, 652 (4th Cir. 2005) (citation omitted).

[25] *Sierra Club v. Morton,* 405 U.S. 727, 732 (1972) (affirming dismissal of claim for injunctive relief).

[26] *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the

courts in this jurisdiction and others have dismissed claims for injunctive relief at the pleadings stage. *See* Open. Br. 45-47. Not surprisingly, Plaintiffs completely ignore these cases and cite not a single case to support their argument that dismissal would be "premature."[27]

Plaintiffs also try to justify their claim for an injunction on the ground that "there would be a significant benefit, both to Plaintiffs and the public," because the City would not otherwise implement needed reforms. Opp. 116-17. Such considerations, even if they were true, are irrelevant to the standing inquiry. In *Lyons*, the Supreme Court rejected a similar argument on the ground that the plaintiff was "no more entitled to an injunction that any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." 461 U.S. at 111.

Plaintiffs also argue that they "expect[] to travel to the City of Durham" in the future. Opp. 118 (citing AC ¶ 567). However, "'[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that [the Supreme Court's] cases require.'" *Wood v. Sink*, No. 6:95CV00362, 1996 U.S. Dist. LEXIS 21928, at *7 (M.D.N.C. July 30, 1996) (citation omitted).

---

judicial power of the United States' and is 'inflexible and without exception.'" (citation omitted)) (dismissing claim for injunctive relief).

[27] Plaintiffs cite only *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Opp. 118. In that case, however, the Fourth Circuit granted the defendants' motion to dismiss the plaintiff's § 1983 claim, and there was no issue regarding injunctive relief.

The only case Plaintiffs cite (Opp. 118) to support their contention that such future plans are enough actually goes against them. In *Gillespie v. Dimensions Health Corp.*, 369 F. Supp. 2d 636, 646 (D. Md. 2005), the court held that plaintiffs who had moved out of state did *not* have standing to challenge an alleged unlawful policy of a hospital at which they had been treated in the past. While the court allowed the residents still living within two to five miles of the hospital to proceed on their claim for injunctive relief, the court relied on *Lyons* to hold that the likelihood of future harm from this policy to the out-of-state plaintiffs was "minimal at best." 369 F. Supp. 2d at 646.[28]

In any event, a plaintiff's geographical location is only one factor in the *Lyons* analysis. The touchstone is whether a plaintiff has alleged facts sufficient to show that he is subject to a real and immediate threat of the same unconstitutional conduct. Yet, Plaintiffs make no effort in their Opposition to explain why the allegedly "unprecedented" conduct is "likely" to occur to them again. Plaintiffs' speculative allegation that they intend to visit Durham in the future fails to even suggest that they will have any interaction at all with the Durham Police or that they will find themselves in a situation in which they will be subject to false allegations of rape or subject to arrest without probable cause on some other grounds.

---

[28] The court held that plaintiffs living within five miles of the hospital had alleged a "sufficient likelihood that [they] will again be wronged in a similar way" given their proximity to the hospital, that they were likely to continue to seek medical treatment there, that they had in fact made repeated visits to the hospital even after the alleged discrimination, and the fact that the alleged discrimination was an ongoing manifestation of the hospital's policy and practice. *Id.* at 642-46 (quoting *Lyons*, 461 U.S. at 111).

Finally, contrary to Plaintiffs' suggestion (Opp. 118), the mere allegation of "high-level misconduct" by City policymakers is not enough to establish a real and immediate threat of harm. *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995) (allegation of policy of racial profiling did not show "real or immediate threat" of injury by the policy); *Smith v. Montgomery County*, 573 F. Supp. 604, 607-08 (D. Md. 1983) (refusing to grant injunction against policy of strip searches without probable cause where plaintiff "does not allege, nor could she credibly allege, that she will be arrested in the future and strip searched without probable cause to believe she is carrying weapons or contraband"), *appeal dismissed* 740 F.2d 963 (4th Cir. 1984). The Supreme Court in *Lyons* suggested that a real and immediate threat might be shown only where the city had "ordered or authorized police officers" to "*always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning." 461 U.S. at 106. Plaintiffs have made no allegation that the City has ordered or authorized its police to always seize without probable cause anyone with whom they have an encounter, or even anyone against whom a rape charge is made. Plaintiffs' claim for injunctive relief must be dismissed.

## VII. <u>CONCLUSION</u>

For the foregoing reasons, Causes of Action 5, 7-12, and 20-22 against the City; and Plaintiffs' requests for relief under the North Carolina Constitution, for injunctive relief, and for punitive damages against the City should be dismissed.

This the 9th day of May, 2008.

FAISON & GILLESPIE          STEPTOE & JOHNSON LLP

By: /s/ Reginald B. Gillespie, Jr.     By: /s/ Roger E. Warin
Reginald B. Gillespie, Jr.           Roger E. Warin*
North Carolina State Bar No. 10895   Michael A. Vatis*
5517 Chapel Hill Boulevard, Suite 2000   Matthew J. Herrington*
Post Office Box 51729            John P. Nolan*
Durham, North Carolina 27717-1729   Ana H. Voss*
Telephone: (919) 489-9001       Steptoe & Johnson LLP
Fax: (919) 489-5774             1330 Connecticut Avenue, NW
E-Mail: rgillespie@faison-gillespie.com   Washington, DC 20036
                                    Telephone: (202) 429-3000
                                    Fax: (202) 429-3902
                                    E-Mail: rwarin@steptoe.com
                                    *(Motion for Special Appearance to be filed)

Attorneys for Defendant City of Durham, North Carolina

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

The undersigned hereby certifies that, pursuant to Rule 5 of the Federal Rules of Civil Procedure and LR5.3 and LR5.4, MDNC, the foregoing pleading, motion, affidavit, notice, or other document/paper has been electronically filed with the Clerk of Court using the CM/ECF system, which system will automatically generate and send a Notice of Electronic Filing (NEF) to the undersigned filing user and registered users of record, and that the Court's electronic records show that each party to this action is represented by at least one registered user of record, to each of whom the NEF will be transmitted, except that, with respect to the following party, a copy is being transmitted via first class mail to the address listed below:

Mr. Linwood Wilson
[Home Address redacted per LR 7.1(b), MDNC and ECF P&P Manual, part J]

This the 9th day of May, 2008.

FAISON & GILLESPIE

By: /s/ Reginald B. Gillespie, Jr.
     Reginald B. Gillespie, Jr.
     North Carolina State Bar No. 10895