# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID F. EVANS, et al.,

      Plaintiffs,

      v.

CITY OF DURHAM, N.C., et al.,

      Defendants.

Civil Action No. 1:07-CV-739

## PLAINTIFFS' BRIEF OPPOSING THE CITY OF DURHAM'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

**WILLIAMS & CONNOLLY LLP**

Brendan V. Sullivan, Jr.
Robert M. Cary
Christopher N. Manning
Charles Davant IV (NC Bar #28489)
725 Twelfth Street, N.W.
Washington, DC  20005

*Attorneys for Plaintiffs*
*David F. Evans and Collin Finnerty*

**RUDOLF WIDENHOUSE & FIALKO**

David S. Rudolf (NC Bar #8587)
312 West Franklin Street
Chapel Hill, NC  27516

**BARRY C. SCHECK, ESQ.**

100 Fifth Avenue
New York, NY  10011

**EMERY CELLI BRINCKERHOFF &**
**ABADY LLP**

Richard D. Emery
Ilann M. Maazel
75 Rockefeller Plaza, 20th Floor
New York, NY  10019

November 24, 2008

*Attorneys for Plaintiff Reade Seligmann*

## INTRODUCTION

The City of Durham argues, based upon a particular sentence in its insurance policies, that it does not have insurance coverage for Plaintiffs' state-law claims and, thus, is entitled to governmental immunity. But the City's brief misquotes the sentence upon which its argument depends, omitting a particularly important comma. The omission reverses the sentence's meaning, transforming policy language that is fatal to the City's position into the inaccurate language upon which the City's motion is based. The omission also leads the City to represent, inaccurately, that this Court interpreted "identical policy language" in *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512 (M.D.N.C. 2008). In fact, *Pettiford* involved an insurance policy that was altogether different from the City's, and that only highlights the problems with the City's argument.

Moreover, the City's principal argument—that a municipality is immune from state-law tort liability where its insurance policy first requires exhaustion of a self-insured "retained limit"—is contradicted by voluminous North Carolina precedent. The North Carolina Court of Appeals has derided this argument as "circular" and "contrary to our case law," *Kephart by Tutwiler v. Pendergraph*, 507 S.E.2d 915, 920–21 (N.C. Ct. App. 1998), and instead has held that "evidence of self-insurance up to [a retained limit] serves only to mitigate the amount of damages [a city] may incur," and does not immunize a city from state-law claims in excess of the retained limit, *Wilhelm v. City of Fayetteville*, 464 S.E.2d 299, 301 (N.C. Ct. App. 1995). The City nowhere addresses this body of case law. In fact, the City was a defendant in one of the cases that refutes the argument it now advances. There, the City conceded that, notwithstanding its self-insured retained limit, "[t]he City has waived governmental immunity . . . for that portion of a [state-law] claim which is covered by [the City's] excess policy." Davant Rule 56(f) Aff. Ex. K at 12.

The City's alternative argument, that a policy endorsement preserves its immunity, also discards the actual policy language. The endorsement in question is expressly "subject to" the policy, which itself expressly covers "negligent acts," "personal injury offenses," "malicious prosecution," "false arrest," and other state-law torts. It is similarly "subject to" the "Limits of Liability" of the policy, language that would make no sense if, as the City contends, the endorsement preserves complete immunity from state-law claims. In other words, the City's interpretation has it backwards, rendering the policy coverage "subject to" the endorsement, rather than the other way around. The endorsement simply makes clear that the City did not, by the act of purchasing insurance, waive its immunity for acts not covered by the policy or claims outside its policy limits.

Finally, the City's motion is premature. Whatever the City argues "[f]or purposes of the instant Motion" (City Br. 4 n.4), the City has previously stated that Plaintiffs' claims are covered by insurance and that the City's insurer is reimbursing its costs of defending all of Plaintiffs' claims, not just those under federal law. These statements, and others, create a question of fact that precludes summary judgment—particularly at this preliminary stage, where the City has refused Plaintiffs' requests for discovery. In an earlier litigation, discovery of the City's then-existing insurance coverage resulted in the production of e-mail and testimony admitting that, in fact, the City did have coverage for state-law claims and had waived immunity, notwithstanding a self-insured retention. Plaintiffs are entitled to such discovery here. The motion should be denied.

## BACKGROUND

### A.     Summary of Claims Against the City

Plaintiffs are the three innocent students who were falsely arrested, indicted, and publicly vilified on false charges of rape, sexual assault, and kidnapping in the now

infamous "Duke Lacrosse Case" in 2006 and 2007.  Plaintiffs allege that certain City employees and agents participated in the effort to arrest and convict Plaintiffs on false charges by fabricating evidence, concealing evidence of Plaintiffs' actual innocence, engaging in witness tampering and obstruction of justice, and making false and inflammatory public statements about Plaintiffs' supposed guilt.  *See generally* Am. Compl.  As a result of this misconduct, Plaintiffs incurred millions of dollars in legal fees defending against baseless prosecutions, and they suffered irreparable harm to their reputations, as well as emotional, physical, and other economic harm.  *See, e.g.*, *id.* ¶ 4.

