# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CIVIL ACTION NO. 1:07-CV-00739

| | |
|---|---|
| **DAVID F. EVANS,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | **REPLY BRIEF IN SUPPORT** |
| ) | **OF DEFENDANT** |
| **v.** ) | **CITY OF DURHAM,** |
| ) | **NORTH CAROLINA'S** |
| **THE CITY OF DURHAM,** ) | **MOTION FOR PARTIAL** |
| **NORTH CAROLINA,** ) | **SUMMARY JUDGMENT** |
| *et al.*, ) | **(GOVERNMENTAL** |
| ) | **IMMUNITY)** |
| **Defendants.** ) | |

For all of Plaintiffs' exuberance at uncovering a dropped comma in a quotation in the City's Brief, they have failed to raise a genuine dispute of material fact. Summary judgment should therefore be granted for the City on all state-law tort claims.

## I. The Governmental Immunity Endorsement Preserves the City's Immunity.

The plain language of the ICOP policies' Governmental Immunity Endorsement bars all state tort claims alleged in Plaintiffs' Complaint.[1] In *Patrick v. Wake County Department of Human Services*, 655 S.E.2d 920 (N.C. Ct. App. 2008), the North Carolina Court of Appeals interpreted the *exact same* endorsement in the ICOP policies, found it to

---

[1] A second insurer, Everest, provided liability coverage to the City only for the last 11 days before the North Carolina Attorney General's office dismissed the charges against the Plaintiffs. The Plaintiffs do not argue in their Opposition Brief that any allegedly tortious activity relating to the City of Durham occurred during those 11 days.

be plain and unambiguous, and granted summary judgment to the defendant on governmental immunity. *Patrick*, 655 S.E.2d at 924.[2] Plaintiffs urge this Court to ignore *Patrick* on the ground that the plaintiffs there did not have the temerity to make the same arguments that Plaintiffs make here. Opp. 17. But that is no reason to ignore a decision of the highest North Carolina court addressing the exact language at issue here.[3]

In any event, Plaintiffs' reading of the endorsement is utterly illogical. The relevant sentence of the endorsement reads:

> [S]ubject to this Policy and the Limits of Liability shown on the Declarations, this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable . . .

ICOP 2005-06 Policy, End. No. 9 (Doc. # 79-2); ICOP 2006-07 Policy, End. No. 10. (Doc. # 79-3). Plaintiffs claim that the "subject to" language somehow limits the endorsement's retention of immunity to those wrongful acts not enumerated in the policy

---

[2] Courts have repeatedly read similar insurance policy provisions as preserving governmental immunity. *See, e.g.*, *Magana v. Charlotte-Mecklenburg Bd. of Educ.*, 645 S.E.2d 91, 93 (N.C. Ct. App. 2007) (citation omitted) (finding no waiver by school board and noting policy "specifically stated that it was 'not intended by the insured to waive its governmental immunity'"); *Van Orsdall v. City of Des Moines*, 711 N.W.2d 732 (Iowa Ct. App.) (mem.), *available at* 2006 WL 126436, at *3 ("The insurance policy . . . insures the City for any tortious action that is not subject to an immunity defense . . . . Thus, by its own terms the insurance policy did not waive the City's . . . immunities.") (citations and footnote omitted); *Doucette v. City of Lewiston*, 697 A.2d 1292, 1295 (Me. 1997) (citation omitted) ("[B]y stating that coverage 'shall not be deemed a waiver of any immunities . . . available under [state statutory law], judicial precedent, or common law,' the City has preserved its immunity from suit.").

[3] *Massasoit v. Carter*, 439 F. Supp. 2d 463, 470 (M.D.N.C. 2006) ("The rulings of intermediate appellate state courts are strongly persuasive authority that will not be disregarded.") (citation omitted).

and those claim amounts outside the limits of liability. Opp. 14-15. But Plaintiffs plainly misread the endorsement. The "subject to" language simply means that for those "occurrences or wrongful acts" for which coverage *is* available — *i.e.*, acts for which governmental immunity "is clearly not applicable" — the extent of that coverage is subject to the terms of the policy and the Limits of Liability. The "subject to" phrase does not address acts for which the defense of governmental immunity *is* applicable. It certainly does not render the rest of the endorsement a nullity, as Plaintiffs would have it.

