IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:07-CV-739

DAVID F. EVANS, *et al.*,

    Plaintiffs,

        v.

THE CITY OF DURHAM, NORTH
CAROLINA, *et al.*,

    Defendants.

_____

**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS
OF DEFENDANTS DNA SECURITY, INC. AND RICHARD CLARK**

Robert J. King III
Kearns Davis
BROOKS, PIERCE, MCLENDON,
   HUMPHREY & LEONARD, L.L.P.
Post Office Box 26000
Greensboro, North Carolina 27420
Telephone: (336) 373-8850

*Counsel for Defendants DNA Security, Inc.
and Richard Clark*

Robert A. Sar
Nicholas J. Sanservino, Jr.
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, North Carolina 27612
Telephone: (919) 787-9700

*Counsel for Defendant DNA Security, Inc.*

By Order dated June 4, 2009 (Docket No. 96), this Court invited the designated Defendant groups to submit supplemental briefing to address the effect of the United States Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (May 18, 2009), on the pending Motions to Dismiss. Accordingly, Defendants DNA Security, Inc. ("DSI") and Richard Clark (collectively, "the DSI Defendants") respectfully submit this Supplemental Brief in support of their Motion to Dismiss.

## I. *IQBAL* CONFIRMS THAT PLAINTIFFS HAVE NOT PLEADED SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS

### A. The Rule 12(b)(6) Standard

In *Iqbal*, the Supreme Court reaffirmed that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), articulates the pleading standard governing motions to dismiss under Fed. R. Civ. P. 12(b)(6): To survive dismissal, a complaint must offer more than "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action,'" and it cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). Instead, it must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

At issue in *Iqbal* was the allegation that the former Attorney General and the Director of the Federal Bureau of Investigation had adopted and implemented a policy governing the confinement of post-September 11th detainees that discriminated on the basis of race, religion, or national origin. *Iqbal*, 129 S. Ct. at 1942. The Supreme Court held that Iqbal's complaint failed to state a claim for unconstitutional discrimination

against those defendants because he did not "show" that they "adopted and implemented the detention policies at issue . . . for the purpose of discriminating" against detainees. 129 S. Ct. at 1948-49. To be sure, the complaint did include factual allegations that the defendants had subjected Iqbal to harsh conditions of confinement, *id*. at 1950-52, but Court found those allegations insufficient to support Iqbal's claims, as they were "consistent with" the defendants' liability but equally consistent with other, legitimate law enforcement purposes and therefore did not "'nudge[]'" the claims "across the line from conceivable to plausible." *Id.* at 1951, 1952 (quoting *Twombly*, 550 U.S. at 570); *see also Iqbal*, 129 S. Ct. at 1951-52 (concluding that purposeful discrimination was "not a plausible conclusion" to draw from factual allegations).

*Iqbal* teaches that the Rule 12(b)(6) pleading standard rests upon "[t]wo working principles": ***first***, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," need not be accepted as true for purposes of a motion to dismiss, and ***second***, that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555, 556). To state a "plausible" claim, a plaintiff must do more than "plead[] facts that are 'merely consistent with' a defendant's liability"; instead, he or she must provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has

not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Plaintiffs' Conclusory Allegations Fail to State a Claim

#### 1. <u>Section 1983 Claims</u>

Plaintiffs' First Amended Complaint is premised solely on the sort of boilerplate legal allegation that is inadequate to state a plausible claim against the DSI Defendants. With respect to their Section 1983 claims in particular, Plaintiffs repeatedly *assert* that the DSI Defendants "met and conspired" with Nifong and others to deprive Plaintiffs of their constitutional rights by creating a misleading and incomplete DNA testing report, but the factual allegations they offer in support of those claims do not allow the court to conclude that the claims against the DSI Defendants are "plausible" rather than (at most) simply "conceivable."

Plaintiffs' Section 1983 claims against the DSI Defendants center on the allegations that the DSI Defendants prepared an incomplete DNA testing report and conspired with the prosecutor and others to withhold certain (allegedly exculpatory) DNA testing information from the grand juries. *See* Opening Br. at 2, 6-8. They plead in general terms a Section 1983 conspiracy between the DSI Defendants and others,[1] as

---

[1] According to the Amended Complaint, the various Defendants "conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves to deprive Plaintiffs of their constitutional rights by charging and prosecuting the three innocent Duke lacrosse players on charges of rape, sexual assault, and kidnapping, which the[] Defendants knew were not supported by probable cause" and "willfully participated in this illegal objective by various means, with the intent to further some purpose of the conspiracy." Am. Compl. ¶¶ 439, 440. Plaintiffs "specify" only two

