IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF
NORTH CAROLINA

DAVID F. EVANS, *et al,*        )
                                )
        Plaintiffs,       )
                                )
v.                            )     Case No. 1:07-CV-00739
                                )
THE CITY OF DURHAM, *et al,*   )
                                )
        Defendants.      )

_____

**SUPPLEMENTAL BRIEF OF DEFENDANTS BAKER, CHALMERS, COUNCIL,
HODGE, LAMB, RIPBERGER, RUSS, AND ADDISON**
_____

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court settled any

lingering doubt about its meaning in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007). The Court confirmed, as Defendants have argued all along, that a mere recitation

of the essential elements of claim are not enough to satisfy the requirements of Rule 8(a)

(2). *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 556. A plaintiff must allege *some*

actual facts, sufficient for the court to reasonably infer that the claim has sufficient

factual underpinning to support the potential liability of each defendant. *Iqbal*, 129 S. Ct.

at 1944; *Twombly*, 550 U.S. at 556. This is the "plausibility standard."

In addition to reaffirming the standard for pleading generally, the *Iqbal* Court also

determined specific issues now before the Court on the Motions to Dismiss filed by

Defendants. In *Iqbal*, the plaintiffs asserted "supervisory liability" *Bivens* claims against

federal officials, "'which is the federal analog to suits against state officials under Rev.

1

Stat. §1979, 42 U.S.C. §1983,'" 129 S. Ct. at 1948 (citations omitted).  There, the allegations were insufficient to make out claims against Ashcroft and Mueller, and the Court's reasoning dictates dismissal of the "Supervisory Defendants" here.[1]

I.      **"Because vicarious liability is inapplicable to … §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 129 S. Ct. at 1948.**

In *Iqbal,* the Court specifies how to properly, and plausibly, plead allegations of individual, supervisory liability:  "Because vicarious liability is inapplicable to *Bivens* and §1983 suits, a plaintiff must plead that *each* Government-official defendant, *through the official's own individual actions*, has violated the Constitution."  129 S. Ct. at 1948. (emphasis added).

*Iqbal* confirms what Defendants have argued to this Court:  rank and authority, coupled with alleged wrongdoing of subordinates, are not sufficient to impose supervisory liability.  (*See* Doc. # 60, p.6.)  The Court in *Iqbal* rejected the respondent's argument that a supervisor's "knowledge and acquiescence in their subordinates" unconstitutional conduct "amounts to the supervisor's violating the Constitution."  129 S. Ct. at 1949.

> Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents.  In a §1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term "supervisory liability" is a misnomer.  Absent vicarious liability, *each Government*

---

[1] Plaintiffs did not include Addison in the category of "Supervisory Defendants."  The allegations against him, however, are similarly styled, and he joins in this Supplemental Brief, in compliance with the Court's directive that these briefs be submitted jointly, to the extent possible.

*official, his or her title notwithstanding, is only liable for his or her own misconduct.*

*Id.* (emphasis added). Because the complaint did not contain any factual allegations against the petitioners to plausibly suggest that "they themselves" had engaged in unconstitutional conduct, it was insufficient to meet the standard of Rule 8. *Id.* at 1952.

Likewise, as will be shown hereinafter as to each responding Defendant, the Amended Complaint presently before this Court does not contain any factual allegations against them to plausibly suggest that "they themselves" engaged in unconstitutional conduct to meet the standard of Rule 8.

## II.    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

In *Iqbal,* the Supreme Court confirmed that it meant what it said in *Twombly*: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. at 1949, (citing *Twombly*, 550 U.S. at 570). Acknowledging that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" the Court again asserted that the Rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). Further the Court again stated that a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 1949. "Naked assertions," without "further factual enhancement" are not enough. *Id.*

The *Iqbal* Court discussed the "plausibility" standard set out in *Twombly*:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more that a sheer possibility that a defendant has acted unlawfully. *Ibid.*

129 S. Ct. at 1949.

The Court noted, "[t]wo working principles underlie our decision in *Twombly*":

> First, the tenet that a court must accept as true all of the allegations contained in a complaint *is inapplicable to legal conclusions.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . But where the well-pleaded facts do not permit the court to infer more that the mere possibility of misconduct, the complaint has alleged – but has not show[n] – that the pleader is entitled to relief.

