IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:07-CV-00739

| | |
|---|---|
| DAVID F. EVANS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **THE CITY OF DURHAM'S** |
| v. ) | **SUPPLEMENTAL BRIEF IN** |
| ) | **SUPPORT OF ITS MOTION TO** |
| ) | **DISMISS PLAINTIFFS' SECOND** |
| THE CITY OF DURHAM, ) | **AMENDED COMPLAINT** |
| NORTH CAROLINA, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

Plaintiffs' original Complaint contained a plethora of creative but unfounded claims under the due process and equal protection provisions of the United States Constitution. Each of those claims suffered from numerous defects, as the City has explained. *See* City's Opening Br. at 11-42 (Doc. No. 43); City's Reply Br. (Doc. No. 65) at 2-20. Now, Plaintiffs assert a new constitutional claim under Section 19 of Article I of the North Carolina Constitution, the state's analogue to federal due process and equal protection provisions.[1] But this new avenue goes no further than Plaintiffs' previous dead-ends: The North Carolina courts have confirmed repeatedly that Section 19

---

[1] Section 19 provides: "No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin."

imposes the same principled limits and requirements on due process and equal protection claims that doomed Plaintiffs' federal claims. Plaintiffs' claim under the state constitution therefore must suffer the same fate as their original federal claims—dismissal.

Even if Plaintiffs could have circumnavigated the *substantive* limits that North Carolina places on due process and equal protection claims, however, they would run aground on an additional *procedural* limitation: state constitutional claims may be brought *only* where no alternate remedy is available. But alternate remedies are undoubtedly available here. In particular, state common law claims may be brought (and have been brought) against individual actors, such as Michael Nifong, in their individual capacities—providing a remedy for the harm allegedly suffered. *See, e.g.*, *Glenn-Robinson v. Acker*, 538 S.E.2d 601, 632 (N.C. Ct. App. 2000) (dismissing constitutional claims against city in light of availability of claims against city police officer in individual capacity). The availability of such alternate remedies precludes direct claims brought under the state constitution against the City.

For these reasons, Plaintiffs' new state constitutional claim must be dismissed.

I.  **BACKGROUND**

Plaintiffs' original Complaint was filed on October 5, 2007, and their First Amended Complaint on December 11, 2007. *See* Docs. No. 1 & 26. On August 12, 2009, they moved to amend their Complaint a second time; the City opposed the motion. *See* Docs No. 109-110. The Court ordered the Second Amended Complaint (hereinafter "Complaint" or "SAC") filed on February 15, 2009. *See* Doc. No. 115. The Court

- 2 -

Case 1:07-cv-00739-JAB-JEP   Document 128   Filed 03/11/10   Page 2 of 18

deemed the then-pending motions to dismiss moot, and allowed Defendants to file renewed motions to dismiss. *Id.* The Court further provided that the City may address new matters reflected in the Second Amended Complaint in a supplemental memorandum not to exceed 20 pages. *Id.*

## II. PLAINTIFFS' DUE-PROCESS CLAIMS UNDER THE STATE CONSTITUTION FAIL FOR MULTIPLE REASONS

### A. The Various Harms Alleged By Plaintiffs Are No More Cognizable Here Than In the Federal Context.

North Carolina courts have held that the "law of the land" provision in Section 19 of the state constitution is synonymous with the "due process of law" provision of the Fourteenth Amendment to the United States Constitution. *State v. Bryant*, 614 S.E.2d 479, 485 (N.C. 2005).[2] Thus, the fundamental requirements for valid claims are the same: First and foremost, a plaintiff must adequately plead a cognizable deprivation of liberty or property. *See State v. Carolina Utility Customers Ass'n*, 446 S.E.2d 332, 344 (N.C. 1994) ("Where there is no property interest, there is no entitlement to constitutional protection."). Thus, regardless of how Plaintiffs characterize the alleged *conduct*—whether "concealment of evidence," "fabrication of evidence," "malicious prosecution/seizure," "making false public statements," and so on—no claim exists unless that alleged conduct causes a cognizable deprivation of liberty or property. But

---

[2] *See Shavitz v. City of High Point*, 270 F. Supp. 2d 702, 708 n.5 (M.D.N.C. 2003) (Beaty, J.) (citation omitted); *see also Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 435 n.6 (4th Cir. 2002) ("North Carolina courts have consistently interpreted the due process and equal protection clauses of the North Carolina Constitution as synonymous with their Fourteenth Amendment counterparts.").

