**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

DAVID F. EVANS, et al.,

      Plaintiffs,

      v.

CITY OF DURHAM, N.C., et al.,

      Defendants.

Case No. 1:07CV739

## PLAINTIFFS' RESPONSE TO THE CITY OF DURHAM'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

In its Order of February 16, 2010, the Court permitted the Defendant City of Durham to file a supplemental brief "addressing only the new matters reflected in the Second Amended Complaint." Order, Doc. 115, at 3. What the Court received, however, was a rehash of the same arguments that the City has raised in its prior briefing. The City asserts, yet again, that Plaintiffs' claims really sound in due process, not unlawful seizure; that Plaintiffs cannot recover reputational damages; that Defendant Nifong and the grand juries were intervening causes of Plaintiffs' injuries; that Plaintiffs have not sufficiently alleged racial animus; and that Plaintiffs' 572-paragraph Second Amended Complaint ("Complaint" or "SAC") fails to provide the specificity required by *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). In short, the City has transformed the Court's leave for supplemental briefing on "new matters" into a vehicle to reargue issues that are decidedly not "new" and have been exhaustively briefed by the parties. Notwithstanding the quantity of briefing, the City's arguments remain fundamentally flawed because they "rely on a

mischaracterization of Plaintiffs' allegations, or . . . depend on propositions of law that do not exist or are inapplicable on the facts alleged." Pls.' Consol. Opp. to Defs' Mot'ns To Dismiss 1st Am. Compl. ("1st Consol. Opp."), Doc. 51, at 1. Moreover, the City's fallback position, that the availability of claims against other Defendants requires dismissal of the constitutional claim against the City, is directly contradicted by *Craig v. New Hanover County Board of Education*, 678 S.E.2d 351, 355-56 (N.C. 2009), in which the plaintiff did assert such claims against another defendant, yet the North Carolina Supreme Court permitted a direct constitutional claim to proceed against the municipality. In short, Plaintiffs have stated a claim under Article I, Section 19, of the North Carolina Constitution ("Section 19").

## I.    *IQBAL* DOES NOT PERMIT THE CITY TO DISTORT PLAINTIFFS' FACTUAL ALLEGATIONS.

Plaintiffs have previously responded at length to the City's arguments, repeated in its Supplemental Brief ("City's Supp. Br."), *see* Doc. 128, at 8-10, regarding the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and Plaintiffs incorporate those responses by reference here. *See* Pls.' Supp. Br. Opposing Mot'ns To Dismiss, Doc. 107. As in its prior briefing, the City continues to rewrite the allegations of the Complaint in order to create an alternate reality of the infamous Duke Lacrosse Case: this time, as a "commonplace" investigation (City's Supp. Br., Doc. 128, at 9), devoid of the acts of fabrication, concealment, and false racially-charged public statements actually alleged in the Complaint.

The City contends, for example, that Plaintiffs are simply "tak[ing] issue with the length, degree, and intrusiveness of the criminal investigation into Crystal Mangum's rape claim," City's Supp. Br., Doc. 128, at 10, and that the "true nature" of the Complaint

Case 1:07-cv-00739-JAB-JEP   Document 130   Filed 04/01/10   Page 2 of 22

is "that City investigators should have taken less time investigating; . . . weighed the available evidence differently; and . . . never should have suspected these Plaintiffs of any wrongdoing," City's Supp. Br., Doc. 128, at 9. This, of course, is not what the Complaint alleges at all. *See* 1st Consol. Opp., Doc. 51, at 2-17 (summarizing allegations of Defendants' fabrication of evidence, concealment of evidence of actual innocence, and false public statements). Indeed, the City's distortion of the instant allegations is akin to characterizing the "true nature" of the allegations in the Rodney King case as a dispute over the "length, degree, and intrusiveness" of a traffic stop.[1]

Similarly, the City discards the allegations of the City Defendants' knowledge of the overwhelming fatal inconsistencies in Crystal Mangum's claims and the lack of probable cause against Plaintiffs before they engaged in and/or approved the wrongful acts (SAC ¶¶ 49-50, 54-56, 67-68, 78-79, 89-90, 99-100, 103-104, 106-107, 174-175, 195-196, 210-211), punctuated by Nifong's blunt conclusion that "we're f*cked" when confronted with the actual facts in late March 2006 (*id.* ¶ 138), and Himan's query, "With what?" when approached about seeking indictments of Seligmann and Finnerty in April 2006 (*id.* ¶ 220). Instead, in the City's alternate reality, its investigators were simply relying in good faith on descriptions provided by a credible crime victim, in order to create the false illusion of factual similarity to *Monroe v. City of Charlottesville*, 579 F.3d 380 (4th Cir. 2009), *cert denied*, 2010 WL 757718 (U.S. Mar. 8, 2010). *See* City's Supp.

