# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CIVIL ACTION NO. 1:07-CV-00739

|  |  |
|---|---|
| DAVID F. EVANS, *et al.*, | |
| Plaintiffs, | |
| v. | REPLY BRIEF WITH RESPECT TO THE CITY OF DURHAM'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS |
| THE CITY OF DURHAM, NORTH CAROLINA, *et al.*, | |
| Defendants. | |

| FAISON & GILLESPIE | STEPTOE & JOHNSON LLP |
|---|---|
| Reginald B. Gillespie, Jr. <br> North Carolina State Bar No. 10895 <br> 5517 Chapel Hill Boulevard, Suite 2000 <br> Durham, North Carolina  27717-1729 | Roger E. Warin* <br> Michael A. Vatis* <br> Matthew J. Herrington* <br> John P. Nolan* <br> Leah M. Quadrino* <br> Steptoe & Johnson LLP <br> 1330 Connecticut Avenue, NW <br> Washington, DC  20036 <br> *(Motion for Special Appearance to be filed) |

*Attorneys for Defendant City of Durham, North Carolina*

Plaintiffs make two important concessions that narrow not only their new state constitutional claim, but also their original federal claims. First, Plaintiffs expressly state that they are not alleging that Defendants' actions violated due process.[1] Second, Plaintiffs expressly state that they do not claim that any Defendants acted out of racial animus, but only that Defendants sought to "foment" racial animus by others. These concessions make even clearer that Plaintiffs have failed to state a claim under the North Carolina Constitution. Moreover, these concessions underscore why Plaintiffs' *federal* claims should also be dismissed, for the reasons discussed in the City's prior briefs.

With regard to the merits of Plaintiffs' "unreasonable seizure" claim, the central question is whether the brief seizure at issue—*i.e.*, Plaintiffs' post-indictment arrest—may be attributed, as a matter of law, to the City. Under state as well as federal law, the answer is an unqualified no: the intervening decisions by the district attorney (to seek an indictment) and the grand jury (to return it) preclude City liability.[2]

---

[1] *See* Resp. (Doc. No. 130) at 5 ("Plaintiffs' claims are not based on violations of the Due Process Clause"). Plaintiffs suggest that it was obvious that they were not claiming due process violations, since the Complaint refers repeatedly to deprivations of their "Fourth and Fourteenth Amendment" rights. *Id*. at 5-6. Plaintiffs forget that the Due Process Clause is contained in the Fourteenth Amendment. (And the language of their claims—"concealment of evidence," "fabrication of evidence," "false public statements"—certainly added no clarity.) Had Plaintiffs been more candid in noting that their reference to the Fourteenth Amendment was only for the purpose of invoking the incorporation doctrine, it would have saved the Court from having to wade through pages and pages of unnecessary briefing.

[2] Plaintiffs' claim fails for the additional reason that Section 19 of the North Carolina Constitution is not the appropriate vehicle for an unlawful seizure claim, since Section 20 thereof exists for such claims. *See State v. Carter*, 370 S.E.2d 553, 555 (N.C. 1998). In recognition of this, Plaintiffs now ask this Court to allow them to amend their

Plaintiffs acknowledge that Michael Nifong, when deciding to seek an indictment against Plaintiffs, did so with his eyes open: City investigators fully informed Nifong of the available evidence, and he was neither misled nor pressured by any City official. *See, e.g.*, Second Am. Compl. ("SAC") (Doc. No. 116) ¶ 137; *see also* Opp'n Br. (Doc. No. 51) at 44-45.[3] Accordingly, Nifong's decision was his own. So, under a long line of case law from this and many other circuits, Nifong's decision to seek an indictment broke the chain of causation between investigators' alleged conduct and Plaintiffs' arrest.[4]

Plaintiffs assert (once again) that a prosecutor's decision to seek an indictment serves as an intervening cause "only where the prosecutor is acting in good faith." Resp.

---

Complaint to add a Section 20 claim—before the parties have even completed briefing on Plaintiffs' Section 19 claim. If Plaintiffs ever do make a proper motion to amend their Complaint yet again, that motion should be denied. Plaintiffs have thrown a spaghetti bowl of claims against the wall, and nothing has stuck. They should not be allowed to throw another wet noodle to see if that might stick, at the expense of this Court's time and the Durham taxpayers' resources.

