IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID F. EVANS; COLLIN FINNERTY;
and READE SELIGMANN,

        Plaintiffs,

v.

THE CITY OF DURHAM, NORTH
CAROLINA; MICHAEL B. NIFONG;
MARK GOTTLIEB; BENJAMIN HIMAN;
DAVID ADDISON; LINWOOD WILSON;
STEVEN CHALMERS; BEVERLY
COUNCIL; RONALD HODGE; JEFF
LAMB; STEPHEN MIHAICH; MICHAEL
RIPBERGER; LEE RUSS; DNA
SECURITY, INC.; RICHARD CLARK;
and BRIAN MEEHAN,

        Defendants.

No. 1: 07-CV-739

**BRIEF IN SUPPORT OF MOTION BY DEFENDANTS DNA SECURITY, INC.
AND RICHARD CLARK TO DISMISS REMAINING CLAIMS**

BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, L.L.P.
Post Office Box 26000
Greensboro, North Carolina 27420
Telephone:   336/373-8850
Facsimile:   336/378-1001

Robert J. King III
  N.C. State Bar No. 15946
  rking@brookspierce.com
William P.H. Cary
  N.C. State Bar No. 7651
      wcary@brookspierce.com
Brian J. McMillan
  N.C. State Bar No. 23852
  bmcmillan@brookspierce.com
Charnanda T. Reid
  N.C. State Bar No. 38927
  creid@brookspierce.com

*Counsel for Defendants DNA Security, Inc. and Richard Clark*

Defendants DNA Security, Inc. ("DSI") and Richard Clark ("Clark") (collectively, "the DSI Defendants"), through counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c) and Local Rule 7.2, respectfully submit this Brief in support of their Motion to Dismiss Remaining Claims.

## MATTER BEFORE THE COURT

In their Second Amended Complaint (Docket #116) ("Doc. #116"), Plaintiffs asserted twenty-three causes of action against sixteen Defendants, including thirteen claims against DSI and Clark. On March 31, 2011, this Court dismissed a number of the Plaintiffs' claims, including seven causes of action against the DSI Defendants.[1] Doc. #134. The Court denied the DSI Defendants' motion to dismiss the remaining claims against them (described below, the "Remaining Claims") and also denied motions by Defendants the City of Durham, Durham police officers, and their supervisors (collectively, "the Durham Defendants") based on assertions of qualified immunity. *Id.* The Durham Defendants timely filed interlocutory appeals of right (based on the denial of their assertions of qualified immunity) and also appealed on other grounds which are now pertinent to the Remaining Claims and the present motion, as described below. The DSI Defendants did not appeal because their right to do so was doubtful.

The Fourth Circuit has now resolved the Durham Defendants' appeals, rejecting the vast majority of Plaintiffs' claims as a matter of law. Doc. #182. Among other

---

[1] This Court dismissed conspiracy claims asserted pursuant to §1983, §1985(2), §1985(3) and §1986 (Causes of Action 7, 8, 10, and 12); and dismissed intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence claims (Causes of Action 15, 20, and 22).

1

actions, the Fourth Circuit: dismissed Plaintiffs' §1983 claims against Officers Mark Gottlieb and Benjamin Himan on the grounds that Prosecutor Nifong's decision to seek indictments was an intervening cause that broke the chain of causation between the alleged conduct of Defendants Gottlieb and Himan and Plaintiffs' alleged injuries; dismissed Plaintiffs' state law malicious prosecution claim against Corporal David Addison because Plaintiffs failed to allege conduct sufficient to establish an actionable tort; and rejected Plaintiffs' state law obstruction of justice claims as a matter of law, holding that former criminal suspects like Plaintiffs cannot state a claim based on police conduct in the current circumstances.

Pursuant to the Fourth Circuit's mandate and the applicable law of the case and for the reasons elaborated below, the Remaining Claims against Defendants Clark and DSI should be dismissed as a matter of law.

## REMAINING CLAIMS AGAINST DSI DEFENDANTS

Following the dismissal by this Court of seven of Plaintiffs' claims against the DSI Defendants, the Remaining Claims against the DSI Defendants are:

- three §1983 claims (alleging malicious prosecution, concealment of evidence, and fabrication of false evidence) (Causes of Action 1, 2, and 3);

- a state law claim for malicious prosecution (Cause of Action 13);

- a state law claim for obstruction of justice (Cause of Action 14); and

- a negligent supervision claim (Cause of Action 21) premised on first establishing liability under one of the foregoing claims.

