IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID F. EVANS; COLLIN FINNERTY; and READE SELIGMANN,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF DURHAM, NORTH CAROLINA; MICHAEL B. NIFONG; MARK GOTTLIEB; BENJAMIN HIMAN; DAVID ADDISON; LINWOOD WILSON; STEVEN CHALMERS; BEVERLY COUNCIL; RONALD HODGE; JEFF LAMB; STEPHEN MIHAICH; MICHAEL RIPBERGER; LEE RUSS; DNA SECURITY, INC.; RICHARD CLARK; and BRIAN MEEHAN,<br><br>Defendants. | No. 1: 07-CV-739 |

**REPLY BRIEF IN SUPPORT OF MOTION BY DEFENDANTS DNA SECURITY, INC. AND RICHARD CLARK TO DISMISS REMAINING CLAIMS**

**I.     Revisiting The Malicious Prosecution Claims Is Appropriate.**

Before addressing the arguments of Defendants DNA Security, Inc. and Richard Clark ("Defendants" or "DSI Defendants") on their merits, Plaintiffs assert that those arguments have already been made and that this Court should not reconsider them. That is neither the teaching of the cases cited by Plaintiffs nor the law of this circuit.

First, the present Motion by Defendants is not a request to reconsider the Court's ruling on Defendants' prior Motion, which was made pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. After that Motion was denied in part,

Defendants filed their Answer. Following the decision by the Fourth Circuit on the appeal by the public defendants and remand to this Court, the present Motion was made pursuant to Rule 12(c) <u>for judgment on the pleadings</u>. Thus, Defendants are not asking the Court to reconsider their Rule 12(b) arguments.

Of course, reconsideration of the DSI Defendants' prior Motion would be appropriate, even under the cases cited by Plaintiffs. "District courts have the power to reconsider their interlocutory rulings <u>at their discretion</u> until a final judgment has been entered in the case." *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F.Supp.2d 559, 565 (M.D.N.C. 2005) (emphasis added)[1] (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 12, 103 S.Ct. 927, 935, 74 L.Ed.2d 765 (1983), and *American Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 505, 514-15 (4th Cir. 2003). "Law of the case … does not and cannot limit the power of a court to reconsider an earlier ruling. The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *American Canoe Ass'n at 515*. The decision to do so by reconsidering a prior order "may be tempered at times by concerns of finality and judicial economy". *Id.*

In this case, while the Fourth Circuit did not have before it the malicious prosecution claims against the DSI Defendants, it did analyze related or identical claims against other defendants. The Fourth Circuit reversed portions of this Court's decision on the §1983, obstruction of justice, and malicious prosecution claims. Plaintiffs concede

---

[1] In *Akeva*, the court declined to exercise that discretion where the request to reconsider was based solely on a decision in a different case decided by the Federal Circuit Court of Appeals and where there was no new evidence.

that in light of the Fourth Circuit's opinion this Court should dismiss the §1983 and obstruction of justice claims against the DSI Defendants. (Response Brief, Doc. 200, fn. 2, p. 9.) Revisiting the malicious prosecution claims is procedurally no different than revisiting the §1983 and obstruction of justice claims. The teaching of *American Canoe* to "reach the correct judgment" and concerns for judicial economy both militate in favor of this Court exercising its discretion now to "take a fresh look" at the malicious prosecution claims against the DSI Defendants in light of the guidance received from the Fourth Circuit. *See Stott v. Martin*, 783 F. Supp. 970, 974, 976 (E.D.N.C. 1992) ("The Fourth Circuit's opinion does, however, strongly suggest to this court that it should take a fresh look at all three plaintiffs' claims.")

**II.     The DSI Report Cannot Plausibly Have Been The Cause Of The Malicious Prosecution.**

Under North Carolina law, the elements of the tort of malicious prosecution include causation. "Cause" means "initiate, procure or participate in" the prosecution. *Moore v. City of Creedmoor*, 120 N.C. App. 27, 460 S.E.2d 899, 906 (1995), *aff'd in part, rev'd in part on other grounds*, 345 N.C. 356, 481 S.E.2d 14 (1997). The DSI Defendants are not plausibly or factually alleged by Plaintiffs to have "initiated" or "procured" the prosecution. Plaintiffs' claims against the DSI Defendants, therefore, succeed or fail based on the "participated in" language, and this language must be interpreted in the context of the causation element of the tort, *i.e.*, "participation" that "caused" the malicious prosecution. Any more general definition of participation would sweep too broadly, for scores of individuals "participated" in the prosecution: people in

3

the police department (including Addison), in the district attorney's office, and even in the clerk of court's office. As the Fourth Circuit concluded in determining that Addison's admitted participation was not a plausible cause of the prosecution, not all "participation" caused the prosecution.

