IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID F. EVANS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF DURHAM, N.C., et al., <br><br> Defendants. | Case No. 1:07-CV-739 |

**PLAINTIFFS' OPPOSITION TO**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs David F. Evans, Collin Finnerty, and Reade Seligmann, by undersigned counsel, hereby respond to Defendants Mark Gottlieb's and Benjamin Himan's Motion for Judgment on the Pleadings (Doc. 213), joined by Defendant Linwood Wilson (Doc. 216).

In the motion, Defendants seek judgment in their favor on the only remaining claim against them—Plaintiffs' claim for common-law malicious prosecution (Count 13)—thus attempting to evade any liability whatsoever for their efforts to procure and maintain Plaintiffs' indictments, arrests and convictions on false charges. The Court previously denied Defendants' motions to dismiss Count 13, *see* Doc. 133, at 67-73, and described Defendants' alleged conduct as "significant abuses of government power," *id.* at 97. The Fourth Circuit affirmed, finding that "the officers' multiple alleged acts certainly present plausible claims of malice." *Evans v. Chalmers*, 703 F.3d 636, 657 n.16 (4th Cir. 2012).[1]

---

[1] Defendant Wilson was not part of the appeal.

In North Carolina, the common-law tort of malicious prosecution is expressly broad. It extends to persons who "(1) instituted, procured or participated in the criminal proceeding against [the] plaintiff; (2) without probable cause; (3) with malice; and (4) [where] the prior proceeding terminated in favor of plaintiff." *Moore v. Evans*, 476 S.E.2d 415, 421 (N.C. Ct. App. 1996) (internal quotation omitted). Indeed, the Fourth Circuit recognized the expansive nature of this tort in affirming the denial of Gottlieb's and Himan's motions to dismiss Count 13. *Evans*, 703 F.3d at 657.

Defendants now assert that they are entitled to judgment on the pleadings based on the June 2013 decision in *N.C. Farm Bureau Mutual Insurance Co. v. Cully's Motorcross Park, Inc.*, 742 S.E.2d 781 (N.C. 2013) ("*Cully's Motorcross*"). Defendants contend that *Cully's Motorcross* changed the standard for malicious prosecution claims in North Carolina. If so, it is telling that Defendants waited to file this motion until *eight months* after the case was first brought to the Court's attention.[2] That is because *Cully's Motorcross* does not speak to the facts of this case. Instead, *Cully's Motorcross* addressed the discrete situation in which a private citizen made a good-faith report to police of information that the citizen believed to be true. It did not address claims of fabrication of false evidence or concealment of exculpatory evidence by law enforcement officers acting in concert with a corrupt prosecutor, nor claims that officers did so for the express purpose of initiating a malicious prosecution, nor does the case purport to change the North Carolina courts' longstanding broad application of the malicious prosecution tort to those who "participated" in a malicious prosecution.

---

[2] The *Cully's Motorcross* decision was first identified by Defendants DNA Security and Clark on June 26, 2013. *See* Doc. 203. The instant motion was filed on February 28, 2014.

More importantly, Defendants' arguments that *Cully's Motorcross* be extended to the allegations in this case are not only untethered to the facts considered by the North Carolina Supreme Court; they also would lead to the chilling result that law enforcement officers could fabricate and conceal evidence with impunity, in concert with prosecutors, and the falsely accused would have absolutely no recourse against them whatsoever. Fortunately, *Cully's Motorcross* and North Carolina law generally do not support such a problematic result.