The Amended Complaint asserts federal and state-law causes of action against the City by naming the City as a defendant or by naming City employees and agents as defendants in their official capacities.  The City's motion seeks the dismissal of Plaintiffs' state-law claims against the City, which include claims for malicious prosecution, obstruction of justice, intentional infliction of emotional distress, and negligence-based torts.  *See id.*, Thirteenth through Nineteenth Causes of Action.

### B.    The Policy Language

The City attaches three insurance policies in support of its motion:

(1) AIG/ICSOP Policy No. 4205-2178, which covers the period from April 1, 2005 to April 1, 2006, and losses from $500,000 to $5 million (*see* City Ex. 1); (2) AIG/ICSOP Policy No. 4206-3929, which covers the period from April 1, 2006 to April 1, 2007, and losses from $500,000 to $5 million (*see* City Ex. 2); and (3) Everest Policy No. 71P2000024-071, which covers the period from April 1, 2007 to April 1, 2008, and losses from $1 million to $10 million (*see* City Ex. 3).[1]

---

[1] Citations to "City Ex." refer to the exhibits to the Affidavit of Darwin Laws (Docket No. 79) filed in support of the City's Motion for Partial Summary Judgment.

Although the City contends that its policies do not cover state-law claims, none of the policies actually contains an express exclusion of such claims. To the contrary, the policies expressly cover a variety of state-law torts, including libel, slander, assault and battery, "negligent act[s]," "[f]alse arrest," "[m]alicious prosecution," and other "personal injury offense[s]." *See* City Exs. 1–2, §§ I.A.2, II.MM; *accord* City Ex. 3, §§ 5.NN, 5.Z.

The policies further provide that coverage is triggered by the City's payment of a "retained limit" ($500,000 or $1 million, depending on the policy) which may be satisfied by, among other things, payment of "defense costs":

> [The insurer's] duty to pay any sums that you become legally obligated to pay arises only after there has been a complete expenditure of your retained limit by means of payments for judgments, settlements, *or defense costs*.

City Exs. 1–2, § III.C (emphasis added); *see also* City Ex. 3, § III.3.[2]

The two AIG/ICSOP policies contain a "governmental immunity endorsement." City Ex. 1, Endor. 9; City Ex. 2, Endor. 10. This endorsement is, by its terms, "subject to this policy and the Limits of Liability" for each policy. *Id.* The Everest policy does not contain such an endorsement.

### C. The City Spends Its Retained Limit and Triggers Its Excess Policies

According to published reports, the City Defendants have generated more than $1.2 million in legal bills in this and two other cases. *See* Davant Rule 56(f) Aff. ¶ 4. This legal work included the drafting and submission of more than 300 pages of briefing (out of 887 pages to date) devoted exclusively to the state-law claims in the three cases.

---

[2] A retained limit is analogous to a "deductible." *See Black's Law Dictionary* 444 (8th ed. 2004) (defining "deductible" as "the portion of the loss to be borne by the insured before the insurer becomes liable for payment. *Cf.* SELF-INSURED RETENTION.").

Yet, the Assistant City Attorney supervising these cases told the *Durham Herald-Sun* that the City was responsible only for the first $500,000 of the City Defendants' legal bills, and that the City's insurer was reimbursing the City for all amounts over $500,000. *See id*. The City has paid "$729,350 of [the legal bills], but the city is in line to get $229,350 of that back from the American International Group." *Id.* "AIG will pay for the city's defense until the bill hits Durham's $5 million coverage limit, Assistant City Attorney Kim Grantham said." *Id*. The City did not distinguish between state and federal claims in describing its insurance coverage, and instead indicated that the first $500,000 of defense costs had triggered insurance coverage. *See id*.

## QUESTIONS PRESENTED

1.      Where an insurance policy provides that coverage is triggered upon the insured's payment of $500,000 "for judgments, settlements, or defense costs," is coverage triggered upon the insured's payment of $500,000 in defense costs?

2.      Can a city claim governmental immunity on the ground that it has no "legal obligation to pay" its self-insured "retained limit," where the policy at issue requires only that the retained limit be paid, not that the city have had a "legal obligation to pay" it?

3.      Does a city's insurance policy extend coverage to state-law torts if it expressly covers "wrongful acts" that specifically include "negligent acts," "personal injury offenses," "malicious prosecution," "false arrest," and other state-law torts?

4.      Does an endorsement to an insurance policy that is expressly made "subject to" the policy instead *override* the policy?

5.      Should summary judgment be granted on the affirmative defense of governmental immunity where the moving party's prior statements, at a minimum, create a question of fact, and the non-moving parties have been unable to take discovery?