Moreover, Plaintiffs' argument that the endorsement is "subservient" to the other terms of the policy is exactly backwards. An endorsement to an insurance policy, by its very nature, amends the scope of coverage available under the policy. Indeed, "[i]t is well established that if the language of an endorsement conflicts with language found in the general provisions of an insurance policy, the language found in the endorsement will prevail." *White v. Illinois Founders Ins. Co.*, 52 S.W.3d 597, 598 (Mo. Ct. App. 2001).[4]

---

[4] Plaintiffs argue (Opp. 14) that the application of governmental immunity should be strictly construed against a municipality in "close cases," relying on *Koontz v. City of Winston-Salem*, 186 S.E.2d 897, 908 (N.C. 1972). But *Koontz* involved an entirely different issue not contested here: whether the municipality was acting in a governmental or proprietary function. *Koontz* does not speak to the question of how courts should interpret endorsements in relation to the rest of an insurance policy. Moreover, North Carolina courts have consistently held "'[w]aiver of sovereign immunity may not be lightly inferred.'" *Patrick*, 655 S.E.2d at 923 (citation omitted) (alteration in original). Similarly, Plaintiffs' quotation (Opp. 14) from *Kephart ex rel. Tutwiler v. Pendergraph*, 507 S.E.2d 915, 919 (N.C. Ct. App. 1998), that "'[e]xclusions from and exceptions to undertakings by the [insurance] company are not favored'" is irrelevant. The language here is unambiguous. Moreover, *Kephart* went on to say that "[t]he various clauses are to be harmoniously construed, if possible, and every provision given effect." *Id.* Yet Plaintiffs would give the endorsement no effect at all.

Plaintiffs also argue that if the endorsement were intended to preserve governmental immunity for state tort claims, there would be no reason for the policy to refer to such torts in the definition of "wrongful acts." Opp. 15. But Plaintiffs again misunderstand the nature of insurance policies and endorsements. Insurance policies are purposely written broadly to cover a wide variety of insureds. Endorsements are then added for individual insureds to customize the policy to the insured's requirements. Thus, some insureds might want insurance coverage for various state tort claims, or might not be protected by governmental immunity. These insureds would want the basic ICOP policy without the governmental immunity endorsement. A different insured—such as the City here—would want to preserve its governmental immunity for state-law claims, and so would want the governmental immunity endorsement added to the policy. When that endorsement is added, the effect is clearly to narrow the scope of coverage so that the policy does *not* cover state torts for which governmental immunity is available.[5]

---

[5] Plaintiffs also contend that an expression of intent not to waive immunity, taken alone, is inadequate to preserve immunity. *See* Opp. 15-16. But this is a red herring. The endorsement here does not merely state the City's intent not to waive immunity. It also *expressly limits* the scope of coverage to make clear that the policy does not cover claims for which governmental immunity is available. Such language was absent from the policies in the cases relied on by Plaintiffs, *Pettiford v. City of Greensboro,* 556 F. Supp. 2d 512, 527 (M.D.N.C. 2008), and *Petho v. Wakeman*, 583 S.E.2d 427 (N.C. Ct. App. 2003) (mem.), *available at* 2003 WL 21791608, at *4, *review denied*, 357 N.C. 579, 589 S.E.2d 128 (2003), making those decisions wholly inapposite.

## II. None of the City's Policies Provides Coverage for State-Law Tort Claims — With or Without the "Missing" Comma.

Plaintiffs trumpet a single typographical error in the City's brief as though it were fatal to the City's argument. Specifically, Plaintiffs argue that a comma left out of a quotation from the ICOP policies "revers[es] the meaning" of Section I.A.2 of the policies. Opp. 8. (Plaintiffs acknowledge that the City accurately quoted the Everest policy provision, which includes the comma. Opp. 8 n.4.) But Plaintiffs ignore the logical conclusion of their own argument. Plaintiffs contend that the words "legally obligated to pay" do not modify "retained limit" because of the presence of a comma after "limit"; instead, they assert, "legally obligated to pay" modifies "ultimate net loss." Opp. 8-9. Thus, according to Plaintiffs' own argument, the ICOP and Everest policies provide coverage only for the ultimate net loss *that the City is legally obligated to pay*. But, for the reasons stated by this Court in *Pettiford*, the City can never be legally obligated to pay on claims for which it has immunity. Accordingly, even under Plaintiffs' own argument, the insurance coverage for the ultimate net loss on state law claims can never be triggered under these policies.[6]

---

[6] Notably, the policy in *Pettiford* contained *no* commas in the applicable provision, which stated the city would be indemnified for "'ultimate net loss in excess of the retained limit which the Insured becomes legally obligated to pay.'" *Pettiford*, 556 F. Supp. 2d at 528 (citation omitted). With no comma following "ultimate net loss" *or* "retained limit," it is ambiguous whether "legally obligated to pay" modifies "ultimate net loss" or "retained limit." Although the better reading of that provision is that "legally obligated to pay" modifies "ultimate net loss," the issue is irrelevant. In either case, the coverage would not have been triggered since the City of Greensboro had no legal obligation to pay either the ultimate net loss or the retained limit as a result of its governmental immunity.