3

evidenced by meetings among the various defendants: "On or about April 10, 2006, Nifong, Himan, and Gottlieb met with Meehan and Defendant Clark" to discuss the DNA test results, and the defendants "[ultimately] . . . conspired to conceal and obfuscate the[] exculpatory results" of the DNA testing. Am. Compl. ¶¶ 207, 209.[2]

Plaintiffs' allegations parrot the legal elements of their claims and make broad declarations of conspiracy and other wrongdoing, but they provide no factual foundation sufficient to render those claims "plausible." As the DSI Defendants' Opening Brief explained (at 17 n.9), a prosecutor's consultation and coordination with his retained expert is not suggestive of conspiracy but simply describes the ordinary and expected interaction between key participants in a criminal investigation. Plaintiffs' allegations that the various Defendants met with one another and discussed the format and content of the May 12 Report do not lead inevitably or even "plausibly" to the conclusion that they

---

overt acts that could apply to the DSI Defendants: "entering into the aforementioned DNA conspiracy to fabricate and conceal the results of DSI's findings" and "agreeing to make false and materially incomplete statements to the grand juries that returned the . . . indictments." *Id*. ¶ 440(c), (e).

[2] *See also* Am. Comp. ¶¶ 225-26 (alleging that the various Defendants "continued to obstruct justice and agreed to conceal and obfuscate . . . exculpatory evidence" and "conspired and acted to fabricate [a] false and misleading report, and to conceal and obfuscate the exculpatory DNA evidence"); *id*. ¶ 341 (alleging that the DSI Defendants conspired with others "to develop a 'limited reporting protocol' that was, in reality, intended to conceal and obfuscate evidence of Plaintiffs' innocence"); *id*. ¶ 342 (alleging that the DSI Defendants "knowingly and intentionally concealed critical exculpatory DNA evidence and expert reports to which Plaintiffs were entitled"); *id*. ¶ 352 (alleging that the DSI Defendants conspired with other defendants "to produce a false and misleading DNA report that they understood and agreed would be falsely misrepresented as the 'final' results of all DNA testing by DSI, and that would be used to manufacture probable cause, to secure indictments of Plaintiffs, and ultimately in the criminal proceedings instituted against Plaintiffs").

must have conspired to violate Plaintiffs' constitutional rights; instead, Plaintiffs describe activity that is "not only compatible with, but indeed [is] more likely explained by, lawful" interactions between prosecutor and expert. *Iqbal*, 129 S. Ct. at 1950.

In *Twombly*, the Supreme Court found allegations of parallel conduct coupled with boilerplate allegations of antitrust conspiracy to be insufficient to state an antitrust claim. 550 U.S. at 556-57 ("an allegation of parallel conduct and a bare assertion of conspiracy will not suffice," and "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"). So too here: The facts that (1) Nifong met with DSI -- an expert retained to conduct DNA testing -- to discuss the test results and their reporting and (2) Plaintiffs were later indicted does not suggest, much less "show," that Nifong and the DSI Defendants conspired to bring about the indictments illegally. What Plaintiffs allege is no more suggestive of conspiracy than it is of the commonplace workings of the law enforcement investigative process. To survive dismissal, Plaintiffs "would need to allege more by way of factual content to 'nudg[e]' [their] claim[s] . . . 'across the line from conceivable to plausible.'" *Iqbal*, 129 S. Ct. at 1952 (quoting *Twombly*, 550 U.S. at 570) (first alteration in original). They have not done so.

Plaintiffs fare no better with their allegations of causation. In essence, Plaintiffs contend that they were harmed by the DSI Defendants' disclosure of accurate DNA test results to the prosecutor but not to the grand juries or to Plaintiffs themselves. As the DSI Defendants' Opening Brief demonstrated (at 31-35), Plaintiffs' theory of causation is

5

legally untenable, and it is wholly unsupported by any *factual* allegation of causation. Instead, Plaintiffs simply parrot general causation language. *See, e.g.*, Am. Compl. ¶ 335 ("[a]s a result of these wrongful prosecutions, Plaintiffs were seized and deprived of their [constitutional] rights") (malicious prosecution).[3] Those conclusory allegations are insufficient. Plaintiffs cannot plead the requisite causal link between the DSI Defendants' conduct in preparing the May 12 Report and the injuries they claim simply by alleging causation in blanket terms; they must instead plead *facts* sufficient to "show" the causal relationship. With respect to the DSI Defendants in particular, they have not even attempted to do so (nor, as a matter of law, could they do so, for the reasons the DSI Defendants have explained, *see* Opening Br. at 31-35). Here again, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 129 S. Ct. at 1954.