*Iqbal*, 129 S. Ct. at 1949-50 (emphasis added) (quotations and citations omitted). Based on these two principles, the Court set out a two-part test for considering a motion to dismiss:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950.

The Court illustrated how it had applied this reasoning in *Twombly*. Because the Sherman Act, 15 U.S.C. §1 prohibits only conduct "effected by a contract, combination, or conspiracy, the plaintiffs in *Twombly* flatly pleaded that the defendants 'ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d]

agreed not to compete with one another,'" and "that the defendants' 'parallel course of conduct . . . to prevent competition' and inflate prices was indicative of the unlawful agreement alleged." *Id.* (citations omitted). The *Twombly* court held that the "plaintiff's assertion of an unlawful agreement was a 'legal conclusion' and, as such, was not entitled to the assumption of truth." *Id.* (citations omitted). Further, the *Twombly* court held that the "well-pleaded, nonconclusory factual allegation of parallel behavior" did not give rise to a "'plausible suggestion of conspiracy,'" because while such conduct was consistent with an unlawful agreement, it was it was also compatible with, and "more likely explained by" lawful free-market behavior. *Id.* (citations omitted).

Applying this same two-step approach, the Court found in *Iqbal* that the plaintiff had not "nudged [his] claims . . . across the line from conceivable to plausible." 129 S. Ct. at 1950-51. The Court's conclusions, and their application here, are set out below.

A.   **"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950.**

As in *Twombly,* the Court in *Iqbal* began its "analysis by identifying the allegations in the complaint that were not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1951.

> Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." Complaint P96, App. to Pet. for Cert. 173a-174a. The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, *id.,* P10, at 157a, and that Mueller was "instrumental" in adopting and executing it, *id.*, P11, at 157a. These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a "formulaic recitation of the elements" of a

constitutional discrimination claim, namely, that petitioners adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." As such, the allegations are conclusory and not entitled to be assumed true. To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. We do not so characterize them any more than the Court in *Twombly* rejected the plaintiffs' express allegation of a "'contract, combination or conspiracy to prevent competitive entry,'" because it thought that claim too chimerical to be maintained. *It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.*

*Id.* (emphasis added) (case citations omitted).

Nearly all of the allegations against Defendants suffer from the same malady. Throughout the Amended Complaint, Plaintiffs repeat the refrain that "upon information and belief, the Supervisory Defendants [or Addison] . . . were [or was]. . . aware of" various facts learned, or actions taken, by others, "yet willfully ignored and/or were deliberately indifferent or grossly negligent with respect to this evidence demonstrating Plaintiffs' innocence in their rush to charge the three innocent Duke lacrosse players." (AC ¶¶ 49, 50, 54, 55, 67, 68, 78, 79, 89, 90, 99, 100, 103, 104, 107, 118, 119, 123, 124, 196, 211, 221, 228, 237, 254, 257, 265.) Plaintiffs also recite that the "Supervisory Defendants continued to allow Nifong to have responsibility for the police investigation and to have Durham Police look to Nifong for direction as to the conduct of that investigation." (AC ¶¶ 155, 174, 211, 221, 228, 237, 254, 265.)

These allegations are nothing more than a "formulaic recitation" of all or some of the essential elements of a "supervisory liability" claim under 42 U.S.C. § 1983; thus, they are not entitled to the presumption of truth. *Iqbal*, 129 S. Ct. at 1951. Plaintiffs and Defendants agree the elements of this claim are:

       "'(1) that the supervisor had actual or constructive knowledge that his
       subordinate was engaged in conduct that posed 'a pervasive and
       unreasonable risk' of constitutional injury to citizens like the plaintiff; (2)
       that the supervisor's response to that knowledge was so inadequate as to
       show 'deliberate indifference to or tacit authorization of the alleged
       offensive practices[]'; and (3) that there was an 'affirmative causal link'
       between the supervisor's inaction and the particular constitutional injury
       suffered by the plaintiff.'"

(Doc. # 51, pp. 65-66; Doc. # 35, p. 17 (citing *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.

1994))).