- 3 -

just as with Plaintiffs' federal due process claims, Plaintiffs fail to allege a cognizable deprivation here.

For example, a predominant feature of Plaintiffs' complaint is their allegation that they have suffered, and continue to suffer, reputational harm. *See, e.g.*, SAC ¶¶ 3-4, 336, 348, 357, 361-70. But, as the City explained, reputational harm cannot ground any due process claim under the federal constitution. *See Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991); *see also* City's Open. Br. at 23-24; City's Reply Br. at 2 n.1. This is equally true under the state constitution. *See, e.g.*, *Toomer v. Garrett,* 574 S.E.2d 76 (N.C. Ct. App. 2002). In *Toomer*, for example, the plaintiff asserted both federal and state procedural due process claims, each premised on allegations that his state employer "inserted 'false and stigmatic information' into his personnel file, the dissemination of which has deprived him of occupational liberty." *Id*. at 87. The plaintiff in *Toomer*, as here, alleged numerous injuries arising from the reputational damage he claimed. *See id*. at 83 ("As a result of defendants' actions, plaintiff alleged that he has been harassed and intimidated[,] . . . subjected to public humiliation and ridicule[,] . . . [and] blacklisted from future employment"). Addressing the federal claims first, the court found that the plaintiff's due process claim failed because he had not suffered a cognizable property or liberty deprivation. *See, e.g., id.* at 87 (noting that "injury to reputation by itself" is not a deprivation protected under the Fourteenth Amendment) (quoting *Siegert*, 500 U.S. at 233). Then, observing that "[d]ecisions as to the scope of procedural due process provided by the federal constitution are highly persuasive with respect to that afforded under our state constitution," the court dismissed the state-law due process claim on the

very same grounds. *Toomer*, 574 S.E.2d at 87 (since alleged reputational harm not in connection with "any employment action, much less a dismissal or demotion" claim fails "stigma plus" test). Because the North Carolina Constitution, like its federal counterpart, provides no protection from reputational injury (or the harms resulting from reputational injury), Plaintiffs cannot state a procedural due process claim premised on such harm or its consequences.

The other harms alleged by Plaintiffs ring equally hollow. Plaintiffs theorize that City investigators "hid" exculpatory evidence by, for example, purposefully failing to take written notes at a meeting during the course of the investigation. *See* SAC ¶ 209. But even if such allegations could support a due process claim in some contexts (*but see, e.g.*, *Koubriti v. Convertino*, 593 F.3d 459, 471 (6th Cir. 2010) (finding no existing case law supporting argument that an order not to take notes during interviews violates constitution, and granting qualified immunity)), such allegations are irrelevant in light of the fact that Plaintiffs were never subjected to a trial. *See* Open. Br. at 22-23; *see also Jean v. Collins*, 221 F.3d 656, 659 (4th Cir. 2000) (Wilkinson, J.) (no *Brady* violation unless "failure to disclose the exculpatory information deprived the § 1983 plaintiffs of their right to a fair trial") (citation omitted); *accord id.* at 674 (Murnaghan, J.) ("no court has ever recognized [a] freestanding liberty interest in exculpatory evidence").

Moreover, even if a pretrial deprivation (such as Plaintiffs' brief arrest following indictment) were cognizable in the abstract, it provides no grounds for a state or federal due process claim against the City. As the City previously explained, *see* Open. Br. at 24-29, any causative link between the City's investigative actions and Plaintiffs' post-

indictment arrest was severed by two independent actions: (1) the State Prosecutor's decision to seek an indictment; and (2) the grand jury's decision to return the indictment. *See Rhodes v. Smithers*, 939 F. Supp. 1256, 1274 (S.D. W. Va. 1995), *aff'd mem.*, 91 F.3d 132 (4th Cir. 1996). In this regard, Plaintiffs admit that the Durham investigators fully briefed Prosecutor Nifong on the strengths and weaknesses of the case. *See* SAC ¶ 137. Having done so, the chain of causation was broken: "[W]here an officer presents all relevant probable cause evidence to an intermediary, such as a prosecutor [or] a grand jury . . . the intermediary's independent decision to seek a warrant, issue a warrant, or return an indictment breaks the causal chain and insulates the officer from a section 1983 claim based on lack of probable cause . . . ." *Rhodes*, 939 F. Supp. at 1274; *see also Snider v. Lee*, 584 F.3d 193, 206 (4th Cir. 2009) (Stamp, J., concurring) (same); *Tri-County Paving, Inc. v. Ashe County*, 218 F.3d 430, 435 n.6 (4th Cir. 2002) (noting North Carolina courts' consistently interpreting federal and state due process protection as synonymous).