---

[1] The City appears to be engaging in these contortions to support its claim that the allegations here are like those in *Wolf v. Fauquier County Board of Supervisors*, 555 F.3d 311 (4th Cir. 2009), a procedural due process case involving allegations that officials had failed to quickly investigate and resolve allegations of child abuse. *See* City's Supp. Br., Doc. 128, at 9. As noted below, however, Plaintiffs are challenging affirmative misconduct that resulted in unlawful seizures, not a deprivation of procedural due process by failing to investigate quickly enough. *See* Section II.A, *infra*.

Br., Doc. 128, at 12.  This is nonsense.  Even a reporter who had reviewed Crystal Mangum's numerous, self-contradictory police statements at the time recalled just how "absurd[]" her claims were:

> [W]hen I was reviewing statements [Mangum] made to the police about the night of the lacrosse incident, I remember counting that she'd changed her story at least 10 different times.  There were so many different versions of events that her statements took on an air of absurdity.

Susannah Meadows, *Crystal Mangum's Return to Court*, Newsweek.com (Feb. 23, 2010), *available at* http://www.newsweek.com/id/234050 (last visited Mar. 31, 2010).

The Supreme Court's decision in *Iqbal* simply does not permit a defendant to recharacterize or omit the factual allegations of a complaint in order to deem them "not plausible."  *See Lane v. Page*, 649 F. Supp. 2d 1256, 1286 (D.N.M. 2009) (rejecting defendant's mischaracterization of allegations under *Iqbal*); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 321 (S.D.N.Y. 2009) (same); *Martrano v. Quizno's Franchise Co.*, No. 08-0932, 2009 WL 1704469, at *11 (W.D. Pa. June 15, 2009) (same).  To the contrary, *Iqbal* embraces the well-settled rule that "in evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  What *Iqbal* does stand for is that "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement . . . [and] unwarranted inferences, unreasonable conclusions, or arguments" do not "constitute well-pled facts."  *Nemet*, 591 F.3d at 255 (internal quotation marks omitted) (citing *Iqbal*, 129

S.Ct. at 1949); *see also Francis*, 588 F.3d at 193.  The Complaint, as actually pleaded, does not fall into any of these impermissible categories.

## II.  THE AMENDED COMPLAINT STATES A CLAIM UNDER THE NORTH CAROLINA CONSTITUTION.

### A.  The City Continues To Mischaracterize Plaintiffs' Claims as Grounded in "Due Process" Rather than "Unlawful Seizure."

Similarly, the City devotes over half of its Supplemental Brief to recharacterizing Plaintiffs' claims as purportedly sounding in either procedural or substantive "due process," in order to support its argument that due process rights cannot attach where "Plaintiffs were never subjected to a trial."  City's Supp. Br., Doc. 128, at 5.  This is the same tactic that the City employed in its first motion to dismiss, *see* City Br. in Support of Mot. To Dismiss 1st Amended Complaint, ("City's 1st Motion To Dismiss") Doc. 43, at 20-24, and yet again, it mischaracterizes what Plaintiffs have actually alleged.  As both the Complaint and Plaintiffs' prior briefing make clear, Plaintiffs' claims are not based on violations of the Due Process Clause, but rather, on unlawful indictments and seizures in violation of the Fourth and Fourteenth Amendments to the United States Constitution and analogous principles of North Carolina law.  *See, e.g.*, SAC ¶¶ 4, 33 (noting that action arises "under the Fourth and Fourteenth Amendments"); SAC ¶ 335 ("As result of these wrongful prosecutions, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution."); 1st Consol. Opp., Doc. 51, at 3 ("As a result of Defendants' misconduct, Plaintiffs were unlawfully seized without probable cause . . . ."); *id.* at 31-35 (discussing Plaintiffs' unlawful seizure claims and noting that they serve as the basis for the claims against the City).  *See also generally* SAC ¶¶ 222, 242, 335, 347, 356, 368, 378, 383, 386, 392, 398, 405, 416, 423, 434, 442, 450, 457, 465, 474, 483 (alleging violations of Plaintiffs' rights "under the

5

Fourth and Fourteenth Amendments").  As Plaintiffs have previously explained, an unlawful seizure claim is directly actionable even if the criminal proceedings never result in a trial: "The case law establishes that a plaintiff need not have been convicted in order to bring a § 1983 claim under the Fourth Amendment for unlawful seizure without probable cause.  The only prerequisite for such a claim is that the criminal proceedings have been terminated in the plaintiff's favor."  1st Consol. Opp., Doc. 51, at 39 (citing cases).[2]