[3] Indeed, as discussed *infra* at 4-5, Plaintiffs allege that Nifong was the leader of a conspiracy to falsely indict the Plaintiffs. Plaintiffs can hardly turn around and say that Nifong was somehow *misled* by City investigators—which is what the case law requires in order for the City to be held liable for Plaintiffs' arrest.

[4] *See, e.g.*, *Rhodes v. Smithers*, 939 F. Supp. 1256, 1274 (S.D. W. Va. 1995) ("[I]t is . . . well established that where an officer presents all relevant probable cause evidence to . . . a prosecutor . . . [it] breaks the causal chain and insulates the officer from a section 1983 claim"), *aff'd mem.*, 91 F.3d 132 (4th Cir. 1996); *Senra v. Cunningham*, 9 F.3d 168, 174 (1st Cir. 1993) ("The chain of causation is broken if the filing of the [criminal complaint] by the . . . state Attorney General's office was free of pressure or influence exerted by the police officers or knowing misstatements made by the officers to the Attorney General's office"); *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996); *Egervary v. Young*, 366 F.3d 238, 247 (3d Cir. 2004); *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999); *Murray v. Earle*, 405 F.3d 278, 292 (5th Cir. 2005); *Eubanks v. Gerwen*, 40 F.3d 1157, 1160-61 (11th Cir. 1994).

at 10. Thus, in their view, the potential liability of an *investigator* is dependent upon the state of mind of the *prosecutor*. This bizarre theory has no support in the case law. While Plaintiffs purport to find support in *Rhodes*, that case plainly undermines their argument. The *Rhodes* court dismissed malicious prosecution claims against investigators on causation grounds—*even though* the defendants had also accused the prosecutor of bad faith. 939 F. Supp. at 1263-65; *see also* City's Reply Br. (Doc. No. 65) at 4 & n.3. Neither *Rhodes*, nor any other case,[5] supports Plaintiffs' argument that only good-faith prosecution decisions break the chain of causation.

Plaintiffs also recycle their old argument that allegations of conspiracy between the prosecutor and investigators suffice to clear the proximate-cause hurdle. Resp. at 9; Opp'n Br. at 44. But here, too, their theory finds no support. Plaintiffs again trot out *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000), but as the City has explained, *see* Reply Br. at 5-6, that case involved a *prosecutor's* liability for fabricating evidence before *he himself* decided to indict the plaintiff. 221 F.3d at 347. And if there were any doubt that the reasoning of *Zahrey* was limited to its unusual facts, that doubt was quickly put to rest by *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (noting that *Zahrey*

---

[5] Plaintiffs also assert that Judge Stamp's concurrence in *Snider v. Lee*, 584 F.3d 193 (4th Cir. 2009), supports the idea that the causation inquiry turns on the good faith of the prosecutor. Resp. at 10 n.3. But Judge Stamp never suggested any such thing. *See* 584 F.3d at 206 ("A law enforcement officer who presents all relevant probable cause evidence to a prosecutor. . .is insulated from a malicious prosecution claim where such intermediary makes an independent decision to pursue prosecution . . . thereby breaking the causal chain between the officer's conduct and the prosecution unless the officer concealed or misrepresented facts or brought such undue pressure to bear on the intermediary that the intermediary's independent judgment was overborne.") (citing *Rhodes*).

"involved 'the unusual circumstance that the same person took both the initial act of alleged misconduct and the subsequent intervening act,'" and refusing to extend *Zahrey*'s reasoning to allegations against investigators). Tellingly, Plaintiffs continue to ignore *Wray* entirely.[6]

The touchstone here is not whether the district attorney acted in good or bad faith, or even whether investigators agreed or disagreed with his decision. Rather, it is *whether the decision remained the prosecutor's to make*. Thus, if investigators force the prosecutor's hand—through undue pressure or by hiding relevant information from him—they may be found liable because they have effectively usurped the prosecutor's role. *See, e.g.*, *Domenech v. City of Philadelphia*, No. 06-1325, 2009 WL 1109316 (E.D. Pa. Apr. 23, 2009) ("[A] plaintiff can only proceed against a police officer under a malicious prosecution theory if the officer 'knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed decision.'") (citing cases). But short of that scenario, the inquiry returns to first principles: Any official government action must be attributed to the entity authorized to take such action under state law. *See McMillian v. Monroe Co.*, 520 U.S. 781, 786 (1997) (whether official