2

DSI and Clark now seek dismissal of these Remaining Claims.

## SUMMARY OF PERTINENT FACTUAL ALLEGATIONS

Given the size of the Second Amended Complaint, the irrelevance of many of the allegations to claims asserted against the DSI Defendants, and the current stage of this litigation,[2] the DSI Defendants[3] offer the following brief factual summary of the allegations made against them.

In the main, Plaintiffs broadly characterize the conduct of Defendants Clark, Meehan, and DSI (along with Gottlieb, Himan, Nifong, and Wilson) as having intentionally concealed exculpatory DNA evidence (specifically, in DSI's May 12, 2006 Report). Doc. #116 ¶¶232-36. The "exculpatory evidence" allegedly concealed was evidence concerning sexual contact between the alleged victim (Crystal Mangum) and persons other than the Duke lacrosse players or Mangum's boyfriend. Plaintiffs' actual factual allegations as to the DSI defendants are as follows:

- Pursuant to a state court order, rape kit items were transferred to DSI for specialized DNA testing. *Id.* ¶¶202-03. That Order directed DSI to analyze evidence from the rape kit and "the 46 cheek swabbings taken from the group containing the suspects

---

[2] This Court (Doc. #133 at 3-18) and the Fourth Circuit (Doc. #183 at 3-14) have previously summarized the factual allegations of Plaintiffs' Second Amended Complaint and the other two, related Duke Lacrosse cases.

[3] Defendant Brian Meehan is represented by separate counsel. Because the DSI Defendants are frequently lumped together in the Second Amended Complaint, however, much of the discussion in this Brief necessarily relates to, and applies to, Meehan as well as DSI and Clark.

3

[collected pursuant to an earlier non-testimonial order]… and if any male positive results are found among the victim's swabs, to <u>compare the DNA to the 46 cheek swabbings</u> [hereafter referred to as the "Reference Specimens"] to determine if an identification can be made." Exhibit 1 to DSI Defendants' Motion (emphasis added).

- DSI's analyses[4] excluded all members of the lacrosse team, including Plaintiffs, as sources of the DNA found on the rape kit items. *Id.* ¶206.

- On April 10, 2006, Nifong, Himan, and Gottlieb met with Meehan and Clark. Meehan orally reported the analyses to date, which indicated several men had contributed to the DNA found in the rape kit samples but excluded the lacrosse players with 100% certainty. *Id.* ¶207.

- On April 17, 2006, Plaintiffs Finnerty and Seligmann were indicted. *Id.* ¶¶212-13.

- On April 21, 2006, Nifong, Gottlieb, Himan, Meehan, and Clark met and Meehan again reported that the DNA results excluded the Duke lacrosse players. *Id.* ¶224.

- On May 12, 2006, Nifong, Himan, Meehan, and Clark again met and Meehan provided Nifong with a ten-page report regarding the DNA testing, which was provided to Plaintiffs that same day. *Id.* ¶¶229-32, 236.

- The May 12, 2006 Report (Exhibit 2 to DSI Motion) (the "Report") accurately and correctly reports, after comparing <u>all</u> of the evidence samples (rape kit and other

---

[4] The DNA testing involved three types of samples: "Reference Specimens" from potential DNA sources (the Duke lacrosse players and Mangum's boyfriend); "sexual assault" or "rape kit" samples, which were collected from Mangum's person and clothing; and other evidence samples, which included items such as false fingernails collected from the bathroom at the scene (610 N. Buchanan Blvd.).

4

evidence including fingernails collected later) to the Reference Specimens (Ex. 2, pp. 1-4), that only three potential matches to the Reference Specimens were found (Ex. 2, pp. 5-10): Plaintiff David Evans could not be excluded as the source of DNA found on one of the fingernails, non-Plaintiff Kevin Coleman could not be excluded as the source of DNA found on another of the fingernails, and Mangum's boyfriend could not be excluded as the source of DNA found in one of the rape kit vaginal swabbings. The Report correctly found **no other matches**–*i.e.*, no matches between any lacrosse players and any item in the rape kit. *Id.* The same day, at a press conference, the lacrosse players' attorneys emphasized the Report's exonerating results–the lack of any DNA link between the lacrosse players and the rape kit samples.[5]

- Plaintiffs now characterize the Report as having "intentionally omitted the DNA results that matched or were consistent with the multiple unidentified men who had not provided any reference specimens for comparison (the "multiple unidentified males"). *Id.* ¶232. This is the "exculpatory evidence" Plaintiffs accuse the DSI Defendants of concealing.[6]

- On May 15, 2006, Plaintiff David Evans was indicted. Doc. #116 ¶238.