Plaintiffs' theory of participation (Doc. 200, p.14) fails to make the very distinction implicit in the Fourth Circuit's dismissal of the claim against Addison. *See* Opinion, Doc. 182 at 39-41. This is the import of *Chidnese v. Chidnese*, __ N.C. App. __, 708 S.E.2d 725, 731 (2011), where the allegation was that an attorney had "procured" the wrongful prosecution, and the court applied a common sense causation analysis. If the court in *Chidnese* had adopted the broad reading of "participation" advocated by the Plaintiffs here, the entire procurement analysis would have been unnecessary. Clearly, North Carolina's courts understand, as the Fourth Circuit does, that these terms must be viewed in the light of proving causation, not mere association. Stating the standard in the converse, the North Carolina courts have said, where "it is unlikely there would have been a criminal prosecution of [a] plaintiff except for the efforts of a defendant," there is a triable issue of fact. *Nguyen v. Burgerbusters, Inc.*, 182 N.C.App. 447, 450, 642 S.E.2d 502, 506 (2007) (emphasis added).

Applying these standards, the question is, did the participation of the DSI Defendants cause the malicious prosecution of Plaintiffs? Since Plaintiffs' allegations of the DSI Defendants' participation focus on the DSI Report, the question can be put another way: Except for the DSI Report, is it unlikely there would have been a

4

Case 1:07-cv-00739-JAB-JEP   Document 201   Filed 04/11/13   Page 4 of 10

prosecution of these Plaintiffs? The Plaintiffs' claim is that the DSI Report "caused" the malicious prosecution of Plaintiffs by failing to include certain exculpatory evidence. Defendants' current Motion explains that the Report in fact contained the most powerful exculpatory evidence available–the lack of any DNA evidence linking any lacrosse player (including Plaintiffs) to the rape kit evidence. Plaintiffs concede this, as they must. Despite that concession, Plaintiffs argue that the Report's alleged <u>exclusion</u> of specific evidence (of the alleged victim's sexual conduct) is so significant that it "caused" the prosecution <u>despite</u> the weight of the proof of Plaintiffs' innocence contained in the Report. It bears repeating: Bearing in mind that malicious prosecution is an intentional tort committed with malice, this theory requires the Court to find that the DSI Defendants intended to cause a meritless prosecution against innocent persons by publishing a report confirming their innocence but concealing the sexual history of the purported victim. Like the claims against Addison, the requisite causation link here is too attenuated–too implausible–to pass muster. Defendants' Brief in chief (Doc. 191, p. 14)

Plaintiffs do not challenge this characterization of the issue before the Court; instead, they urge the Court to ignore it on the grounds that it repeats Defendants' earlier arguments. Plaintiffs do not deny that the Report's findings of no DNA connection between the rape kit evidence and the lacrosse players (including Plaintiffs) was the most powerful possible exculpatory evidence, as Plaintiffs' criminal defense attorneys

5

announced the day the Report was released.² As Plaintiffs state: "DSI excluded with 100% certainty every member of the lacrosse team, including Plaintiffs, as being the donors of this [rape kit] DNA.... [T]hese DNA findings conclusively established Plaintiffs' actual innocence—and that other men would have been responsible." Doc. 200, p. 3.³

Plaintiffs also argue that DSI "<u>deceptively</u> reported that DNA consistent with Evans was found on one of Mangum's false fingernails." Doc. 200, p. 4 (emphasis added). Plaintiffs do not allege any <u>facts</u> in support of the allegation that the Report was "deceptive." Although not part of the original rape kit, several artificial fingernails collected as evidence by the Durham Police from the house where the lacrosse party was held and where Evans lived were submitted to DSI for DNA analysis. Doc. 116, p. 75 (Sec. Am. Complaint ¶224(c)). One of these fingernails had traces of DNA from multiple sources. Report (Ex. 2 to Motion, Doc. 191-2, at 7), p. 6. The Report explains that the trace evidence included a partial match to Evans's DNA profile and that there were fourteen other individuals (out of a reference database that included 3,561 people) with similar partial matches. *Id.*

---

² DSI Defendants are not relying on the "press release" about the Report, which Plaintiffs discuss in their Response. Defendants have cited to the videotaped statements made by the Plaintiffs' criminal defense attorneys themselves, in which they extol the exculpatory virtues of the Report. This Plaintiffs have not denied.

³ Given the lack of any evidence before this Court of the longevity of DNA evidence, the last part of this statement is totally unsupported by facts alleged to this Court and, in any event, does not undercut the prior statement regarding the "conclusively established Plaintiffs' actual innocence".