**BACKGROUND**

The allegations in the Second Amended Complaint are discussed extensively in the Court's prior opinion on the Defendants' motion to dismiss, *see* Doc. 133, at 3-16 & 67-72, and thus are not repeated here. As relevant to the instant Motion, the Second Amended Complaint includes extensive allegations of misconduct by these Defendants, each of whom was a police detective (Gottlieb and Himan) or a District Attorney investigator (Wilson), including that they "conspir[ed] to manufacture false and misleading expert [DNA] reports, intimidat[ed] witnesses, and manipulat[ed] witness identification procedures in order to advance the criminal process against Plaintiffs." *Id.* at 67. The conduct relevant to Count 13 also includes the Defendants' efforts, after the indictments of Plaintiffs were secured, "to conceal their earlier actions and to continue to restrain Plaintiffs and deny them due process." *Id.* at 14-15 (describing allegations of post-indictment witness intimidation, Gottlieb's fabrication of phony "after-the-fact 'report' of the investigation," and efforts by Wilson "to revive the prosecution by persuading Mangum to alter her statements to conform to the revelations regarding the lack of Plaintiffs' DNA on the rape kit items.").

3

In denying the Defendants' motions to dismiss Count 13, the Court found that the Second Amended Complaint sufficiently alleged that Gottlieb, Himan, and Wilson "all procured or participated in the proceedings against [Plaintiffs] by manufacturing and manipulating evidence on which the prosecution was based." *Id.* at 69. The Court also rejected the same argument that Defendants make in the instant Motion: that "they cannot be liable for malicious prosecution for providing information to the prosecutor." *Id.*[3] As the Court found, "Plaintiffs have alleged that Defendants Gottlieb, Himan, [and] Wilson . . . did not just give honest information and assistance to Defendant Nifong. Instead, Plaintiffs allege that these Defendants created false and misleading evidence, conspired with Nifong to initiate the prosecution, and affirmatively participated in efforts to initiate and maintain that prosecution, such that the criminal prosecution would not have existed except for the efforts of these Defendants." *Id.* The Court concluded that the Second Amended Complaint "set[s] out allegations of significant abuses of government power," and the Court expressly rejected the Defendants' contention "that this Court should take the most restrictive view of the applicable doctrines and should conclude that . . . no redressable claim can be stated, when government officials intentionally fabricate evidence to frame innocent citizens, even if the evidence is used to indict and arrest those citizens without probable cause." *Id.* at 97-98.

---

[3] As before, Defendants attempt to recast the allegations, suggesting that this was a routine investigation in which they presented their findings and disclosed all known facts to a prosecutor who made the charging decision. *See, e.g.*, Doc. 214, at 16. But that is not what is alleged in the Second Amended Complaint, which alleges that the Defendants fabricated and concealed evidence, in concert with Nifong and others, for the express purpose of falsely accusing, arresting, and convicting the Plaintiffs. *See* Doc. 133, at 3-16. Nor is it what this Court found in denying Defendants' motion to dismiss Count 13, *see, e.g., id.* at 69, or what the Fourth Circuit found in affirming that decision, *see Evans*, 703 F.3d at 657 n.16.

The Fourth Circuit affirmed the denial of Gottlieb's and Himan's motions to dismiss Count 13. *See Evans*, 703 F.3d at 656-57. The court recognized the expansive nature of the malicious prosecution tort in North Carolina: "North Carolina courts have generally held causation can be established by allegations that the defendant '*instituted, procured, or participated in*' a criminal proceeding." *Id.* at 657 (quoting *Moore v. City of Creedmoor*, 460 S.E.2d 899, 905-06 (N.C. Ct. App. 1995)) (emphasis added)). "Given this language, we cannot hold that the district court erred in finding that the Evans plaintiffs pled a state-law malicious prosecution claim as to Officers Gottlieb and Himan." *Id.* The Fourth Circuit also found that, "[t]aken together, the officers' multiple alleged acts certainly present plausible claims of malice" against Gottlieb and Himan. *Id.* at 657 n.16.[4]

## ARGUMENT

Defendants are incorrect in asserting that *Cully's Motorcross* requires dismissal of Count 13 for three independent reasons. <u>First</u>, the plain language of *Cully's Motorcross* makes clear that a safe harbor from a malicious prosecution claim exists *only* where a citizen makes a report to police *that the citizen in good faith believes to be true.* Here, by contrast, the allegations of the Second Amended Complaint demonstrate that Defendants acted with the opposite of good faith, and purposefully set out to fabricate and conceal evidence in concert with the prosecutor to secure and maintain the arrest and prosecution of three innocent men.