## ARGUMENT

## I.    SUMMARY JUDGMENT STANDARD

A summary judgment motion must be denied unless "there is no genuine issue as to any material fact." *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 340–41 (4th Cir. 2000) (quotation marks omitted).  A court should not enter summary judgment unless "the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the nonmoving party cannot prevail under any circumstances." *Richmond v. Indalex Inc.*, 308 F. Supp. 2d 648, 664 (M.D.N.C. 2004) (alterations and quotation marks omitted).  "[A]ll justifiable inferences" are to be drawn in favor of the party opposing summary judgment. *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 294 (4th Cir. 2004).  In addition, because governmental immunity is an affirmative defense, the City must "remove genuine doubt from the issue altogether" to prevail. *Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160, 164 (4th Cir. 1999) (quotation marks omitted).  Furthermore, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (alteration in original) (quotation marks omitted).

## II.   THE CITY'S MOTION DEPENDS ON A FAULTY REWRITING OF ITS POLICIES.

The City argues that its insurance polices do not cover state-law claims.  But because its policies do not actually say that,[3] the City resorts to a convoluted syllogism:

---

[3] The policies expressly exclude nuclear accidents, release of pollutants, injuries that occur in Cuba, and even breach-of-contract claims, but nowhere do they state that state-law claims are excluded. *See, e.g.*, City Ex. 1, §§ V.G, V.J.2, Endors. 4, 6.

> By the express terms of each policy, the excess coverage is not triggered until the City has exhausted a self-insured retention that it is "legally obligated to pay." Because the City cannot be "legally obligated to pay" losses arising from claims for which it has immunity, it cannot exhaust its self-insured retention with those losses. Thus, the excess coverage is not triggered, and the City's immunity remains intact.

City Br. 11.

This argument is only as good as its first premise, which is faulty. It is not true that the City must be "legally obligated to pay" its retained limit to trigger coverage. No such requirement appears in the policies. Nor do the policies define "Retained Limit" as an amount that the City is legally obligated to pay. *See* City Exs. 1–2, § II.CC ("Retained limit refers to the amount stated in the Declarations.").

Moreover, Section III.C of the AIG/ICSOP policies provides that coverage is triggered once the City spends its retained limit ($500,000) on "judgments, settlements, or defense costs":

> [The insurer's] duty to pay any sums that you become legally obligated to pay arises only after there has been a complete expenditure of your retained limit by means of payments for judgments, settlements, or defense costs. . . . We will then be liable only for that portion of damages in excess of your retained limit up to our Limits of Insurance.

City Exs. 1–2, § III.C; *see also* City Ex. 3, § III.3. There is no requirement that the City have had a "legal obligation" to expend its retained limit. *See* City Exs. 1–2, § III.C; City Ex. 3, § III.3. To the contrary, the inclusion of the term "defense costs" confirms that coverage is triggered once the City spends its retained limit, regardless of any legal obligation to do so. *See Kephart by Tutwiler v. Pendergraph*, 507 S.E.2d 915, 921–22 (N.C. Ct. App. 1998) ("[R]egardless of whether the County is *required* to pay out

7

[self-insured retention] funds, coverage is provided after a claim exceeds $100,000.00, taking into account claim expenses [i.e., defense costs].") (emphasis added).

The City's contention that it must have a legal obligation to pay the retained limit in order to trigger coverage is based not upon Section III.C (which governs when coverage is triggered), but upon Section I.A.2 (which governs the amount of coverage). The City represents that the text of Section I.A.2 reads as follows:

> We shall pay you, or on your behalf, the ultimate net loss, in excess of *the retained limit that the insured becomes legally obligated to pay* . . . .

City Br. 11 (quoting § I.A.2) (italicized emphasis added; bold emphasis omitted).

Reading this sentence, one would assume that the term "retained limit" is modified by the phrase "that the insured becomes legally obligated to pay." This is not the case. In quoting this section in its brief, the City omits a comma that appears after "retained limit," thereby reversing the meaning of Section I.A.2 and creating the misimpression that "coverage is not triggered until the City has exhausted *a self-insured retention that it is 'legally obligated to pay*.'" City Br. 11 (emphasis added). In reality, Section I.A.2 states:

> We shall pay you, or on your behalf, *the ultimate net loss*, in excess of the retained limit*, that the insured becomes legally obligated to pay* . . . .

City Exs. 1–2, § I.A.2 (italicized emphasis added; bold emphasis omitted).[4]  In other words, the phrase "that the insured becomes legally obligated to pay" does not modify

---

[4] The Everest policy similarly provides that the insurer "will pay on behalf of the insured, the 'ultimate net loss', in excess of the 'retained limit', that the insured becomes legally obligated to pay . . . ."  City Ex. 3, § I.A.2.  The City accurately quotes this language in its brief. *See* City Br. 11 (quoting City Ex. 3, § 1.A.(1–4)).

"retained limit" at all, but rather, "ultimate net loss." The correct policy language leaves no doubt about "the extent that the city is insured." N.C. Gen. Stat. § 160A-485(c).

Relying on the inaccurate language, the City incorrectly represents that this Court "interpreted identical policy language" in *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512 (M.D.N.C. 2008), "the only difference being the introductory words" in the AIG/ICSOP policies. City Br. 12 & n.8. In fact, the policies in *Pettiford* actually *did* refer to "'*the retained limit which the Insured becomes legally obligated to pay.*'" 556 F. Supp. 2d at 528–29 (emphasis added) (quoting policy). Here, by contrast, the City's policies make clear that the only legal obligation relates to the City's "ultimate net loss."