Plaintiffs also argue that the fact that defense costs erode the City's retained limit distinguishes this case from *Pettiford*. Opp. 9-10. In fact, though, the policy in *Pettiford* also provided that defense costs would erode the city's retained limit. *See* DeLorenze Aff., Ex.1, at Endorsement 5. Yet this did not affect this Court's analysis. Rather, the key to that decision was that insurance coverage was not triggered under the policy unless the city had a "legal obligation" to pay damages. And since the city had no obligation to pay *either* the amount of the retained limit or the ultimate net loss on state law claims because of the existence of governmental immunity, coverage was not triggered. *Pettiford*, 556 F. Supp. 2d at 529 (noting that the policies in *Pettiford and Magana* both "disclaim any right of indemnification until (1) the damages exceed a self-insured retention amount . . .; (2) the insured has a legal obligation to pay those damages; and (3) the insured actually pays those damages to the claimant").[7]

---

[7] That one of the City's insurers has begun to pay defense costs is irrelevant. An insurer's duty to defend is triggered solely by the four corners of the complaint. "The [North Carolina] Supreme Court has established that if review of the pleadings in an underlying action gives rise even to 'a mere possibility' that the insured's potential liability is covered by the insurance policy, then the carrier has a duty to defend." *Crandell v. Am. Home Assurance Co.*, 644 S.E.2d 604, 605 (N.C. Ct. App. 2007) (citation omitted) *review denied* 361 N.C. 691, 654 S.E.2d 250 (2007); *see also St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 724 F. Supp. 1173, 1176 (M.D.N.C. 1989), *aff'd*, 919 F.2d 235 (4th Cir. 1990). This duty is triggered even where a portion of the alleged claims would not be covered by the policy, or where the allegations supporting the covered claims turn out to be untrue. *See State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co.*, 343 F.3d 249, 255 (4th Cir. 2003) ("[W]here a complaint alleges multiple claims and injuries, some of which are covered and some of which are not, an insurer is obligated to defend its insured against all claims made in the lawsuit."). In contrast, an insurer's duty to indemnify is limited to claims actually covered by the policy. *See, e.g., Wake Stone Corp. v. Aetna Cas. & Sur. Co.*, 995 F. Supp. 612, 615 (E.D.N.C. 1998); *Stanback v. Westchester Fire Ins. Co.*, 314 S.E.2d 775, 778 (N.C. Ct. App. 1984). Defense costs, by

Plaintiffs next cite several North Carolina cases for the proposition that immunity may be waived despite the existence of a retained limit. Opp. 10-11. But the City does not argue that immunity may never be waived if the insurance policy contains a retained limit. The question depends entirely on whether coverage is triggered under the terms of the specific policy at issue. Here, the City's coverage is not triggered because the policies condition coverage on the City's legal obligation to pay damages, and the City has no such legal obligation as a result of its governmental immunity.

It is on precisely this ground that this Court in *Pettiford* distinguished the main case relied on by Plaintiffs, *Kephart ex rel. Tutwiler v. Pendergraph*, 507 S.E.2d 915 (N.C. Ct. App. 1998). *See* Opp. 12. In *Kephart*, the policy provided coverage "'when damages together with 'claim expenses' exceed the Self Insured Retention' . . . regardless of whether the County is required to pay out SIR funds . . . ." *Id.* at 921 (citation omitted). In *Pettiford*, however, the insurance coverage was not triggered "unless and until the City has a legal obligation to pay." 556 F. Supp. 2d at 529. For this reason, this Court in *Pettiford* found that the city had not waived its immunity. The City's policy here is similar to the one in *Pettiford.* This Court thus should reach the same result.[8]

---

their very nature, do not constitute amounts that an insured is "legally obligated to pay," as they are not claims, judgments or settlements.

[8] Plaintiffs' argument that "the North Carolina courts have consistently held that summary judgment is 'not proper where plaintiff may receive an award in excess of [a] City's immunity'" (Opp. 11 (citation omitted)) is misleading. The cases Plaintiffs cite stand for the unremarkable proposition that a court should not grant *complete* summary judgment for a city defendant if the city's immunity does not extend to all claims or amounts of damages claimed by Plaintiffs. But the City here is seeking *partial* summary

**III. This Case is Ripe for Summary Judgment on the State-Law Claims.**

Plaintiffs argue (Opp. 18-20) that summary judgment would be premature before discovery. But "[t]he meaning of language used in an insurance contract is a question of law for the Court . . . ." *Daniel v. City of Morganton*, 479 S.E.2d 263, 267 (N.C. Ct. App. 1997) (granting summary judgment on ground that school board did not waive defense of government immunity by purchasing insurance) (citations omitted). Accordingly, no discovery is necessary for this Court to interpret the City's insurance policies and determine whether the City has waived its governmental immunity.[9]

Plaintiffs appear to suggest that the City might be hiding some other form of insurance. But the City's insurance coverage is a matter of public record, as are all documents related to the City's transaction of public business. *See* N.C. Gen. Stat. § 132-1(a). Moreover, the City's Risk Manager, Darwin Laws, has attested to the scope