2. Section 1985 and 1986 Claims

Plaintiffs' Section 1985 and Section 1986 claims are, if anything, even more poorly pleaded: The claims against the DSI Defendants (the Eighth, Tenth, and Twelfth Causes of Action) simply parrot the statutory language,[4] and they again plead causation

---

[3] *See also* Am. Compl. ¶ 346 ("[a]s a result of the[] Defendants' conduct, Plaintiffs were deprived of their [constitutional] rights") (concealment of evidence); *id*. ¶ 356 (fabrication of false evidence); *id*. ¶ 442 (Section 1983 conspiracy).

[4] *See*, *e.g.*, Am. Compl. ¶¶ 447-48 (alleging that defendants, including the DSI Defendants, "conspired and entered into express and/or implied agreements, understandings, or meetings of the mind among themselves for the purpose of impeding, hindering, obstructing, and defeating the due course of justice in the State of North Carolina, with the intent to deny Plaintiffs the equal protection of the laws" and, "[i]n

6

in only the most general of terms.[5] Indeed, Plaintiffs allege that "*one or more* of [the numerous named] Defendants" engaged in overt acts motivated by racial animus (Am. Compl. ¶¶ 448, 463) (emphasis added), but they do not specify which of the defendants engaged in any particular act, and they certainly do not allege that the DSI Defendants took any action at all that was "motivated by invidious animus." Their exceedingly general allegations, unaccompanied by even the most basic factual development, cannot withstand scrutiny under Rule 12(b)(6), for the same reasons that Plaintiffs' Section 1983 claims fall short. Here too, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

---

furtherance of this conspiracy, . . . engaged in overt acts that were motivated by invidious racial animus," in violation of 42 U.S.C. § 1985(2)); *id*. ¶¶ 462-63 (alleging that DSI Defendants and others "conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of depriving, either directly or indirectly, Plaintiffs of the equal protection of the laws and of their equal privileges and immunities under the laws" and "[i]n furtherance of this conspiracy, . . . engaged in overt acts that were motivated by invidious racial animus," in violation of 42 U.S.C. § 1985(3)); *id*. ¶¶ 479-80, 482 (alleging that DSI Defendants "had prior knowledge of the wrongs conspired to be committed by" other defendants, "had the power to prevent or aid in preventing the commission of" those alleged wrongful acts but "neglected and/or refused to exercise such power," and thereby "evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights").

[5] Am Compl. ¶¶ 450-52, 465-67 (claiming that, "[a]s a direct and foreseeable consequence of" the alleged conspiracies, "Plaintiffs were deprived of their [constitutional] rights" and suffered various harms); *id*. ¶¶ 481, 483-85 (alleging that, "[a]s a direct and foreseeable consequence of" the DSI Defendants' alleged failure to intervene, "Plaintiffs were deprived of their [constitutional] rights" and suffered various harms).

7

### 3. State Law Claims

Plaintiffs' state law claims suffer from the same pleading deficiencies as their federal claims. They assert an obstruction of justice claim against the DSI Defendants (among others) based on allegations that can only be described as boilerplate:

> [The DSI Defendants,] acting individually and in concert [with other Defendants], engaged in acts that attempted to and did prevent, obstruct, impede, and hinder public and legal justice in the State of North Carolina . . . . [The various Defendants] engaged in this obstruction of justice by conspiring to manufacture and by manufacturing false and misleading expert reports with the knowledge that these reports would be used to advance and perpetrate the criminal process against Defendant. . . . [The DSI Defendants and others also] engaged in this obstruction of justice by attempting to hide exculpatory DNA evidence in hundreds of pages of raw data rather than disclosing [the] distilled findings and conclusions.

Am. Compl. ¶¶ 499-500, 502. Plaintiffs' malicious prosecution claim is pleaded in equally general terms. *See, e.g.*, Am. Compl. ¶¶ 487-89, 491 (alleging that DSI Defendants and others "instituted or participated in the institution of criminal proceedings against Plaintiffs" that "were not supported by probable cause" and thereby "demonstrated malice, spite, ill-will, and wanton disregard for Plaintiffs' rights by conspiring to manufacture and by manufacturing false and misleading expert reports" and "by attempting to hide exculpatory DNA evidence in hundreds of pages of raw data"). These allegations, like Plaintiffs' closely related Section 1983 claims, do not rise to the level of plausibility required by *Twombly* and *Iqbal*, for the same reason that Plaintiffs' Section 1983 claims fall short: Plaintiffs baldly allege a conspiracy to "obstruct justice," but they offer nothing in the way of factual development to *show* that their claims against the DSI Defendants are plausible. Indeed, they are facially *implausible*, as they

8

essentially allege an attempt by the DSI Defendants to "hide evidence" that Plaintiffs elsewhere acknowledge was fully disclosed to the prosecutor. *See* Am. Compl. ¶ 207.