     Plaintiffs' bald allegations that the "Supervisory Defendants" "knew" or

"approved" of, "ratified," or "condoned" the conduct of others, are also nothing more

than a recitation of elements of their claims, and should be disregarded for the purposes

of the motions to dismiss, as well. (AC ¶¶ 183, 186, 187, 218, 257); *see Iqbal,* 129 S. Ct.

at 1958 (allegations that petitioners "knew of, condoned, and willfully and maliciously

agreed" to conditions of respondent's confinement deemed conclusory). Similarly,

Plaintiffs subsequent repetition of these conclusory allegations in the bodies of their

causes of action, as well as the sweeping conclusions in the "Nature of the Action"

segment of the Amended Complaint, are also not entitled to the presumption of truth.

     Plaintiffs' reliance on alleging the rank of the various Defendants, labeling them

as "Supervisory Defendants," and then ascribing knowledge or actions to that entire

group, without any factual detail as to any one Defendant, also states no more than

conclusions. (AC ¶¶ 2-5, 50, 55- 56, 68, 79, 82- 83, 90, 100, 104, 107, 119, 124, 131-

132, 139, 155, 163-164, 174, 175-180, 183, 186-187, 196, 211, 215, 218, 221, 228, 231,

234, 237, 240, 242, 254, 257, 264-265, 272, 275- 276, 373, 375-376, 379, 381, 384-385,

387-388, 390-391, 394-395, 397, 399, 401, 404, 410-436, 438-444, 446-452, 454-459, 461-467, 470-476, 525-532, 534-538, 540-544).[2]  This pleading technique runs afoul of both the general prohibition against "labels and conclusions" and "naked assertions" and the specific requirement for supervisory liability that the plaintiff must plausibly "plead that *each* Government-official defendant, *through the official's own individual actions*, has violated the Constitution."  *Iqbal*, 129 S. Ct. at 1948.

Comparable allegations, such as petitioners and other named supervisory personnel "each knew of, condoned, and willfully and maliciously agreed to subject Plaintiffs to these conditions of confinement as a matter of policy, solely on account of their religion, race, and/or national origin and for no legitimate penological interest," were identified as conclusory by the *Iqbal* Court.  *See Iqbal*, 129 S. Ct. at 1948; *see also* Attachment I, *Iqbal* Compl., ¶ 96.  The Court rejected this "bare assertion" because of its "conclusory nature."  *Iqbal*, 129 S. Ct. at 1948.  Similar allegations, like all named defendants, including Ashcroft and Mueller, were "aware of, approved of, and willfully and maliciously created" all of the unlawful conditions of confinement alleged throughout the complaint, and "specifically targeted Plaintiffs for mistreatment because of Plaintiffs' race, religion, and/or national origin," were also disregarded by the Court in its analysis of the claims against the petitioners.  *Id.*; *see* Attachment I, ¶¶ 195, 198; *see also* Attachment I ¶¶ 199, 232, 235, 238, 247, 250, 269.  These paragraphs were not among the "well-pleaded" factual allegations that the Court found in the complaint.

---

[2] The same is true of the repeated allegations about the knowledge of "Defendants Nifong, Addison, Gottleib, Himan, and Wilson."  (AC ¶¶ 49, 54, 67, 78, 89, 99, 103, 118,

*Iqbal*, 129 S. Ct. at 1952 (emphasis added) ("Though respondent alleges that various other defendants, who are not before us, may have labeled him as a person of 'high interest' for impermissible reasons, his only *factual* allegation against petitioners accuses them of adopting a policy approving "restrictive conditions of confinement" for post-September-11th detainees until they were "cleared" by the FBI.); *see also* Attachment I, ¶ 69. Thus, allegations lodged against "Supervisory Defendants" or "Defendants," as a group, cannot serve as "well-pleaded factual allegations" against any one Defendant, individually.

> **B. "A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949.**

After putting aside the conclusions in the complaint, the Court in *Iqbal* then analyzed the factual allegations against the petitioners to determine if they plausibly suggested entitlement to relief. As in *Twombly,* the Court concluded that those allegations, while consistent with unlawful behavior, did "not plausibly suggest that purpose," given more likely explanations.