Because there is no cognizable deprivation of property or liberty on which to ground a due process claim, all Plaintiffs' due process claims—state and federal—are fatally defective.

**B.     A Substantive Due Process Theory Would Fail for Additional Reasons.**

To the extent Plaintiffs style their Section 19 claim as implicating *substantive* due process, it also fails for numerous reasons. First, the requirement to plead a cognizable deprivation of liberty or property still applies. Therefore, Plaintiffs' failure to do so dooms any substantive due process claim just as it dooms any procedural due process

- 6 -

claim. *See, e.g.*, *Gravitte v. North Carolina Div. of Motor Vehicles*, 33 Fed. App'x 45 (4th Cir. 2002) ("A plaintiff seeking to assert a substantive due process claim must allege the deprivation of a cognizable interest in life, liberty, or property; a mere allegation of 'arbitrary' government conduct in the air, so to speak, will not suffice."); *Ware v. Fort*, 478 S.E.2d 218, 222 (N.C. Ct. App. 1996) (mere fact that state actor maliciously refused to reappoint professor was insufficient to state substantive or procedural due process claim under federal or state constitutions, because professor had no cognizable property right to appointment in first instance).

Second, the U.S. Supreme Court has rejected substantive due process claims in the pre-trial context. *See Albright v. Oliver*, 510 U.S. 266 (1994); *see also Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 n.6 (4th Cir. N.C. 1996) (noting that *Albright* rejected the argument that "a defendant is deprived of substantive due process by continued prosecution in the absence of probable cause"). Third, the North Carolina Constitution imposes the same stringent "shocks the conscience" standard as its federal counterpart. *See Farrell v. Transylvania County Bd. of Educ.*, 682 S.E.2d 224, 229-30 (N.C. Ct. App. 2009) (applying same "shocks the conscience" standards to Section 19 and Fourth Amendment allegations); *General Textile Printing & Processing Corp. v. City of Rocky Mount*, 908 F. Supp. 1295, 1305 (E.D.N.C. 1995) (same). Allegations that pass the "shocks the conscience" standard typically involve depravity, torture, or wanton infliction of bodily harm. *See, e.g.*, *Farrell*, 682 S.E.2d at 229-30 (describing heightened liberty interest, under federal and state constitutions, in freedom from interference with "integrity of the human body" from sadistic use of force and finding substantive due

process claim stated in light of repeated physical abuse of disabled child). Plaintiffs' allegations do not even come close to meeting that standard. For these reasons, to the extent Plaintiffs would claim a substantive due process violation under Section 19, that claim must be rejected.

### C. The Alleged Facts Purporting to Support State Due Process Claims are Demonstrably Implausible under *Iqbal.*

Plaintiffs' state constitutional claim fails for yet another reason: their allegations fail to meet the pleading standard clarified by the U.S. Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). *Iqbal* requires that a court cull out any allegations that are conclusory in nature before evaluating whether the remaining factual allegations are sufficient to state a claim. *See id.* at 1951-52. Because *Iqbal* is an interpretation of Rule 8, *see Iqbal*, 129 S. Ct. at 1953 (citation omitted), it applies to any civil action brought in federal court, whether that action relies on federal or state causes of action. *See, e.g.*, *Collum v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:07-CV-534, 2010 WL 702462, *1, 9-10 (W.D.N.C. Feb. 23, 2010) (applying *Iqbal* to claim under North Carolina Constitution).

As the City has already explained, *see* City's *Iqbal* Brief (Doc. No. 100) at 7-18, the Complaint is littered with conclusory allegations: According to Plaintiffs, malice was afoot far and wide, with one or more conspiracies bent on convicting innocent people of rape. *See, e.g.*, SAC ¶¶ 1-3, 144-63, 175-93, 223-315. Yet, once stripped of the purple prose, the remaining factual allegations in the Complaint suggest nothing of the sort. Even if it were theoretically *possible* that the ten City defendants conspired among

themselves and with others to intentionally convict innocent people of rape, the allegations are *at least* as consistent with conduct devoid of such wickedness—a felony investigation carried out under unusually trying circumstances. *See generally* City's Supplement Brief (*Iqbal*) (Doc. No. 100) at 7-13 (outlining lack of factual underpinnings for malice and conspiracy allegations). Because Plaintiffs' state constitutional claim depends on the very same conclusory allegations of maliciousness and conspiracy as their federal constitutional claims, Plaintiffs' new claim is deficient under *Iqbal* and must be dismissed.