The City makes no attempt to address Plaintiffs' extensive allegations and discussion of unlawful seizure liability.  Instead, the City attempts to limit the first sentence of Section 19 to due process alone and to frame Plaintiffs' allegations accordingly.  But the North Carolina courts have recognized that Section 19 — the plain

---

[2] The City cites the concurrence in *Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000), to suggest that the absence of a trial precludes liability for the intentional concealment of evidence.  However, the *Jean* concurrence did not endorse this proposition.  *See id.* at 659-63 (Wilkinson, J., concurring).  Rather, as Plaintiffs explained in their prior briefing, in *Jean*, "every judge on an otherwise divided *en banc* Fourth Circuit" recognized "the right . . . to be free from 'bad faith' concealment of evidence that results in a 'constitutional deprivation,'" precisely what Plaintiffs allege here.  1st Consol. Opp., Doc. 51, at 33 (citing *Jean*, 221 F.3d at 662-63 (Wilkinson, J., concurring); *id.* at 677 (Murnaghan, J., dissenting); *id.* at 679 (Luttig, J., dissenting)).  It was the absence of bad faith that was relevant in *Jean*.  *Id.* at 662-63 (Wilkinson, J., concurring).  Similarly, *Koubriti v. Convertino*, 593 F.3d 459 (6th Cir. 2010) (cited at City's Supp. Br., Doc. 128, at 5), which found officers were entitled to qualified immunity for a failure to take notes, did not involve allegations of fabricated evidence, bad faith, or unlawful seizure by the very defendants who failed to take notes.  *See id.* at 470-471 & n.13.  Such conduct is alleged here, however (*see, e.g.*, SAC ¶¶ 208-211, 219-221, 224-242), and under *Jean*, it was clear in 2000 that such bad faith concealment would have been prohibited by every judge on the Fourth Circuit.  *See also Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004) (plaintiff stated claim for unlawful seizure where defendant allegedly concealed exculpatory evidence and falsified evidence to inculpate plaintiff); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 477 (S.D.N.Y. 2009) (same).

language of which prohibits any person from being "taken, imprisoned, or disseized" in a manner contrary to "the law of the land" — stands as a bulwark against <u>all</u> forms of state action that result in unlawful seizures, detention, or imprisonment, including conduct in violation of the Fourth Amendment. *See, e.g.*, *North Carolina v. Wiley*, 565 S.E.2d 22, 32 (N.C. 2002) (citing Section 19 as analogous to the Fourth Amendment's protection of "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"); *North Carolina v. Williams*, 447 S.E.2d 817, 819 (N.C. Ct. App. 1994) (same); *North Carolina v. Putman*, 220 S.E.2d 176, 179 (N.C. Ct. App. 1975) ("It is settled that the Fourth Amendment to the Federal Constitution and Art. 1, Sec. 19, of our State Constitution guarantee that, in ordinary circumstances, even the strong arm of the law cannot invade a home except under authority of a search warrant issued in accordance with statutory provisions, and evidence obtained by an illegal search without a search warrant is inadmissible."). The phrase "law of the land," therefore, is not limited simply to due process claims, but also to claims involving "unreasonable searches and seizures" that would violate the Fourth Amendment. *Wiley*, 565 S.E.2d at 32.

Once Plaintiffs' claims are evaluated as pleaded, rather than as recharacterized by the City, the flaws in the City's remaining "due process" arguments are evident. For example, the City continues to argue that Plaintiffs cannot recover for reputational injury because there is no recognized due-process-based "liberty interest" in their reputations. City's Supp. Br., Doc. 128, at 4-5; *see also* City's 1st Motion To Dismiss, Doc. 43, at 23 (making same argument). As Plaintiffs have previously explained, however, they "are not alleging that their interest in their reputations is a liberty or property interest," but rather, that the unlawful indictments and seizures caused by Defendants resulted in

reputational damages by falsely linking Plaintiffs with perhaps the most widely publicized allegations of a racially-motivated gang rape in modern American history. 1st Consol. Opp., Doc. 51, at 36-37. Not surprisingly, this caused Plaintiffs to "suffer[] irreparable harm to their reputations," including being subjected "to extreme and sustained public obloquy, . . . death threats, taunts, and insults, and . . . [reputational] assaults by the local, national, and international media." SAC ¶¶ 4, 514. Both the Supreme Court and the Fourth Circuit have held that such reputational damages are recoverable under "the common law of torts": "As to Plaintiffs' claims for reputational damages, it is well settled that because § 1983 incorporates 'the common law of torts,' it permits a plaintiff to recover all damages that flow from a constitutional deprivation, including any damages for 'impairment of reputation . . . , personal humiliation, and mental anguish and suffering.'" 1st Consol. Opp., Doc. 51, at 37 (alteration in original) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986); citing *Randall v. Prince George's County*, 302 F.3d 188, 208 (4th Cir. 2002) (quoting *Stachura*); *Price v. City of Charlotte*, 93 F.3d 1241, 1245 (4th Cir. 1996) (same); Michael Avery, David Rudovsky & Karen Blum, *Police Misconduct* §§ 13:9-13:10, at 733-37 (3d ed. 2009)). The City cites no case that overrules this settled law, or that otherwise precludes recovery of reputational damages resulting from an unlawful seizure. Instead, it relies on a single North Carolina case in which no seizure occurred, and where the plaintiff instead was making a standalone, due-process-based claim to reputational injury resulting from false information in a personnel file. *See Toomer v. Garrett*, 574 S.E.2d 76 (N.C. Ct. App. 2002).