---

[6] Even if allegations of conspiracy were sufficient to transform the district attorney's prosecutorial decision into a City policy—which they most surely are not—Plaintiffs' claim would still fail because they do not allege facts sufficient to make out a conspiracy. Plaintiffs offer only one allegation that relates to a discussion between the investigators and Nifong about an indictment: Upon hearing that Plaintiffs Finnerty and Seligmann were to be indicted, Investigator Himan remarked, "With what?" *See* SAC ¶ 220. This statement suggests not a meeting of the minds, but a candid reaction to a decision in which City investigators had no say. *See* City's *Iqbal* Br. at 7-10.

decision is attributable to state or local entity depends on "the definition of the official's functions under relevant state law"). Under North Carolina law, only the district attorney has the authority to make decisions to prosecute criminal cases, *see* N.C. Const. art. IV § 18(1), and he does so on behalf of the state itself. *See State v. Smith*, 607 S.E.2d 607, 625 (N.C. 2005) (district attorney "entrusted by the State with unique authority" to "decide[] who shall be initially charged [and to] draft[] criminal indictments for submission to the grand jury").

That, of course, is only part of the causation problem facing these Plaintiffs. Any alleged misconduct by investigators is even further removed from Plaintiffs' post-indictment arrest by virtue of the grand jury's independent decision to return the indictment. *See, e.g.*, *Rhodes*, 939 F. Supp. at 1278; *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) ("It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party.") (citation omitted). While Plaintiffs make conclusory allegations about investigators misleading the grand jury, *see* SAC ¶¶ 219, 241, they have not alleged that investigators perjured themselves. Moreover, grand jury proceedings provide no *opportunity* for a witness to volunteer exculpatory information—let alone provide grand jury targets with an underlying *right* to have such evidence presented. *See United States v. Williams*, 504 U.S. 36, 51-55 (1992); Reply Br. at 6-7. Here, Plaintiffs do not allege that investigators concealed facts from the grand jury "when those facts had been *specifically requested*"

by the grand jury—the standard required for liability to attach. *See Rhodes* 939 F. Supp. at 1278. Accordingly, the grand jury's independent decision provides a second break in the chain of causation between the investigators' actions and Plaintiffs' arrest.[7]

As for their equal protection theory, Plaintiffs have now jettisoned their claim that City Defendants were motivated by racial animus. As they now state: "Plaintiffs are alleging that Nifong and the City Defendants improperly concocted a racially-based suspect profile to satisfy a constituency whipped into a racial frenzy by their false public statements, not that they were at all times racists harboring animus towards all white persons." Resp. at 13. This concession makes sense, since there is not a single factual allegation in the complaint that even remotely suggests that any Defendant acted with any racial animus. The problem for Plaintiffs though, is that this concession destroys any equal protection claim they could even conceivably have had—under federal *or* state law. That is because "racial animus"—racial hatred as a motivating factor—is a required element of an equal protection claim under either the state or federal constitution. *See* City's Supp. Br. (Doc. No. 128) at 11; *see also McCallum v. N.C. Coop. Extension Serv.*,

---

[7] Even if Plaintiffs could overcome the proximate causation hurdle, their unreasonable seizure claims would be deficient because their allegations of malicious intent and conspiracy are merely conclusory. *See* City's *Iqbal* Br. at 10-13. Plaintiffs complain that the City has improperly "discard[ed]" their factual allegations. Resp. at 3. But when allegations are no more than conclusions, that is exactly what *Iqbal* requires. *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Once Plaintiffs' conclusory allegations are stripped away, this case is indistinguishable from recent Fourth Circuit decisions rejecting claims brought by suspects who felt they were wrongly targeted. *See Wolf v. Fauquier County Bd. of Supervisors*, 555 F.3d 311 (4th Cir. 2009); *Monroe v. City of Charlottesville*, 579 F.3d 380 (4th Cir. 2009).

542 S.E.2d 227, 233 (N.C. Ct. App. 2001). What Plaintiffs have alleged is at most only the "awareness of consequences"—*i.e.*, the awareness that the investigation would heighten racial passions within the community. That awareness—in the absence of any racial animosity motivating Defendants' conduct—is patently insufficient to state a claim. *See, e.g., Iqbal,* 129 S. Ct. at 1948 ("[P]urposeful discrimination requires more than intent as volition or intent as awareness of consequences.") (citation omitted).