---

[5] http://www.cbsnews.com/video/watch/?id=1616508n (video of May 2006 press conference); http://www.wral.com/news/local/story/1091695/.

[6] As to this evidence, the Report states: "Individual DNA profiles for non-probative evidence specimens and suspect reference specimens are being retained at DSI pending notification of the client." Ex.2, p. 5.

5

- Plaintiffs allege that Nifong, in multiple court appearances in the underlying criminal proceedings against Plaintiffs, repeatedly concealed the full results from the DSI analyses. *Id.* ¶¶275-306, 308.

## QUESTIONS PRESENTED

1.  Does the Fourth Circuit's opinion require dismissal of Plaintiffs' remaining § 1983 claims against the DSI Defendants?

2.  Does the Fourth Circuit's opinion require dismissal of the state law malicious prosecution claim against the DSI Defendants?

3.  Does the Fourth Circuit's opinion require dismissal of the state law obstruction of justice claim against the DSI Defendants?

4.  Does Plaintiff's negligent supervision claim against DSI fail for lack of an underlying tort claim?

## ARGUMENT

**I.  The Mandate Rule and Law of the Case Doctrine Require Dismissal of Plaintiffs' Remaining Claims Against DSI and Clark.**

"The mandate rule prohibits lower courts, with limited exceptions, from considering questions that the mandate of a higher court has laid to rest." *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007).[7] The mandate rule is a more powerful version of the law of the case doctrine and requires the trial court to treat the appellate court's decision as controlling. *Id.* at 464-65.

_____

[7] The Fourth Circuit's mandate to this Court includes its judgment (Doc. #183) and opinion (Doc. #182). *See* FED. R. APP. P. 41(a).

Even where the mandate does not explicitly address certain claims, the appellate court's decisions regarding applicable law may provide grounds for dismissal as a matter of law on remand. *See Stott v. Martin*, 783 F. Supp. 970, 974, 976 (E.D.N.C. 1992) (analyzing renewed motions to dismiss filed after remand from Fourth Circuit). This is a result of the law of the case doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (internal quotation marks omitted). *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009).

> [O]nce the decision of an appellate court establishes the law of the case, it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal [ ] unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.

*Id.* (internal quotation marks omitted) (second alteration original).

As elaborated below, application of the law as clarified by the Fourth Circuit requires dismissal of all of the Remaining Claims against DSI and Clark.

## II.    Plaintiffs' §1983 Claims (Causes of Action 1, 2, & 3) Against the DSI Defendants Fail for Lack of Causation.

The Fourth Circuit determined that Plaintiffs' §1983 claims for malicious prosecution were cognizable only as a claim for unlawful seizure in violation of the Fourth Amendment. Doc. #182 at 18; *see also id.* at 17-18 n.2 ("Because the Fourth Amendment provides 'an explicit textual source' for §1983 malicious prosecution claims, the Fourteenth Amendment provides no alternative basis for those claims.").

To state a §1983 claim for an unreasonable seizure in violation of the Fourth Amendment, Plaintiffs "must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupportable by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *See id.* at 18; *see also Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). The decision of a prosecutor or grand jury to seek or issue an indictment breaks the chain of causation, although a defendant may still face liability if he "lied to or misled the prosecutor, failed to disclose exculpatory evidence to the prosecutor, or unduly pressured the prosecutor to seek the indictment." Doc. #182 at 20-21 (citations omitted); *see also Rhodes v. Smithers*, 939 F. Supp. 1256, 1274 (S.D. W. Va. 1995) ("[W]here an officer presents all relevant probable cause evidence to an intermediary, such as a prosecutor, a grand jury, or a magistrate, the intermediary's independent decision to seek a warrant, issue a warrant, or return an indictment breaks the causal chain and insulates the officer from a section 1983 claim based on lack of probable cause for an arrest or prosecution."), *aff'd*, 91 F.3d 132, No. 95-2837, 1996 U.S. App. LEXIS 18638 (4th Cir. 1996) (per curiam) (unpublished); *Barts v. Joyner*, 865 F.2d 1187, 1196 (11th Cir. Fla. 1989) ("The intervening acts of the prosecutor [and] grand jury . . . each break the chain of causation unless plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant policemen.").