The Report accurately states that there is a greater than 98% chance that a randomly selected individual would not match this DNA sample from the false fingernail, and that Evans could not be excluded as a potential source of this DNA. These are all facts contained in the Report, and Plaintiffs have made no allegations challenging or contradicting these facts. Plaintiffs state, but do not explain, how reporting these undisputed facts is "deceptive." Nor do they explain how reporting these undisputed facts "caused" the subsequent indictment of Evans. The Report also reported a match between DNA on another false fingernail and lacrosse player Coleman's DNA—a match stronger than that in Evans's case: there were no other matches from the reference database and Coleman could not be excluded though the probability of excluding a randomly selected individual was greater than 99.99% (*Id*. at p. 8)—yet, Coleman was not indicted. Thus, there is no logical inference that the Report of a partial match to DNA found on a false fingernail caused the Evans indictment.

Plaintiffs also do not explain (and their Complaint does not allege facts to explain) how a different report would have prevented the prosecution of these Plaintiffs. It is easy to understand, for example, how the prosecution of the Plaintiffs would have been unlikely "except for" the alleged actions (e.g., the presentation to the grand jury of selected statements that the police no longer believed and a rigged photo identification) of Gottlieb and Himan. But, given that the police and the District Attorney already knew all of DSI's findings, it is impossible to understand how putting that information in a Report sooner or in a different form would have prevented the prosecution of Plaintiffs.

7

The DSI Defendants had no control over how the police or the District Attorney used the Report, and the attorneys for the lacrosse players were already using from the Report the most powerful evidence possible–the absence of a DNA connection between the rape kit evidence and the lacrosse players.

In light of the Fourth Circuit's rejection of the attenuated claims against Addison, and the clear distinction between the allegations against Gottlieb and Himan and the allegations against the DSI Defendants, the claims against the DSI Defendants should be rejected.

## III.  "Abeyance" Is Not Necessary Or Appropriate.

Plaintiffs did not seek a stay of the mandate of the Fourth Circuit and have not moved to stay this case, but they now suggest that this Court should hold Defendants' Motion "in abeyance" because "Plaintiffs intend to seek Supreme Court review." Doc. 200, p. 9. Plaintiffs do not disclose when or on what grounds such review might be sought. Plaintiffs concede that the only claims against the DSI Defendants that survive in light of the Fourth Circuit's decision are the malicious prosecution claims and the related negligent supervision claims, which are governed by North Carolina State law.

There is nothing about the malicious prosecution claims or the Fourth Circuit's disposition of them that meets the high threshold for *certiorari* set forth in Supreme Court Rule 10: the claims involve no important question of federal law or conflicting decisions of other courts. "A petition for writ of *certiorari* is rarely granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of

8

law." Rule 10. Therefore, even if *certiorari* is sought and granted, it is extremely unlikely that the issues presented and reviewed by the Supreme Court would touch on the malicious prosecution claims now fully briefed and ripe for disposition. There is no reason for the Court to hold the DSI Defendants' Motion in abeyance.

## IV. Conclusion

The Plaintiffs' Amended Complaint contains no allegations of fact to support Plaintiffs' claim that the conduct of the DSI Defendants "caused" the malicious prosecution of Plaintiffs. As alleged by Plaintiffs, on May 12, 2006, the DSI Defendants produced—and Plaintiffs' attorneys shortly thereafter publicized—a Report that, in the words of the Plaintiffs, "conclusively established the Plaintiffs' actual innocence." It is utterly implausible to argue that this Report "caused" the prosecution of Plaintiffs. The malicious prosecution claims against the DSI Defendants, and the negligent supervision claims that rely on the malicious prosecution claims, should be dismissed.

Respectfully submitted, this the 11th day of April, 2013.

BROOKS, PIERCE, MCLENDON,
  HUMPHREY & LEONARD, L.L.P.
Post Office Box 26000
Greensboro, North Carolina 27420
Telephone: 336/373-8850
Facsimile: 336/378-1001


*Counsel for Defendants*
*DNA Security, Inc. and David Clark*

/s/ Robert J. King III
Robert J. King III
  N.C. State Bar No. 15946
  rking@brookspierce.com
William P.H. Cary
  N.C. State Bar No. 7651
  wcary@brookspierce.com
Brian J. McMillan
  N.C. State Bar No. 23852
  bmcmillan@brookspierce.com
Charnanda T. Reid
  N.C. State Bar No. 38927
  creid@brookspierce.com

9

Case 1:07-cv-00739-JAB-JEP   Document 201   Filed 04/11/13   Page 9 of 10

# CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record and to Mr. Linwood Wilson, who is also registered to use the CM/ECF system.

This the 11th day of April, 2013.

/s/ Robert J. King III
Robert J. King III
N.C. State Bar No. 15946
rking@brookspierce.com