---

[4] As noted above, Wilson did not appeal. As explained in Plaintiffs' Opposition to Wilson's Renewed Motion to Dismiss (Doc. 186) and Response to Wilson's Resubmission of His Second Motion to Dismiss (Doc. 206), the Fourth Circuit's decision to affirm the malicious prosecution claim against Gottlieb and Himan also supports the denial of Wilson's motion to dismiss Count 13.

Second, Defendants' motion fails to consider that the tort of malicious prosecution applies not only to those who "initiate" or "procure" a malicious prosecution, but also to those who "participate" in one. *Cully's Motorcross* did nothing to diminish the liability of a defendant for "participating" in a malicious prosecution. Third, by its plain language, *Cully's Motorcross* applies only to malicious prosecution claims against private persons, not law enforcement officers. It does not support the proposition that law enforcement officials can fabricate false evidence and conceal evidence of innocence, in concert with a corrupt prosecutor, for the express purpose of falsely indicting innocent persons—with no recourse by the falsely accused.

## I. *Cully's Motorcross* Applies Only to Actions Taken in Good Faith and to Information Believed To Be True.

In *Cully's Motorcross*, the counter-plaintiff asserted a malicious prosecution claim against an insurance company, acting through its investigator, who "found strong evidence of arson and reported his suspicions to" a police sergeant, which ultimately led to the counter-plaintiff's arrest. *N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.*, 742 S.E.2d 781, 783 (N.C. 2013). The investigator "testified that the offense he believed [the counter-plaintiff] had committed was insurance fraud, that he never asked [the police sergeant] to arrest [the counter-plaintiff] or initiate a prosecution against her, and that he never made any suggestions as to what [the police sergeant] should do with [the investigator's] information." *Id.* at 788. Relying upon those facts, the court found that the counter-defendant could not be liable for malicious prosecution because the private investigator provided the information "in good faith" to the police sergeant, and the police

6

sergeant exercised his independent judgment to bring charges against the counter-plaintiff. *Id.* at 787-88.[5]  Critically, the court explained that its holding was limited only to the good-faith reporting of information believed to be true and was intended to "preserv[e] the element of malice":

> **If the information is false, this formulation only protects a reporting party who believes it to be true, thus preserving the element of malice** both to deter those who would subvert to their own ends the power held by police and prosecutors and to protect citizens from "one [who] resorts to the process of the law without probable cause, willfully and maliciously, for the purpose of injuring his neighbor."

*Id.* at 787 (emphasis added) (quoting *Chatham Estates v. Am. Nat'l Bank*, 88 S.E. 783, 785 (N.C. 1916)).

This distinction is consistent with Comment g to the Restatement (Second) of Torts § 653, cited by the court in *Cully's Motorcross*, which states that

> if . . . the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have

---

[5] Although the trial court in *Cully's Motorcross* found that the investigator had initially withheld certain information from the police sergeant, the Supreme Court found it relevant that there was no allegation that the investigator had fabricated the evidence he turned over to police; to the contrary, the investigator instead believed in good faith that the information was true and that the counter-plaintiff had committed the offense charged. *See Cully's Motorcross*, 742 S.E.2d at 788. Moreover, the sergeant then conducted an independent investigation of the facts before making the charging decision. *See id.* These facts stand in sharp contrast to those alleged here, where the Defendants are alleged to have acted in concert with Defendant Nifong to fabricate false evidence for the very purpose of arresting three innocent men; thus, there was no good faith, no independent investigation, and no charging decision that resulted from any independent judgment.