The City also does not address the fact that all three of its policies provide that coverage can be triggered by the City's payment of "defense costs"—language that refutes the premise that only a "legal obligation to pay" triggers coverage. *See Kephart*, 507 S.E.2d at 920. In quoting Section III.C of the AIG/ICSOP policies, the City's brief omits the language italicized below:

> [The insurer's] duty to pay any sums that you become legally obligated to pay arises only after there has been a complete expenditure of your retained limit *by means of payments for judgments, settlements, or defense costs*.

City Ex. 1, § III.C (italics added); *compare* City Br. 12. The City similarly omits the following italicized language in its quotation of the Everest policy:

> [The insurer] will pay any sums covered under this Policy only after your 'retained limit' has been exhausted *by means of payments for judgments, settlements, defense costs or covered first-party automobile expense' for 'claims' and 'suits' subject to Paragraph 2. above*.

City Ex. 3, § III.3 (italics added); *compare* City Br. 12. Once again, *Pettiford* highlights the weaknesses in the City's argument. There, "coverage [wa]s contingent upon

[Greensboro's] payment of the first $3 million *of any damage award*," 556 F. Supp. 2d at 529 (emphasis added), whereas here, coverage has been triggered by the City's payment of defense costs, well before any legal obligation to pay a damages award.

Moreover, even the City's incorrect interpretation would not require dismissal of state-law claims where, as here, federal claims also are alleged. That is because the City could exhaust its retained limit simply by paying a judgment on federal claims, which the City cannot dispute it would have a legal obligation to pay, thereby triggering the policy coverage of "wrongful act[s]" that expressly include such state-law torts as "negligent act[s]," "personal injury offense[s]," "[f]alse arrest," and "[m]alicious prosecution." City Exs. 1–2, §§ I.A.2, II.MM, III.C; *accord* City Ex. 3, §§ 5.NN, 5.Z, III.3.

At bottom, the City's policies, accurately quoted, rebut the City's argument in numerous respects. But even if there were doubt, the policies would have to be construed in favor of coverage: "Exclusions from and exceptions to undertakings by the [insurance] company are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by the policy." *Kephart*, 507 S.E.2d at 919. This is especially so at the summary judgment stage, when "all justifiable inferences" are to be drawn in favor of the non-moving party, *White*, 375 F.3d at 294, and where the City bears the burden of removing "genuine doubt from the issue altogether." *Hoover Color Corp.*, 199 F.3d at 164 (quotation marks omitted).

## III. VOLUMINOUS NORTH CAROLINA PRECEDENT CONTRADICTS THE CITY'S ARGUMENT.

The North Carolina courts have consistently rejected the City's argument (*see* City Br. 12–13) that the existence of a self-insured retained limit precludes coverage of state-law claims. Indeed, voluminous North Carolina precedent confirms that a

government entity waives its state-law immunity to the extent of its insurance coverage, notwithstanding a self-insured retained limit for which it lacks coverage. *See, e.g.*, *Lail ex rel. Jestes v. Cleveland County Bd. of Educ.*, 645 S.E.2d 180, 186 (N.C. Ct. App. 2007) (immunity waived despite retained limit); *Kephart*, 507 S.E.2d at 920–21 (same); *Wilhelm v. City of Fayetteville*, 464 S.E.2d 299, 300 (N.C. Ct. App. 1995) (same).[5] "[E]vidence of self-insurance up to [a retained limit] serves only to mitigate the amount of damages [a city] may incur." *Wilhelm*, 464 S.E.2d at 301.

Moreover, the North Carolina courts have consistently held that summary judgment is "not proper where plaintiff may receive an award in excess of [a] City's immunity." *Wall v. City of Raleigh*, 465 S.E.2d 551, 554 (N.C. Ct. App. 1996) (citing *Wilhelm*, 464 S.E.2d at 301). At least sixteen North Carolina decisions confirm this principle.[6] The City's brief does not mention the majority of these decisions, and the four

---

[5] Some of these cases were decided under the analogous statutes for counties or school boards, but the cases have recognized (and the City concedes) that the analysis is the same. *See, e.g.*, *Lucas v. Swain County Bd. of Educ.*, 573 S.E.2d 538, 542 (N.C. Ct. App. 2002) (looking to cases decided under analogous statute); *Schlossberg v. Goins*, 540 S.E.2d 49, 55 (N.C. Ct. App. 2000) (same); City Br. 9–10 (same).