---

judgment, limited to the state law claims, on the ground that plaintiffs cannot recover *any* amount on those claims because the City has not waived its immunity for such claims at all. Plaintiffs' cases are therefore irrelevant. The positions asserted by the City in *Jones v. City of Durham* with respect to different insurance policies are equally irrelevant. *See* Opp. 12. As the City explained in *Jones*, its immunity is waived only to the extent insurance coverage applies. The key question, therefore, is whether insurance coverage in fact applies. Here, insurance coverage is not triggered because the City cannot legally be obligated to pay damages, as explained in text

[9] Plaintiffs cited selected excerpts from briefs, deposition transcripts, e-mail correspondence and affidavits from prior unrelated disputes in an effort to color how this Court interprets the policies at issue here. *See* Opp. 19. But where an insurance contract is plain and unambiguous, courts do not permit a review of extrinsic evidence to interpret it. *See Metric Constructors, Inc. v. Industrial Risk Insurers*, 401 S.E.2d 126 (N.C. Ct. App. 1991), *aff'd*, 330 N.C. 439, 410 S.E.2d 392 (1991). Prior positions and statements by the City in unrelated cases involving different policies are also entirely irrelevant.

of insurance coverage potentially available to the City in this case. *See* Laws Aff. Plaintiffs have not pointed to any City Council Resolutions that presently waive immunity in circumstances applicable here. The "Resolution to Adopt a Policy to Waive Governmental Immunity in Limited Circumstances" and the related "Resolution to Establish a Fund Reserve to Pay Claims Where Governmental Immunity Has Been Waived" cited by Plaintiffs (Opp. 19; Evans Exs. H-I) were both repealed on June 18, 2007. *See* McAdoo Affidavit & Ex. 1 thereto.[10] In any event, neither resolution would have waived the City's immunity from Plaintiffs' claims because the types of damages at issue in this case were expressly not covered. *See* Evans Ex. H, ¶¶ 2 & 5.

Finally, delaying resolution of the immunity issue until after discovery would defeat one of the principal purposes of governmental immunity, which is to protect governmental entities not only from the cost of civil judgments, but also from the burden and distraction of discovery and trial. *See Smith v. Phillips*, 451 S.E.2d 309, 311 (N.C. Ct. App. 1994) ("[T]o force a defendant to proceed with a trial from which he should be immune would vitiate the doctrine of sovereign immunity.") (citation omitted); *see also Fares v. I.N.S.*, 29 F.Supp.2d 259 (W.D.N.C.1998) (denying plaintiffs' request for discovery on qualified immunity in order to "prevent subjecting those individuals to unnecessary and burdensome discovery or trial proceedings").

---

[10] As Exhibit 1 to McAdoo's Affidavit makes clear, the repeal of these Resolutions was effective immediately and applied "to all claims pending on that date as well as claims that arise thereafter." *See* McAdoo Aff., Ex. 1, ¶¶ 8-9.

## IV. Conclusion.

For all of the reasons discussed herein and in the City's Motion for Partial Summary Judgment (Governmental Immunity), summary judgment should be granted for the City on Plaintiffs' state-law claims.

This the 12th day of December, 2008.

FAISON & GILLESPIE

By: /s/ Reginald B. Gillespie, Jr.
Reginald B. Gillespie, Jr.
North Carolina State Bar No. 10895
5517 Chapel Hill Boulevard, Suite 2000
Post Office Box. 51729
Durham, North Carolina 27717-1729
Telephone: (919) 489-9001
Fax: (919) 489-5774
E-Mail: rgillespie@faison-gillespie.com

STEPTOE & JOHNSON LLP

By: /s/ Roger E. Warin
Roger E. Warin*
Michael A. Vatis*
Matthew J. Herrington*
John P. Nolan*
Leah M. Quadrino*
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
E-mail: rwarin@steptoe.com
*Motion for Special Appearance to be filed

*Attorneys for Defendant City of Durham*

CERTIFICATE OF ELECTRONIC FILING AND SERVICE

The undersigned hereby certifies that, pursuant to Rule 5 of the Federal Rules of Civil Procedure and LR5.3 and LR5.4, MDNC, the foregoing pleading, motion, affidavit, notice, or other document/paper has been electronically filed with the Clerk of Court using the CM/ECF system, which system will automatically generate and send a Notice of Electronic Filing (NEF) to the undersigned filing user and registered users of record, and that the Court's electronic records show that each party to this action is represented by at least one registered user of record (or that the party is a registered user of record), to each of whom the NEF will be transmitted.

This the 12th day of December, 2008.

                                              FAISON & GILLESPIE

                                              By: /s/ Reginald B. Gillespie, Jr.
                                                   Reginald B. Gillespie, Jr.
                                                   North Carolina State Bar No. 10895