Plaintiffs' intentional infliction of emotional distress claim is no more satisfactory. Once again, Plaintiffs offer only legal generalizations coupled with rhetoric but unsupported by specific factual allegations. *See* Am. Compl. ¶¶ 509, 512-13 (alleging that various Defendants "acted individually and in concert to manufacture inculpatory evidence and to conceal exculpatory evidence for the purpose of perpetrating a criminal action against Plaintiffs falsely charging them with rape, sexual assault, and kidnapping," that those actions "evidenced a pattern of extreme and outrageous behavior pursued with the intent to cause Plaintiffs to suffer severe emotional distress," and that the "Defendants' conduct had the direct and foreseeable consequence of marking Plaintiffs as violent criminals and racists in the minds of hundreds of millions of people"). Plaintiffs cannot transform an inadequate allegation of wrongdoing into a plausible claim simply by stringing adjectives together.

Plaintiffs' negligence claims are similarly flawed. They allege generally that the DSI Defendants "agreed to omit exculpatory findings" from the May 12 Report, Am. Compl. ¶ 547, that they "acted individually and in concert to produce the May 12 Report that misstated the purported results of [DSI's] scientific testing . . . and omitted exculpatory findings that resulted from their scientific testing of Mangum's rape kit items," *id*. ¶ 548, and that the DSI Defendants "knew, or should have known, that [their] alleged acts and omissions would result in the filing and prosecution of serious criminal

charges against the Plaintiffs," *id.* ¶ 550. These claims parrot the substance of Plaintiffs' Section 1983 "misleading report" claims, and they fail for the same reason: Plaintiffs offer only conclusory declarations of the DSI Defendants' supposed liability but no supporting facts that would make "plausible" their claim that the DSI Defendants had and breached a duty to these Plaintiffs in reporting the results of the DNA testing.[6]

\* \* \*

The Supreme Court has made clear that, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. Because all of Plaintiffs' claims are premised on unadorned legal conclusions, Rule 12(b)(6) requires their dismissal.

---

[6] Plaintiffs' negligent hiring, retention and supervision claim is pleaded in the same conclusory terms, *see* Am. Compl. ¶ 558 (DSI Defendants "negligently hired, supervised, and retained Meehan, failed to provide Meehan with proper training and discipline, and failed to outline proper procedure to Meehan with respect to the preparation and issuance of reports of scientific testing conducted by DSI in a criminal investigation"); *id.* ¶ 559 (DSI Defendants and Meehan "negligently hired, supervised and retained" other DSI personnel "in the scientific testing and preparation of the May 12 Report[], . . . failed to provide them with proper training, and failed to outline proper procedure to them with respect to the preparation and issuance of reports of scientific testing conducted by DSI in a criminal investigation"), as is their negligent infliction of emotional distress claim. *Id.* ¶ 562 (alleging that DSI Defendants and Meehan "acted individually and in concert to manufacture false evidence and to conceal the evidence of Plaintiffs' innocence for the purpose of charging and prosecuting the three innocent Duke lacrosse players on charges of rape, sexual assault, and kidnapping, which charges they knew or reasonably believed were false and unsupported by their own scientific testing"); *id.* ¶ 563 (DSI Defendants' "conduct subjected Plaintiffs to public obloquy, made them pariahs in their communities, and forced them to endure harsh media scrutiny"); *id.* ¶ 565 (DSI Defendants and Meehan "were negligent in engaging in this conduct, from which it was reasonably foreseeable that Plaintiffs would suffer emotional and psychological harm").