The Court found two well-pleaded factual allegations in the *Iqbal* Complaint. First, that "the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men. . . as part of its investigation of the events of September 11. *Iqbal*, 129 S. Ct. at 1951; *see* Attachment I, ¶ 47. Second, "The policy of holding post-September-11th detainees in highly restrictive confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in

123.)

the weeks after September 11, 2001." *Iqbal*, 129 S. Ct. at 1951; *see* Attachment I, ¶ 69.

The Supreme Court rejected these allegations as sufficient to plausibly allege a claim that

the petitioners' had violated the respondent's constitutional rights:

> Taken as true, these allegations are consistent with petitioners' purposefully designating a detainees "of high interest" because of their race, religion, or national origin. *But given more likely explanations, they do not plausibly establish this purpose.*
>
> The September 11 attacks were perpetrated by 19 Arab Muslim hijackers who counted themselves members in good standing of al Qaeda, an Islamic fundamentalist group. Al Qaeda was headed by another Arab Muslim -- Osama bin Laden -- and composed in large part of his Arab Muslim disciples. It should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims. On the facts respondent alleges the arrests Mueller oversaw were likely lawful and justified by his nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts. As between that "obvious alternative explanation" for the arrests, *Twombly, supra*, at 567, 127 S. Ct. 1955, 167 L. Ed. 2d 929, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.

*Iqbal,* 129 S. Ct. at 1951-52 (emphasis added).

Further, Paragraph 69 of the *Iqbal* complaint, set out above, was insufficient to

allege a plausible claim arising out of the respondent's detention:

> Accepting the truth of that allegation, the complaint does not show, or even intimate, that petitioners purposefully housed detainees in the ADMAX SHU due to their race, religion, or national origin. All it plausibly suggests is that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity. Respondent does not argue, nor can he, that such a motive would violate petitioners' constitutional obligations. He would need to allege more by way of factual content to "nudg[e]" his claim of purposeful

> discrimination "across the line from conceivable to plausible." *Twombly*,
> 550 U.S. at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929.

*Id.* at 1952.

When stripped of its conclusions, Plaintiffs' Amended Complaint states few factual allegations against most of these Defendants and none at all against some. Despite seeking to impose individual liability on each Defendant, Plaintiffs have persisted in treating them only as members of a group in both their pleadings and their briefs. *Iqbal, Twombly,* and Rule 8, however, require more. Thus, we will address the allegations and claims[3] against each of them, individually.

### 1.   Patrick Baker

Plaintiffs' Amended Complaint contains two well-pleaded factual allegations about Defendant Patrick Baker. First, he is alleged to have been the City Manager for the City of Durham. (AC ¶ 19.) Second, Plaintiffs allege that he, along with Chalmers and other "senior officials," attended a meeting on March 29, 2006, during and after which, "Himan and Gottlieb were ordered or otherwise pressured to expedite the identifications and arrests of Duke lacrosse players." (AC ¶ 179.)[4] Based upon this meeting, Plaintiffs assert a supervisory liability claim pursuant to §1983 and federal conspiracy claims against Baker.

---

[3] In their Opposition, Plaintiffs' conceded that a number of claims should be dismissed. As in their Replies, Defendants will only address the remaining claims.

[4] This paragraph also alleges that there was evidence demonstrating Plaintiff's innocence, and that there was pressure from the community that had been misled by false statements. No factual content is alleged suggesting that Baker had knowledge of the evidence of innocence or of the falsity of any statements that had been made about the investigation. Thus, these allegations are conclusory, only, and not entitled to the presumption of truth.

The allegations of Paragraph 179 in the Amended Complaint are remarkably similar to the only factual allegation against defendant Ashcroft in *Iqbal*, contained in paragraph 69 of that complaint. As in *Iqbal*, even accepting the truth of this allegation, it does not show that Baker instructed Himan or Gottlieb to unlawfully seize Plaintiffs without probable cause – the alleged constitutional violation of which they complain.[5] All that it plausibly suggests is that Baker told the investigators to identify the perpetrators of a crime that Plaintiffs allege had been reported, and to arrest the perpetrators. While the use of the word "expedite" may imply that they were either told to "hurry up" or to put this investigation ahead of other cases, it does not plausibly suggest that they were told to act in contravention of anyone's constitutional rights.