Once the conclusory allegations are stripped away, the true nature of Plaintiffs' complaint becomes clear: Plaintiffs believe that City investigators should have taken less time investigating; that they should have weighed the available evidence differently; and that they never should have suspected these Plaintiffs of any wrongdoing. These sorts of complaints, however, are not unique to Plaintiffs—such complaints are commonplace among any suspect who feels he or she was wrongly targeted. No matter how understandable such a reaction may be, it cannot support a due process claim. A recent Fourth Circuit case illustrates this point. In *Wolf v. Fauquier County Board of Supervisors*, 555 F.3d 311 (4th Cir. 2009), a child's parents asserted a procedural due process claim against investigators because, they alleged, the investigation into possible child abuse was unnecessarily prolonged and intrusive. *Id*. at 323. The Fourth Circuit explained why such a claim could not, and should not, be recognized:

> With respect to the procedural due process claim, [the plaintiff] points to a number of ways in which she claims the investigation could have been better handled and more quickly resolved. But she cannot show that the

> investigation did not meet minimum standards required by procedural due process . . . . In a sense plaintiffs' claim is the opposite of most procedural due process claims. Where most plaintiffs allege that government officials act too precipitously and without adequate information in depriving a plaintiff of a protected interest, in this case plaintiffs allege that [the agency] sought too much information and spent too long investigating. While it is regrettable that [the plaintiff] had to spend time addressing an undeniably intrusive inquiry, [the agency's] investigation, even if imperfect, did not deprive [the plaintiff] of due process . . . .

*Id.* at 323; *cf. Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005) (examining the level of review in an administrative proceeding, and declaring that "[i]ndeed, the very extent of review is an indication of the existence of procedural due process, rather than its absence."). Here, as well, while Plaintiffs take issue with the length, degree, and intrusiveness of the criminal investigation into Crystal Mangum's rape claim, such complaints do not give rise to a due process claim—under either the state or federal constitutions.

### III. PLAINTIFFS' STATE EQUAL PROTECTION CLAIMS ARE JUST AS DEFICIENT AS THEIR FEDERAL COUNTERPARTS

To the extent Plaintiffs style their Section 19 claim as arising under an equal protection theory, it fares no better. Claims brought under that provision are subject to the same limiting principles as federal equal protection claims. *See Shavitz*, 270 F. Supp. 2d at 722 ("North Carolina's Equal Protection Clause is 'functionally equivalent to the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.'") (Beaty, J.) (citing *White v. Pate*, 304 S.E.2d 199, 203 (N.C. 1983). Thus, the defects in the Complaint outlined in the City's opening brief are equally fatal here: Plaintiffs "do not allege that they are members of a protected class, they do not allege

- 10 -

Case 1:07-cv-00739-JAB-JEP   Document 128   Filed 03/11/10   Page 10 of 18

which particular Defendants were motivated by racial animus toward the Plaintiffs, and they do not even clearly allege that *any* Defendants actually acted out of racial animus against them." City's Open. Br. at 40; *see also White*, 304 S.E.2d at 205 (rejecting federal and state equal protection claims when purported class lacked "indicia of suspectness"); *State v. Rogers*, 562 S.E.2d 859 (N.C. 2002) (applying Fourteenth Amendment "protected class" requirement to state constitutional claim premised on equal protection theory).

Moreover, the North Carolina Constitution provides no greater latitude than the federal constitution with respect to Plaintiffs' allegations that City defendants "fomented" racism on the part of others. Courts have repeatedly held that fomenting racism on the part of others, when the defendants themselves did not act out of racial animus, does not constitute a violation of equal protection. *See, e.g.*, *Ward v. Coastal Carolina Health Care, P.A.*, 597 F. Supp. 2d 567, 572 (E.D.N.C. 2009) (section 1985 "is not a general federal tort statute and does not reach conspiracies motivated by economic or commercial animus) (citing *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 838 (1983)). On the contrary, "[t]o prevail upon a claim for racial discrimination in either a federal or state court in North Carolina, a plaintiff must establish improper motivation on defendant's part by proffering evidence of discriminatory intent." *McCallum v. North Carolina Coop. Extension Serv. of N.C. State Univ.*, 542 S.E.2d 227, 233 (N.C. Ct. App. 2001) (citing *Dep't of Corr. v. Gibson*, 301 S.E.2d 78, 83 (N.C. 1983)); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("[T]here must be . . . discriminatory animus behind the conspirators' action.") (citations omitted).