Similarly, while the City acknowledges that the allegations of Defendants' concealment of exculpatory evidence "could support a due process claim in some

contexts," it continues to argue that such allegations are "irrelevant" in the absence of a trial. City's Supp. Br., Doc. 128, at 5; *see also* City's 1st Motion To Dismiss, Doc. 43, at 20-24 (making same argument). This argument still fails, because as Plaintiffs previously explained in their prior briefing, "[t]he fact that a § 1983 defendant's fabrication of evidence may be challenged under the due process clause after a conviction does not mean that it cannot violate the Fourth Amendment where it causes only a seizure; it just means that, after a conviction, the plaintiff's continued confinement 'passes over from the Fourth Amendment to the due process clause.'" 1st Consol. Opp., Doc. 51, at 39 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988)).

The City also reasserts its prior argument that there was no "causative link" because Nifong and the grand juries were the intervening cause of Plaintiffs' injuries. City's Supp. Br., Doc. 128, at 6; *see also* City's 1st Motion To Dismiss, Doc. 43, at 24-27 (making same argument). Plaintiffs devoted at least seven pages of their earlier opposition brief to debunking this argument. *See* 1st Consol. Opp., Doc. 51, at 40-46. To summarize, this argument fails where, as here, there are allegations of fabricated evidence by investigators and where, as here, Nifong is alleged to have engaged in the misconduct together with the City Defendants. *See id.* "[N]either a grand jury indictment nor a prosecutor's decision to seek indictment—nor, for that matter, a judge's decision to issue an arrest warrant or a trial jury's vote to convict—breaks the 'causal chain' or constitutes an 'absolute defense' for § 1983 purposes where, as here, a police officer or other defendant is alleged to have 'misrepresented, withheld, or falsified evidence' that influenced that decision." *Id.* at 41-42 (quoting *White v. Frank*, 855 F.2d 956, 961-62 (2d Cir. 1988); citing *Malley v. Briggs*, 475 U.S. 335 (1986); *Wilmore*, 407 F.3d at 283; *Jones v. City of Chicago*, 856 F.2d at 994; *Wagenmann v. Adams*, 829 F.2d

196, 212-13 (1st Cir. 1987)).  The City continues to rely on *Rhodes v. Smithers*, but as that case makes clear, the actions of a prosecutor serve as an intervening cause only where the prosecutor is acting in good faith.  939 F. Supp. 1256, 1274 (S.D.W. Va. 1995), *aff'd per curiam*, 91 F.3d 132 (4th Cir. 1996).[3]  That is, quite obviously, not this case.  *See Zahrey v. Coffey*, 221 F.3d 342, 353-54 (2d Cir. 2000) (rejecting identical "causation" defense by prosecutor alleged to have conspired with police to cause plaintiff's arrest without probable cause).

### B.     The Twenty-Third Cause of Action also Alleges a Violation of Equal Protection, in Violation of Section 19.

The City also contends that the Twenty-Third Cause of Action fails to state a claim under the second sentence of Section 19, which provides that "No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin."  The City's arguments on this issue are identical to those it has already made in response to Plaintiffs' federal civil rights conspiracy claims under 42 U.S.C. §§ 1985 and 1986:  that Plaintiffs purportedly fail to allege a "protected class" (even though they concede the allegations are based on race, *see* City's Supp. Br., Doc. 128, at 10-13), or identify which Defendants were motivated by, or acted out of, racial animus (even though the Complaint identifies those Defendants in the federal civil rights conspiracy claims, *see* SAC ¶¶ 437-485).

---

[3]  Likewise, there was no suggestion in *Snider v. Lee*, 584 F.3d 193, 206 (4th Cir. 2009) (Stamp, J., concurring), *cert. denied*, 2010 WL 595533 (Mar. 29, 2010) (cited in City's Supp. Br., Doc. 128, at 6), that the prosecutor and magistrate judge were acting in bad faith.