Plaintiffs once again cite several Seventh Circuit cases to support their argument that fomenting the racial feelings of others "is sufficient to state a violation of the federal civil rights laws." Resp. at 11. But those cases involved *Section 1982*, a statute designed to remedy the badges and incidents of slavery in property markets. *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968). Section 1982 does *not* require proof of intentional discrimination, *in marked contrast* to the equal protection claims at issue here. *See* City Reply Br. at 19-20; City's Supp. Br. at 11.[8]

Finally, even if Plaintiffs' Section 19 claims were not deficient on the merits, those claims are precluded because Plaintiffs have adequate alternate remedies available to them. Plaintiffs do not dispute this principle. Rather, they argue that the principle somehow does not apply unless that alternate remedy is available against *the same defendant*. But the courts have found otherwise. *See, e.g.*, *Rousselo v. Starling*, 495

---

[8] Plaintiffs do not even bother to address the City's argument that Plaintiffs' Section 19 claims are deficient because Plaintiffs are not members of a protected class. *See* Supp. Br. at 10-11. For that reason, too, the equal protection aspect of Plaintiffs' Section 19 claim must be dismissed.

S.E.2d 725, 731 (N.C. Ct. App. 1998); *Cooper v. Brunswick Co. Bd. of Educ.*, No. 7:08-CV-48-BO, 2009 WL 1491447, at *4 (E.D.N.C. May 26, 2009) ("[T]he existence of an adequate alternate remedy is premised on whether there is a remedy available to plaintiff for the violation, not on whether there is a right to obtain that remedy *from the State* in a common law tort action. That is, a state-law remedy is still 'adequate' notwithstanding that a plaintiff could not use it to sue his preferred defendant.") (citation omitted) (emphasis added); *Iglesias v. Wolford*, 539 F. Supp. 2d 831 (E.D.N.C. 2008); *Seaton v. Owens*, No. 1:02CV00734, 2003 WL 22937693, at *8 (M.D.N.C. Dec. 8, 2003).

Plaintiffs argue that all these decisions must be swept aside in light of *Craig v. New Hanover County Bd. of Educ.*, 678 S.E.2d 351 (N.C. 2009). But *Craig* did not even purport to address the issue of whether remedies against other defendants can constitute "adequate alternate remedies." The issue was simply not raised in *Craig*. Rather, *Craig* addressed only the narrow issue of whether the availability of claims *which are subject to dismissal on sovereign immunity grounds* precludes direct constitutional claims.[9]

*Craig* did not eliminate the requirement for courts to inquire whether adequate alternate remedies exist against *any* defendant. It simply said that remedies precluded by sovereign immunity are not adequate alternates. Potential claims against other defendants—even if those claims are dismissable, or actually dismissed, on other

---

[9] Nor did the recent decision in *Copper v. Denlinger*, 688 S.E.2d 426 (N.C. 2010), address this issue. Instead, *Copper* highlights that, even after *Craig*, the full scope of available remedies must be considered. *See id.* at 429 (finding that the availability of *administrative* remedies precludes a direct constitutional claim).

-8-

grounds—preclude a direct constitutional claim. *See, e.g.*, *Rousselo*, 495 S.E.2d at 731 ("[T]he existence of an adequate alternate remedy is premised on whether there is a remedy available to plaintiff for the *violation*, not on whether there is a right to obtain that remedy *from the State* in a common law tort action."); *Alt v. Parker*, 435 S.E.2d 773, 779 (N.C. Ct. App. 1993) (holding that plaintiff's claim for false imprisonment constituted adequate state-law remedy notwithstanding that "plaintiff's claim for false imprisonment is fatally deficient"). Before and after *Craig*, "the *form* of relief available . . . is irrelevant." *Iglesias*, 539 F. Supp. 2d at 839 (emphasis added).

Plaintiffs are asking this Court to assume that the *Craig* court overruled, *sub silentio*, these longstanding North Carolina precedents. But there is no reason to think that the *Craig* court implicitly took such a momentous step when the issue was not even raised, let alone addressed, in that case. It is possible that North Carolina courts could one day decide to overrule their precedents and adopt Plaintiffs' desired position. But *Craig* itself certainly did not suggest that approach, so there is no reason for this Court to adopt it when the North Carolina courts have not.