Focusing on the causation element, the Fourth Circuit rejected Plaintiffs' claims against Officers Gottlieb and Himan, holding that Nifong's "independent decision to seek an indictment br[oke] the causal chain," because Plaintiffs' failed to "allege that Officers

8

Gottlieb and Himan either misled or pressured Nifong to seek . . . indictments" of Plaintiffs. Doc. #182 at 24.

For the same reason, Plaintiffs' claims against the DSI Defendants fail for lack of causation. Plaintiffs nowhere allege that DSI, Clark, or Meehan lied to, misled, failed to disclose exculpatory evidence to or unduly pressured Nifong to seek the indictments of Plaintiffs. To the contrary, Plaintiffs allege that Meehan and Clark (and, derivatively, DSI) reported the <u>full results</u> of their analyses to Nifong prior to Nifong's independent decision to seek indictments. Doc. #116 ¶207 ("During the April 10 Meeting, Meehan orally reported the results of *all analyses* conducted by DSI to date . . . ." (emphasis added); *id.* ¶224 ("During the April 21 meeting, Meehan reported [four additional results from DNA analyses]. . . ."); *id.* ¶229 ("On May 12, 2006, Nifong returned to DSI with Himan for another meeting with Dr. Meehan and Defendant Clark to discuss the results of *all of the lab's testing*. . . ." (emphasis added)).

Moreover, Plaintiffs repeatedly allege that Nifong alone chose to seek the indictments of Plaintiffs. *Id.* ¶¶212-214, 238-39. Indeed, Clark, Meehan, and DSI are not alleged to have any direct involvement in the grand jury proceedings, except that Nifong is alleged to have used the DSI Report in obtaining the May 15, 2006 indictment of Plaintiff Evans. *Id.* ¶¶215, 218-20, 238, 240-41.[8]

---

[8] To the extent the Report's discussion of the link between Evans and one of the fingernails recovered from the house may have played a role in Evans's indictment, there is no potential liability to the DSI Defendants, since the accuracy of such findings has not been challenged.

9

The Fourth Circuit's determination that the §1983 claims against Gottlieb and Himan should be dismissed because Nifong's actions constituted an intervening act that broke the chain of causation applies equally to Plaintiffs' claims against the DSI Defendants. Under the law as clarified by the Fourth Circuit, Plaintiffs have failed to allege that the DSI Defendants wrongfully caused the Plaintiffs' alleged injuries. Accordingly, Plaintiffs' remaining §1983 claims against the DSI Defendants should be dismissed for failure to state a claim. Because Clark and Meehan did not cause Plaintiffs' alleged injuries as a matter of law, the derivative claims against DSI similarly fail.[9]

### III. Plaintiffs' Common Law Malicious Prosecution Claim (Cause of Action 13) Fails Under the Fourth Circuit's Opinion.

To state a claim for malicious prosecution under North Carolina law, a plaintiff must plead that the defendant caused "a criminal proceeding, without probable cause and with malice, which terminate[d] in the plaintiff's favor." Doc. #182 at 49. The causation element requires that the defendant " 'instituted, procured, or participated in' " the criminal proceeding against the plaintiff. *Id.* at 50 (quoting *Moore v. City of Creedmoor,*

---

[9] Doc. #182 at 41 ("Because we hold that all plaintiffs failed to state predicate §1983 claims against the individual officers, we must also hold that all plaintiffs have failed to state supervisory liability, *Monell* liability, and 'stigma-plus' claims."); Plaintiffs' Consolidated Opp. to Defendants' Mots. To Dismiss (Doc. #129 at 1 (incorporating Doc. #51 by reference)); Doc. #51 at 93-94 ("[T]he §1983 claims against DSI are not based on respondeat superior but, rather, on the same principles as the *Monell* claim alleged against the City of Durham in the Fifth Cause of Action."); *see also Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007) ("Wray's claim regarding the City's failure to train or supervise its police officers likewise fails for lack of causation. Officer Weller's conduct was not itself the cause of the constitutional deprivation; the City's alleged failure to train him adequately–a step even further removed–cannot, therefore, be the 'actual cause' of the constitutional deprivation.").