7

> the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

Restatement (Second) of Torts § 653 cmt. g (1977). Accordingly, *Cully's Motorcross* does not change the standard to be applied in cases where, as here, a defendant acts in bad faith by fabricating or conspiring to fabricate false evidence for the express purpose of initiating and sustaining a malicious prosecution. *See* Doc. 133, at 3-16 & 67-72 (summarizing allegations).

Nor does *Cully's Motorcross* reflect a fundamental change in the law in this regard. This Court already recognized, in denying the Defendants' original motions to dismiss Count 13, that "[i]t is well established that the act of giving honest assistance and information to prosecuting authorities does not render one liable for malicious prosecution." *Id.* at 68 (quoting *Nguyen v. Burgerbusters, Inc.*, 642 S.E.2d 502, 506 (N.C. Ct. App. 2007) (internal quotation omitted)). What the Court recognized, correctly, is that there is a fundamental difference between "giving honest assistance and information to prosecuting authorities," *id.*, and efforts to fabricate and conceal evidence in bad faith. *See id.* at 68-69, citing *Moore*, 476 S.E.2d at 421-24 (recognizing malicious prosecution claim where officer arrested individual and brought him before magistrate without probable cause and allowed prosecution to continue even after another person was arrested for the same crime); *see also Hedgepeth v. Swanson*, 27 S.E.2d 122, 123-24 (N.C. 1943) (holding sheriff may be liable for malicious prosecution for submitting a false affidavit to obtain a search warrant, criminal warrant, and arrest of a citizen without probable cause out of hate and revenge).

8

The out-of-state authorities cited by Defendants support this distinction. In *Yanes v. Maricopa County*, No. 1 CA-CV11-0274, 2012 Ariz. App. Unpub. LEXIS 1456 (Ariz. Ct. App. Nov. 8, 2012), the court upheld a malicious prosecution claim against two officers who intentionally prepared false reports to secure the charge against the plaintiff. *Id.* at *17-21. And in both *Johnson v. Weast*, 943 P.2d 117 (N.M. Ct. App. 1997), and *Trice v. McEachen*, 772 F. Supp. 2d 903 (M.D. Tenn. 2011), the court or jury found that the defendants had not fabricated evidence and instead had "merely provid[ed] information that [was] not false to the authorities," thus bringing them within the safe harbor outlined by Restatement (Second) of Torts § 653 and *Cully's Motorcross*. *Johnson*, 943 P.2d at 122; *Trice*, 772 F. Supp. 2d at 913.

Here, in contrast to the facts in *Cully's Motorcross*, Defendants Gottlieb, Himan, and Wilson each conspired to manufacture false evidence and conceal evidence of actual innocence for the purpose of initiating and maintaining a malicious prosecution of Plaintiffs.[6] As this Court has already recognized, "Plaintiffs have alleged that Defendants Gottlieb, Himan, [and] Wilson . . . did not just give honest information and assistance to Defendant Nifong. Instead, Plaintiffs allege that these Defendants created false and misleading evidence, conspired with Nifong to initiate the prosecution, and affirmatively participated in efforts to initiate and maintain that prosecution." Doc. 133, at 69. As noted

---

[6] Defendants also assert, incorrectly, that "[t]his Court has previously ruled that such conspiracy allegations are not plausible," citing this Court's decision in the related case of *McFadyen v. Duke University*, *see* Doc. 214 at 16 n.2. In *McFadyen*, the Court was addressing the unindicted plaintiffs' claim of civil conspiracy against 50 other defendants (not including Gottlieb, Himan, or Wilson). *See* 786 F. Supp. 2d 887, 968 (M.D.N.C. 2011). Here, by contrast, the Court found the allegations that Gottlieb, Himan and Wilson "conspired with Nifong to initiate the prosecution" were sufficient to support Plaintiffs' claim for malicious prosecution. Doc. 133, at 69.