[6] *See Lail*, 645 S.E.2d at 186; *Jones v. City of Durham*, 643 S.E.2d 631, 636 (N.C. Ct. App. 2007); *Petho v. Wakeman*, 583 S.E.2d 427 (N.C. Ct. App. 2003) (table), *available at* 2003 WL 21791608, at *4; *Ripellino v. N.C. Sch. Bds. Ass'n*, 581 S.E.2d 88, 94 (N.C. Ct. App. 2003); *Lucas*, 573 S.E.2d at 542; *Clayton v. Branson*, 570 S.E.2d 253, 257 (N.C. Ct. App. 2002); *Schlossberg*, 540 S.E.2d at 55; *Dobrowolska ex. rel Dobrowolska v. Wall*, 530 S.E.2d 590, 596 (N.C. Ct. App. 2000); *Schmidt v. Breeden*, 517 S.E.2d 171, 176 (N.C. Ct. App. 1999); *Kephart*, 507 S.E.2d at 920–21; *Howerton v. Fletcher*, No. 1:97CV00914, 1998 U.S. Dist. LEXIS 18353, *31 (M.D.N.C. Sept. 21, 1998), *aff'd in part by* 213 F.3d 171 (4th Cir. 2000); *Williams v. Holsclaw*, 495 S.E.2d 166, 168 (N.C. Ct. App. 1998), *aff'd*, 504 S.E.2d 784 (N.C. 1998); *Wall*, 465 S.E.2d at 554; *Young v. Woodall*, 458 S.E.2d 225, 228 (N.C. Ct. App. 1995), *rev'd on other grounds*, 471 S.E.2d 357 (N.C. 1996); *Wilhelm*, 464 S.E.2d at 300; *Jones v. Kearns*, 462 S.E.2d 245, 249 (N.C. Ct. App. 1995).

it does reference (*Clayton*, *Schlossberg*, *Schmidt*, and *Williams*) are cited for other propositions, without addressing their holdings regarding self-retained amounts.

The most notable omission from the City's discussion is *Kephart*, perhaps the leading decision, which rejected the exact argument that the City attempts here. In *Kephart*, Mecklenburg County argued that its excess insurance policy

> only indemnifie[d] the County after the County has become legally obligated to exhaust its SIR [self-insured retention]. Because the County has retained sovereign immunity up to the SIR limit from state tort law claims such as those in this case, it cannot become legally obligated to exhaust the SIR on those claims. The excess coverage . . . therefore never attaches to such claims.

507 S.E.2d at 920. The Court of Appeals rejected this argument as "basically circular" and contrary to "our case law," which "has consistently considered purchase of limited insurance coverage by a governmental entity to constitute partial waiver of sovereign immunity." *Id*. at 920–21. "[E]vidence of self-insurance . . . serves only to mitigate the amount of damages defendant may incur." *Id*. at 921–22 (quotation marks omitted). "Thus, regardless of whether the County is *required* to pay out SIR funds, coverage is provided after a claim exceeds $100,000.00, taking into account claim expenses [i.e., defense costs]." *Id*. at 921 (emphasis added). The County's summary judgment motion on immunity grounds therefore was rightly denied. *See id*.

The City was more candid in its briefing in *Jones v. City of Durham*, a 2007 North Carolina Court of Appeals case in which the City was a defendant on state-law tort claims. 643 S.E.2d 631 (N.C. Ct. App. 2007). At that time, the City's excess insurance policy contained "a self-insured retention . . . of . . . $350,000." Davant Rule 56(f) Aff. ¶ 5 & Ex. K at 12. And while the City did "not have liability insurance for damages

of . . . $350,000 . . . or less," the City and its current counsel nonetheless rightly conceded in their appeal brief that the City had partially waived governmental immunity:

> The City has waived governmental immunity only for that portion of a claim which is covered by the excess policy. When faced with a partial waiver [of governmental immunity] such as the partial waiver in the case *sub judice*, this Court has held that . . . summary judgment with respect to that portion of the [state-law] claim which would not be covered by insurance is appropriate.

*Id.* at 12–13. The City also cited *Kearns* for the proposition that the City could be liable for damages exceeding the self-insured retention, and it acknowledged *Kephart*. *See id.* at 13. These concessions were appropriate: the Court of Appeals held that the City's "motion for summary judgment on the [state-law] claim for obstruction of justice was properly denied," and that the City could "assert sovereign immunity [only] to the extent that they have not waived the defense by purchase of liability insurance." *Jones*, 643 S.E.2d at 636. The City was right then, and it is wrong now.

The City now relies on *Magana v. Charlotte-Mecklenburg Board of Education*, 645 S.E.2d 91 (N.C. Ct. App. 2007). *See* City Br. 13. But like Greensboro's policy in *Pettiford*, the policy in *Magana* was triggered not by payment of defense costs, but by a "legal obligation to pay." *Magana*, 645 S.E.2d at 92. Specifically, the *Magana* policy provided that coverage was triggered only after "the insured's *legal obligation to pay damages* to which this insurance applies has been determined." *Id.* (emphasis added) (quoting policy). Here, by contrast, coverage may be triggered by payments of defense costs, without reference to any legal obligation to do so. *See* City Exs. 1–2, § III.C; *see also* City Ex. 3, § III.3. In short, the City's legal argument is refuted not only by its prior admissions and the case law, but by the plain language of its policies.