## II. *IQBAL* CONFIRMS THAT THE SUPERVISORY LIABILITY CLAIM AGAINST CLARK CANNOT STAND

*Iqbal* makes clear that Plaintiffs' Section 1983 claims against Defendant Clark fall short of the pleading standard governing liability of "supervisory" defendants under Section 1983. The Supreme Court has reaffirmed that, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each . . . defendant, *through [his] own individual actions*, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948 (emphasis added). *See also id*. (Section 1983 defendants "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"); *id*. at 1949 ("In a § 1983 suit . . . where masters do not answer for the torts of their servants . . . the term 'supervisory liability' is a misnomer. Absent vicarious liability, each [defendant], his or her title notwithstanding, is only liable for his or her own misconduct."). Plaintiffs have alleged no individual misconduct by Clark sufficient to sustain a Section 1983 claim against him. At most, they allege that Clark was physically present at meetings at which Nifong and other defendants discussed the results of the DNA testing conducted by DSI. *See* Am. Compl. ¶¶ 207, 208-10. In the absence of any specific allegation of wrongdoing (or, indeed, even of knowledge) on Clark's part, Plaintiffs appear to premise their claims against him on his title alone. *Id*. ¶ 207 (alleging that "Defendant Clark, who upon information and belief is the *president and controlling shareholder of DSI*," attended the April 10, 2006 meeting with Nifong) (emphasis added). *Iqbal* makes clear that such a claim cannot stand.

11

# CONCLUSION

For the foregoing reasons, as well as those stated in their Opening and Reply Briefs, defendants DNA Security, Inc. and Richard Clark respectfully request that the claims against them be dismissed.

Respectfully submitted,

/s/ Robert J. King III
Robert J. King III
N.C. State Bar No. 15946
Kearns Davis
N.C. State Bar No. 22014
Brooks, Pierce, McLendon, Humphrey, &
  Leonard, L.L.P.
Post Office Box 26000
Greensboro, North Carolina  27420
Telephone:  336-373-8850
Facsimile:  336-378-1001

*Counsel for Defendants DNA Security, Inc. and Richard Clark*


Robert A. Sar
N.C. State Bar No. 22306
Nicholas J. Sanservino, Jr.
N.C. State Bar No. 36557
Ogletree, Deakins, Nash, Smoak &
  Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, North Carolina 27612
Telephone: (919) 787-9700
Facsimile: (919) 783-9412

*Counsel for Defendant DNA Security, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2009, I electronically filed the foregoing **Supplemental Brief in Support of Motion to Dismiss of Defendants DNA Security, Inc. and Richard Clark** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Brendan V. Sullivan, Jr.
Robert M. Cary
Christopher N. Manning
Charles Davant IV
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
*Counsel for Plaintiffs David F. Evans
and Collin Finnerty*

Barry C. Scheck
100 Fifth Avenue
New York, NY  10011
*Counsel for Plaintiff Reade Seligmann*

David S. Rudolf
RUDOLF WIDENHOUSE & FIALKO
312 West Franklin Street
Chapel Hill, NC  27516
*Counsel for Plaintiff Reade Seligmann*

Richard D. Emery
EMERY CELLI BRICKERHOFF
& ABADY LLP
75 Rockefeller Plaza, 20th Floor
New York, NY  10019
*Counsel for Plaintiff Reade Seligmann*

Reginald B. Gillespie, Jr.
FAISON & GILLESPIE
5517 Durham-Chapel Hill Blvd., Ste. 2000
P.O. Box 51729
Durham, NC  27717-1729
*Counsel for Defendant City of Durham, NC*

James B. Maxwell
MAXWELL FREEMAN &
BOWMAN, P.A.
P.O. Box 52396
Durham, NC  27717-2396
*Counsel for Defendant David Addison*

Patricia P. Kerner
D. Martin Warf
Hannah Gray Styron
TROUTMAN SANDERS, LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC  27601
*Counsel for Defendants Steven Chalmers,
Beverly Council, Ronald Hodge, Jeff
Lamb, Patrick Baker, Michael Ripberger
and Lee Russ*

Paul R. Dickinson, Jr.
LEWIS & ROBERTS PLLC
5960 Fairview Road,  Ste. 102
Charlotte, NC  28210-3103

James A. Roberts, III
LEWIS & ROBERTS PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC  27609-7482
*Counsel for Defendant Brian Meehan*

James B. Craven, III
340 West Main Street
P.O. Box 1366
Durham, NC  27702
*Counsel for Michael B. Nifong*

Joel M. Craig
Henry W. Sappenfield
KENNON CRAVER BELO CRAIG
& McKEE, PLLC
4011 University Drive, Suite 300
P.O Box 51579
Durham, NC  27717-1579
*Counsel for Defendant Benjamin Himan*

David W. Long
Eric P. Stevens
POYNER SPRUILL, LLP
P.O. Box 1801
Raleigh, NC  27602-1801
*Counsel for Defendant Mark Gottlieb*

Linwood Wilson
*Address redacted pursuant to Local Rule
*Pro se*

Respectfully Submitted,

/s/ Robert J. King III