At most, Plaintiffs may argue that Paragraph 179 is consistent with a theory that Baker gave tacit authorization to the alleged offensive conduct of the investigators. However, it does not plausibly suggest unconstitutional conduct, because it is equally consistent with, and is more likely explained by, the legitimate law enforcement objective of lawfully locating and arresting perpetrators. Without more factual content to support the inference they assert, Plaintiffs have failed to nudge their supervisory liability claim from the conceivable to the plausible.[6]

---

[5] Defendants, of course, strongly disagree with Plaintiffs' contention that these facts give rise to a claim arising under the Fourth or Fourteenth Amendment. That issue has been briefed by Defendants, and is beyond the limited scope of this Supplemental Brief.

[6] Plaintiffs have alleged no facts to support the first element of this claim that Baker had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury. When challenged on this deficiency, Plaintiffs could only cite conclusions about the alleged knowledge of "Supervisory Defendants."

Similarly, the facts alleged in Paragraph 179 are insufficient to plausibly support the federal conspiracy claims. As the Court in *Iqbal* noted, if the Court in *Twombly* had "simply credited the allegation of a conspiracy, the plaintiffs would have stated a claim for relief and been entitled to proceed perforce." 129 S. Ct. at 1950. However, the Court examined the nonconclusory factual allegations of parallel behavior, and found them insufficient to plausibly suggest an unlawful agreement. Here, Plaintiffs have failed to allege facts suggesting that Baker had an unlawful intent, or an agreement or meeting of the minds with anyone else to deprive Plaintiffs of their constitutional rights.

### 2. Steven Chalmers

Plaintiffs' Amended Complaint contains two similar factual allegations concerning Defendant Steven Chalmers. Chalmers is alleged to have been the Chief of Police for the Durham Police Department. (AC ¶ 19.) He is also alleged to have attended the May 29 meeting with Baker. (AC ¶ 179.) The claims against Chalmers are identical to those asserted against Baker, and the arguments set out concerning Baker apply equally to him.

The only other allegation in the Amended Complaint that mentions Chalmers alleges that Addison caused the publication of some "Wanted" posters "acting pursuant to established customs or policies of the City of Durham Police Department, with the acquiescence or approval of Chalmers, Hodge, Lee, and other policymaking officials." (AC ¶ 381.) Plaintiffs have alleged no facts in support of the conclusion that Chalmers acquiesced in or approved the publication of this poster, other than perhaps his rank in the chain of command. Because Chalmers cannot be vicariously liable for the acts of his subordinates, "his title notwithstanding," he is only liable for his own conduct. *Iqbal*,

129 S. Ct. at 1949.  This allegation is nothing more than a legal conclusion, and is not entitled to the presumption of truth.  *See Id.* at 1951 (allegations that petitioners "'knew of, condoned, and willfully and maliciously agreed'" with conditions imposed by subordinates, that "Ashcroft was the 'principal architect' of this invidious policy," and that "Mueller was 'instrumental' in adopting and executing it," held to be legal conclusions).

### 3.      Beverly Council

As pointed out by her in Defendants' initial memorandum in support of their motion to dismiss, the Amended Complaint contains no factual allegations about Defendant Beverly Council at all, other than a statement of her rank:  "Beverly Council is and was, at all times relevant to this action, the Commander of the Uniform Patrol Bureau for the Durham Police Department."  (AC ¶ 23.)  That is it.  In response to her argument in Defendant's initial brief, Plaintiffs pointed out that she was one of the seven "Supervisory Defendants," and cited the enumerable times that conclusory allegations were lodged against that group.  These conclusions are insufficient to state a claim under *Iqbal*, *Twombly*, or Rule 8, and the claims against Council should be dismissed.

### 4.      Ronald Hodge

Defendant Ronald Hodge is the Deputy Chief of Police of the Durham Police Department.  (AC ¶ 21.)  Hodge is mentioned in Paragraphs 179[7] and 381 discussed

---

[7] In Paragraph 179, Hodge is not alleged to have attended the May 29 meeting, but to have "continued to pressure" the investigators after the meeting, with the other "Supervisory Defendants."  Without more factual content, this allegation is conclusory.

above.  The arguments made above concerning the allegations and claims asserted against Baker and Chalmers apply equally to Hodge.