Plaintiffs' failure to allege facts suggesting intentional discrimination by the City Defendants thus dooms their federal and state equal protection claims. A recent Fourth Circuit case is illustrative. In *Monroe v. City of Charlottesville*, 579 F.3d 380 (4th Cir. 2009), the city police investigated a series of rapes. The victims described the rapist as a youthful looking black male, and investigators obtained DNA samples from the crime scenes. *Id.* at 382. Investigators approached black males in the community who matched the general description and asked them if they would submit a DNA sample. *Id.* Over several years, a total of 190 black males were stopped for this reason. *Id.* The plaintiff brought a class action suit asserting, among others, an equal protection claim. *Id.* The court rejected the claim, finding:

> The City did not . . . classify [plaintiff] on the basis of his race. The officers in this case did not approach [plaintiff] because he was African-American; rather, [plaintiff] was approached because he matched the description of the suspect given by several victims. This is not a case in which police created a criminal profile of their own volition and decided which characteristics, such as race, that the criminal possessed. Nor is this a situation where police were faced with conflicting or uncertain evidence as to the assailant's race and made the decision to pursue only African Americans. Certainly the description included the fact that the suspect was African American, but the officers were not the source of that portrayal. Instead, that description came from private citizens—the several victims of a sex crime reciting facts as they existed when the violent felony was being committed. . . . [The] officers merely recorded facts as they existed and conducted an investigation based on those facts. . . . The Equal Protection Clause requires "an express racial classification," which occurs when the government distinguishes among the citizenry on the basis of race. . . . And, it is clear the officers in this case made no such distinction when establishing the suspect's characteristics—any descriptive characterization came from the rape victims who described their assailant.

*Id.* at 388. In *Monroe*, as here, the focus on white suspects did not come from police, but from the alleged victim. In that circumstance, under either federal or state equal

- 12 -

protection provisions, the claim fails for lack of any facts suggesting intentional discrimination.

Finally, Plaintiffs' conclusory assertions of racism are so disconnected from the allegations in the Complaint that, under *Iqbal*, they can support no equal protection claim, whether federal or state. *See* City's Supp. Br. (*Iqbal*) at 12-13. These allegations are made against fourteen defendants. Yet, after two years of briefing and three separate complaints, Defendants are still left to guess which Defendant was allegedly motivated by animosity against these Plaintiffs because they are white. *See id.*; *see also Coggins v. Gov't of Dist. of Columbia*, No. 97-2263, 1999 WL 94655, at *4 (4th Cir. Feb. 19, 1999) ("The fact that [defendants] are both Caucasian makes any anti-Caucasian bias unlikely."); *Neely v. United States Postal Serv.*, No. 03-6566, 2007 WL 4389473, at *8 n.4 (E.D. Pa. Dec. 12, 2007) (when defendant of same race as plaintiff "substantially weakens any inference of discrimination"); *Williams v. Alternative Behavioral Servs.*, No. 2:03-CV-903, 2004 WL 3258906, at *7 (E.D. Va. Sep. 15, 2004) ("[A]ny inference of discrimination is negated when the decision-maker is in the same protected class as the plaintiff."). Because there is not one factual allegation from which racial animus of any individual can be inferred, Plaintiffs' state-law equal protection claim must be dismissed.

## IV. BECAUSE ADEQUATE ALTERNATIVE REMEDIES ARE AVAILABLE TO PLAINTIFFS, THEIR NEW CLAIM IS PRECLUDED

A court's recognition of a direct claim brought under the state constitution is an "extraordinary exercise of its inherent constitutional power," *Corum v. University of N.C.*, 413 S.E.2d 276, 291 (N.C. 1992), which may be exercised *only* when no other

- 13 -

Case 1:07-cv-00739-JAB-JEP   Document 128   Filed 03/11/10   Page 13 of 18

adequate remedies are available, *id.* at 291-92. Because such remedies are available here, Plaintiffs' state constitutional claim must be dismissed.