Plaintiffs have already responded to these arguments at length in their prior briefing, *see* 1st Consol. Opp., Doc. 51, at 92-95; Pls.' Supp. Br., Doc. 107, at 8-15 & n.4. In addition, Plaintiffs note the following:

1. The City makes the sweeping contention that "[c]ourts have repeatedly" rejected allegations that a defendant had "fomented racism on the part of others, when the defendants themselves did not act out of racial animus." City's Supp. Br., Doc. 128, at 11. However, the lone case cited by the City for this proposition, *Ward v. Coastal Carolina Health Care, P.A.*, 597 F. Supp. 2d 567 (E.D.N.C. 2009), contains no such holding and instead stands for the unremarkable proposition that the federal civil rights conspiracy laws do not extend to "economic or commercial animus." *See id.* at 572. Here, Plaintiffs are not alleging economic or commercial animus, but rather, the fomenting of racial animus by making false public statements that three white Duke lacrosse players engaged in a racially-motivated gang rape, and then fabricating evidence to reach that conclusion after they knew that Mangum was lying and that there was no probable cause that a crime occurred. *See, e.g.*, SAC ¶¶ 437-485. While *Ward* does not speak to this issue, Plaintiffs have previously identified several cases that do recognize that the fomenting of racial animus is sufficient to state a violation of the federal civil rights laws. 1st Consol. Opp., Doc. 51, at 93-94 (citing *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 41 F.3d 1190, 1194 (7th Cir. 1994), *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 331 (7th Cir. 1974), and *Ortega v. Merit Ins. Co.*, 433 F. Supp. 135, 140-41 (N.D. Ill. 1977)).

2. The City relies upon the Fourth Circuit's decision in *Monroe v. City of Charlottesville*, 579 F.3d 380 (4th Cir. 2009), but a careful reading of that decision establishes that it supports Plaintiffs' equal protection claims. The City cites *Monroe* to

argue that an officer's good-faith reliance on a crime victim's racial description of a suspect does not constitute intentional discrimination because "the focus on white suspects did not come from police, but from the alleged victim." City's Supp. Br., Doc. 128, at 12. But there is a threshold problem with the City's argument: in *Monroe*, there actually were "a series of rapes" and good faith reliance on real crime victims. Here, as the Complaint makes clear, not only was there no rape, but the City Defendants knew it at the time they engaged in or approved the racially-based misconduct. *See, e.g.*, SAC ¶¶ 49-50, 54-56, 67-68, 78-79, 89-90, 99-100, 103-104, 106-107, 174-175, 195-196, 210-211. As noted above, even the *Newsweek* reporter who reviewed Mangum's police statements at the time recalled "counting that she'd changed her story at least 10 different times," and that "[t]here were so many different versions of events that her statements took on an air of absurdity." Susannah Meadows, *Crystal Mangum's Return to Court*, Newsweek.com (Feb. 23, 2010), *available at* http://www.newsweek.com/id/234050. Far from good faith reliance on a victim's racial description, Nifong and the City Defendants did precisely what the Fourth Circuit observed *would* constitute intentional discrimination: "creat[ing] a criminal profile *of their own volition* and decid[ing] which characteristics, such as race, that the criminal possessed." *Monroe*, 579 F.3d at 388 (emphasis added). This effort to disregard the "facts as they existed," *id.*, and instead to concoct a suspect profile based on the racial characteristics that Nifong and Durham Police had promised in their false public statements, is the core of the equal protection violation and precisely what the equal protection clause of Section 19 prohibits.

3.      The City also cites a number of cases in which courts expressed skepticism of equal protection claims made against defendants of the same race as the plaintiff. *See* City's Supp. Br., Doc. 128, at 13. Here, however, the races of Nifong and the City

Defendants are irrelevant. Plaintiffs are alleging that Nifong and the City Defendants improperly concocted a racially-based suspect profile to satisfy a constituency whipped into a racial frenzy by their false public statements, not that they were at all times racists harboring animus towards all white persons. Moreover, the City's reliance on this line of authority is puzzling, given that several of the City Defendants are of a different race than Plaintiffs.[4]

### C. To the Extent that an Unlawful Seizure Claim Must Be Made Under Both Section 19 and Section 20 of the North Carolina Constitution, Plaintiffs Move for Leave To Amend.

As noted above, both the Complaint and Plaintiffs' prior briefing make clear that Plaintiffs' claims are based on the unlawful seizures of Plaintiffs in violation of the Fourth and Fourteenth Amendments and analogous principles of North Carolina law, not on a due process violation. *See* Section II.A, *supra*. And, as noted above, the North Carolina courts have recognized that Section 19 provides analogous protections to those of the Fourth Amendment. *See Wiley*, 565 S.E.2d at 32; *Williams*, 447 S.E.2d at 819; *Putman*, 220 S.E.2d at 179.