Because common-law claims may be brought (and have been brought) against individual defendants, those claims—even though deficient—preclude a direct constitutional claim against the City.[10] Plaintiffs' state constitutional claim should therefore be dismissed.

---

[10] Contrary to Plaintiffs' argument, Resp. at 18, dismissal of their Section 19 claim would not be "premature." Plaintiffs suggest that the Court should wait for adjudication of their injunctive relief claim. But that claim is so obviously deficient that there is no

-9-

Case 1:07-cv-00739-JAB-JEP   Document 131   Filed 04/15/10   Page 10 of 12

This the 15th day of April, 2010.

| FAISON & GILLESPIE | STEPTOE & JOHNSON LLP |
|---|---|
| By: /s/ Reginald B. Gillespie, Jr. | By: /s/ Roger E. Warin |
| Reginald B. Gillespie, Jr. | Roger E. Warin* |
| North Carolina State Bar No. 10895 | Michael A. Vatis* |
| 5517 Chapel Hill Boulevard, Suite 2000 | Matthew J. Herrington* |
| Post Office Box 51729 | John P. Nolan* |
| Durham, North Carolina  27717-1729 | Leah M. Quadrino* |
| Telephone:  (919) 489-9001 | Steptoe & Johnson LLP |
| Fax: (919) 489-5774 | 1330 Connecticut Avenue, NW |
| E-Mail: rgillespie@faison-gillespie.com | Washington, DC  20036 |
| | Telephone: (202) 429-3000 |
| | Fax: (202) 429-3902 |
| | E-Mail: rwarin@steptoe.com |
| | *(Motion for Special Appearance to be filed) |

*Attorneys for the City of Durham, North Carolina*

---

reason to wait. *See* Open Br. at 42-48.  Moreover, Plaintiffs' injunctive-relief claim is actually *yet another* alternate remedy which precludes their state constitutional claim.

Nor is there any reason to wait to see whether Plaintiffs' claims against individual Defendants are barred by public officer immunity.  Even if the Court finds, as it should, that public officer immunity bars the individual claims, those claims are still "available" as a matter of state law.  *See Rousselo*, 495 S.E.2d at 731-32 (claim is "adequate" even though the plaintiff will have to demonstrate that defendant "acted with malice, corruption, or beyond the scope of his duty").  There is no reason to assume, as Plaintiffs do, that *Craig*—which dealt only with governmental immunity—would also reach public officer immunity, which is a fundamentally different legal doctrine.  While sovereign immunity "rest[s] on a respect for the positions of two coequal branches of government," *Corum*, 413 S.E.2d at 291, public officer immunity—like qualified immunity under federal law—protects *individual* officers in order to encourage sound decisionmaking without fear of litigious reprisals.  *See Epps v. Duke University Inc.*, 468 S.E.2d 846, 850-51 (N.C. Ct. App. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982).

-10-

CERTIFICATE OF ELECTRONIC FILING AND SERVICE

      The undersigned hereby certifies that, pursuant to Rule 5 of the Federal Rules of Civil Procedure and LR5.3 and LR5.4, MDNC, the foregoing pleading, motion, affidavit, notice, or other document/paper has been electronically filed with the Clerk of Court using the CM/ECF system, which system will automatically generate and send a Notice of Electronic Filing (NEF) to the undersigned filing user and registered users of record, and that the Court's electronic records show that each party to this action is represented by at least one registered user of record (or that the party is a registered user of record), to each of whom the NEF will be transmitted.

      This the 15th day of April, 2010.

                              FAISON & GILLESPIE

                              By: /s/ Reginald B. Gillespie, Jr.
                                  Reginald B. Gillespie, Jr.
                                  North Carolina State Bar No. 10895
                                  5517 Chapel Hill Boulevard, Suite 2000
                                  Post Office Box 51729
                                  Durham, North Carolina 27717-1729
                                  Telephone: (919) 489-9001
                                  Fax: (919) 489-5774
                                  E-Mail: rgillespie@faison-gillespie.com

                                  *Attorneys for Defendant the City of Durham,*
                                      *North Carolina*