120 N.C. App. 27, 460 S.E.2d 899, 906 (1995), *aff'd in part, rev'd in part on other grounds*, 345 N.C. 356, 481 S.E.2d 14 (1997)).

Noting "no North Carolina court has adopted the attenuated view of causation espoused by" Plaintiffs, the Fourth Circuit dismissed the malicious prosecution claim against Officer Addison, but upheld the claims against Officers Gottlieb and Himan. Doc. #182 at 50-51. In doing so, the Fourth Circuit recognized that Plaintiffs failed to allege conduct by Addison "that plausibly could be construed" as "instituting, procuring, or participating" in a criminal proceeding against Plaintiffs. *Id.* at 50. Since the Fourth Circuit found some allegations sufficient to support a claim of malicious prosecution (those against Gottlieb and Himan) but found others insufficient (those against Addison), a "fresh look" as to the allegations concerning the DSI Defendants is warranted. *See Stott v. Martin*, 783 F. Supp. 970, 974 (E.D.N.C. 1992).

Gottlieb and Himan are alleged to have engaged in a wide variety of misconduct (including conspiring with the DSI Defendants) after and despite their conclusion that a rape had not occurred. Doc. #116 ¶¶137-38. Most telling for the current purposes are allegations that they: rigged Mangum's photo identification, *id.* ¶¶179-93; intentionally misled the indicting grand juries and withheld evidence from them, *id.* ¶¶215, 219, 240-41; tampered with, intimidated, and threatened alibi witnesses (Pittman and Elmostafa), *id.*, ¶¶245-60; attempted to intimidate other lacrosse players by threatening them with prosecution, *id.* ¶¶261-63; and attempted to intimidate Sergeant Shelton. *Id.* ¶264.

11

In contrast, Addison is alleged to have issued various "Police Statements" which he knew, or should have known, were false, *id.* ¶159, and which had "direct and foreseeable consequences for the criminal process instituted against [Plaintiffs]", *id.* ¶161, including "inflame[ing] the public, including those who would eventually serve on the grand juries that indicted Plaintiffs, by marking the Plaintiffs as violent sex offenders whose guilt was already established beyond doubt." *Id.* ¶162. These false and "malicious" statements included: that Mangum had in fact been "brutally raped" and "sodomized, raped, assaulted and robbed"; that "some or all of the Duke lacrosse players know about it, and that the players should stop obstructing the investigation"; that "the Duke lacrosse players who lived [in the house at 610 N. Buchanan Blvd.] have refused to cooperate"; and that " 'really, really strong physical evidence' of a crime" existed. *Id.* ¶160. In addition, Addison is alleged to have participated in the preparation of the notorious "Wanted Poster" depicting all of the white members of the lacrosse team and stating that a rape had in fact occurred at a party which these men had attended. *Id.*

The allegations against Addison–that he maliciously published numerous false statements for the foreseeable purpose of inflaming the potential grand jurors–were not sufficient in the eyes of the Fourth Circuit to state a claim for malicious prosecution. As Addison argued in his brief, these allegations do not amount to instituting or participating in the criminal prosecution.[10] By comparison, Gottlieb and Himan, using many of the

---

[10] Addison argued "there is no factual support whatsoever for the conclusory statement that [Addison] 'instituted or participated in the institution of criminal proceedings against Plaintiffs.' J.A. at 529 (SAC ¶ 487); *see also* 54 C.J.S. Malicious Prosecution § 13 (2010)

12

same false "Police Statements" that form the basis for the claim against Addison, are alleged to have also been personally involved with misleading the grand jury and tampering with witnesses, resulting in the indictments.

The alleged role of the DSI Defendants is more limited and indirect than that of Gottlieb, Himan, and even Addison. The DSI Defendants did not appear before or testify to the grand jury, nor did they misrepresent the evidence to the prosecution team. The DSI Defendants truthfully reported that none of the lacrosse players could be linked to the rape kit samples, but (Plaintiffs claim) failed to make sufficiently clear that the DNA analyses revealed evidence of Mangum's unrelated sexual conduct. The DSI Defendants had no contact with any potential witnesses and were not involved in any decision-making process regarding whether to seek an indictment. They had no role in the photo identifications, they had no contact with any members of the lacrosse team, and they made no statements to the media.