9

above, Defendants cannot evade these allegations by attempting to recast theirs as a "routine" investigation. *See* note 3, *supra*.[7]

Thus, the Second Amended Complaint makes clear that the Defendants engaged in bad-faith conduct—including the creation of false and misleading evidence, the concealment of material evidence, and the intimidation of witnesses—for the express purpose of securing and sustaining the indictments of the three innocent Plaintiffs. While Gottlieb and Himan claim that they "fully disclosed all information they learned in their investigation . . . to Prosecutor Nifong and that they did not pressure him to charge Plaintiffs," Doc. 214 at 16, the fact that they knowingly fabricated *false* evidence against Plaintiffs, and conspired with Nifong to manufacture and use such false evidence to obtain and sustain the indictments of Plaintiffs, demonstrates their bad faith in initiating, procuring and participating in the criminal proceedings and removes them from any safe harbor in *Cully's Motorcross*. Defendants' conduct did not involve good faith or information believed "to be true." *Cully's Motorcross Park, Inc.*, 742 S.E.2d at 787. In short, the allegations here bear little resemblance to those in *Cully's Motorcross*. Defendants' conduct was precisely the opposite of good faith, and the information they manufactured was not believed to be true.

---

[7] In light of these facts, the presumption argued by Defendants "that a public official in the performance of his official duties acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest," has no place here. Doc. 214, at 16 (quoting *Greene v. Valdese*, 291 S.E.2d 630, 632 (N.C. 1982)).

10

Case 1:07-cv-00739-JAB-JEP   Document 230   Filed 03/24/14   Page 10 of 18

## II. *Cully's Motorcross* Did Not Eliminate "Participation" in a Malicious Prosecution.

Defendants' arguments also ignore the fact that the tort of malicious prosecution applies not only to those who "initiate" or "procure" a malicious prosecution, but also to those who "participate" in one. *Moore*, 476 S.E.2d at 421 (officer permitted prosecution to continue even after another person was arrested for alleged crime); *see Moore v. City of Creedmoor*, 460 S.E.2d at 906 (noting North Carolina courts have held that a defendant may be liable for malicious prosecution if he "instituted, procured *or participated* in the criminal proceeding against the plaintiff") (emphasis in original)). Instead, Defendants selectively quote from the Fourth Circuit's opinion in this case to suggest that the requisite element is simply "causation of a criminal proceeding," *i.e.*, initiation. Doc. 214, at 5 (quoting *Evans*, 703 F.3d at 657). But, as the Fourth Circuit also stated, the "North Carolina courts have generally held causation can be established by allegations that the defendant 'instituted, procured, or participated in' a criminal proceeding." *Evans*, 703 F.3d at 657; *accord Moore*, 476 S.E.2d at 421 (listing elements as "(1) instituted, procured or participated in the criminal proceeding against [the] plaintiff; (2) without probable cause; (3) with malice; and (4) [where] the prior proceeding terminated in favor of plaintiff"). Indeed, the Fourth Circuit held that it was precisely this broad standard that distinguishes common-law malicious prosecution claims from Section 1983 claims. *Id.* While *Cully's Motorcross* addressed the legal standard applicable to private persons alleged to have "initiated" a malicious prosecution, it did nothing to diminish the liability of a defendant for "participating" in one. 742 S.E.2d at 786

11

("[A]ll of [plaintiff's] surviving claims are based upon a contention that [the defendant] maliciously instigated a criminal prosecution against her.").

Here, the allegations regarding these Defendants include conduct throughout the prosecution of Plaintiffs, not simply its initiation, including actions that were specifically intended to sustain the case. *See* Doc. 133, at 14-15 (summarizing allegations of witness intimidation, Gottlieb's fabrication of phony "after-the-fact 'report' of the investigation," and efforts by Wilson "to revive the prosecution by persuading Mangum to alter her statements to conform to the revelations regarding the lack of Plaintiffs' DNA on the rape kit items"). *See also* Compl. ¶¶ 223-26, 229, 231-32 (describing post-indictment agreement by Gottlieb, Himan, Nifong, and DSI Defendants to "fabricate a false and misleading 'final' report of DNA testing that would sustain the prosecutions of Finnerty and Seligmann"). Thus, this case is decidedly unlike the facts of *Cully's Motorcross*, in which the private investigator's conduct ended with his provision of information to law enforcement before the plaintiff's arrest. *See* 742 S.E.2d at 785, 788. Instead, as alleged here, the Defendants were key participants in the efforts to perpetuate and sustain the prosecution of Plaintiffs on false charges after their indictments and arrests—facts that are sufficient to distinguish this case from *Cully's Motorcross* and maintain the malicious prosecution claim.