## IV. THE ENDORSEMENT DOES NOT EXCLUDE PLAINTIFFS' STATE-LAW CLAIMS.

The City's alternative argument, that an endorsement to the two AIG/ICSOP policies excludes coverage for state-law claims, is similarly misplaced. "Exclusions from and exceptions to undertakings by the [insurance] company are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by the policy." *Kephart*, 507 S.E.2d at 919 (quotation marks omitted). Any ambiguity is to be resolved in favor of coverage. *See id.* In close cases, "application of [governmental immunity] should be resolved *against the municipality*." *Koontz v. City of Winston-Salem*, 186 S.E.2d 897, 908 (N.C.) (emphasis added), *reh'g denied*, 281 N.C. 516 (N.C. 1972), *cited in Pulliam v. Greensboro*, 407 S.E.2d 567, 570 (N.C. Ct. App. 1991).

As noted above, the City's policies do not expressly exclude state-law claims. To the contrary, they expressly define the "wrongful acts" covered by insurance to include such state-law torts as "negligent act[s]," "libel[]," "slander[]," "[a]ssault and battery," "[f]alse arrest," malicious prosecution, and other "personal injury offenses." City Exs. 1–2, §§ I.A.2, II.MM. To circumvent this explicit policy language, the City instead argues that there is an implied exclusion of state-law claims based upon the following italicized language in an endorsement to the two AIG/ICSOP policies:

> Accordingly, subject to this policy and the Limits of Liability shown on the Declarations, *this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable* . . . .

City Ex. 1, Endor. 9 (emphasis added); City Ex. 2, Endor. 10 (same).

The City's argument ignores the limiting language at the start of the sentence, which states that the endorsement's retention of immunity is "subject to this policy and the Limits of Liability shown on the Declarations." *Id.* This limiting language makes

clear that the portion of the endorsement upon which the City relies is subservient to ("subject to") both the policies and the Limits of Liability. *See* City Ex. 1, § I.A.2, Endor. 3; City Ex. 2, § I.A.2, Endor. 1. An endorsement that is "subject to" the underlying policy terms cannot override them, any more than the Court of Appeals can overrule the Supreme Court.

The City's interpretation has it backwards, rendering the policies "subject to" the endorsement, rather than the other way around. Indeed, if one accepted the City's reasoning, the express coverage of state-law torts like "negligent act[s]," "libel[]," "slander[]," "[a]ssault and battery," "[f]alse arrest," malicious prosecution, and other "personal injury offenses" would be rendered a dead letter, even though the plain text of the endorsement makes clear that any claim of governmental immunity is "subject to" such coverage. City Exs. 1–2, §§ I.A.2, II.MM. Moreover, the City's interpretation makes no sense: if the endorsement truly rendered the City immune from all state-law tort liability, there would have been no need for the endorsement to refer to the "Limits of Liability," let alone to make itself "subject to" those limits. At bottom, the only interpretation of the endorsement that makes sense—*i.e.*, that is "subject to" the policies and Limits of Liability—is that the endorsement simply confirms the City's retention of its governmental immunity with respect to acts not enumerated in the policy and claim amounts falling outside the Limits of Liability. *See* City Exs. 1–2, §§ I.A.2, II.MM.

Nor is this conclusion altered by the first sentence of the endorsement:

> This Policy is not intended by the insured to waive its governmental immunity as allowed by North Carolina General Statutes Sec. 153A-435.

City Ex. 1, Endor. 9; City Ex. 2, Endor. 10. As this Court noted in *Pettiford*, a city "may not rest on language in an insurance contract stating that '[t]his policy is not intended by

the insured to waive its governmental immunity.'" 556 F. Supp. 2d at 527.[7] Rather, under North Carolina law, it is the "act of purchasing liability insurance," N.C. Gen. Stat. § 160A-485(a), and more specifically, "whether, and to what extent, does the excess liability insurance policy indemnify the City from tort liability," *Pettiford*, 556 F. Supp. 2d at 527, that controls the waiver of immunity, not the City's stated "intention." Therefore, determining whether a waiver occurred "requires an examination of the insurance contract" itself. *Id.* Indeed, the North Carolina Court of Appeals has held that a similar provision stating that a defendant school board's policy "[was] not intended by the insured to waive its governmental immunity," in itself, was "insufficient to establish that the Board retained governmental immunity above [its self-insured retained limit] or that it is not obligated to pay any judgment above that amount." *Petho v. Wakeman*, 583 S.E.2d 427 (N.C. Ct. App. 2003) (table), *available at* 2003 WL 21791608, at *3.

Ultimately, if the City and AIG really had intended to exclude state-law torts from coverage, they could have done so by adding three words—"state-law torts"—to the list of exclusions (Section V of the AIG/ICSOP policies), or by expressly amending the policy or Limits of Liability in this endorsement, as they did in other endorsements to the AIG/ICSOP policies, *see, e.g.*, City Ex. 2, Endor. 2. Instead, they did the opposite, expressly *providing* coverage within the policy for the state-law torts at issue, *see* City Exs. 1–2, §§ I.A.2, II.MM, and making clear that the endorsement was "subject to" the policy and the Limits of Liability. City Ex. 1, Endor. 9; City Ex. 2, Endor. 10.