In addition, Hodge is alleged to have made the single statement discussed in Defendants' prior briefs:  "I don't think that we would be here if it wasn't."  (AC ¶ 160h.) Based upon this one utterance, Plaintiffs assert claims under section 1983 and for intentional infliction of emotional distress against him.  Hodge has consistently maintained that this single statement is inadequate to support either claim.  Plaintiffs have tried to side-step this factual impediment to their claims, by lumping him in with Defendant Nifong, and contending that "Defendants" collectively, made over 100 false statements.  (*See* Doc. # 51, pp. 34, 81, 107.)  *Iqbal* establishes what Hodge has argued: His liability for those claims is derived from his conduct alone.  129 S. Ct. at 1948.  For the reasons argued before, these claims against Hodge should be dismissed.

### 5.    Jeff Lamb

Defendant Jeff Lamb was the Commander of the District Two Uniform Patrol of the Durham Police Department.  (AC ¶ 24).  In support of their supervisory liability claim under section 1983, Plaintiffs allege one fact against Lamb:  "On or about March 24, 2006, Lamb instructed Gottlieb and Himan that they should take direction from Nifong regarding the investigation. . . ."  (AC ¶¶ 133, 411.)  Assuming that this factual allegation is true, it is insufficient to allege a claim for supervisory liability.  As  previously argued, the Amended Complaint pleads no facts suggesting that Lamb would have any reason to know that involving the prosecutor in the investigation posed a risk of constitutional injury.  (Doc. # 35, pp. 19-20.)  Because Plaintiffs have failed to plead that Lamb,

through his own individual actions, violated the Constitution, the supervisory liability claim against him fails. *Iqbal,* 129 S. Ct. at 1948.

Plaintiffs make two factual allegations about Lamb relating to the federal civil conspiracy claims. First, that in or around May 2006, Lamb and others subjected Sergeant Shelton to an "an internal investigation, accusations of unprofessional conduct, and threats of disciplinary action." (AC ¶¶ 56, 264.) While Plaintiffs also assert that these acts were an attempt to "intimidate and discredit Sergeant Shelton," and were motivated by Shelton's "reporting Mangum's recantation of her rape claim while at Duke Medical Center on March 13," they allege no facts in support of these conclusions. Even though Plaintiffs contend that this conduct is consistent with the intent to deprive Plaintiffs of their constitutional rights, (AC ¶ 440), it is also possible, and indeed more likely, that any such action was motivated by legitimate disciplinary reasons.

Second, Plaintiffs allege that after Nifong, Gottlieb, and Himan designed the "suggestive" "April Photo Array," that "Gottlieb briefed Lamb and Ripberger about the proposed identification procedure," and that Lamb and Ripberger "approved the proposed April Photo Array before it took place." (AC ¶¶ 181-83.) As argued previously, no constitutional right is implicated by an identification procedure outside of trial. (Doc. # 35, p. 21.)[8] Further, no facts are alleged to show that Lamb intended to violate their constitutional rights. Without such facts, Plaintiffs have not nudged their claims from the conceivable to the plausible. *Iqbal,* 129 S. Ct. at 1950-51.

---

[8] Further, as previously argued, if a constitutional right was violated, Defendant Lamb would be entitled to qualified immunity on such a claim. (Doc. # 35, p. 21.)

Further, plaintiffs have not alleged facts showing a meeting of the minds among Defendants and unlawful intent in support of any of their federal conspiracy claims. Defendants have argued that the cases of this Circuit, decided well before *Twombly,* required specific factual allegations to support these elements of conspiracy under sections 1983 and 1985.  (Doc. # 35, p. 32.)  As *Iqbal* confirms, merely reciting the phrase that Defendants entered into "express and/or implied agreements, understandings, or meetings of the minds among themselves" is insufficient.  129 S. Ct. at 1951.  Without some factual content to plausibly suggest that Lamb, or any other one of these Defendants, entered into an unlawful agreement, the allegations of this claim are insufficient.