As the North Carolina Supreme Court recently confirmed, a court must look to any remedies available "based on the same facts" forming the basis of Plaintiffs' constitutional claim. *See Craig v. New Hanover County Bd. of Educ.*, 678 S.E.2d 351, 355 (N.C. 2009). A remedy is adequate for these purposes when, "if successful, [it] would have compensated [a plaintiff] for the same injury he claims in his direct constitutional action." *Rousselo v. Starling*, 495 S.E.2d 725, 731 (N.C. Ct. App. 1998) (citation omitted). Moreover, "the *form* of relief available . . . is irrelevant." *Iglasias v. Wolford*, 539 F. Supp. 2d 831, 839 (E.D.N.C. 2008). A remedy may be adequate even though it arises by virtue of different types of available claims,[3] in different venues or proceedings,[4] or from different defendants.[5] Moreover, whether the alternate remedy would ultimately be successful is irrelevant: Even if a claim wholly lacks merit—or is defective for other (non-immunity-based) reasons—its availability precludes a direct constitutional claim based on the same alleged facts. *See, e.g.*, *Alt v. Parker*, 435 S.E.2d

---

[3] *See, e.g.*, *Copper v. Denlinger*, 688 S.E.2d 426 (N.C. 2010) (administrative appeal provided adequate remedy precluding state constitutional claim); *Alt v. Parker*, 435 S.E.2d 773, 779 (N.C. Ct. App. 1993) (available administrative remedies precluded constitutional tort claim).

[4] *See, e.g.*, *Love-Lane v. Martin*, 355 F.3d 766, 789 (4th Cir. 2004) (precluding assertion of North Carolina constitutional claim in federal venue when statutory remedy had been available in state venue).

[5] *See, e.g.*, *Cooper v. Brunswick County Bd. of Educ.*, No. 7:08-CV-48, 2009 WL 1491447, at *4 (E.D.N.C. May 26, 2009) (finding that "a state-law remedy is still 'adequate' notwithstanding that a plaintiff could not use it to sue his preferred defendant.").

773, 779 (N.C. Ct. App. 1993) (holding that plaintiff's claim for false imprisonment constituted adequate state-law remedy notwithstanding that "plaintiff's claim for false imprisonment is fatally deficient").

Here, common law claims are undoubtedly available against other defendants in their individual capacities, including then-State Prosecutor Nifong. And courts in North Carolina have repeatedly concluded that when common-law claims against individual government actors in their individual capacities are available, they are "adequate remedies" in this context. For example, in *Glenn-Robinson v. Acker*, 538 S.E.2d 601 (N.C. Ct. App. 2000), the court examined whether the plaintiff could bring a constitutional claim against the city arising out of a false arrest by a city law enforcement officer. *See id.* at 632. The court first determined whether the plaintiff could bring a claim against a city law enforcement officer in his individual capacity. *Id.* Finding that such a claim against an individual officer was available, the court held that a constitutional claim against the city for the same conduct was precluded. *Id.* Other cases are in accord. *See, e.g.*, *Cooper v. Brunswick Co. Board of Educ.*, No. 7:08-CV-48-BO, 2009 WL 1491447, at *4 (E.D.N.C. May 26, 2009) ("[T]he existence of an adequate alternate remedy is premised on whether there is a remedy available to plaintiff for the violation, not on whether there is a right to obtain that remedy *from the State* in a common law tort action. That is, a state-law remedy is still 'adequate' notwithstanding that a plaintiff could not use it to sue his preferred defendant.") (citation omitted) (emphasis added); *Iglesias v. Wolford*, 539 F. Supp. 2d 831 (E.D.N.C. 2008); *Seaton v. Owens*, No. 1:02CV00734, 2003 WL 22937693, at *8 (M.D.N.C. Dec. 8, 2003) (finding

that available claims against officer in individual capacity "supplant[ed] the direct constitutional claims" against government).[6] The fact that Plaintiffs have available to them common-law claims against a number of individual defendants—and they have, in fact, asserted many such claims[7]—precludes a direct claim brought under the North Carolina Constitution.[8]

---

[6] In finding that a common law action against an officer in his individual capacity was an adequate alternate remedy—so as to preclude a constitutional claim against the government based on the same conduct—the *Rousselo* court observed:

> *Corum* did not hold that there had to be a remedy *against the State of North Carolina* in order to foreclose a direct constitutional claim. . . . [T]he existence of an adequate alternate remedy is premised on whether there is a remedy available to plaintiff *for the violation*, not on whether there is a right to obtain that remedy *from the State* in a common law tort action. Furthermore, we have implicitly held otherwise in [*Alt v. Parker*, 435 S.E.2d 773, 779 (N.C. Ct. App. 1993)], where the existence of the common law tort of false imprisonment foreclosed a direct constitutional claim against the state.