The City does not contend in its supplemental briefing here that Plaintiffs' unlawful seizure theory cannot be asserted under Section 19. However, Plaintiffs note that the City has contended in a footnote to its supplemental brief in another case that Section 20 of the North Carolina Constitution, the "general warrants" prohibition, is "the

---

[4] *See also Billingsley v. Jefferson County*, 953 F.2d 1351, 1353 (11th Cir. 1992) ("The presence of a [same-race official] in a supervisory or decision-making position in Jefferson County cannot shield the county from liability under Title VII."); *Lewis v. Sears Roebuck & Co. (In re Lewis)*, 845 F.2d 624, 635 (6th Cir. 1988) ("The mere presence" of a same-race official "in the decision-making process cannot shield a company from liability under civil rights statutes.").

13

section . . . which speaks to searches and seizures." Doc. No. 180 in *McFayden v. Duke Univ.*, Case No. 1:07-cv-00953-JAB-WWD, at 5 n.3 (citing *State v. Carter*, 370 S.E.2d 553, 555 (N.C. 1988)).

Plaintiffs would disagree with any contention that Section 19 is an inappropriate vehicle to assert a direct constitutional claim to challenge unlawful seizures, particularly in light of the cases cited above, which invoke Section 19 in precisely that context.[5] However, to the extent that (1) the City intends to make this argument for the first time on reply, (2) the Court permits it, and (3) the Court concludes that the Twenty-Third Cause of Action must allege both Section 19 and Section 20 to be actionable on an unlawful seizure theory, Plaintiffs hereby move for leave to amend to add the phrase "and Section 20" after "Section 19" in this claim. *See Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002) ("Under Rule 15(a), . . . leave to amend a complaint shall be freely given when justice so requires.") (internal quotation marks omitted); *Wall v. Fruehauf Trailer Servs. Inc.*, 123 F. App'x 572, 577 (4th Cir. 2005) (affirming leave to amend, where "amendment did not substantively change the claim, only the statute under which the claim proceeded"); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)

_____

[5] North Carolina courts and practitioners also routinely invoke Section 19, instead of Section 20, in challenging unlawful seizures. *See, e.g.*, *North Carolina v. Fletcher*, 500 S.E.2d 668 (N.C. 1998); *North Carolina v. Carrouthers*, 683 S.E.2d 781 (N.C. Ct. App. 2009); *North Carolina v. Robinson*, 658 S.E.2d 501, 504 (N.C. Ct. App. 2008); *North Carolina v. Gabriel*, 665 S.E.2d 581, 585 (N.C. Ct. App. 2008); *North Carolina v. Robinson*, 653 S.E.2d 889, 891 (N.C. Ct. App. 2007); *North Carolina v. Ghaffar*, 377 S.E.2d 818, 822-23 (N.C. Ct. App. 1989); *Kling v. Harris Teeter Inc.*, 338 F. Supp. 2d 667, 675 (W.D.N.C. 2002), *aff'd*, 86 F. App'x 662 (4th Cir. 2004). Plaintiffs have identified no case holding that it is improper to invoke Section 19 alone to challenge an unlawful seizure. Rather, the caselaw suggests that, at most, Section 19 and Section 20 are each a sufficient constitutional basis to challenge an unlawful seizure.

(reversing denial of leave to amend where statute of limitations had not barred assertion of "parallel claims" based upon the same factual allegations at time of motion).

## III. THE CITY'S FALLBACK "ADEQUATE REMEDY" THEORY IS MISPLACED IN LIGHT OF *CRAIG*.

Finally, the City asserts that the Twenty-Third Cause of Action should be dismissed because Plaintiffs' ability to prosecute state-law claims against other Defendants on the same facts constitutes an "adequate remedy at law," even if those claims "wholly lack[] merit" or are "defective for other (non-immunity-based) reasons." City's Supp. Br., Doc. 128, at 14. This argument fails for several reasons.

Most importantly, the City's theory is entirely at odds with the North Carolina Supreme Court's decision in *Craig v. New Hanover County Board of Education*, 678 S.E.2d 351 (N.C. 2009), the very basis for the Twenty-Third Cause of Action. In *Craig*, the Supreme Court recognized the availability of a direct claim against a municipality under the North Carolina Constitution where a plaintiff's state common-law claims against the municipality were barred by governmental immunity. The City does not dispute the applicability of *Craig's* holding here, in the event the Court finds that the City is immune from Plaintiffs' state common-law claims on governmental immunity grounds. Instead, the City contends that the direct constitutional claim recognized by the Supreme Court cannot be brought where "different defendants" could be sued "on the same facts." City's Supp. Br., Doc. 128, at 14.