The limited allegations against the DSI Defendants do not state a plausible claim. If the DSI Defendants were engaged in a conspiracy to conceal the innocence of the lacrosse players, they failed completely and spectacularly: the lacrosse players' lawyers immediately recognized the significance of the Report–that it showed that no player DNA was contained in any of the rape kit samples–and immediately held a press conference to

---

(to sustain an action for malicious prosecution, 'it must affirmatively appear . . . that the party sought to be charged was the proximate and efficient cause of maliciously putting the law in motion.'); *see also id.* ('The test of liability in an action for malicious prosecution is whether the defendant was actively instrumental in putting the law in force.')." Brief of Appellants, 4th Cir. Appeal 11-1436, Doc. #50 at 91 n.30.

emphasize the Report's findings.[11]  Despite then trumpeting the Report as the ultimate piece of exculpatory evidence, Plaintiffs now claim that the Report instead <u>concealed</u> exculpatory evidence that was so significant as to result in the wrongful and malicious prosecution of Plaintiffs. What evidence overshadows the obvious significance of the <u>lack</u> of lacrosse player DNA evidence?  The concealed "exculpatory evidence," revelation of which Plaintiffs now contend would have prevented their prosecutions, is evidence that Mangum had had sexual relations—at some point—with someone other than her boyfriend or the lacrosse players. Bearing in mind that malicious prosecution is an intentional tort committed with malice, this theory requires the Court to find that the DSI Defendants intended to cause a meritless prosecution against innocent persons by publishing a report confirming their innocence but concealing the sexual history of the purported victim. Like the claims against Addison, the requisite causation link here is too attenuated–too implausible–to pass muster.

Plaintiffs' theory is also premised, without legal authority, on the presumption that DSI was obligated to report on Mangum's sexual contact with other men. The Order (Ex. 1 to the subject Motion) only authorized comparisons between the evidence samples <u>and the Reference Specimens</u>–the group of forty-six individuals subject to the non-testimonial order. It did not order a detailed exposition of the purported victim's sexual history.[12]

---

[11] *See* footnote 5, *supra*.

[12] Such a report would ordinarily be subject to the protections of the "rape shield" law, N.C. R. Evid. 412.  Any exception to that rule is subject to a careful balancing of interests, including protection of the privacy interests of the alleged victim, which is a

14

The Report did what DSI was obligated to do: it compared the evidence samples to the lacrosse players' DNA.

For these reasons, the alleged conduct of the DSI Defendants does not approach the kind of conduct necessary to support a claim for malicious prosecution. Certainly, when compared to Addison's alleged conduct on the one hand and the alleged conduct of Gottlieb and Himan on the other, the conduct of the DSI Defendants clearly does not suffice to state a claim.

In addition to the foregoing Fourth Circuit adequacy-of-allegations analysis, clarification of the North Carolina law with respect to this tort also supports dismissing this claim. Around the time that this Court issued its March 31, 2011 Opinion resolving the various motions to dismiss, the North Carolina Court of Appeals squarely addressed the causation element of a malicious prosecution claim—*i.e.*, what constitutes institution, procurement, or participation. *See Chidnese v. Chidnese*, __ N.C. App. __, 708 S.E.2d 725, 731 (2011) ("The only element at issue in the instant case is whether [attorney] McDonald instituted, procured, or participated in a criminal proceeding against the plaintiff."). In *Chidnese,* plaintiff estranged-wife sued defendant estranged-husband's attorney for malicious prosecution related to wrongfully-pursued charges for domestic criminal trespass. *Id.* at 729-30. The court elaborated on the causation element in the attorney-client context, summarizing its analysis of the Restatement (Second) of Torts (1977) and Restatement (Third) of the Law Governing Lawyers (2000) as follows:

---

judgment for the courts, not the testing lab. *State v. McNeil*, 99 N.C. App. 235, 393 S.E.2d 123 (1990) (no error in excluding public from R. 412 voir dire).

15

The main difference between these two illustrations is that in the former, it is the attorney who first specifically suggests the criminal prosecution, thus procuring the prosecution. In contrast, in the latter illustration, it is the client who first inquires about the criminal prosecution, and consequently, the criminal prosecution was not procured by the attorney. Thus, under the Restatements, an attorney procures a malicious prosecution only when that attorney counsels the client specifically to initiate a criminal proceeding without the client first seeking counsel about initiating such a proceeding. Accordingly, we hold that an attorney should be considered to have procured a malicious criminal prosecution initiated by a client <u>only when the attorney advises the client, without any instigation from the client regarding a criminal prosecution, to initiate criminal proceedings</u>.