### III. *Cully's Motorcross* Did Not Address Efforts by Law Enforcement Officers to Fabricate and Conceal Evidence.

Finally, *Cully's Motorcross* is inapplicable for the additional reason that the case involved a private person's provision of information to law enforcement. *Cully's Motorcross* did not address a situation involving the actions of law enforcement officers and, in

12

particular, allegations that officers fabricated false evidence and deliberately concealed evidence of innocence for the express purpose of securing and maintaining their indictments and arrests on false charges. Instead, Defendants seek to extend *Cully's* well beyond its moorings—bootstrapping the discrete situation addressed by the North Carolina Supreme Court (a private person's good-faith provision of information to law enforcement) to a context that the court did not consider (a scheme by law enforcement officials to fabricate and conceal evidence both before and during a prosecution). That is a significant leap, and *Cully's Motorcross* does not provide a sufficient basis for this Court to revisit its prior decision and that of the Fourth Circuit, each of which held that the allegations of misconduct by law enforcement officers sufficiently stated a claim for malicious prosecution. *See, e.g.*, Doc. 133, at 67 ("Plaintiffs have alleged that Defendants [Gottlieb, Himan, and Wilson] all procured or participated in the proceedings against them by manufacturing and manipulating evidence on which the prosecution was based."); *Evans*, 703 F.3d at 657 n.16 ("Taken together, the officers' multiple alleged acts certainly present plausible claims of malice.").

To support their argument, Defendants cite several non-controlling, out-of-state cases to argue that *Cully's Motorcross* should be extended to encompass wrongful actions of law enforcement officials. Doc. 214, at 14-15. But, as relevant here, those cases stand for the proposition that Comment g to the Restatement (Second) of Torts § 653 "may inform analysis of" malicious prosecution claims against government officials. *Williams v. State of N.J. Div. of State Police*, 2012 U.S. Dist. LEXIS 72457, at *32 n.10 (D.N.J. May 24, 2012). As Defendants acknowledge, Comment e to Section 653 provides that "The rule stated in this Section is applicable only to private persons who initiate or procure the institution of

13

criminal proceedings" and "has no application to public officials charged with the enforcement of criminal law in the performance of their public duty." Restatement (Second) of Torts § 653, cmt. e, *quoted* at Doc. 214, at 14.[8] Moreover, Comment g emphasizes that a private person can be held liable for "the initiation of proceedings" if "the information furnished by him upon which the official acted was known to be false." Restatement (Second) of Torts § 653 cmt. g. Thus, even if Section 653 were to apply to law enforcement officers, it would not excuse the conduct alleged here.

Moreover, there is good reason to believe that the North Carolina Supreme Court did *not* intend for its holding concerning private persons to be extended to immunize the wrongful fabrication and concealment of evidence by law enforcement officials. The court emphasized that its safe harbor for private persons was intended to "preserv[e] the element of malice both to deter those who would subvert to their own ends the power held by police and prosecutors and to protect citizens from 'one [who] resorts to the process of the law without probable cause, willfully and maliciously, for the purpose of injuring his neighbor.'" *Cully's Motorcross*, 742 S.E.2d at 787 (quoting *Chatham Estates*, 88 S.E. at 785). Here, Defendants argue for the dismissal of Count 13 notwithstanding the allegations of their malicious conduct and the abuse of their governmental powers in concert with Defendant Nifong. Such a result would subvert the element of malice, rather than preserve it, and offer no protection to citizens from the power held by police and prosecutors.