---

[7] Even if a city could do so in the abstract, the City's endorsements here invoke the wrong statute: N.C. Gen. Stat. § 153A-435 is the governmental immunity statute for counties, not cities. The immunity statute for cities is N.C. Gen. Stat. § 160A-485.

Finally, the City argues that *Patrick v. Wake County Department of Human Services*, 655 S.E.2d 920 (N.C. Ct. App. 2008), which interpreted an endorsement in a different insurance policy in favor of immunity, is controlling.  But while *Patrick* involved the same endorsement language, it did not consider the policy terms at issue here, which expressly provide coverage for the particular state-law claims that Plaintiffs have alleged.  *Patrick* also did not discuss the portion of the endorsement that expressly makes any retention of immunity "subject to" the policy and the Limits of Liability.  In other words, the opinion in *Patrick* did not address or decide the arguments that Plaintiffs present above.  Even if *Patrick* had considered such issues, because its result is directly contrary to the plain reading of the City's policies, it still would not control the Court's decision here.[8]  And, as discussed below, the *Patrick* court did not have the benefit of the evidence here—the City's admissions that coverage exists—confirming that the policies as a whole are rightly interpreted to provide coverage or, at a minimum, that the policy language is ambiguous.  *See* Argument, § V, *infra*.  These facts also preclude summary judgment.  *See*, *e.g.*, *Whirlpool Corp. v. Dailey Constr., Inc.*, 429 S.E.2d 748, 751 (N.C. Ct. App. 1993) ("[I]f the terms of the contract are ambiguous then resort to extrinsic evidence is necessary and the question is one for the jury."); *Richmond*, 308 F. Supp. 2d at 664 (summary judgment is improper unless the "right to judgment [appears] with such clarity as to leave no room for controversy") (quotation marks omitted); *Kephart*, 507 S.E.2d at 919 (any ambiguity to be construed in favor of coverage).

---

[8] A federal court can depart from an intermediate court's state-law holding if persuaded that the state's highest court would decide differently.  *See Jones v. Liberty Mut. Ins. Co. (In re The Wallace & Gale Co.)*, 385 F.3d 820, 831 (4th Cir. 2004).

## V.    SUMMARY JUDGMENT IS PREMATURE.

As discussed above, the City's policy language cannot be interpreted to exclude Plaintiffs' state-law claims.  But even if it could, the City's motion still would have to be denied, given Plaintiffs' inability to obtain discovery.  "[S]ummary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  *Harrods*, 302 F.3d at 244 (quotation marks omitted); *see also* Fed. R. Civ. P. 56(f) ("If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . deny the motion . . . .").  This Court, and others, have required discovery before deciding motions based on coverage defenses.  *See Bassett Seamless Guttering, Inc. v. Gutterguard, LLC*, No. 1:05-cv-00184, 2007 WL 2079718, at *2 (M.D.N.C. July 13, 2007) ("[T]o adequately defend against [the Insurer's] claims that insurance coverage would not extend to this type of lawsuit, Defendants would necessarily have to engage in further discovery."); *Trinity Homes LLC v. Ohio Cas. Ins. Co*., No. 1:04-cv-1920, 2007 WL 1021825, *13 (S.D. Ind. Mar. 30, 2007) ("When the issue is whether an excess insurer has a duty to defend, a resort solely to the underlying complaints and policy provisions is not sufficient.  Other matters, for example, whether the underlying policy or policies have been exhausted, are relevant . . . .").

Here, the City has selectively produced three documents in support of its motion, even while resisting Plaintiffs' requests to commence discovery.  Thus, Plaintiffs have been denied the opportunity to discover additional evidence to rebut the City's contention that it has no insurance coverage until after it becomes "legally obligated" to pay its $500,000 retained limit.  *See* Davant Rule 56(f) Aff. ¶¶ 3, 7–9.  For example, Plaintiffs have been unable to take discovery concerning:

- communications between City officials and/or the City's insurers regarding coverage of Plaintiffs' state-law claims, *see id.* ¶ 7;

- reimbursement of the City Defendants' legal fees incurred in connection with defending Plaintiffs' state-law claims, *see id.*;

- other statements by City officials concerning the City's insurance coverage for Plaintiffs' claims, *see id.*; and

- whether the City and/or its insurers have engaged in other actions that would support a finding of insurance coverage and, therefore, a waiver of immunity. *See Lagies v. Myers*, 542 S.E.2d 336, 344 (N.C. Ct. App. 2001) (parties' conduct after execution relevant to contract interpretation).

*See* Davant Rule 56(f) Aff. ¶ 7.

Based on publicly available materials, there is every reason to believe that such discovery would preclude summary judgment. In previous litigation against the City, discovery resulted in admissions by City officials that the City had waived immunity by purchasing insurance, notwithstanding a self-insured retained limit in the City's then-policy. *See id.* ¶ 5 & Exs. E–G, K. Here, City officials also have stated publicly that the City's retained limit and policy limits apply to all of Plaintiffs' claims, not simply those under federal law. *See id.* ¶ 4 & Exs. A–D.