Additionally, Plaintiffs have failed to allege facts plausibly showing a class-based discriminatory motive, on the part of Lamb, or any of these Defendants, as required for their section 1985 conspiracy claims.  Plaintiffs have argued, without supporting allegations, that the "Supervisory Defendants" made "demands for arrests of white Duke lacrosse players."  (Doc. # 51, pp. 92-93.)  All that the Amended Complaint alleges is that Baker, Chalmers, and the other "Supervisory Defendants" directed the investigators to expedite the identification and arrest of "Duke lacrosse players."  (AC ¶ 179.)  The investigators and Nifong had previously focused the investigation on the white players, presumably based upon the descriptions given by Mangum and because the party occurred at the home of the team's co-captains, and was attended by members of the team.  (AC ¶¶ 38, 92, 120.)  *Iqbal* establishes that these claims fail:  even assuming that

white Duke lacrosse players are members of a protected class,[9] the allegations fail to show that Lamb, or any other of these Defendants acted out of improper discriminatory animus. On the facts alleged, the focus on white players was more likely driven by the nondiscriminatory intent to identify the person that matched the description provided. Without more, discriminatory animus is not a plausible conclusion. *Iqbal*, 129 S. Ct. at 1952.

### 6. Michael Ripberger

The only factual allegations concerning Defendant Michael Ripberger is that he is a Lieutenant in the Durham Police Department, (AC ¶ 25), and that he, along with Lamb, was "briefed" on the April Photo Array, and "approved" it before it took place. (AC ¶¶ 182-83.) These allegations are insufficient to plausibly state a claim against him, for the same reasons that they are deficient with regard to Lamb.

### 7. Lee Russ

The only factual allegation against Defendant Lee Russ is his rank. He was the Executive Officer to the Chief of Police in the Durham Police Department. (AC ¶ 22.) As is the case with Council, this allegation is insufficient to plausibly state a claim against him.

### 8. David Addison

Defendant David Addison is alleged to have been Corporal with the Durham Police Department. (AC ¶ 27.) Plaintiffs allege that his duties included serving as an

---

[9] As have previously argued, neither Plaintiffs' status as Caucasians or members of the team place them in a protected class to make out this claim, as a matter of law.

"official spokesperson" for the Police Department, and that he was "the coordinator of Durham Crimestoppers." The remaining factual allegations concerning Addison are contained in Paragraph 160 of the Amended Complaint, wherein Plaintiffs allege that between March 24 and 28, 2006, Addison made five statements to the press, stating that there was strong evidence that a rape had occurred and asking the players to come forward with evidence; and produced a poster with Crimestoppers, stating that a rape had occurred at the party and "asking anyone who has information related to this case" to contact police or Durham Crimestoppers. (AC ¶ 160.)

Based on these allegations, Plaintiffs assert claims under section 1983 and for intentional infliction of emotional distress against him. In support of these claims, Plaintiffs assert that Addison's statements were "intended to inflame the jury pool against Plaintiffs," (AC ¶ 366), and to "shame, humiliate, and produce public condemnation" of them. (AC ¶ 509.) Plaintiffs fail to allege factual content to plausibly support this conclusion. Indeed, the only conclusion is that Addison was attempting to urge witnesses to come forward, in connection with discharging his duties for Durham Crimestoppers. Additionally, Plaintiffs have not alleged factual content that plausibly suggests Addison's statements violated Plaintiffs' constitutional rights. (*See* Doc. # 41, pp.13-14.)

Further, Plaintiffs' state law claim for malicious prosecution and conspiracy against Addison fails to allege any factual content to support the essential elements of that claim. (*See* Doc. # 41, p. 18.) Not a single fact is alleged in support of Plaintiffs' conclusion in Paragraph 487 that Addison "instituted or participated in the institution of criminal proceedings against Plaintiffs." The only facts alleged are that, in connection

with his work for Crimestoppers, he made the statements described above and asked witnesses to come forward. Those facts are not even consistent with the conclusion that Plaintiffs attempt to draw from it in Paragraph 487, and it is thus not entitled to the presumption of truth. *See Iqbal*, 129 S. Ct. at 1950.

CONCLUSION

Plaintiffs have failed to allege sufficient factual content to nudge their individual liability claims against Baker, Chalmers, Council, Hodge, Lamb, Ripberger, Russ, and Addison from the conceivable to the plausible. For this reason, as well as the reasons previously argued to the Court, the claims against these Defendants should be dismissed.