*Rousselo*, 495 S.E.2d at 731 (emphasis added). Notably, the *Rousselo* plaintiffs had argued that where an available common-law remedy appeared to be more difficult to prove than the state constitutional claim they wish to assert, such a remedy should not be considered "adequate." *Id.* The court disagreed: "We decline to hold that [the plaintiff] has no adequate remedy merely because the existing common law claim might require more of him." *Id.* at 732.

[7] Here, of course, as explained on numerous occasions throughout numerous briefs, Plaintiffs' individual capacity claims against City Defendants are riddled with defects. But, again, the merit of those claims is irrelevant to the "alternate remedy" inquiry.

[8] Even if the availability of individual capacity claims did not suffice in this context, Plaintiffs would not have been without other alternatives. For example, they could have brought a direct state-court action against Nifong's employer, the State of North Carolina, for a purported violation of their state constitutional rights. While Plaintiffs do somersaults to construct a supervisory role for *the City*, Nifong—as a matter of law—was the responsibility of the State. *See* City's Open. Br. at 11-17.

## V.  CONCLUSION

Plaintiffs' claim brought under the North Carolina Constitution must be dismissed.[9]

This the 11th day of March, 2010.

| | |
|---|---|
| FAISON & GILLESPIE | STEPTOE & JOHNSON LLP |
| By: /s/ Reginald B. Gillespie, Jr. | By: /s/ Roger E. Warin |
| Reginald B. Gillespie, Jr. | Roger E. Warin* |
| North Carolina State Bar No. 10895 | Michael A. Vatis* |
| 5517 Chapel Hill Boulevard, Suite 2000 | Matthew J. Herrington* |
| Post Office Box 51729 | John P. Nolan* |
| Durham, North Carolina  27717-1729 | Leah M. Quadrino* |
| Telephone:  (919) 489-9001 | Steptoe & Johnson LLP |
| Fax: (919) 489-5774 | 1330 Connecticut Avenue, NW |
| E-Mail: rgillespie@faison-gillespie.com | Washington, DC  20036 |
| | Telephone: (202) 429-3000 |
| | Fax: (202) 429-3902 |
| | E-Mail: rwarin@steptoe.com |
| | *(Motion for Special Appearance to be filed) |

*Attorneys for Defendant City of Durham, North Carolina*

---

[9] In addition to bringing a new claim against the City, Plaintiffs have made several other changes to the Complaint, most notably the style of "official capacity" claims. Plaintiffs now apparently purport to hold the City liable for the acts of the State Prosecutor and others through scattered references to "agents" of the City.  *See* Causes of Action 5, 7-10, 13-15, & 23.  But Plaintiffs' new wording choice does nothing to enhance the viability of those claims.  Plaintiffs' premise—whether styled as "agency" or as "official capacity with respect to Durham Police"—is both defective as a matter of law, *see* City's Opening Br. at 11-19, and, in any event, manifestly implausible.  *See generally Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

CERTIFICATE OF ELECTRONIC FILING AND SERVICE

       The undersigned hereby certifies that, pursuant to Rule 5 of the Federal Rules of Civil Procedure and LR5.3 and LR5.4, MDNC, the foregoing pleading, motion, affidavit, notice, or other document/paper has been electronically filed with the Clerk of Court using the CM/ECF system, which system will automatically generate and send a Notice of Electronic Filing (NEF) to the undersigned filing user and registered users of record, and that the Court's electronic records show that each party to this action is represented by at least one registered user of record (or that the party is a registered user of record), to each of whom the NEF will be transmitted.

       This the 11th day of March, 2010.

                             FAISON & GILLESPIE

                             By: /s/ Reginald B. Gillespie, Jr.
                                Reginald B. Gillespie, Jr.
                                North Carolina State Bar No. 10895
                                5517 Chapel Hill Boulevard, Suite 2000
                                Post Office Box 51729
                                Durham, North Carolina  27717-1729
                                Telephone:  (919) 489-9001
                                Fax: (919) 489-5774
                                E-Mail: rgillespie@faison-gillespie.com

                                *Attorneys for Defendant the City of Durham,*
                                    *North Carolina*