If the City's legal theory were correct, however, the North Carolina Supreme Court would have reached a different outcome in *Craig*. There, the plaintiff had sued not only the county, but <u>also</u> his school principal in her official and individual capacity, for negligently failing "to adequately protect him from a sexual assault." 678 S.E.2d at 352.

15

Yet, rather than affirming the lower court's decision to dismiss the state constitutional claims against the municipality based on the availability of a common-law claim against the principal — the result the City would urge here — the North Carolina Supreme Court instead analyzed the "adequate remedy" issue only as to the claims against the defendant municipality and concluded there was none because of the application of governmental immunity. *Id.* at 356-57.[6]

Similarly, the North Carolina Supreme Court analyzed the "adequate remedy" issue only as to the municipality, not other defendants, in its recent decision in *Copper v. Denlinger*, 688 S.E.2d 426 (N.C. 2010). There, the plaintiff had filed suit against the defendant school board and several individuals sued in their official and individual capacities relating to the plaintiff's long-term suspension from school. Although the plaintiff had alleged that several of the individual defendants had engaged in actions to prevent the plaintiff from challenging his suspension, *id.* at 429, the claims against both the individual defendants and the school board were ultimately dismissed, *id.* at 427-28 & n.3. On appeal, the Supreme Court analyzed the dismissal of the state constitutional claim against the school board and concluded that the plaintiff had an adequate remedy at law, <u>not</u> because the plaintiff had been able to sue the individual defendants, but because the plaintiff had the opportunity to pursue an administrative appeal as to the <u>board</u>. *Id.* at 429 (citing N.C. Gen. Stat. Ann. §§ 115C-45(c) & 391(c) (2007)).

---

[6] Although the trial court in *Craig* had dismissed the claims against the defendant principal, *see* 678 S.E.2d at 352-53 & n.2, under the City's reading of the law, such claims still would have constituted an "adequate remedy," City's Supp. Br., Doc. 128, at 14-15 (citing *Alt v. Parker*, 435 S.E.2d 773, 779 (N.C. Ct. App. 1993)).

The North Carolina Supreme Court's recent analysis of the "adequate remedy" issue in *Craig* and *Copper* is entirely consistent with the common law of torts, which has been applied to federal constitutional claims to hold all tortfeasors responsible for "the natural consequences of [their] actions." *Washington v. Wilmore*, 407 F.3d 274, 283 (4th Cir. 2005) (quotation marks omitted); *accord Memphis Cnty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986). By contrast, the City's theory — that the "adequate remedy" analysis should extend to all defendants, *see* City's Supp. Br., Doc. 128, at 14 — is inconsistent with these principles. More importantly, it makes no logical sense. Under the City's theory, no one could ever assert a constitutional claim against a municipality, because one could always assert claims against other defendants on the same facts — the municipal employees whose actions gave rise to the violation — just as the plaintiff did in *Craig*. Indeed, if the City's preferred theory were correct, the decision in *Craig* would have been an "advisory opinion," and there would be no direct incentive for municipalities to take actions to correct violations of constitutional rights, because they could simply carve out insurance coverage for such torts (to invoke governmental immunity) and point to other defendants as the purported "adequate remedy." This was exactly the opposite of what the North Carolina Supreme Court intended in *Craig*, which was to create precisely such an incentive for municipalities that had been reworking their insurance policies to claim governmental immunity. *See Craig*, 678 S.E.2d at 356-57.

Notably, the City identifies no decision of the North Carolina Supreme Court that adopts the reasoning it now urges. Instead, the City cites only to lower state court and federal district court decisions that pre-date *Craig*. At least one of those decisions relied upon the lower court decision that was ultimately reversed by the North Carolina Supreme Court in *Craig*. *See Cooper v. Brunswick County Bd. of Educ.*, No. 7:08-CV-

48-BO, 2009 WL 1491447, at *4 (E.D.N.C. May 26, 2009) (citing *Craig v. New Hanover County Bd. of Educ.*, 648 S.E.2d 923, 927 (N.C. Ct. App. 2007), *rev'd*, 678 S.E.2d 351 (N.C. 2009)).  Another was cited by the lower court in *Craig* in erroneously concluding that it was "bound by precedent" to reach the opposite conclusion from the one ultimately reached by the North Carolina Supreme Court.  *Craig*, 648 S.E.2d at 926-27 (citing *Alt v. Parker*, 435 S.E.2d 773, 779 (N.C. Ct. App. 1993)).  Given the analysis of the "adequate remedy" issue in *Craig* and *Copper*, the cases cited by the City do not reflect the current views of the North Carolina Supreme Court.  If they did, the Supreme Court would have affirmed in *Craig* on the ground that the plaintiff's negligence claim against the school principal, while "wholly lack[ing] merit," constituted an "adequate remedy at law." City's Supp. Br., Doc. 128, at 14.  This, however, was not the result in *Craig*.