708 S.E.2d at 733 (emphasis added).

The principles elaborated in *Chidnese* highlight the inadequacy of Plaintiffs' present allegations against the DSI Defendants. Nifong, with the assistance of Officers Gottlieb and Himan and others within the District Attorney's Office, procured the indictments of Plaintiffs. The DSI defendants became involved in the case April 4, 2006 (Doc. #116 ¶¶198-202), well after Nifong had chosen to pursue the indictments, no matter what evidence came his way. *Id.* ¶195. In the three weeks prior to DSI even being contacted, Gottlieb and Himan had: interviewed (and allegedly intimidated) potential witnesses, *id.* ¶¶80-98; executed a search warrant for 610 N. Buchanan Blvd. and interviewed its residents, *id.* ¶¶108-17; and secured and executed a non-testimonial order for DNA samples from all white members of the Duke lacrosse team. *Id.* ¶¶120-122. During that time, Nifong had taken over direction of the police investigation, *id.* ¶¶131-33; had met and discussed the case's weaknesses with Gottlieb and Himan, *id.* ¶¶136-38; had made numerous public statements about the case, inflaming the public, including members of the grand juries that indicted Plaintiffs, *id.* ¶¶147, 150, 154; and had received

16

and rejected the exculpatory DNA analyses from the State Bureau of Investigation crime lab. *Id.* ¶¶170, 173, 198. Nifong, Gottlieb, Himan, and police supervisors and Durham officials had allegedly met and conspired to expedite identifications of the alleged rapist lacrosse players, *id.* ¶¶179-83, and had designed and conducted a photographic identification procedure in violation of Durham Police policy. *Id.* ¶¶186-88.

Moreover, Plaintiffs Finnerty and Seligmann were indicted after and despite DSI's findings (reported orally to Nifong) of no DNA evidence linking them to the rape kit samples. *Id.* ¶¶204-07, 212-13. Those indictments also occurred before DSI had produced any written report. *Id.* ¶¶204-07, 212-13, 223-25.

Plaintiffs do not allege that the DSI Defendants sought or obtained any of the indictments of Plaintiffs, *id.* ¶¶212-13, 239, because, of course, the DSI Defendants had no legal authority to do so. *See* N.C. CONST. Art. IV, sec. 18(1) (vesting such authority in the District Attorney); *State v. Ward*, 354 N.C. 231, 243, 555 S.E.2d 251, 260 (2001). There is no allegation that the DSI Defendants participated in the decision-to-indict process at all. Instead, Plaintiffs assert that on April 10, 2006, six days after being contacted by the District Attorney's Office, the DSI Defendants were in a position to put a stop to "the investigation of the Duke Lacrosse players." Doc. #116 ¶208 ("Indeed, rather than concluding the investigation …."). However, a failure to intercede (were that even possible in this case) does not state a claim for malicious prosecution.

Plaintiffs similarly allege that "these Defendants," including the DSI defendants, should have moved to dismiss the charges against Plaintiffs Finnerty and Seligmann and

17

concluded the investigation on April 21, 2006. *Id.* ¶ 225. The DSI Defendants lacked authority to make a motion in an ongoing criminal proceeding and, as a practical matter, could not direct the actions of the client that had retained them. Just as an attorney cannot control a client's decision to initiate criminal proceedings, the DSI Defendants could not control the decisions of the District Attorney and the Durham Police to continue to prosecute Plaintiffs. *See Chidnese*, 708 S.E.2d at 733.

Plaintiffs' allegation that the DSI Defendants procured the indictments of Plaintiffs is simply implausible and their malicious prosecution claims should be dismissed. *Cf. Williams v. Kuppenheimer Mfg. Co.*, 105 N.C. App. 198, 201, 412 S.E.2d 897, 900 (1992) (upholding verdict of malicious prosecution where "*[e]xcept for* the efforts of defendant, it is unlikely there would have been a criminal prosecution of plaintiff" (emphasis added)).

## IV. Plaintiffs' Common Law Obstruction of Justice Claim (Cause of Action 14) Fails Under the Fourth Circuit's Opinion.