---

[8] Comment e opines that public officials would be protected by absolute immunity. *See* Restatement (Second) of Torts § 653, cmt. e. As the Court has already held, however, absolute immunity is not available on Count 13. *See* Doc. 133, at 70-71.

14

Indeed, the Defendants' argument boils down to their apparent view that law enforcement officials may freely fabricate false evidence and conceal evidence of innocence—indeed, in concert with a corrupt prosecutor for the express purpose of falsely indicting and sustaining the prosecution of innocent persons—with no legal recourse whatsoever by the falsely accused. Neither *Cully's Motorcross* nor any other decision of the North Carolina Supreme Court goes so far, and the Court should reject the Defendants' invitation to embrace such a chilling assertion.

As this Court recognized in denying the Defendants' initial motions to dismiss, the Second Amended Complaint "set[s] out allegations of significant abuses of government power." Doc. 133, at 97. Now, as then, the Court should reject the Defendants' contention "that this Court should take the most restrictive view" of the law and "conclude that . . . no redressable claim can be stated, when government officials intentionally fabricate evidence to frame innocent citizens, even if the evidence is used to indict and arrest those citizens without probable cause." *Id.* at 97-98. *Cully's Motorcross* does not support such a position.

## CONCLUSION

For the foregoing reasons, the Court should deny these Defendants' Motion for Judgment on the Pleadings (Docs. 213 & 216), as *Cully's Motorcross* does not alter their liability in this case.

Dated: March 24, 2014				Respectfully submitted,

              **WILLIAMS & CONNOLLY LLP**

              By:  /s/ Christopher N. Manning
              By:  /s/ Charles Davant IV
              Brendan V. Sullivan, Jr. (*pro hac vice*)
              Robert M. Cary (*pro hac vice*)
              Christopher N. Manning (*pro hac vice*)
              Charles Davant IV (N.C. Bar #28489)
              725 Twelfth Street, NW
              Washington, DC 20005
              Tel.:  (202) 434-5000
              E-mail: cdavant@wc.com

              *Attorneys for Plaintiffs David F. Evans and*
               *Collin Finnerty*

                -and-

              **RUDOLF WIDENHOUSE & FIALKO**

              By:  /s/ David S. Rudolf
              David S. Rudolf (N.C. Bar #8587)
              225 East Worthington Avenue
              Suite 200
              Charlotte, NC 28203
              Tel.:  (704) 333-9945
              E-mail: dsrudolf@rwf-law.com

              **BARRY C. SCHECK, ESQ.**

              Barry C. Scheck*
              Attn: Elizabeth Vaca
              100 Fifth Avenue
              New York, NY 10011
              Tel.:  (212) 364-5390
              E-mail: bcsinnocence@aol.com

              (* motion for special appearance
               to be filed)

**EMERY CELLI BRINCKERHOFF & ABADY LLP**

 Richard D. Emery (*pro hac vice*)
 Ilann M. Maazel (*pro hac vice*)
 75 Rockefeller Plaza, 20th Floor
 New York, NY  10019
 Tel.: (212) 763-5000
 Fax.: (212) 763-5001
 E-mail: remery@ecbalaw.com

*Attorneys for Plaintiff Reade Seligmann*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID F. EVANS, et al.,

    Plaintiffs,

    v.

CITY OF DURHAM, N.C., et al.,

    Defendants.

Case No. 1:07CV739

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2014, the foregoing Plaintiffs' Opposition to Motion for Judgment on the Pleadings was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties required to be served.

    Respectfully submitted,

    /s/ Charles Davant IV
    Charles Davant IV (N.C. Bar No. 28489)
    WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, NW
    Washington, DC  20005
    Tel.:    (202) 434-5000
    E-mail:    cdavant@wc.com

    *Attorney for Plaintiffs David F. Evans and*
     *Collin Finnerty*