Moreover, public records reveal that, independent of its purchase of insurance, the City may have waived immunity for certain claims in another way. In 2004, the Durham City Council adopted a "Resolution to Adopt A Policy To Waive Governmental Immunity In Limited Circumstances" and created a $500,000 "Immunity Waiver Fund" to cover certain types of claims, including among other things, medical claims such as the ones Plaintiffs allege here. *See id.* ¶ 6 & Exs. H & I; *see also* Am. Compl. ¶¶ 538, 544. Under North Carolina law, the adoption of such a resolution and reserve fund constitutes a waiver of governmental immunity to the extent of the reserve. *See* N.C. Gen. Stat.

§ 160A-485(a).  The City's 2007 financial statements similarly disclose the existence of a "Risk Retention Fund" that exists "to provide a source of funds for payment of the City's uninsured legal liabilities, including risks such as workers' compensation, automobiles, general operations and professional activities."  *See* Davant Rule 56(f) Aff. ¶ 6 & Ex. J.  Plaintiffs are entitled to discovery of these reserve funds and City Council resolutions—none of which were disclosed in the City's briefing—given that such actions may have effected a statutory waiver of immunity, independent of the waiver caused by the City's insurance coverage, that also would require the City's motion to be denied.

At bottom, the City's summary judgment motion is not only wrong on the merits, but also is premature.  *See Harrods*, 302 F.3d at 244; *see also* Fed. R. Civ. P. 56(f).  Until Plaintiffs have the opportunity to take discovery, it would be fundamentally unfair to determine that the City has not waived immunity based only on the City's self-selected record—particularly where the City has refused Plaintiffs' requests to commence discovery.  By contrast, the City cannot be prejudiced by the denial of its motion at this stage, given that Plaintiffs' federal claims are based on the same core conduct as their state-law claims.

## CONCLUSION

For the foregoing reasons, the City's motion should be denied.

Dated:  November 24, 2008                Respectfully submitted,

**WILLIAMS & CONNOLLY LLP**


By:     /s/ Charles Davant IV            
        Brendan V. Sullivan, Jr. (pro hac vice)
        Robert M. Cary (pro hac vice)
        Christopher N. Manning (pro hac vice)
        Charles Davant IV (N.C. Bar #28489)
        725 Twelfth Street, N.W.
        Washington, DC  20005
        Tel.:        (202) 434-5000
        E-mail:      cdavant@wc.com

*Attorneys for Plaintiffs*
  *David F. Evans and Collin Finnerty*


        -and-


**RUDOLF WIDENHOUSE & FIALKO**


By:     /s/ David S. Rudolf          
        David S. Rudolf (N.C. Bar #8587)
        312 West Franklin Street
        Chapel Hill, NC  27516
        Tel.:        (919) 967-4900
        E-mail:      dsrudolf@rwf-law.com

**BARRY C. SCHECK, ESQ.**

Barry C. Scheck*
Attn: Elizabeth Vaca
100 Fifth Avenue
New York, NY 10011
Tel.: (212) 364-5390
E-mail: bcsinnocence@aol.com

(* motion for special appearance
to be filed)


**EMERY CELLI BRINCKERHOFF &
ABADY LLP**

Richard D. Emery (pro hac vice)
Ilann M. Maazel (pro hac vice)
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
Tel.: (212) 763-5000
Fax.: (212) 763-5001
E-mail: remery@ecbalaw.com

*Attorneys for Plaintiff Reade Seligmann*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| DAVID F. EVANS, et al., | |
| Plaintiffs, | |
| v. | Case No. 1:07CV739 |
| CITY OF DURHAM, N.C., et al., | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2008, I electronically filed the foregoing

**PLAINTIFFS' BRIEF OPPOSING THE CITY OF DURHAM'S MOTION FOR**

**PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing to the following:

Reginald B. Gillespie, Jr.
*Counsel for Defendant City of Durham*

Joel M. Craig
Henry W. Sappenfield
*Counsel for Defendant Benjamin Himan*

James B. Maxwell,
*Counsel for Defendant David Addison*

Edwin M. Speas
Eric P. Stevens
*Counsel for Defendant Mark Gottlieb*

Patricia P. Kerner
D. Martin Warf
Hannah G. Styron
*Counsel for Defendants Steven Chalmers, Beverly Council, Ronald Hodge, Jeff Lamb,*
*Patrick Baker, Michael Ripberger, and Lee Russ*

Robert A. Sar
Nicholas J. Sanservino, Jr.
*Counsel for Defendant DNA Security*

Robert J. King III
Kearns Davis
*Counsel for Defendant DNA Security, Inc. & Richard Clark*

Paul R. Dickinson, Jr.
James A. Roberts, III
*Counsel for Defendant Brian Meehan*

David S. Rudolf
*Counsel for Plaintiff Reade Seligmann*

Linwood Wilson
*Pro se*


Respectfully submitted,

/s/ Charles Davant IV
Charles Davant IV (N.C. Bar No. 28489)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Tel.:          (202) 434-5000
Email:        cdavant@wc.com

*Attorney for Plaintiffs David F. Evans and*
  *Collin Finnerty*