Respectfully submitted, this the 24th day of June, 2009.

TROUTMAN SANDERS LLP

By: /s/ Patricia P. Kerner
    Patricia P. Kerner
N.C. State Bar No. 13005
*Attorneys for Defendants Baker, Chalmers, Council,*
*Hodge, Lamb, Ripberger, and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com

MAXWELL, FREEMAN & BOWMAN, P.A.

By:/s/ James B. Maxwell
    James B. Maxwell
N.C. State Bar No. 2933
*Attorneys for David Addison*
P.O. Box 52396
Durham, North Carolina 27717
Telephone: (919) 493-6464
Facsimile: (919) 493-1218
jmaxwell@mfbpa.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF
NORTH CAROLINA

DAVID F. EVANS, *et al,*       )
                              )
          Plaintiffs,         )
                              )
v.                            )          Case No. 1:07-CV-00739
                              )
THE CITY OF DURHAM, *et al,*  )
                              )
          Defendants.         )
_____

**CERTIFICATE OF SERVICE**
_____

I hereby certify that the foregoing was electronically filed with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the

following:

Brendan V. Sullivan, Jr.
Robert M. Cary
Christopher N. Manning
Charles Davant IV
WILLIAMS &CONNOLLY, LLP
725 Twelfth Street, N.W.
Washington, DC 20005
*Attorneys for Plaintiffs Evans and Finnerty*

David S. Rudoph
RUDOLPH, WIDENHOUSE & FIALKO
312 W. Franklin Street
Chapel Hill, NC 27516
*Attorneys for Plaintiff Seligmann*

Robert J. King, III
Kearns Davis
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
Post Office Box 26000
Greensboro, NC 27420
*Attorneys for Defendants DNA Security,
Inc. and Richard Clark*

Robert A. Saar
Nicholas J. Sanservino, Jr.
OGLETREE DEAKINS NASH SMOAK
& STEWART, PC
2301 Sugar Bush Rd., Suite 600
Raleigh, NC 27612
*Attorneys for DNA Security*

James A. Roberts, III
LEWIS & ROBERTS, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27605
*Attorneys for Brian Meehan*

Paul R. Dickinson, Jr.
LEWIS & ROBERTS, PLLC
590 Fairview Rd., Suite 102
Charlotte, NC 28210
*Attorneys for Brian Meehan*

Reginald B. Gillespie, Jr.
FAISON & GILLESPIE
Post Office Box 51729
Durham, NC 27717
*Attorneys for Defendant City of Durham*

Joel M. Craig
Henry W. Sappenfield
KENNON, CRAVER, BELO, CRAIG &
MCKEE, PLLC
Post Office Box 51579
*Attorneys for Defendant Himan*

David W. Long
Eric P. Stevens
POYNER & SPRUILL, LLP
Post Office Box 1801
Raleigh, NC 27602-1801
*Attorneys for Defendant Gottlieb*

James B. Maxwell
MAXWELL, FREEMAN & BOWMAN,
P.A.
Post Office Box 52396
Durham, NC 27717
*Attorneys for Defendant Addison*

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503
*Pro Se*

I further certify that a copy of the foregoing was served today upon each of the

following non CM/ECF participants by United States mail, postage prepaid, addressed as

follows:

Richard D. Emery
Ilann M. Maazel
EMERY, CELLI, BRINKERHOFF &
ABADY, LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
*Attorneys for Plaintiff Seligmann*

Barry C. Scheck
100 Fifth Avenue
New York, NY 10011
*Attorneys for Plaintiff Seligmann*

James B. Craven, III
P.O. Box 1366
Durham, North Carolina 27702
*Attorneys for Michael Nifong*

Roger E. Warrin
Michael A. Vatis
John P. Nolan
Leah M. Quadrino
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave. N.W.
Washington, DC 20036
*Attorneys for Defendant City of Durham*

This the  24th  day of June, 2009.

Respectfully submitted,

By: /s/ Patrica P. Kerner
    Patricia P. Kerner
N.C. State Bar No. 13005
*Attorneys for Defendants Baker, Chalmers,*
*Council, Hodge, Lamb, Ripberger, and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com