Finally, even if the City's theory were correct, the Twenty-Third Cause of Action could not be dismissed at this stage for two additional reasons.  First, even under the City's theory, any assessment of "adequate remedies" would be premature until the other Defendants' claims of immunity have been fully adjudicated.  See City's Supp. Br., Doc. 128, at 14 (arguing that claims against other defendants preclude a direct constitutional claim only if defective for a "non-immunity-based" reason).  Certainly, there would be no "adequate remedy" at state law if the Court were to conclude that the City was entitled to governmental immunity on Plaintiffs' common-law claims and that the other Defendants also were immune from suit on such claims.  In that case, the only state-law remedy would be the Section 19 claim against the City.  *See Craig*, 678 S.E.2d at 356-57. Second, as the Court is aware, Plaintiffs seek not only monetary damages against the City, but also injunctive relief to remedy the violations of Plaintiffs' rights.  SAC ¶ 572. Plaintiffs cannot obtain this injunctive relief from other Defendants.  Therefore, even

under the City's "adequate remedy" theory, the Twenty-Third Cause of Action could not be dismissed as to Plaintiffs' claim for injunctive relief against the City.

## CONCLUSION

For the aforementioned reasons, the Court should deny the City's motion to dismiss the Twenty-Third Cause of Action.

Dated:  April 1, 2010                    Respectfully submitted,


**WILLIAMS & CONNOLLY LLP**

By:      /s/ Christopher N. Manning
By:      /s/ Charles Davant IV
         Brendan V. Sullivan, Jr. (*pro hac vice*)
         Robert M. Cary (*pro hac vice*)
         Christopher N. Manning (*pro hac vice*)
         Charles Davant IV (N.C. Bar #28489)
         725 Twelfth Street, N.W.
         Washington, DC  20005
         Tel.:        (202) 434-5000
         E-mail:      cdavant@wc.com

*Attorneys for Plaintiffs David F. Evans and Collin Finnerty*


                    -and-


**RUDOLF WIDENHOUSE & FIALKO**


By:      /s/ David S. Rudolf
         David S. Rudolf (N.C. Bar #8587)
         225 East Worthington Avenue
         Suite 200
         Charlotte, NC 28203
         Tel.:        (704) 333-9945
         E-mail:      dsrudolf@rwf-law.com


19

**BARRY C. SCHECK, ESQ.**

Barry C. Scheck*
Attn: Elizabeth Vaca
100 Fifth Avenue
New York, NY 10011
Tel.:          (212) 364-5390
E-mail:       bcsinnocence@aol.com

(* motion for special appearance
   to be filed)

**EMERY CELLI BRINCKERHOFF &
   ABADY LLP**

Richard D. Emery (*pro hac vice*)
Ilann M. Maazel (*pro hac vice*)
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
Tel.:          (212) 763-5000
Fax.:         (212) 763-5001
E-mail:       remery@ecbalaw.com

*Attorneys for Plaintiff Reade Seligmann*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID F. EVANS, et al.,

        Plaintiffs,

        v.

CITY OF DURHAM, N.C., et al.,

        Defendants.

Case No. 1:07CV739

## CERTIFICATE OF SERVICE

        I hereby certify that on April 1, 2010, the foregoing **RESPONSE TO THE CITY OF DURHAM'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Reginald B. Gillespie, Jr.
*Counsel for Defendant City of Durham*

Joel M. Craig
Henry W. Sappenfield
*Counsel for Defendant Benjamin Himan*

James B. Maxwell,
*Counsel for Defendant David Addison*

Edwin M. Speas
Eric P. Stevens
*Counsel for Defendant Mark Gottlieb*

Patricia P. Kerner
D. Martin Warf
Hannah G. Styron
*Counsel for Defendants Steven Chalmers, Beverly Council, Ronald Hodge, Jeff Lamb,*
*Patrick Baker, Michael Ripberger, and Lee Russ*

Robert A. Sar
Nicholas J. Sanservino, Jr.
*Counsel for Defendant DNA Security*

Robert J. King III
Kearns Davis
Clinton R. Pinyan
*Counsel for Defendant DNA Security, Inc. & Richard Clark*

Paul R. Dickinson, Jr.
James A. Roberts, III
*Counsel for Defendant Brian Meehan*

Linwood Wilson
*Pro se*

James B. Craven III
*Counsel for Michael B. Nifong*


Respectfully submitted,

/s/ Charles Davant IV
Charles Davant IV (N.C. Bar No. 28489)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Tel.:          (202) 434-5000
Email:        cdavant@wc.com

*Attorney for Plaintiffs David F. Evans and*
*Collin Finnerty*

22