The Fourth Circuit held that criminal suspects like Plaintiffs cannot state a claim for obstruction of justice against police officers based on the conduct of a criminal investigation and, accordingly, dismissed such claims against Officers Gottlieb and Himan. Doc. #182 at 51-52. In doing so, the court recognized the absence of case law supporting an obstruction of justice claim related to an underlying criminal proceeding. *Id.* at 52. Indeed, the cases cited by the Fourth Circuit all related to underlying civil actions. *See id.* at 52 (citing *Henry* and *Grant*); *Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984) (civil action for wrongful death); *Grant v. High Point Reg'l*

18

*Health Sys.*, 184 N.C. App. 250, 255-256, 645 S.E.2d 851, 855 (2007) (civil action for medical negligence); *id* at 257, 645 S.E.2d at 856 ("Defendant's alleged actions directly prevented, obstructed, or impeded public or legal justice by precluding the filing of a civil action."). As the Durham and Durham Police Defendants effectively argued in their appellant brief:

> [A]n obstruction of justice claim is not available where, as here, a criminal suspect takes issue with the manner in which the investigation against him was conducted. Instead, the obstruction tort applies only when a person interferes with a citizen's right to bring a civil action. *See, e.g., Jones v. City of Durham*, 643 S.E.2d 631, 633 (N.C. Ct. App. 2007) (police officer allegedly destroyed evidence in anticipation of a civil suit against him); *Jackson v. Blue Dolphin*, 226 F. Supp. 2d 785, 794 (W.D.N.C. 2002) (defendant forced plaintiff to sign false affidavit for civil suit); *Henry v. Dean*, 310 S.E.2d 326, 334 (N.C. 1984) (false medical documents created in anticipation of civil action). Expanding this tort so that a citizen (whether former suspect or purported victim) takes issue with the manner in which a criminal investigation is performed would not only render the narrowly tailored malicious prosecution tort superfluous, but would also have an enormous chilling effect on the proper investigation of crimes.

Brief of Appellants, 4th Cir. Appeal 11-1436, Doc. #50 at 90 n.29.

Pursuant to the Fourth Circuit's holding and clarification of applicable law, this Court should dismiss the obstruction of justice claims still pending against the DSI Defendants for failure to state a claim.

**V.     Plaintiffs' Negligence Claim (Cause of Action 21) Fails Against DSI for Lack of an Underlying Tort Claim.**

This Court has previously held that the negligent supervision claim only exists against DSI because of the underlying claims for malicious prosecution and obstruction of justice against the DSI Defendants. Doc. #133-1 at 47; Op. at 87. Because Plaintiffs'

19

underlying tort claims fail, the negligent supervision claim must also fail. *See Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 495, 340 S.E.2d 116, 124 (1986).

## CONCLUSION

The DSI Defendants did not *cause* the prosecution of these Plaintiffs. That prosecution occurred *despite* the actions of the DSI Defendants and *despite* the Report showing no DNA link between the Plaintiffs and the rape kit evidence.

Defendants Clark and DSI respectfully request that this Court dismiss all Remaining Claims asserted against them.

Respectfully submitted, this the 1st day of March, 2013.

<table>
<tr><td></td><td>/s/ Robert J. King III</td></tr>
<tr><td>BROOKS, PIERCE, MCLENDON,<br>HUMPHREY & LEONARD, L.L.P.<br>Post Office Box 26000<br>Greensboro, North Carolina 27420<br>Telephone: 336/373-8850<br>Facsimile: 336/378-1001<br><br>*Counsel for Defendants DNA Security, Inc.*<br>*and Richard Clark*</td><td>Robert J. King III<br>  N.C. State Bar No. 15946<br>  rking@brookspierce.com<br>William P.H. Cary<br>  N.C. State Bar No. 7651<br>  wcary@brookspierce.com<br>Brian J. McMillan<br>  N.C. State Bar No. 23852<br>  bmcmillan@brookspierce.com<br>Charnanda T. Reid<br>  N.C. State Bar No. 38927<br>  creid@brookspierce.com</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record and to Mr. Linwood Wilson, who is also registered to use the CM/ECF system.

This the 1st day of March, 2013.

/s/ Robert J. King III
Robert J. King III
N.C. State Bar No. 15946
rking@brookspierce.com